IN THE UNITED STATES DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

ACTION NO. 3:19-cv-0053-RAM-EAH

THOMAS F. FRIEDBERG & SARAH L. BUNGE,

    Plaintiff,

      v.

DAYBREAK, INC., dba HUBER & ASSOCIATES,

    Defendant.

_____/

## **DEFENDANT'S RESPONSE TO PLAINTIFFS REQUEST FOR ADMISSIONS**

COMES NOW the Defendant, Daybreak Inc. d/b/a Humber & Associates, by and through undersigned counsel, and hereby files this Response to Plaintiffs Request for Admissions dated November 17, 2024, as follows:

1. Admit that you entered into a contract to manufacture and install a standing seam copper roof, including all underlayments, flashings, crickets, including all necessary equipment, materials and supplies, at Plaintiffs' home located at 168 Chocolate Hole, St. John, Virgin Islands.

    **Response: Deny. This defendant did not provide the underlayments and did not manufacture the standing seam copper roof.**

2. Admit that the contract required that the work performed by you or your company included cleats be installed at an average of 9.5 inches on center with 2 ring shanks per cleat.

    **Response: Admit.**

3. Admit that the contract which required that cleats be installed at an average of 9.5 inches on center with 2 ring shanks per cleat applied to the main house at Plaintiffs' residence.

   **Response: Admit.**

4. Admit that the contract term requiring that cleats be installed at an average of 9.5 inches on center with 2 ring shanks per cleat to secure the copper panels and copper pans to the roof was a material term of the contract.

   **Response: Admit.**

5. Admit that you charged an additional $10,737 for the costs (materials and labor) to install the cleats at an average of 9.5 inches on center.

   **Response: Deny. That figure was included in the proposal dated May 7, 2010 and was not an additional charge.**

6. Admit that the cleats, once installed, are covered with copper panels as each panel is installed to make up a copper pan so that the cleats are not visible to the naked eye once the copper pans are installed onto the roof.

   **Response: Deny. They can be seen by an inspector.**

7. Admit that the work on the copper roof began on or about June 2010 and was substantially completed by on or about mid July 2020.

   **Response: Admit.**

8. Admit that on or about September 7, 2017, Hurricane Irma struck the territory.

   **Response: Admit.**

9. Admit that the copper roof on the main house separated during Hurricane Irma.

   **Response: Without knowledge as to any damage to the property as a result of Hurricane Irma as this Defendant has not revisited the property since completing the work.**

10. Admit that the failure to install cleats at 9.5 inches on center contributed to the separation of the copper roof on the main house.

**Response: Deny.  If the roof failed, it was due to the damaging winds associated with Hurricane Irma.**

11. Admit that the areas of failure of the copper roof at the main house coincided to the where there were not cleats placed at 9.5 inches on center.

    **Response:  Deny. If the roof failed, it was due to the damaging winds associated with Hurricane Irma.**

12. Admit that the failure to install cleats at an average of 9.5 inches on center was a latent defect that was not discoverable until after Hurricane Irma.

    **Response:  Deny. Any issue with the cleats on the roof should have been detectable when Plaintiffs had their initial roof inspection performed as part of the prior lawsuit.**

13. Admit that the failure to install cleats at an average of 9.5 inches on center was a breach of the contract you entered into to install a copper roof at Plaintiffs' home.

    **Response:  Deny. The roof was installed pursuant to the contract between the parties and local code.**

14. Admit that the specific location of the cleats securing the pans to the main roof was not visible to the naked eye after the pans were secured to the roof.

    **Response: Deny. Any issue with the cleats on the roof should have been detectable when Plaintiffs had their initial roof inspection performed as part of the prior lawsuit.**

Date: December 17, 2024.

>  s/ Jeffrey C. Cosby, Esq.
>  Jeffrey C. Cosby, Esq.
>  Florida Bar No. 967981
>  Service to: eservice@wlclaw.com
>  Attorney for Defendant Daybreak Inc
>  Williams, Leininger & Cosby, P.A.
>  301 SE Ocean Blvd., Suite 205
>  Stuart, FL  34994
>  Telephone: 772-463-8402
>  Facsimile: 772-463-4820

                    s/ Andrew C. Simpson, Esq.
                    Andrew C. Simpson, Esq.
                    VI Bar 451
                    Attorney for Defendant Daybreak Inc
                    2191 Church Street, Ste. 5
                    Christiansted, St. Croix
                    U.S. Virgin Islands 00820
                    Telephone No. (340)719-3900

## **CERTIFICATE OF SERVICE**

WE HEREBY CERTIFY that on December 17, 2024, we electronically filed the foregoing document via CM/ECF to the parties listed below:

                    s/ Jeffrey C. Cosby, Esq.
                    Jeffrey C. Cosby, Esq.
                    Florida Bar No. 967981
                    Service to: eservice@wlclaw.com
                    Attorney for Defendant Daybreak Inc
                    Williams, Leininger & Cosby, P.A.
                    301 SE Ocean Blvd., Suite 205
                    Stuart, FL  34994
                    Telephone: 772-463-8402
                    Facsimile: 772-463-4820

                    s/ Andrew C. Simpson, Esq.
                    Andrew C. Simpson, Esq.
                    VI Bar 451
                    Attorney for Defendant Daybreak Inc
                    2191 Church Street, Ste. 5
                    Christiansted, St. Croix
                    U.S. Virgin Islands 00820
                    Telephone No. (340)719-3900

**SERVICE LIST:**

Thomas Friedberg, Esq.
610 West Ash Street, Suite 1400
San Diego, CA 92166
tom@lawofficefb.com
Phone: 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
Attorney for the Plaintiffs