**DISTRICT COURT OF THE VIRGIN ISLANDS**

**DIVISION OF ST. THOMAS and ST. JOHN**

| | |
|---|---|
| **THOMAS F. FRIEDBERG and SARAH L. BUNGE,**<br><br>　　　　　　　　　**Plaintiffs,**<br>　v.<br><br>**DAYBREAK, INC. d/b/a HUBER & ASSOCIATES,**<br><br>　　　　　　　　　**Defendant.**<br>_____ | **3:19-cv-00053-RAM-EAH** |

**TO:**　Thomas F. Friedberg, Esq.
　　　Jeffrey C. Cosby, Esq.
　　　Andrew C. Simpson, Esq.

## ORDER

**THIS MATTER** comes before the Court on the Motion to Extend the Fact Discovery Deadline, filed on May 27, 2025 by Attorneys Jeffrey Cosby and Andrew Simpson on behalf of Defendant Daybreak, Inc. ("Daybreak"). Dkt. No. 63.[1] On June 9, 2025, the Court held a hearing on the motion at which Attorney Thomas Friedberg appeared on behalf of himself and Plaintiff Sarah Bunge. Attorney Cosby appeared on behalf of Daybreak.

## BACKGROUND

In July 2019, Thomas Friedberg, a lawyer representing himself, filed a Complaint on behalf of himself and his wife, Sarah Bunge, alleging a breach of contract claim against Daybreak. Dkt. No. 1. Plaintiffs alleged that they entered into a contract with Daybreak for

---

[1] The motion was originally filed on May 20, 2025, Dkt. No. 62, but was flagged by the Clerk of Court as misfiled. It was not refiled properly until May 27, 2025. The Court will deny the initially filed motion, Dkt. No. 62, as moot.

*Friedberg v. Daybreak, Inc.*
3:19-cv-00053-RAM-EAH
Order
Page 2

the manufacture and installation of a roof on their St. John home. *Id.* ¶ 6. "Cleats" are a material used to secure the copper roofing panels that were installed on Plaintiffs' home. They must be installed "at an average of 9.5 inches on center" to ensure that a roof can withstand hurricane force winds. *Id.* ¶ 7. The contract between Plaintiffs and Daybreak specifically called for the cleats to be installed 9.5 inches apart. *Id.* ¶ 10; Dkt. No. 1-1. However, Plaintiffs alleged that on portions of the roof of their "main house,"[2] the cleats were not installed at all, in breach of a material term of the parties' contract. Dkt. No. 1 ¶¶ 10-11. The defect was revealed following Hurricane Irma, in 2017, when portions of the roof tore open. *Id.*

On November 14, 2025, the Court entered a Scheduling Order to govern the proceedings in this matter. Dkt. No. 42. That Order set the following deadlines, as relevant for the purposes of the instant motion: fact discovery to be completed by May 7, 2025; mediation to be completed by June 6, 2025; Plaintiffs' expert disclosures to be served by July 15, 2025; dispositive motions, including *Daubert* motions, due by December 15, 2025; and trial set for April 14, 2026. *Id.*

Fact discovery appeared to progress without significant issue throughout the pendency of the discovery period. However, on May 20, 2025, thirteen days after the close of fact discovery, Daybreak filed a motion for an extension of the fact discovery deadline. Dkt. No. 62; *see also* Dkt. No. 63.

---

[2] Plaintiffs' property is made up of six buildings. Dkt. No. 65. Plaintiffs allege the present dispute concerns only one building: "the main house." *Id.*

*Friedberg v. Daybreak, Inc.*
3:19-cv-00053-RAM-EAH
Order
Page 3

## I.     The Motion for Extension

In its motion, Daybreak stated that it requested discovery from Plaintiffs regarding possible insurance or other collateral source payments Plaintiffs received for the damages claimed in this suit, but Plaintiffs said they made no insurance claims for the roof at issue. *Id*. However, during the March 17, 2025 deposition of Plaintiff Thomas Friedberg, Attorney Friedberg testified that following Hurricane Irma he made an insurance claim, sued his insurer, and entered into a settlement with the insurance company. *Id*.

Defendant argues that Plaintiffs failed to provide any documents regarding their insurance claims, despite having an ongoing obligation to make such disclosures. *Id*. Consequently, Daybreak is seeking an extension of the lapsed discovery deadline to July 7, 2025, to allow it to subpoena records regarding Plaintiffs' insurance policy and reimbursements. Defendant argues that Plaintiffs' failure to disclose their insurance policies and to update their discovery disclosures after Attorney Friedberg's deposition constitutes good cause for the extension, particularly since the extension will not affect any other deadlines. *Id*.

