# IN THE UNITED STATES DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| THOMAS F. FRIEDBERG & SARAH L. BUNGE, <br><br>　　　　Plaintiffs, <br><br>v. <br><br>DAYBREAK, INC. dba HUBER & ASSOCIATES, <br><br>　　　　Defendant. | CIVIL ACTION NO. 3:19-cv-0053 |

### ORDER ON DEFENDANT'S MOTION FOR FINAL SUMMARY JUDGMENT

Having reviewed and considered all the briefing and exhibits filed with respect to the Motion for Final Summary Judgment [Docket #____] ("Motion") filed by Defendant, DAYBREAK, INC. dba HUBER & ASSOCIATES. ("Daybreak"), the Court concludes as follows:

### INTRODUCTION

Plaintiffs, THOMAS F. FRIEDBERG & SARAH L. BUNGE ("Friedberg"), filed this instant action on July 14, 2019 alleging one count for "Breach of Contract" based upon the alleged failure of Daybreak to install cleats at 9.5 inches on center. [Docket #1] Friedberg claims that he did not discover the issue with the cleats until Hurricane Irma struck the U.S. Virgin Islands on September 7, 2017. *Id.* Daybreak disputes these allegations. [Docket #____]

### BACKGROUND

The present case is not the first litigation between these parties or regarding the subject contract. Daybreak sued Friedberg in the Superior Court after Friedberg failed to pay Daybreak's

final invoice for the roofing work. Defendant's Exhibit 2. Friedberg filed a counterclaim for "Breach of Contract," "Breach of Warranty," "Negligence," and "Fraud" regarding the eight roofs, including the Main Pavillion, that were installed on the subject property. Defendant's Exhibit 3. To substantiate his claims, Friedberg retained Arthur L. Sanders, AIA, as an expert witness to evaluate alleged defects with the roofs. Mr. Sanders was also retained by Friedberg in his claim against his insurance company as well as in the instant case. Defendant's Exhibits 4, 11, and 12.

In support of his expert report for the Superior Court litigation, Sanders conducted a comprehensive inspection of all eight roofs, including an invasive examination of the Main Pavilion roof which involved opening up the ridge seam to determine the absence of cleats in the ridge. Sanders also confirmed the existence of cleats in other panels of the Main Pavillion. Defendant's Exhibit 4. Despite Sanders' 2014 recommendation for complete replacement, his testimony about wind vulnerability, and his explicit concern about inadequate attachment "in a high wind area," Friedberg chose not to repair or replace the roof. Instead, the allegedly defective roof which Sanders testified was vulnerable to damage from severe winds in St. John's hurricane-prone environment remained in place through multiple hurricane seasons. Defendant's Exhibit 9 at 142:1-12, Deposition of Thomas Friedberg taken on March 15, 2025.

On September 6-7, 2017, approximately three years after Sanders' inspection and while the Superior Court litigation was still pending, Hurricane Irma struck St. John as a Category 5 hurricane. Defendant's Exhibit 10. The storm brought sustained winds of approximately 185 mph, with higher gusts, making it one of the most powerful hurricanes to impact the Virgin Islands in recorded history. *Id.* In subsequent inspections, Mr. Sanders found impact damages from flying debris and the only structural damage occurred at the exact location where Sanders unfolded the ridge seam and discovered that there were no cleats in that section of the ridge. Defendant's Exhibit

7 at 111: 3-8, Arthur Sanders's Deposition taken August 25, 2025. When deposed about this statement, Sanders admitted that the area where he found the absence of cleats was the same ridge seam that he opened in 2014. Defendant's Exhibit 6 at 22:17 to 23:11, Arthur Sanders' Deposition taken on September 11, 2025. In 2018, while the Superior Court case was still pending, Friedberg filed the present case.

In 2023, the Superior Court case was finally resolved through a monetary settlement. The settlement was purely financial; no repairs were performed as part of the resolution. The settlement agreement was a general release with a specific and limited carveout of *only* claims that were asserted in the District Court case that were not encompassed in the Superior Court case.

