**EXHIBIT 15**

## IN THE UNITED STATES DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| THOMAS F. FRIEDBERG & SARAH L. BUNGE, <br><br> Plaintiffs, <br><br> v. <br><br> DAYBREAK, INC. dba HUBER & ASSOCIATES, <br><br> Defendant. | CIVIL ACTION NO. 3:19-cv-0053 <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT OR FOR STAY** |

## PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR FOR STAY

Plaintiffs Thomas F. Friedberg and Sarah L. Bunge (collectively "Plaintiffs") submit the following opposition to the Motion to Dismiss the Complaint or for Stay filed by defendant Daybreak, Inc., dba Huber & Associates ("Daybreak" or "Defendant"):

## I.

## INTRODUCTION

Plaintiffs filed this action against Defendants for breach of a specific contractual requirement in the contract for the installation of a copper roof at Plaintiffs' home in St. John, USVI. The home consists of 6 separate buildings – an upper portion of the property with a gate house and a garage/studio and a lower portion of the property with the main house, guest house, dining gazebo and a beach bar. The allegations of this lawsuit deal exclusively with the main house on the lower portion of Plaintiffs' property. (Declaration of Thomas F. Friedberg in Opposition to Defendant's Motion to Dismiss Complaint or for Stay ¶¶6, 7 ("Friedberg Decl.")

1

The complaint alleges that the parties' contract required Daybreak to install cleats of a specific type and at specified locations to secure Plaintiffs' copper roof and enable the roof to withstand hurricane force winds. (Action for Damages—Breach of Contract and Demand for Jury Trial in this action [Document #:1] ("Complaint") at ¶ 7, Exhibit "A.") The cleats, once installed, are not visible to the naked eye because they are located underneath the copper panels that make up the copper pans that form the roof of the main house. (Complaint at ¶ 8.)

Plaintiffs did not learn that Daybreak failed to install the cleats on the main house as required by the contract until September 6, 2017, when Hurricane Irma struck the territory. High winds generated by the hurricane caused the copper pans at the ridge of Plaintiffs' main house to separate. It was only after the separation of the roof pans caused by the storm that Plaintiffs learned Daybreak did not install the cleats under the main house roof that would have held the copper roof pans in place. The copper roof on the main house failed in the areas where Daybreak did not place the cleats as required by the contract plans and specifications. (Friedberg Decl. at ¶ 8;   Complaint at ¶¶ 10, 11.)

Daybreak's failure to install the cleats to secure the main house roof is a latent defect that was not discoverable prior to the separation of the copper pans during the September 6, 2017 hurricane. (Complaint at ¶ 11.) Within two years of discovering the latent defect, Plaintiffs filed this action for breach of contract that is directed solely at Daybreak's failure to install cleats securing the main house roof. Plaintiffs' Complaint for breach of contract is limited to the damages caused to the main house roof by Daybreak's failure to install cleats as required by the contract specifications. (Complaint at ¶ 12.)

Plaintiffs' claims in this lawsuit alleging that Defendant failed to install cleats to secure the main house roof are different from claims asserted in a prior Superior Court lawsuit,

*Daybreak, Inc. dba Huber and Associates v. Thomas F. Friedberg, et al.*, Division of St. Thomas and St. John, Case No. ST-10-cv-716 (the "Superior Court Action").   Defendant's contention that the issues in this case are identical to those being litigated in the Superior Court action is false.   The claims, issues and damages at issue in the Superior Court Action are not identical to those in this action, and are very different.

The Superior Court action consists of a claim by Daybreak that the entire bill for the roof was not paid and a counterclaim brought by Plaintiffs alleging construction defects that resulted in the roof leaking and resulting damage to Plaintiffs' home. The counterclaim is based on leaks to the roof. The claims in the Superior Court Action are limited to the two upper buildings—the gate house and the garage/studio. (Counterclaim in Superior Court Action ("Counterclaim") at ¶¶ 9, 12, 17, 20 [Document #: 12-2]; Friedberg Decl. at ¶ 4.) During the course of discovery, discovery responses stated that the cost of repair for thee buildings was $210,000, which was based on an initial cost of repair estimate of $219,689.50. The scope of repair for this cost of repair was limited to repairing the copper roofs on the upper buildings. There was one line item for replacing caulk on the main house of $930.00.    (Friedberg Decl., ¶¶ 4, 5;   Exhibit "A.")

In the Superior Court Action, after the initial cost of repair estimate was provided to Defendants, Plaintiffs' expert noted that there were cracks in some of the runs of the copper panels on the main house and a report was submitted to include a cost of repair of additional areas of the roof. Defendant disputed the additional repairs. Motion practice ensued. The Court eventually ruled that in the Superior Court Action, Plaintiffs' claims are limited to the cost of the repair for the upper buildings of $210,000, excluding any claims for leaks or other defects in the other buildings on the property. (Order dated April 26, 2017 in Superior Court Action at p. 2 [Document #: 12-4 at p. 2].)