Daybreak attached Plaintiffs' responses to Interrogatories, the transcript of the deposition of Mr. Friedberg, and the complaint Plaintiffs filed against their insurer as exhibits. The attached interrogatories include, *inter alia*:

> **Interrogatory No. 6**: Has anything been paid or is anything payable from any third party for the damages listed in your answers to these interrogatories and if so, state the amounts paid or payable, the name and business address of the person or entity who paid or owes said amounts, and which of those third parties have or claim a right of subrogation.

*Friedberg v. Daybreak, Inc.*
3:19-cv-00053-RAM-EAH
Order
Page 4

> **Response to Interrogatory No. 6**: No.
>
> . . .
>
> **Interrogatory No. 20:** Have you made any claim with your insurance company for the damage to the roof that occurred during Hurricane Irma?
> > **Response to Interrogatory No. 20**: There was not a claim for the main roof.
>
> **Interrogatory No. 21:** What is the name, phone number, address, and any other contact information for any insurance company that insures the subject property?
> > **Response to Interrogatory No. 21**: The property was insured at the time the work was performed with Island Heritage, policy number IHG54145.

Dkt. No. 63-1.

The deposition transcript include testimony from Attorney Friedberg in which he stated that he had property insurance during Hurricane Irma, which he purchased from Tunick Insurance on St. John. Dkt. No. 63-2 at 84. He acknowledged that he and Attorney Bunge[3] made a claim following the hurricane, and ultimately sued their insurer. *Id*. at 84-85. That suit settled for around $100,000. *Id*. at 85. Attorney Friedberg also stated that he did not know whether the settlement with the insurer covered any damage to the main roof. *Id*. at 215.

Thomas Frieberg and Sarah Bunge's Superior Court complaint against their insurer was filed in August 2019 against Island Heritage Insurance Company, Ltd. ("Island Heritage"). Dkt. No. 63-3. In it, Plaintiffs alleged that Island Heritage refused to pay out their claims following Hurricane Irma, despite Plaintiffs having purchased homeowners'

---

[3] Plaintiff Sarah Bunge is also an attorney, although she is not representing herself or Attorney Frieberg in this case.

*Friedberg v. Daybreak, Inc.*
3:19-cv-00053-RAM-EAH
Order
Page 5

insurance in the amount of $1 million, which they renewed annually from 2003 to 2018. *Id*. Their complaint alleged that the insurance covered "all of the buildings" on Plaintiffs' property. *Id*.

## II. Plaintiffs' Response

In opposition to the Motion for Extension, Plaintiffs contend that they disclosed their insurance information, including the correct carrier and policy number, in written interrogatory responses three months prior to Mr. Friedberg's deposition. *Id*. at 3. They refute Daybreak's contention that they provided "no documents" supporting the insurance claim made against Island Heritage. In fact, Plaintiffs disclosed a 48-page report "from their forensic architectural expert detailing the damage to the roofs of all buildings from Hurricane Irma, including the main roof, which included a cost of repair." *Id*. at 6.

Procedurally, Plaintiffs argue that Daybreak has not demonstrated good cause to modify the scheduling order. *Id.* Daybreak was well-aware of the discovery deadline; the parties actively strove to complete discovery prior to the deadline on numerous issues. *Id*. Nevertheless, Daybreak made no effort to subpoena or otherwise obtain the information now being sought prior to the close of the discovery deadline. *Id*. Because Daybreak cannot meet the good cause standard, it is attempting to manufacture good cause "by casting aspersions on Plaintiffs' counsel stating that the identity of the property insurer was being withheld. This is false and contrary to the evidence." *Id*. at 7-8. Moreover, the requested discovery extension would affect the remaining deadlines, particularly because there may be need to conduct more discovery depending on what Island Heritage might produce in

response to the subpoena. *Id*. at 9. This would necessarily impact Plaintiff's expert discovery disclosures, which are due on July 15, 2025. *Id*.