## **LEGAL STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Fed. R. Civ. Pro. 56(a)*. A material fact is one that must be decided to resolve the substantive claim or defense addressed in the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is considered genuine if a reasonable jury could return a verdict for the non-moving party *Id*.

When a moving party meets the obligations pursuant to Rule 56(c), "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts ...." *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–587 (1986). "Where the record … taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id*. Summary judgment is appropriate when the non-moving party cannot establish an essential element it has the burden to prove. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). It is also appropriate when the facts do not support the non-moving party's version of events. *Scott v. Harris,* 550 US 372, 380 (2007).

**DISCUSSION**

**I. Defendant Argues that Friedberg's Claim is Barred by Release and/or *Res Judicata***

Defendant contends that Friedberg released all claims encompassed in the Superior Court Case. Friedberg claims that the instant case is wholly separate from the case previously filed in the Superior Court regarding the same roof. Specifically, Friedberg claims that this lawsuit "deal[s] exclusively with the main house on the lower portion of Plaintiffs' property," *see* Defendant's Exhibit 14 whereas (again according to Friedberg) "[t]he claims in the Superior Court Action are limited to the two upper buildings—the gate house and the garage/studio. Defendant's Exhibit 15. However, Friedberg supplemented his interrogatory responses in the Superior Court Case to clarify that his claims encompassed everything in the Sanders' Expert Report including the missing cleats from the ridges of the Main Pavillion. Defendant's Exhibit 8.

A settlement agreement is an enforceable contract governed by basic contract principles. *Vlaun, v. Briscoe*, 77 VI 436, 443 (2022); *Boynes v. Transp. Servs. of St. John, Inc.*, 60 V.I. 453, 459 (V.I. 2014). It is uncontested that Friedberg entered into a binding settlement agreement that provided for the release of all claims that were asserted in the Superior Court Case. Indeed, a final judgment dismissing the Superior Court Case with prejudice was entered with no carve out of any claims asserted in that case. Defendant's Exhibit 16, Final Judgment in Case No. ST-2010-CV-00716.

Even if the settlement agreement did not bar the claim, *res judicata* would likewise apply in the instant case because the issues arise out of the same transaction and occurrence as the claims brought in the Superior Court Case. *See Steward v. Virgin Island Board of Land Use Appeals,* 66 V.I. 522, 531 (2017). Courts in the U.S. Virgin Islands have historically precluded a party from relitigating claims where "(1) the prior judgment was valid, final, and on the merits; (2) the parties

in the subsequent action are identical to or in privity with parties in the prior action; and (3) the claims in the subsequent action arise out of the same transaction or occurrence as the prior claims." *Id.* at 532. Federal Courts have found that *res judicata* refers to both claim preclusion and issue preclusion. *See Venuto v. Witco Corp.,* 117 F.3d 754, 758 (US 3d 1997). The litigation of an issue related to a previous case may only be allowed if the previous court allowed for a reservation as to that specific issue. *Id.* at 760.

In the instant case, the U.S. Virgin Islands Superior Court Case did not, as part of its dismissal, state that the issues with the main pavilion roof were separate and apart from the rest of the case. Plaintiff were compensated as part of a settlement agreement in the U.S. Virgin Islands Superior Court case for breach of contract. This case is being brought forth as an attempt to have another bite of the apple and does not comply with the laws of the USVI. Thus, Plaintiffs' claim is also barred under *res judicata.*

## II. Defendant Argues that Friedberg's Failure to Fix the Claimed Defects is an Intervening Cause.

Defendants also claim that Friedberg knew by September 11, 2014 when Sanders opened up the ridge seam that there were no cleats in that location. Moreover, at that time Sanders was opining that the entire Main Pavilion roof needed to be replaced because of alleged defects, including the alleged lack of cleats. An intervening cause destroys the causal connection between the defendant's acts and the victim's injury, thereby becoming the cause of the injury. *Cyprian v. Virgin Islands Water & Power Auth.,* 2022 VI SUPER 99, ¶29, 2022 WL 22949652 (Dec. 22, 2022). If the intervening act was reasonably foreseeable, it is not considered to have destroyed the causal connection. *Id.* ¶30. Gross negligence is unforeseeable whereas ordinary negligence is considered foreseeable. *Id.*