3

Based on the Superior Court's rulings, Plaintiffs' claims in the Superior Court Action are limited to damages resulting from the roofs Daybreak installed on the gate house and garage/studio located on the upper portion of Plaintiffs' property, including damage from water leakage into those two buildings. The Superior Court Action, by limiting the damages for the cost of the repair to the two upper buildings *excludes* Plaintiffs claims for Daybreak's defective construction of the roof on any of the four other buildings on Plaintiffs' property, including the main house roof that is the subject of the Complaint in this action. (Friedberg Decl. at ¶¶ 6,7, Exhibit "A.")

Plaintiffs' claims in this action are *not* included in the Superior Court Action. The claims in this lawsuit deal exclusively with Defendant's failure to install the cleats to secure the copper panels on the main roof – which is a separate building than the gate house and garage/studio. The basis of this claim is that the contract required that cleats be installed 9 inches on center for all copper runs and this was not done on the main house, resulting in a portion of the main house roof coming off during Hurricane Irma. In contrast, the claims that are being litigated in the Superior Court lawsuit deal with leaks in the roofs of the gate house and garage/studio caused by other breaches of the roofing contract and different deficiencies in Daybreak's work. (Complaint at ¶¶ 10, 12; Friedberg Decl. at ¶¶6,7.)

The cleats under the main roof were not visible when Plaintiffs filed their counterclaim in the Superior Court Action in 2010. For that reason, the latent defects in the main roof were not known to Plaintiffs at the time and were therefore not included in the Superior Court Action. Plaintiffs did not learn that Daybreak had not installed the cleats to secure the roof until Hurricane Irma peeled the copper panels from the main house roof in September 2017. (Friedberg Decl. at ¶ 8.) As permitted by 5 V.I.C. § 32b, Plaintiffs timely filed in this Court a

separate action for damages caused by the latent defects in the main house roof.

The claims in this case are *not* the same as those in the Superior Court Action—this case involves different defects, different buildings, different contractual requirements and different damages.   As a result, Defendant does not satisfy the basic threshold requirement that the Superior Court Action must be "parallel" to the District Court Action in order for the Court to consider the extraordinary relief of abstention or stay.   Because this case does not satisfy the strict requirements for abstention or a stay, Daybreak's motion must be denied.

Furthermore, Plaintiffs have alleged in their Complaint facts showing that Daybreak's failure to install cleats on the main house roof was a latent defect that was not apparent by reasonable inspection prior to September 6, 2017, when Hurricane Irma exposed the defects in the main house roof.   (Complaint at ¶¶ 8, 10, 11.)   Pursuant to 5 V.I.C. § 32b Plaintiffs' action for breach of contract was timely filed after the latent defect was covered.   Because Plaintiffs' allege facts establishing that their claims for the latent defects in the main house roof are not barred by the statute of limitations, Defendant's motion to dismiss on that ground must also be denied.

## II.

### ARGUMENT

**A.     Abstention or a Stay Is Unavailable in this Case because there is No Parallel State Court Action Involving the Same Issues.**

It is axiomatic that federal courts have a "'virtually unflagging obligation . . . to exercise the jurisdiction given to them by Congress.'"   *Ryan v. Johnson*, 115 F. 3d 193, 195 (3d Cir. 1997) ("*Ryan*"), quoting *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817 (1976) ("*Colorado River*").   "Generally, as between state and federal courts, the rule is

that the 'pendency of an action in the state court is no bar to proceedings concerning the same

matter in the Federal court having jurisdiction….'" *Colorado River, supra*, 424 U.S. at 817,

quoting *McClellan v. Carland*, 217 U.S. 268, 282 (1910). "The general rule regarding

simultaneous litigation of similar issues in both state and federal courts is that both actions may

proceed until one has come to a judgment, at which point that judgment may create a res judicata

or collateral estoppel effect on the other action. *University of Maryland v. Peat Marwick Main

& Co.*, 923 F. 2d 265, 275-276 (3d Cir. 1991) ("*University of Maryland*").

> Abstention from the exercise of federal jurisdiction is the exception, not the rule. 'The
> doctrine of abstention, under which a District court may decline to exercise or postpone
> the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a
> District court to adjudicate a controversy properly before it. Abdication of the
> obligation to decide cases can be justified under this doctrine only in the exceptional
> circumstances where the order to the parties to repair to the State court would clearly
> serve an important countervailing interest.'