Substantively, Plaintiffs argue that the discovery requested is irrelevant and not proportional because this is a contract case, not a tort action. *Id*. at 2. The existence of payouts from an insurer is immaterial to this litigation because there is no collateral set off doctrine for breach of contract claims. *Id*. Plaintiffs state they could not find any Virgin Islands case law for such an assertion, but they cite to a North Carolina case collecting other cases and noting that in a breach of contract claim, a party should be entitled to both their insurance payments and the benefit of what they bargained for in their contract. *Id*. at 10-11.

### III. Daybreak's Reply

Daybreak replies that it was delayed in filing its motion to extend the discovery deadline because it had attempted—apparently unsuccessfully—to obtain the requested documents from the attorney that represented Daybreak in a Superior Court action against Thomas Friedberg and Sarah Bunge. Dkt. No. 66. It also maintains that the requested documents would not be used purely for the purposes of challenging collateral source payments. The documents would also reveal information as to the insurance company's evaluation of the roofing system, "which [is] very pertinent to the issues in this case." *Id*.

Daybreak further contends that Plaintiffs "are misstating how they answered their interrogatories." *Id*. Plaintiffs provided information about their insurer only "at the time the work was performed"; but who the insurer was in 2010 when the roof was constructed had nothing to do with whether the property was insured following Hurricane Irma. *Id*. "Plaintiffs

*Friedberg v. Daybreak, Inc.*
3:19-cv-00053-RAM-EAH
Order
Page 7

have not been straightforward with Defendant on their insurance, their insurance claims, and whether those claims are relevant to this lawsuit." *Id*.

### IV. The Hearing

At the hearing, Attorney Cosby stated that he believed that Plaintiffs had a duty to provide these documents as supplements to several discovery requests, including the interrogatories described above, and four requests for production that he read into the record. Those requests sought "All documents relating to any insurance or bond that provides coverage or indemnification to the project."; "All documents related to any insurance or bond that you believe may provide coverage or indemnification of the alleged damages to the project"; "All documents related to any denials of coverage by any insurance company or surety relating to claims arising out of the project"; and "All documents evidencing payments received from third-parties to reimburse you for payments made to correct the alleged deficiencies in the construction of the project."[4] Plaintiffs' written responses to those requests when they were issued were that they were not applicable or that they possessed no such documents. At the hearing, Attorney Friedberg explained that he understood the phrase "the project," to mean the roof-cleating project. He did not purchase any insurance related to the roof-cleating and installation project, and therefore did not believe any documents concerning insurance over "the project" existed.

---

[4] Attorney Cosby also read three other requests for production Daybreak issued to Plaintiffs requesting information related to any insurance claims, which Plaintiffs objected to as irrelevant and unproportional. Defendant did not move to compel responses to the objected requests.

*Friedberg v. Daybreak, Inc.*
3:19-cv-00053-RAM-EAH
Order
Page 8

Attorney Friedberg acknowledged that his discovery responses could have been more descriptive and explicit, but he maintained that his responses were accurate and were not misleading. In addition to his belief that "the project" was not covered, he stated that Island Heritage argued that only two of his six buildings were covered by their policy, neither of which were the main house. Thus, it is Plaintiffs' position that the insurance claims had nothing to do with the main house. Moreover, it was correct to say that he was not in possession, custody, or control of the requested documents because he did not physically have any of the requested documents. Attorney Cosby disagreed, explaining that Attorney Friedberg easily could have obtained the documents by calling Island Heritage and requesting the documents the same way a party might request bank records from its bank to meet its discovery obligations, even if the party does not actually have the records in its immediate physical presence.

Attorney Friedberg repeatedly emphasized that Daybreak must demonstrate good cause and excusable neglect for its motion to be granted. He argued that the standards were not met because, at the very latest, Defendant was aware of the potential need to seek these records by Attorney Friedberg's deposition, which was on March 17, 2025. But instead of immediately seeking the discovery on March 18, Daybreak waited until May 8, 2025—the day after discovery closed—to take any action to obtain the requested documents. Defendant did not, but could have, immediately contacted Attorney Friedberg to clarify his discovery responses following his deposition or attempted to subpoena Island Heritage.

*Friedberg v. Daybreak, Inc.*
3:19-cv-00053-RAM-EAH
Order
Page 9

Attorney Cosby explained that Plaintiff Sarah Bunge's deposition occurred in early May. On May 8, 2025, shortly after Attorney Bunge confirmed what Attorney Friedberg had said regarding the insurance claim and lawsuit against Island Heritage, Attorney Cosby reached out to the attorney representing Daybreak[5] in a suit it filed in Superior Court against these Plaintiffs to see if he had any documents related to the insurance issue. That same day, Attorney Cosby sent Plaintiffs notices of intent to subpoena Island Heritage for the insurance files. Attorney Friedberg objected to the issuance of those subpoenas because the fact discovery period had closed by May 8. Attorney Cosby admitted that he could have pursued the requested documents sooner, but stated that he had not thought of a way to obtain the documents until around May 8 when he determined he could subpoena the records.