Here, Friedberg knew in 2014 that his expert, Sanders, considered the Main Pavilion roof to be defectively constructed and required replacement. Friedberg also is charged with the knowledge of Sanders that the ridges did not have cleats securing them to the substrate and it was Friedberg who had retained an engineer to specify cleat placement for purposes of securing the roof for hurricanes. Under those facts, the failure to repair the roof, even if it was to only temporarily repair it so that the ridges were secured in the manner Sanders claims was required by the contract, can only be deemed to be wanton, reckless behavior demonstrating a conscious indifference to the safety of property. That's the definition of gross negligence. *Id.* ¶31. The decision not to secure the roof in a hurricane zone is more than mere thoughtlessness or inadvertence, or simple inattention (ordinary negligence). As such, Friedberg's failure to protect his own property from a known danger rises to the level of an intervening cause, breaking the chain of causation and preventing a finding of causation against Daybreak.

**III. Defendant Argues that Friedberg Cannot Meet his Burden of Proving Causation**

Daybreak also claims that even without the intervening cause, there are at least three possible explanations for the alleged roof failure in this case: (1) alteration of the roof by Friedberg's own agent, Sanders; (2) the roof was not designed to escape completely unscathed when encountering the windspeeds and gusts of a storm such as Irma; or (3) defective workmanship. Because Friedberg is unable to rule out the first two potential causes, he cannot prove his claim based upon the third potential cause.

1. **Sanders materially altered the roof**

The putative roof failure in this case is limited to a single area of the roof that had been materially altered by Sanders during his September 11-12, 2014 inspection. SUMF ¶10. During that inspection, Sanders had a metal worker unfold a section of the seam at a ridge (shown in Photo 40). SUMF ¶15. When the investigation was completed, the metal worker folded the ridge seam

back. There is no evidence that this alteration of the ridge seam restored the ridge seam to its original condition. The entire roof (and all eight roofs) did remarkably well after Hurricane Irma with the putative failure found *only* at the site where Sanders altered the roof.

**2. Plaintiff cannot prove that the roof was designed to withstand the forces of Hurricane Irma**

There is no evidence in this case that establishes that the roof, as specified in the contract, was designed to withstand the hurricane force winds generated by Category 5 Hurricane Irma. Sanders testified in his 2015 deposition that Friedberg informed him that the 9.5-inch average cleat spacing was done because St. John was a "high wind area." SUMF ¶21. At the time of that deposition, he could not recall having seen the engineering report. SUMF ¶22. Sanders admitted that he did not have the expertise to opine as to the windspeeds that cleats could withstand if they encountered winds in excess of 200 miles per hour and explained "you need someone who diagnoses these things from the industry to respond to that. Perhaps somebody from Copper and Common Sense or perhaps someone from Miami Dade." SUMF ¶44. When asked to acknowledge that "wind damage, wind speeds, what damage would be caused by what speed" was not in his expertise, Sanders agreed, stating, "I'm not in that business, no." SUMF ¶45.

Sanders expressed his personal belief that a "[i]f there were cleats there, there would be no uplift damage to a reasonable wind speed, including *maybe* the second largest storm in St. John's history" and that a "reasonable wind speed was "*[m]aybe* a 175 miles per hour." SUMF ¶46. He thought the highest wind speed on St. John was 176 mph. SUMF ¶47. In his report prepared for Friedberg's insurance claim following Irma, however, Sanders stated that St. John received "sustained winds more than 200 MPH for several hours." SUMF ¶30. Hurricane Irma was "the strongest hurricane ever observed in the open Atlantic Ocean, and one of only 5 hurricanes with measured winds of 185 MPH or higher in the entire Atlantic basin." SUMF ¶29.

Friedberg has never produced an engineering report either explaining the basis for specifying cleats spaced on average of 9.5 inches or identifying the expected winds the roof could withstand. In the absence of any evidence that the roof was designed to withstand the forces generated by Hurricane Irma, Friedberg is unable to prove that the alleged failure to install cleats on the ridges was a causative factor in the failure.