*Colorado River, supra,* 424 U.S. at 813, quoting *County of Allegheny v. Frank Mashuda Co.*, 360

U.S. 185, 188-189 (1959).

In *Colorado River*, and subsequently in *Moses H. Cone Hospital v. Mercury Constr.

Corp.*, 460 U.S. 1, 16 (1983) ("*Moses H. Cone*"), the Supreme Court clarified that abstention in

deference to simultaneous state proceedings is permissible only in exceptional and narrow

circumstances. *University of Maryland, supra*, 923 F. 2d at 267. Abstention can be

accomplished either by dismissal of the District Court action, or a stay pending resolution of the

state court action, and the same analysis applies to both. *Moses H. Cone, supra*, 460 U.S. at

28-29 ("[A] stay is as much a refusal to exercise federal jurisdiction as a dismissal.")

Defendant Daybreak asks for both abstention alternatives in this case. Because the State Court

Action is not a parallel proceeding, neither type of abstention is appropriate.

The following are the three traditional grounds for abstention based on constitutional or

comity considerations: (1) when a state court determination of a question of state law might moot or change a federal constitutional issue presented in a federal court case; (2) when questions of state law in which the state has expressed a desire to establish a coherent policy with respect to a matter of substantial public concern are presented; and (3) when federal jurisdiction has been invoked for the purpose of restraining certain state proceedings.   *Trent v. Dial Medical*, 33 F. 3d 217, 223, fn.5 (3d Cir. 1994).   This case does not fall within any of these categories.

In *Colorado River* the Supreme Court recognized that there are certain extremely limited circumstances in which a federal court may defer to pending state proceedings that do not fall within one of the three traditional grounds for abstention.   *Colorado River* abstention may be appropriate based on considerations of "wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.   *Ryan, supra,* 115 F. 3d at 195, quoting *Colorado River*, 424 U.S. at 817.

The Court set forth several factors which can support this type of abstention, after cautioning that no one factor is determinative and "only the clearest of justifications will warrant dismissal." *Id*. at 818-818.   Those factors included: (1) whether the state court assumed *in rem* jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; and (4) the order in which jurisdiction was obtained by the concurrent forums.   *Id*. at 818; *Ryan, supra*, 115 F. 3d at 196.

A threshold issue that must be decided in any *Colorado River* abstention case is whether the two actions are "parallel."   If they are not, then the district court lacks the power to abstain. *Ryan, supra*, 115 F. 3d at 196.   "Cases that that are not truly duplicative do not invite *Colorado River* deference."   *Trent v. Dial Medical, supra*, 33 F. 3d at 223.   Generally, cases are parallel so as to justify abstention under *Colorado River* when they involve the same parties and claims.

*Id.* When a federal court case involves claims that are distinct from those at issue in a state court case, the cases are not parallel and do not justify *Colorado River* abstention. *Id.* at 224.

In *University of Maryland, supra*, 923 F. 2d 265, the Third Circuit Court of Appeal overturned a district court's dismissal of a class action fraud case filed by policyholders of an insolvent insurance company against the insurance company's independent auditor. The district court decided to abstain in favor of a state court case against the same auditor brought by the Pennsylvania insurance commissioner on behalf of the insurance company and its policyholders. The Court of Appeal reversed the district court because the parties and claims in each of the two cases differed. The insolvent insurance company was a party to the state court action but not to the one brought in federal court; and the classes of policyholders differed. The two cases also differed in the causes of action stated: the federal court complaint contained six counts, including a RICO claim; while the state action contained three causes of action, did not encompass the RICO claim, and sought different damages. *Id.* at 268-269. The appellate court ruled that the policyholders' claims in the federal court case were "distinct" from those asserted in the state case. Because of this "lack of identity of all issues," and because there was "no theoretical obstacle to both actions proceeding independently," the appellate court ruled that abstention under *Colorado River* would be improper. *Id.* at 276.

Similarly, in *Bankers Trust Co. v. Bethlehem Steel Corp.*, 636 F. 2d 37 (1980), the Third Circuit Court of Appeal admonished that "it is important . . . that only truly duplicative proceedings be avoided. When the claims, parties or requested relief differ, deference may not be appropriate." *Id.* at 40. The appellate court reversed the district court's decision to defer in favor of litigation pending in another federal district court. Because neither the parties nor the relief requested in the two cases were identical, and because the two cases employed

substantially different "approaches" and might "achieve potentially different results," the appellate court reversed the district court's dismissal of one of the cases.   *Id.* at 41.

Daybreak cannot satisfy the threshold requirement for this Court to even consider abstention through dismissal or stay of this action.   Daybreak's request for abstention must be denied because this case and the Superior Court Action are not "parallel."   While the two cases involve the same parties, the two cases involve very different claims, issues and damages.