Finally, Attorney Friedberg argued that Plaintiffs would be prejudiced if this extension were granted because if something returned in response to the subpoena required further discovery, that may impose more costs on Plaintiffs. Moreover, if the discovery from the insurer created a need for the parties to undergo further discovery, it may affect Plaintiffs' ability to timely file their expert reports, which could have downstream effects on the case's timeline, including trial.

Attorney Cosby argued that it was not clear what records Island Heritage would produce in response to the subpoena, but that it was unlikely that any discovery they might produce would require significant amounts of follow-up. Moreover, he disagreed with

---

[5] Attorney Friedberg pointed out that Daybreak's counsel in its territorial case was Attorney Andrew Simpson, who serves as local counsel for Daybreak in these proceedings.

*Friedberg v. Daybreak, Inc.*
3:19-cv-00053-RAM-EAH
Order
Page 10

Plaintiffs' assertion that anything in the discovery might impact Plaintiffs' expert report. In response to Court questioning, he also suggested that Plaintiffs had not acted in good faith in responding to Daybreak's discovery requests and, based on Attorney Friedberg's statements to the Court, Attorney Cosby suggested that Plaintiffs may not have gone through all of the documents in their possession in good faith.

The parties also updated the Court regarding the status of this case. They stated that they were unable to mediate by the mediation deadline. The parties had agreed to mediate on June 3, 2025. However, on May 21, 2025, a trial was set for June 2, 2025 in another of Attorney Cosby's matters. The parties could not meet earlier because Attorney Friedberg was on an extended vacation in Portugal until May 31, 2025. Thus, the parties orally moved for an extension of the deadline to mediate. The Court granted that oral motion from the Bench and allowed the parties until July 7, 2025 to mediate.

## DISCUSSION

### I. Legal Standard

Federal Rule of Civil Procedure 16(b)(4) provides that a scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). At the same time, "[m]atters of scheduling and docket control 'are committed to the sound discretion of the district court.'" *Katz v. Panera Bread Co.*, No. 23-cv-4135, 2024 WL 4242814, at *3 (E.D. Pa. Sept. 19, 2024) (quoting *PDX N., Inc. v. Comm'r N.J. Dep't of Lab. & Workforce Dev.*, 978 F.3d 871, 880 n.6 (3d Cir. 2020)). Thus, when a party seeks an extension of a deadline, a court must consider, in its discretion, whether the movant has demonstrated

*Friedberg v. Daybreak, Inc.*
3:19-cv-00053-RAM-EAH
Order
Page 11

good cause to grant that extension. In addition, if a request to amend a deadline comes after the deadline has passed, the movant must demonstrate excusable neglect for its failure to timely seek the extension. *See* Fed. R. Civ. P. 6(b)(1)(B) ("When an act may or must be done within a specified time, the court may, for good cause, extend the deadline . . . on motion made after the time has expired if the party failed to act because of excusable neglect."

> The good cause inquiry:
>
> "focuses on the moving party's burden to show due diligence." *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57, 84 (3d Cir. 2010). Courts have defined "good cause" to include "circumstances beyond the control" of a party. *See Partners Coffee Co., LLC v. Oceana Servs. & Prods. Co.,* No. 09-CV-236, 2010 WL 1726829, at *3 (W.D. Pa. Apr. 28, 2010); *see also Lord v. Consolidated Rail Corp.*, No. 13-784, 2015 WL 6163951, at *1 (D.N.J. Oct. 19, 2015) ("A court may find good cause to amend the scheduling order where the movant learns of the facts supporting [the motion] after expiration of the relevant filing deadline [.]") (internal quotation marks omitted).

*Hoffman v. Hammerhead Constr. LLC*, No. 3:21-cv-46, 2023 WL 5346071, at *4 (D.V.I. Aug. 21, 2023). In *Hoffman*, the Court found good cause to reopen expert discovery long after its close where the "ultimate reason" for the need to reopen discovery was a defendant's inadvertent failure to timely provide certain documents to the opposing party. *Id*.