**3. There is no evidence of causation or damages attributable to Daybreak**

Sanders is not a credible expert. He created two separate reports pointing to two different causes of the damage to the roof of the main pavilion—one report to support Friedberg's insurance claim and the second report to support his claim in this case. In his report supporting the insurance claim, Sanders claimed that more than 80 panels (pans) were damaged, justifying replacing the entire roof. He makes no mention of missing cleats contributing in any way to the loss. Defendant's Exhibit 11. But, in his report to support Friedberg's claim in this case, Sanders claims the damage was caused by the cleats allegedly not being installed pursuant to the contract. Defendant's Exhibit 7 at 100:6-9.

Further, Sanders lacks the appropriate expertise and factual predicate to support his opinions (in addition to his lack of credibility). Without expert testimony, Friedberg cannot prove (1) that the cleat spacing was the cause in fact of the failure and (2) that the monetary damage is reasonably certain and attributable to Defendant. Additionally, his opinions are based on assumptions. Defendant's Exhibit 7 at 112:1 to 114:2. Sanders is only able to testify with 51% certainty that the cleats, if installed as he claims was required by the contract, would have allowed the roof to remain unscathed. Id. at 100:20 to 101:4. However, pursuant to Sanders' report for the insurance claim, all of the roofs sustained significant damage in Hurricane Irma, and he documented damage to more than 50% of the Main Pavilion panels that was unrelated to the claim

the cleats should have been installed along the ridges. Defendant's Exhibit 11 at Page 1. Speculative, conclusory allegations cannot survive summary judgment. *Anderson* at 248.

**IV: Defendant Argues that Plaintiffs' Damages, if any, are Limited to the Cost of Materials and Labor that Existed When the Defect was Found in 2014.**

Defendant argues that if damages are awarded in the instant case, they should be limited to the costs of materials and labor when the defect was found in 2014 by Friedberg's expert Arthur Sanders. Friedberg was aware of defects in the main pavilion roof as early as 2012 when he filed his counterclaim in the Superior Court Case. They were made aware of the possibility of missing cleats in 2014 when their expert, Mr. Sanders, discovered a lack of cleats in one area of the roof. However, to this day, the roof has not been replaced as their expert advised them to do in 2014.

By failing to mitigate their damages, Plaintiffs are limited in the damages that they are able to recover. *See Ramier v. Stout,* 1979 WL 444370 (Terr. V.I. 1978). In that case, Plaintiffs knew of the defect with the construction. *Id.* However, they failed to mitigate their losses and have the issues repaired in a timely manner. *Id.* In that case, the Court found that Plaintiff had a duty to mitigate his damages and that he was limited to costs to repair to when the defect was discovered. *Id.*

In the instant case, Friedberg knew about the lack of cleats on the ridges as least as of September 11, 2014 when Sanders unfolded the ridge seam. SUMF ¶12. Moreover, Friedberg was alleging general defects with the main pavilion roof as early as 2012. SUMF ¶7. Based on this knowledge, Friedberg had an obligation to replace or repair the roof in 2014 as soon as he learned of the alleged defect. Instead, Friedberg kept the same roof in place that was installed. Meanwhile, the price of labor and materials has skyrocketed. In Sanders' report in 2014, he opined that the replacement cost of the Main Pavilion roof was $358,771. Defendant's Exhibit 5 at Page 47. Now Friedberg asserts that the same replacement cost is between $682,301 and $712,540. Defendant's

Exhibit 17. Plaintiffs were obligated to repair or replace the Main Pavilion roof at the time it was discovered. Therefore, damages, if any, should be limited to the costs of labor and materials in 2014 when the defect was discovered. However, Damages will not be awarded in this case.

## **CONCLUSION**

Based on the foregoing, IT IS ORDER THAT:

1. Defendant's Motion for Final Summary Judgment is **granted.**


Date: _____

                                                     **Honorable Robert Molloy**
                                                     **Chief Judge**