Plaintiffs' claims in this case relate only to the roof on the main house and are based on Daybreak's breach of a contract provision requiring the installation of cleats to secure the roof panels to that specific structure.   Plaintiffs' counterclaims in the Superior Court Action involve different buildings—the gate house and garage/studio—and allege different defects in the construction of the roofs that resulted in water damage to those two buildings.   The Superior Court Action includes claims for breach of warranty, negligence and fraud, which are not included in this federal court action.   This case does not include claims of negligence and fraud; and this action is limited to breach of a contract provision (the installation of cleats under the main house roof) that is not the subject of the Counterclaim in the Superior Court Action.

Plaintiffs are also seeking different damages in the two cases.   In their counterclaim in the Superior Court Action, Plaintiffs have been limited to a recovery of $210,000 cost to repair the defective copper roofs on *the gate house and garage/studio* and the water damage to those two buildings.   The Superior Court has *limited* Plaintiffs' damages to the cost to repair the gate house and garage/studio roof, and *excluded* any claim for damage to any of the other structures on Plaintiffs' property.   As a result, Plaintiffs *cannot* recover in the Superior Court Action the damage to the main roof house caused by Daybreak's breach of its contractual obligation to install cleats to secure the main house roof.

Because they cannot recover in the Superior Court Action damages for the recently discovered defects in the main house roof, Plaintiffs properly exercised their right to bring their action for the main house damages in this Court based on diversity jurisdiction. Plaintiffs allege breach of a different contract requirement—the installation of cleats on the main house roof—than the contract provisions at issue on the Superior Court Action. In this case Plaintiffs make only a claim for breach of contract based on the requirement that Daybreak install cleats on the main house roof, while the Superior Court Action includes Plaintiffs' claims for negligence and fraud relating to Daybreak's construction of the roof on the gate house and garage/studio. The claims in the two cases are not identical because they involve different buildings, different contract requirements and different legal theories.

Furthermore, the damages Plaintiffs can recover in the two cases are different and distinct. In this case Plaintiffs seek to recover damages resulting from Daybreak's breach of the contract specification requiring the installation of cleats to secure the roof panels to the *main house*. Plaintiffs' are precluded from recovering those damages in the Superior Court Action, which has been limited to damages to the gate house and garage/studio from water leaking through the roofs on those buildings. Because the two cases involve completely different damages, the issues are clearly not identical and the cases are not parallel for purposes of abstention.

In its motion to dismiss Daybreak attempts to avoid the obvious differences in the claims by claiming Plaintiffs are seeking in the Superior Court Action "a total removal and replacement of the roof based on alleged deficiencies." The Superior Court has ruled that Plaintiffs cannot recover damages in excess of $210,000 which is the cost of repair of the roofs to the upper buildings. The limitation in the Superior Court precludes recovery for any damage or repair to

the copper roof in the main building, which is what is at issue in this case.    The Superior Court has limited Plaintiffs' damages in that case to the $210,000 estimate to repair the damages to the gate house and garage/studio.    In this federal court case Plaintiffs seek to recover the cost of repairing or replacing the main house roof, an amount that has not yet been determined but is more than the amount required to support this Court's diversity jurisdiction.    There is no question that different roofs—and different repair costs—are involved in the two actions. Plaintiffs will not obtain the same result in both cases and the Superior Court Action will not dispose of the claims relating to the main house roof that are the subject of this action.[1]

Because the two cases are not parallel, abstention is not available and there is no need to analyze the *Colorado River* factors.    Of course, the differences between the two cases illustrates why this is not a case for *Colorado River* abstention.    In the Superior Court Action Daybreak seeks a lien on Plaintiffs' property to secure the roofing contract payments Daybreak claims from Plaintiffs.    In this federal court action Plaintiffs seek monetary damages and there is no issue of a lien on their property.    The fact that the Superior Court has assumed *in rem* jurisdiction over Plaintiffs' property due to Daybreak's claim of a lien is irrelevant to this action in which *in rem* jurisdiction over property is not an issue.