Evaluating excusable neglect requires "a broad inquiry and determining whether neglect is excusable is an equitable determination that takes account of all relevant circumstances surrounding the party's omission." *Gumbs-Heyliger v. CMW & Assoc. Corp.*, No. 2012-cv-00078, 2017 WL 1217153, at *2 (D.V.I. Mar. 31, 2017) (internal quotation marks omitted).

*Friedberg v. Daybreak, Inc.*
3:19-cv-00053-RAM-EAH
Order
Page 12

> Courts consider four factors in determining whether an extension should be granted based on excusable neglect: (1) "the danger of prejudice to the [other party]"; (2) "the length of the delay and its potential impact on judicial proceedings"; (3) "the reason for the delay, including whether it was within the reasonable control of [the untimely party]"; and (4) "whether the [untimely party] acted in good faith."

*Id.* (quoting *Pioneer Inv. Svcs. Co. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380, 395 (1993)).

### II.   Application

For the purposes of ruling on the instant motion, the Court rejects Plaintiffs' argument that the discovery Daybreak is seeking from Island Heritage is irrelevant and unproportional. The scope of discovery is broad:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. . . . Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1); *see also Pacitti v. Macy's*, 193 F.3d 766, 777 (3d Cir. 1999) ("It is well recognized that the federal rules allow broad and liberal discovery."). In fact, the rules of discovery were amended in 2015 to demonstrate that all non-privileged relevant and proportional discovery is discoverable regardless of its admissibility at trial. *See* Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment. The Court finds that, regardless of the propriety of the collateral source payment doctrine in Virgin Islands contract law, the documents are relevant to Daybreak's defenses. Therefore, the only questions before the Court are whether Defendant has demonstrated good cause for the extension and excusable neglect for its delay in seeking it.

*Friedberg v. Daybreak, Inc.*
3:19-cv-00053-RAM-EAH
Order
Page 13

### A.     Good Cause

The Court begins by reminding the parties that "[d]iscovery is about developing a record in the case that produces all of the relevant information necessary to insure an outcome fair to all parties. Discovery is *not* a competition to see which party can manipulate legal doctrines to gain advantage." *Scranton Prods., Inc. v. Bobrick Washroom Equip., Inc.*, 190 F. Supp 3d 419, 427 (M.D. Pa. 2016) (internal citations and quotation marks omitted) (emphasis in original). Guided by this principle, the Court finds that Plaintiffs' discovery responses to Defendant's Interrogatories and Requests for Production were obfuscatory and therefore hampered Defendant's ability to timely and diligently pursue discovery.

Plaintiffs' responses to the interrogatories do not make clear that they had a property insurance policy at the time Hurricane Irma struck the house; *see* Dkt. No. 63-1 ("Response to Interrogatory No. 21: The property was insured *at the time the work was performed* with Island Heritage, policy number IHG54145." (emphasis added)). Moreover, in the responses to the interrogatories and the responses to the requests for production, Attorney Friedberg engaged in a kind of gamesmanship that the Court discourages in light of the "collaborative process envisioned by the discovery rules." *Vasoli v. Yards Brewing Co., LLC*, No. 21-cv-2066, 2021 WL 5045920, at *2 (E.D. Pa. Nov. 1, 2021) ("While discovery is necessarily conducted in the adversarial context of litigation," the "spirit and purpose of the discovery rules . . . demand[] cooperation between the parties' counsel to identify and fulfill legitimate discovery needs."); *see also Gardner v. Norfolk S. Corp.*, 299 F.R.D. 434, 436 (D.N.J. 2014) ("Open discovery is the norm. Gamesmanship with information is discouraged and surprises

are abhorred."). Moreover, the Court finds that Plaintiffs' responses to Interrogatory Numbers 6 and 20 were inaccurate in light of their filings in Superior Court, *see* Dkt. No. 63-3 (Attorneys Friedberg and Bunge's complaint against Island Heritage asserting that their insurance coverage was for "all of the buildings on the property") and Attorney Friedberg's statement that the Superior Court never ruled on the scope of his insurance coverage.