The desire to avoid piecemeal litigation is not a factor here because the lawsuits involve different issues, claims and damages.    The Superior Court Action will determine whether Daybreak negligently constructed the roofs on Plaintiffs' gate house and garage/studio and if Plaintiffs may recover the cost of repairing those two buildings.    In this federal court action a

---

[1] In its motion Daybreak refers to the deficiencies alleged in this case being "compulsory" to Daybreak's Complaint in the Superior Court Action.   While Daybreak does not explain what it means, Plaintiffs could not have brought the claims that are before this Court in the Superior Court Action because the breach of the contract provision requiring the installation of cleats under the main house roof was unknown to Plaintiffs when they filed their Superior Court counterclaim.   The latent defect was not discovered until Hurricane Irma peeled the main house roof panels off in September 2017.

jury will decide if Daybreak breached the contract requirement to install the cleats that secure the main house roof, and award different damages to repair that roof if it finds a breach of that requirement. Because the issues, claims and damages in this case differ from the Superior Court Action, there is no concern about piecemeal litigation that would justify abstention. The fact that the parties have spent nine years litigating *different* issues in the Superior Court is not a basis for the Court to decline to exercise or postpone the exercise of its jurisdiction over the *distinct* claims brought in this action.

Obviously the fact that state law applies to both actions and the Superior Court Action was filed first does not support abstention. If those factors alone were sufficient, abstention would be proper in many federal court diversity cases. That would be contrary to the established principle that abstention is an extraordinary and narrow exception to the duty of a District court to adjudicate a controversy properly before it and is only available in extraordinary and narrow circumstances. *Colorado River, supra,* 424 U.S. at 813.

This Court has jurisdiction over this action based on diversity and there is no basis for the Court to decline to exercise or postpone its duty to exercise that jurisdiction. There is no parallel state court proceeding to which the Court may give deference. There is certainly no "important countervailing interest" that would justify abstention. *Colorado River, supra,* 424 U.S. at 813. Because this case and the Superior Court Action involve different claims, issues and damages, Defendant's motion to dismiss or stay this action must be denied.

**B.** **The Court Cannot Dismiss this Case on Statute of Limitations Grounds.**

Defendant throws in an alternative request for dismissal of this action because it claims the action is barred by the statute of limitations. Although not described as such, this Defendant's request is a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon

which relief can be granted. This is an improper request for a factual determination at the pleadings stage. Plaintiffs allege in their Complaint facts showing that the breach of the parties contract at issue—the failure to install cleats to secure the main house roof—was a latent defect that was not apparent by reasonable inspection until Hurricane Irma removed the copper panels on September 6, 2017. Plaintiffs include in their Complaint a specific allegation that the breach was a latent defect under 5 V.I.C. § 32b. (Complaint at ¶ 11.) That statute allows an action to be brought up to 14 years after discovery of a latent defect in construction. 5 V.I.C. § 32b(a).

Because it is not apparent from the face of the Complaint that Plaintiffs cannot assert an action for breach of contract based on a latent defect under 5 V.I.C. § 32b(a), Defendant's motion to dismiss must be denied. If Defendant uncovers in discovery evidence contradicting the allegation of the latent defect in the main house roof, Defendant may bring a motion for summary judgment. However, because dismissal at the pleading stage is improper based on the latent defect alleged in the Complaint, the Court must deny Defendant's motion to dismiss on statute of limitation grounds.

### III.

### CONCLUSION

This is not an exceptional case in which abstention through dismissal or stay is allowed. This case is not "identical" to the State Court Action, as Defendant claims in its motion. Because the two cases involve different claims, different contract provisions, different factual issues and different damage claims, there is no parallel state court action to which the Court may defer. The Court is required to exercise its valid diversity jurisdiction over the distinct claims Plaintiffs make in this case. Defendant's request that this Court abstain through either dismissal or stay of this action must be denied. Likewise, the Court must deny Defendant's motion to

dismiss based on the statute of limitations. The Complaint alleges facts showing that this case is based on a latent defect and was brought in a timely manner under 5 V.I.C. § 32b. Whether the allegations are true is a factual determination that cannot be decided on a motion to dismiss at the pleadings stage.

Dated: November 16, 2019                    Respectfully Submitted,

**LAW OFFICES OF FRIEDBERG & BUNGE**

*/s/ THOMAS F. FRIEDBERG, ESQ.*
THOMAS F. FRIEDBERG, ESQ. (VI# 1006)
755 West A Street, Suite 100
P.O. Box 6814
San Diego, California 92101
619.557.0101 (Tel.)
619.557.0560 (Fax)
tom@lawofficefb.com

ATTORNEYS FOR PLAINTIFFS
THOMAS F. FRIEDBERG AND SARAH L. BUNGE

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 16th day of November 2019, a true and correct copy of **PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR FOR STAY** was filed on the Court's CM/ECF system, which shall provide notice to the following:


Andrew C. Simpson
**ANDREW C. SIMPSON, PC**
2191 Church St., Ste. 5
Christiansted, VI 00820
TEL : 340.719.3900
E-MAIL :asimpson@coralbrief.com