Thus, the Court finds that the "ultimate reason" for Defendant's need to reopen discovery is Plaintiffs' conduct. Had Plaintiffs' discovery responses clearly explained the facts—that they believed their property, including the main house, was insured during Hurricane Irma, that they made a claim on their property insurance, and that they received some money following brief litigation and a settlement with their insurer—Defendant would very likely not be seeking this extension.[6]

It is true that Daybreak could have been more diligent in seeking Island Heritage's records prior to the expiration of the discovery deadline. But, when circumstances beyond the control of the party seeking an extension cause a delay, the Court will look beyond diligence to determine whether the party has demonstrated good cause for the extension. *See Hoffman*, 2023 WL 5346071, at *4. Because the delay was ultimately caused by Plaintiffs' obfuscatory answers to discovery requests, the Court finds good cause to extend the deadline.

---

[6] The Court finds that Plaintiffs' attempt at gamesmanship in responding to discovery does not amount to willful bad faith conduct warranting sanctions. However, their responses were misleading and prevented Daybreak from seeking additional discovery in a timely manner.

*Friedberg v. Daybreak, Inc.*
3:19-cv-00053-RAM-EAH
Order
Page 15

### B.    Excusable Neglect

No doubt, Daybreak was aware of the insurance documents prior to the close of the discovery period. Nevertheless, in considering the factors set out in *Gumbs-Heyliger*, 2017 WL 1217153, at *2, the Court finds that Defendant has sufficiently demonstrated excusable neglect for its belated filing. First, the Court agrees with Defendant that this extension will not prejudice Plaintiffs. The Court rejects Plaintiffs' arguments that because this extension is being requested after the deadline it somehow unfairly raises costs on Plaintiffs. In view of the current posture of the case, the Court does not see how bearing one's own discovery expenses, as is the norm, would prejudice Plaintiffs. Moreover, it is unlikely that the documents uncovered in response to the subpoena will require further discovery or have an impact on Plaintiff's expert reports. However, even to the extent that disclosure of the documents requires Plaintiffs to seek an extension of the expert disclosure deadline, the Court finds that such an extension, if any, can issue without any alteration to the deadline to file dispositive motions and, ultimately, to the trial date. Furthermore, to minimize any potential delays caused by the issuance of the subpoena, the Court will order Defendant to submit its subpoena to Island Heritage no later than three business days from the date of this Order.

Second, the Court finds that the length of the requested extension is reasonable. The extension is for less than one month and will not disrupt any other deadlines. Moreover, the Court notes that the extension is being sought solely to permit the issuance of a single subpoena.

*Friedberg v. Daybreak, Inc.*
3:19-cv-00053-RAM-EAH
Order
Page 16

Third, as discussed above, the Court concludes that, although some of the delay and need for the out-of-time extension is attributable to Daybreak, the "ultimate reason" for the delay was Plaintiffs' gamesmanship. Finally, the Court finds that Daybreak submitted this motion in good faith, and not for any unreasonable or improper reason. Accordingly, each of the factors the Court must consider weigh in favor of finding that Daybreak acted with excusable neglect in filing the instant motion.

## CONCLUSION

Daybreak has demonstrated good cause to modify the Scheduling Order by extending the discovery deadline through July 7, 2025. Moreover, although the motion came after the expiration of the discovery deadline, Daybreak has shown excusable neglect for its failure to timely seek the extension.

Accordingly, it is hereby **ORDERED:**

1. Daybreak's Motion to Extend the Fact Discovery Deadline, Dkt. No. 63, is **GRANTED**.
2. The fact discovery deadline is extended through **July 7, 2025** to allow Daybreak to subpoena records from Island Heritage regarding Plaintiffs' insurance claims following Hurricane Irma.
3. Daybreak shall submit the subpoena to Island Heritage no later than **June 18, 2025.**
4. To the extent the records provided in response to that subpoena necessitate further discovery, and to the extent such discovery cannot be completed by July 7, 2025, the parties shall file a motion seeking an extension before the deadline expires for the Court's consideration.

*Friedberg v. Daybreak, Inc.*
3:19-cv-00053-RAM-EAH
Order
Page 17

5. Mediation shall be completed no later than **July 7, 2025**, and shall be conducted pursuant to Local Rule of Civil Procedure 3.2.

6. In all other respects, the Court's November 14, 2024 Scheduling Order, Dkt. No. 42, remains in full force and effect.

7. Daybreak's Motion to Extend the Fact Discovery Deadline, Dkt. No. 62, is **DENIED AS MOOT**.

ENTER:

Dated: June 13, 2025

/s/ Emile A. Henderson III
EMILE A. HENDERSON III
U.S. MAGISTRATE JUDGE