          *s/ THOMAS F. FRIEDBERG*      
          **THOMAS F. FRIEDBERG**

**IN THE UNITED STATES DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN**

| | |
|---|---|
| THOMAS F. FRIEDBERG & SARAH L. BUNGE, | **CIVIL ACTION NO. 3:19-cv-0053** |
| Plaintiffs, | **PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT OR FOR STAY** |
| v. | |
| DAYBREAK, INC. dba HUBER & ASSOCIATES, | |
| Defendant. | |

**DECLARTION OF THOMAS F. FRIEDBERG IN SUPPORT OF OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR FOR STAY**

I, THOMAS F. FRIEBERG, respectfully declare as follows:

1. I am an attorney at law, duly licensed to practice before the Courts of the U.S. Virgin Islands and this Court. I, along with my wife, Sarah L. Bunge, are the Plaintiffs in this action.

2. I have personal knowledge of the facts stated herein, and if called as a witness, could competently testify thereto.

3. I and my wife own the property at 168 Chocolate Hole, St. John, US Virgin Islands. The property has 6 buildings. On the upper portion of the lot there is a gate house and a garage/studio. On the lower portion of the lot, there is the main house, guest house, dining gazebo and beach bar.

4. Attached as Exhibit "A" is the initial cost of repair that was prepared for the Superior Court action on or about March 7, 2014, for damages to the gate house and

1

garage/studio. The total for the cost of repair was $219,869.50.

5. In or about March 2014, I responded to discovery addressing the cost of repair in the Superior Court lawsuit. I based the response on the cost of repair attached as Exhibit "A" and listed the cost of repair at $210,000. The only item referred to in the cost of repair regarding the main roof was replacing caulking for the amount of $930.00.

6. The Superior Court has limited the damages that can be claimed to $210,000, based on the cost of repair to the gate house and garage/studio roofs and excludes claims pertaining to the roofs on any of the four other buildings not referenced in the $210,000 cost or repair, including the main house roof that is the subject of the Complaint in this action.

7. The claims in this action are *not* included in the Superior Court Action. The claims in this lawsuit deal exclusively with Defendant's failure to install the cleats to secure the copper panels on the main roof – which is a separate building than the gate house and garage/studio. The basis of this claim is that the contract required that cleats be installed 9 inches on center for all copper runs and this was not done on the main house, resulting in a portion of the main house roof coming off during Hurricane Irma. In contrast, the claims that are being litigated in the Superior Court lawsuit are limited to the initial cost or repair of $210,000 based on leaks in the roofs of the gate house and garage/studio.

8. The cleats under the main roof were not visible when the counterclaim was filed in the Superior Court Action in 2010. The latent defect of not including cleats on the main roof was unknown at the time and were therefore not included in the Superior Court Action. I did not learn that Daybreak had not installed the cleats to secure the

2

roof until Hurricane Irma peeled copper panels in Hurricane Irma and the underside of the roof was exposed. This was the first time I became aware that the hurricane cleats that were required to be installed pursuant to the contract were not actually installed.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

This declaration is executed this 16th day of November, 2019.

*s/THOMAS F. FRIEDBERG*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 16th day of November 2019, a true and correct copy of **DECLARATION OF THOMAS F. FRIEDBERG IN SUPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR FOR STAY** was filed on the Court's CM/ECF system, which shall provide notice to the following:


Andrew C. Simpson
**ANDREW C. SIMPSON, PC**
2191 Church St., Ste. 5
Christiansted, VI 00820
TEL : 340.719.3900
E-MAIL : asimpson@coralbrief.com




_____ *s/ THOMAS F. FRIEDBERG* _____
                    **THOMAS F. FRIEDBERG**

4

# EXHIBIT "A"

Prepared for:
**Thomas Friedberg**

# Preliminary Cost of Repair

03/07/14
Project# 617

| Friedberg & Bunge Residence • 168 Chocolate Hole, St. John, Virgin Islands | | | | | | |
|---|---|---|---|---|---|---|
| REPAIR SCOPE - DESCRIPTION | # | UNIT | COST | TOTAL | | NOTES |

## 1.0 ROOF REPAIR

| | | | # | UNIT | COST | | TOTAL | | NOTES |
|---|---|---|---|---|---|---|---|---|---|
| | 1.1 | GATE HOUSE | | | | | | | |
| | | 1.1.1 Mask and protect surrounding areas | 1 | EA | $ | 500.00 | $ | 500.00 | |
| | | 1.1.2 Remove stucco at walls with flashing | 873.00 | SF | $ | 4.00 | $ | 3,492.00 | or 4 guys at 2 days (16hrs) * $25/hr = $1600 |
| | | 1.1.3 Remove poorly installed flashings | 63.00 | LF | $ | 6.00 | $ | 378.00 | |
| | | 1.1.4 Remove poorly installed standing seam roofing | 573.00 | SF | $ | 6.00 | $ | 3,438.00 | |
| | | 1.1.5 Install new copper flashing (Labor) | 63.00 | LF | $ | 18.00 | $ | 1,134.00 | |
| | | 1.1.6 Install new copper roofing (Labor) | 573.00 | EA | $ | 29.50 | $ | 16,903.50 | Bid for $16,900 |
| | | 1.1.7 16 oz. Copper Flashing material | 63.00 | LF | $ | 18.00 | $ | 1,134.00 | |
| | | 1.1.8 16 oz. Copper Roll Roofing Material (+35% waste) | 773.00 | SF | $ | 13.00 | $ | 10,049.00 | Bid for $9,600 |
| | 1.1 | GATE HOUSE | | | | | $ | 37,028.50 | |
| | 1.2 | GARAGE | | | | | | | |
| | | 1.2.1 Mask and protect surrounding areas | 1 | EA | $ | 500.00 | $ | 500.00 | |
| | | 1.2.2 Remove stucco at walls with flashing | 236.00 | SF | $ | 4.00 | $ | 944.00 | or 4 guys at 1 days (8hrs) * $25/hr = $800 |
| | | 1.2.3 Remove poorly installed flashings | 16.00 | LF | $ | 6.00 | $ | 96.00 | |
| | | 1.2.4 Remove poorly installed standing seam roofing | 61.00 | SF | $ | 6.00 | $ | 366.00 | |
| | | 1.2.5 Install new copper flashing (Labor) | 16.00 | LF | $ | 18.00 | $ | 288.00 | |
| | | 1.2.6 Install new copper roofing (Labor) | 61.00 | EA | $ | 28.00 | $ | 1,708.00 | |
| | | 1.2.7 16 oz. Copper Flashing material | 16.00 | LF | $ | 18.00 | $ | 288.00 | |
| | | 1.2.8 16 oz. Copper Roll Roofing Material (+35% waste) | 82.00 | SF | $ | 13.00 | $ | 1,066.00 | |
| | 1.2 | GARAGE | | | | | $ | 5,256.00 | |
| | 1.3 | MAIN HOUSE CAULKING | | | | | | | |
| | | 1.3.1 Remove and replace bad caulking | 62.00 | LF | $ | 15.00 | $ | 930.00 | |
| | 1.3 | MAIN HOUSE CAULKING | | | | | $ | 930.00 | |
| | 1.4 | ALL BUILDINGS VENT PIPES | | | | | | | |
| | | 1.4.1 Movement to each of the 15 vent locations | 15 | EA | $ | 25.00 | $ | 375.00 | |
| | | 1.4.2 Remove and replace bad caulking at all vent pipes | 12.5 | LF | $ | 15.00 | $ | 187.50 | |
| | 1.4 | ALL BUILDINGS VENT PIPES | | | | | $ | 562.50 | |
| 1.0 | | **ROOF REPAIR** | | | | | $ | **43,777.00** | |

Prepared by:
Paradigm Construction Services
771 Jamacha Road # 526
El Cajon, CA 92019

*Privileged - For Mediation Purposes Only*
*Protected by Civil Code Section 1152 1119-1128*

Prepared for:
**Thomas Friedberg**

## Preliminary Cost of Repair

03/07/14
Project# 617

## 2.0  STUCCO REPAIR

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | 2.1 | STUCCO | | | | | |
| | | 2.1.1 | Build scaffolding for stucco (2 buildings) | | | | $ 3,850.00 |
| | | | Scaffolding lumber (2 @ 3 x 16 x 24) | | | $ 2,250.00 | |
| | | | Scaffolding labor (4 guys at 2 days) | | | $ 1,600.00 | |
| | | 2.1.2 | Mask and protect surrounding areas | 1 | EA | $ 500.00 | $ 500.00 |
| | | 2.1.3 | GATE HOUSE Replace stucco at walls where removed. Includes special color requirements to match existing | 873 | SF | $ 24.00 | $ 20,952.00 |
| | | 2.1.4 | GARAGE Replace stucco at walls where removed. Includes special color requirements to match existing | 236 | SF | $ 24.00 | $ 5,664.00 |
| | | 2.1.5 | Plaster material special order color | 1 | EA | $ 600.00 | $ 600.00 |
| | | 2.1.6 | Plaster material bulk sand | 1 | EA | $ 1,200.00 | $ 1,200.00 |
| | | 2.1.7 | Plaster mixer rental 2 weeks | 2 | EA | $ 750.00 | $ 1,500.00 |
| | 2.1 | | STUCCO | | | | $ 34,266.00 |
| **2.0** | | | **STUCCO REPAIR** | | | | **$ 34,266.00** |

Prepared by:
Paradigm Construction Services
771 Jamacha Road # 526
El Cajon, CA 92019

*Privileged - For Mediation Purposes Only*
*Protected by Civil Code Section 1152 1119-1128*

Page 2 of 3

Prepared for:
**Thomas Friedberg**

# Preliminary Cost of Repair

03/07/14
Project# 617

## 3.0 GENERAL REQUIREMENTS

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | 3.1 | GENERAL REQUIREMENTS | | | | | | | |
| | | 3.1.1 | Purchase shipping container | 1 | EA | $ | 2,500.00 | $ | 2,500.00 |
| | | 3.1.2 | Ocean ship container from Miami to STT. | 1 | EA | $ | 6,460.00 | $ | 6,460.00 |
| | | 3.1.3 | Customs clearance for container (10% mat) | 10% | EA | $ | 12,500.00 | $ | 1,250.00 |
| | | 3.1.3 | Foreign tax on any materials outside US | 10% | EA | $ | 1,800.00 | $ | 180.00 |
| | | 3.1.3 | Ferry container from STT to SJJ | 1 | EA | $ | 700.00 | $ | 700.00 |
| | | 3.1.3 | Offload container with Penns forklift | 2 | HR | $ | 100.00 | $ | 200.00 |
| | | 3.1.3 | Penn forklift to move material & equip on site | 15 | HR | $ | 100.00 | $ | 1,500.00 |
| | | 3.1.3 | Trash container for 2 weeks | 1 | EA | $ | 700.00 | $ | 700.00 |
| | | 3.1.4 | Transport trash from SJJ to STT | 1 | EA | $ | 500.00 | $ | 500.00 |
| | | 3.1.4 | Portable restroom 2 weeks | 1 | EA | $ | 600.00 | $ | 600.00 |
| | 3.1 | | GENERAL REQUIREMENTS | | | | | $ | 14,590.00 |
| | | | | | | | | | |
| | 3.2 | MACHINES | | | | | | | |
| | | 3.2.1 | Englert® MetalMan Multi-Panel Roof Forming Machine on trailer | 1 | EA | $ | 35,000.00 | $ | 35,000.00 |
| | | 3.2.2 | Load framing machine in container | 1 | EA | $ | 2,500.00 | $ | 2,500.00 |
| | | 3.2.3 | Brake machine for flashing | 1 | EA | $ | 4,000.00 | $ | 4,000.00 |
| | | 3.2.4 | Load brake machine in container | 1 | EA | $ | 1,500.00 | $ | 1,500.00 |
| | 3.2 | | MACHINES | | | | | $ | 43,000.00 |
| | | | | | | | | | |
| | 3.3 | TRAVEL LODGING | | | | | | | |
| | | 3.3.1 | Travel for 4 member roofing crew (airfare) | 4 | EA | $ | 1,474.00 | $ | 5,896.00 |
| | | 3.3.2 | Travel for 1 supervisor (airfare) | 1 | EA | $ | 2,750.00 | $ | 2,750.00 |
| | | 3.3.3 | Lodging for 5 people @ 10 nights each | 50 | EA | $ | 275.00 | $ | 13,750.00 |
| | | 3.3.4 | Per Diem for 5 people @ 10 days each | 50 | EA | $ | 50.00 | $ | 2,500.00 |
| | 3.3 | | TRAVEL LODGING | | | | | $ | 24,896.00 |
| **3.0** | | | **GENERAL REQUIREMENTS** | | | | | $ | 57,590.00 |

| | | | | | |
|---|---|---|---|---|---|
| **ALL TOTALS** | | | | | |
| **1.0** | **ROOF REPAIR** | | | $ | 43,777.00 |
| **2.0** | **STUCCO REPAIR** | | | $ | 34,266.00 |
| **3.0** | **GENERAL REQUIREMENTS** | | | $ | 57,590.00 |
| **6.0** | **SUPERVISION** | | | $ | 14,800.00 |
| **7.0** | **PERMITS AND FEES (10% of Construction)** | 10% | $ 92,633.00 | $ | 9,263.30 |
| **8.0** | **OVERHEAD AND PROFIT** | 20% | $ 150,433.00 | $ | 30,086.60 |
| **9.0** | **CONTINGENCY** | 20% | $ 150,433.00 | $ | 30,086.60 |
| **TOTAL** | | | | $ | **219,869.50** |

Prepared by:
Paradigm Construction Services
771 Jamacha Road # 526
El Cajon, CA 92019

*Privileged - For Mediation Purposes Only*
*Protected by Civil Code Section 1152 1119-1128*