**IN THE UNITED STATES DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN**

| | |
|---|---|
| THOMAS F. FRIEDBERG & SARAH L. BUNGE, | **ACTION NO. 3:19-cv-0053-RAM-EAH** |
| Plaintiffs, | **ACTION FOR DAMAGES** |
| v. | |
| DAYBREAK, INC. dba HUBER & ASSOCIATES, | |
| Defendant. | |

**<u>PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT</u>**

**<u>OF OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>**

1

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    INTRODUCTION…………………………………………………………………4

II.    STATEMENT OF FACTS………………………………………………….............6

    A.    The Parties' Contract and Superior Court Litigation…………………………….6

    B.    An Entire Hip Ridge Seam is Opened by Hurricane Irma Exposing Daybreak's Failure to Install any Cleats to Secure that Pan Intersection to the Substrate……………11

    C.    Daybreak Admits for the First Time in the District Court Action that It Did Not Install Cleats to Secure the Copper Roof at Any of the Hip Ridges on the Main House....15

III.    ARGUMENT…………………………………………………………………...15

    A.    Summary Judgment Standard……………………………………………...15

    B.    Plaintiffs' Claim for Replacement of the Main House Roof is Not Barred by the Superior Court Settlement Agreement or *Res Judicata*……………………………...........................................................16

    C.    Sanders' Inspection of the Main House Roof in 2014 and the Recommendations in His Expert Report Are Irrelevant and Did Not Identify Defendant's Breach of Contract at Issue in this Case…………………………………………………………………19

    D.    Defendant's Causation, Intervening Cause, Alteration and Mitigation Arguments Are Meritless and Are Not Defenses to this Breach of Contract Action……………………..21

IV.    CONCLUSION…………………………………………………………………..23

## **TABLE OF AUTHORITIES**

### **Cases**

*Ambat v. City & County of San Francisco*, 757 F.3d 1017, 1031 (9th Cir. 2014)………………..16

*Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986)…………………………………..16

*Henglein v. Colt Indus. Operating Corp.*, 260 F. 3d 201, 209 (3d Cir. 2001)……………………17

*Impact Mktg. Int'l LLC v. Big O Tires, LLC*, 2012 U.S. LEXIS 12458* at *5 (D. Nev., February 2, 2012)…………………………………………………………………………………………………20

*Nat'l R.R. Passenger Corp. v. Pennsylvania Pub. Util. Comm'n,* 288 F. 3d 519, 525 (3d. Cir. 2002)……………………………………………………………………………………………………18

*Nationwide Life Ins. Co. v. Bankers Leasing Ass'n, Inc.*, 182 F.3d 157, 160 (2nd Cir. 1999)……16

*Orr v. Bank of Am., NT & SA*, 285 F. 3d 764, 773 (9th Cir. 2002)………………………………..20

*Southern Calif. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003)………………16

*Williams v. Gomez*, 2016 U.S. Dist. LEXIS 68771* (N.D. Cal., May 25, 2016)………………...20

### **Statutes**

Fed. R. Civ. P. Rule 56(a)…………………………………………………………………………...15

Fed. R. Civ. P. 56(e)………………………………………………………………………………….20

### **Treatises**

Restatement (Second) of Contracts § 350………………………………………………………...22

Restatement (Second) of Contracts § 351………………………………………………………...22

Restatement (Second) of Judgments § 27 (1982)………………………………………………...18

Plaintiffs Thomas F. Friedberg and Sarah L. Bunge ("Plaintiffs") submit this Memorandum of Points and Authorities in Support of their Opposition to the Motion for Summary Judgment filed by Defendant Daybreak, Inc. dba Huber & Associates ("Daybreak" or "Defendant"):

## I.    <u>INTRODUCTION</u>

Plaintiffs filed this District Court Action alleging a single claim for breach of contract relating to the copper roof Daybreak installed on one of the buildings on Plaintiffs' Property—the Main Pavillion, also known as the Main House ("Main House"). Plaintiffs learned that Daybreak had breached the contract requirement to install cleats at specified intervals to secure the Main House roof when one entire seam opened during Hurricane Irma in 2017. In 2025, Daybreak admitted for the first time in depositions in this case that it did not install any cleats to secure the hip ridge seams on the Main House. Plaintiffs filed their own Motion for Summary Judgment based on Daybreak's admission that it breached the contract requirements to install cleats on the Main House roof. Plaintiffs seek to receive the benefit of their bargain—a copper roof secured as required by the contract to provide the wind resistance for which Plaintiffs paid. (Plaintiffs' Motion for Summary Judgment, Doc. Nos. 86-92.)

Daybreak simultaneously filed this Motion for Summary Judgment. Daybreak argues that Plaintiffs' claim for breach of contract for failing to install cleats on the Main House roof is "barred by Release and/or *Res Judicata*." Daybreak relies on an agreement to settle a Superior Court lawsuit that *expressly excludes* the only claim asserted in this District Court Action. Daybreak argues that the parties' agreement to exclude the District Court Action from that settlement does not mean what it says.

Daybreak argues it never intended to exclude from the release the only claim in the District Court Action—despite expressly saying so in the settlement agreement. Daybreak argues that

Plaintiffs' claim for replacement of the Main House roof is exempt from the exclusion of the claim in this District Court Action in the settlement Agreement because the replacement of the Main House roof was included in the damages asserted in the Superior Court lawsuit.   In other words, Daybreak contends its agreement to exclude the *only* claim in the District Court Action was meaningless when Daybreak made it to induce Plaintiffs to settle the Superior Court lawsuit.

Daybreak fails to disclose that it filed a motion in the Superior Court case to *limit the claims asserted by Plaintiffs in their Counterclaim to exclude any claim for replacement of the Main House roof*.   The Superior Court granted Daybreak's motion and gave it the preclusion order it requested. The Court issued an Order excluding from Plaintiffs' Counterclaim any damages for replacement of the Main House roof.   The Superior Court limited the claims that Plaintiffs asserted in their Counterclaim in the Superior Court lawsuit *to damages for the replacement of two different roofs – the Gate House and the Garage*.   The Superior Court's Order excluding any claims for replacement of the Main House roof is *res judicata* and establishes as a matter of law that Daybreak is wrong that the Superior Court settlement released the only claim in this District Court Action.

The Superior Court has already determined that Plaintiffs' claim in the District Court Action alleging breach of contract requiring replacement of the Main House roof *was not asserted in the Superior Court action*.   Having obtained a court order *preventing* Plaintiffs from asserting the only claim in the District Court Action Daybreak is collaterally estopped from now taking the opposite position.   Plaintiffs' claim in the District Court Action for replacement of the Main House roof based on Daybreak's breach of contract was neither asserted nor resolved in the Superior Court lawsuit, is expressly excluded from the settlement agreement, and is not barred by the release or *res judicata*.

Daybreak makes secondary arguments in its motion for summary judgment based on "causation" of the damage to the Main House roof and Plaintiffs' alleged failure to "mitigate" their damage to the Main House roof. Those defenses do not apply to this breach of contract case in which Plaintiffs seek only the benefit of their bargain—a roof installed as required by the contract that provides the wind protection Daybreak promised. Even if they were applicable, there are factual disputes and competing expert testimony on those issues that preclude summary judgment.

## II.    STATEMENT OF FACTS

### A.    The Parties' Contract and Superior Court Litigation

On May 7, 2010 Plaintiffs entered into a contract with Defendant to manufacture and install a standing seam copper roof on the buildings on the Property (the "Contract"). The buildings that comprise Plaintiffs' residence include a Gate House, a Garage, a Guest House, a Main House, a Master Suite, a Library, a Dining Gazebo and a Beach Bar. Defendant performed its work under the Contact in 2010. Defendant agreed to perform the work for the sum of $187,839.00. Despite Plaintiffs having fully paid Defendant more than the Contract price, Defendant walked off the job prior to the final walk through and left certain portions of the roofs uncompleted. As a result of Defendant's failure to complete the job, the roofs on the Gate House and Garage leaked and caused damage. (Plaintiffs' Statement of Undisputed Facts in Support of Opposition to Defendant's Motion for Summary Judgment ("PSUF") 2, 3.)

In December 2010 Defendant filed an Action for Debt, Breach of Contract and to Enforce Construction Lien against Plaintiffs in the Superior Court of the Virgin Islands, Division of St. Thomas and St. John, Case No. ST-2010-CV-00716 (the "Superior Court Action"). On October 5, 2012 Plaintiffs filed an Answer and Counterclaim against Defendant Daybreak ("Counterclaim") and a Third Party Claim for fraud against Defendant's principal, Barry Huber. (PSUF 4, 5.)

Plaintiffs' Counterclaim was based on incomplete and defective work done by Plaintiffs on the two upper buildings on the Property which had experienced water intrusion damage—the Gate House and the Garage.   The Counterclaim alleged that Daybreak negligently installed flashing over the plaster that resulted in cracking and damaged the custom-colored plaster.   The Main House, which is the subject of the District Court Action, was not the subject of the Superior Court Counterclaim which made no claims for the work on the Main House.   The Counterclaim alleged as Plaintiffs' damages the cost of replacing the leaking roof on the Gate House and replastering the areas that were damaged by the leaking roofs.   (PSUF 6,7,8.)

The Counterclaim does not allege any breach of the Contract or negligence by Daybreak relating to the Contract requirement that Daybreak install cleats to secure the copper roof at an average of 9.5 inches on center.   Plaintiffs had negotiated with Daybreak to increase the number and decrease the spacing between the cleats securing the copper roofs because the cleats were the only source of wind protection.   Because the Property is in the hurricane-prone Caribbean, Plaintiffs wanted the extra protection from wind damage.   When Plaintiffs filed the Counterclaim, they had no knowledge that there were any problems with the cleats Daybreak had installed to provide required wind protection for the copper roofs.   Accordingly, the Counterclaim does not allege a breach of the Contract's requirements for the installation of cleats to secure the copper on any of the buildings on the Property. (PSUF 11, 15.)

In 2014 Plaintiffs retained Paradigm Construction Services to prepare a Preliminary Cost of Repair of the damage claims asserted in the Superior Court Counterclaim ("Paradigm Damage Report").   The Paradigm Damage Report asserted that only the roofs on the Gate House and the Garage required the removal of "poorly installed flashing," the removal of "poorly installed standing seam roofing," and the installation of new copper flashing and new copper roofing.   The

7

Paradigm Damage Report provided a cost estimate for replacing the roofs and replacing the stucco that would be disturbed on only those two buildings.   The Paradigm Damage Report included a small charge to remove and replace bad caulking on the Main House roof ($930.00) and relocate 15 roof vents ($562.50).   The Paradigm Damage Report itemized additional costs to perform the Roof Repair and Stucco Repair work on the Gate House and Garage as General Requirements that included machinery to be brought to St. John and travel and lodging for the roofing crew.   The total amount of damages asserted in the Paradigm Damage Report for the replacement of the Gate House and Garage roofs was $210,676.12.   (PSUF 16, 17, 19-23.)

In March 2014 Plaintiffs produced the Paradigm Damage Report to Daybreak and identified it in their discovery responses as an itemization of the damages Plaintiffs were asserting in their Counterclaim in the Superior Court Action.   The parties complied with the discovery schedule set by the Superior Court and identified experts who inspected the roofs Daybreak had installed and exchanged expert reports. (PSUF 24-27.)

Plaintiffs retained a roofing expert, Arthur Sanders ("Sanders"), and produced his expert report in November 2014.   Sanders confirmed Paradigm's recommendation that the Gate House and Garage roofs should be replaced.   Sanders cited defects in the Gate House and Garage roofs he established were causing the leaking in those two buildings.   (PSUF 27-29.)

Sanders' expert report went beyond the damages identified in the Paradigm Damage Report. Sanders inspected the other buildings and found poor workmanship and defects and recommended the removal and replacement of all roofs on the Property.   Because the replacement would involve removal of the existing roofs, installation of new weather protection, remobilizing and all the costs associated with working on St. John, Sanders provided his opinion that the probable cost of construction for the replacement of all roofs would be $759,357. (PSUF 30.)

8

Sanders was critical of the quality and workmanship of Daybreak's installation of all the copper roofs on the Property.   Sanders' primary criticism of the Main House roof was that Daybreak had installed copper sheets longer thar 34 feet which exceeded the industry standard of 30 feet.   Sanders opined that spans of the length installed by Daybreak should have been designed with either expansion relief or as traditional shorter lengths with transverse seams. (PSUF 31, 36.)

Sanders investigated whether Daybreak had installed cleats to secure the copper membrane to the substrate spaced on average of 9.5 inches as required by the Contract.   Sanders described opening a section of a standing seam on the west side of the Main Pavilion" and finding "four cleats in this area that were spaced at 8", 10", and 9"."   Sanders' finding confirmed that while Daybreak may not have exactly complied with the 9.5-inch cleat spacing requirement in the Contract, the cleats in the seam were close enough to meet the "on average" requirement.   Based on Sanders' report, Plaintiffs believed Daybreak had complied with the Contract requirement for installing cleats. (PSUF 32.)

Sanders was critical of the condition of Daybreak's workmanship on the ridges of all the roofs where Daybreak installed riveted ridge caps over the folded seams where the copper panels met.   Sanders identified a small section of a ridge cap where an exposed edge created an opening for water.   Sanders described investigating the leak source by removing the cap and opening a small, approximately 2-foot-long section of the 33-foot-long ridge seam, or approximately 6% of that hip ridge.   Sanders reported finding irregularly cut and improperly folded pan edges. Sanders reported that he did not observe cleats or expansion clips in the 2-foot section of hip ridge seam he opened.   Given the inconsistent spacing of the cleats Sanders documented on the west side, there was no reason to assume that even if there were no cleats in that 2-foot section, there were no cleats in the remaining 31 feet, or 94%, of the hip ridge. (PSUF 33-35.)

9

After disclosing the Hoffmann Expert Report in November 2014, Plaintiffs supplemented their interrogatory responses in December 2014. Plaintiffs incorporated Sanders' expert report into the interrogatories asking for a description of Plaintiffs' damages. (PSUF 38.)

Daybreak objected to Plaintiffs expanding their claims beyond the replacement of the Gate House and Garage roofs identified in the Paradigm Damage Report after discovery was closed. Daybreak filed a motion with the Superior Court requesting a second inspection of the Property. Daybreak argued it was entitled to conduct another inspection because Sanders' expert report identified for the first time defects on the Main House roof and other roofs on the Property, recommended replacement of all roofs on the Property in addition to the Gate House and Garage that were identified in the Paradigm Damage Report, and increased the damage calculation to $759,357 from the $210,676.12 in damages identified in the Paradigm Damage Report. (PSUF 36, 39.)

The motion was heard by Superior Court Judge Adam Christian on February 2, 2015. Judge Christian rejected Daybreak's request to reopen discovery and allow it to perform another inspection. However, Judge Christian ruled that the Court would decide on a motion in limine whether the claims asserted in the Counterclaim were limited to those asserted in the Paradigm Damage Report produced in March 2014, with its damage claim of $210,676.12 for the cost of replacing only the Gate House and Garage roofs. (PSUF 40.)

Judge Christian subsequently retired and the Superior Court Action was reassigned to the Hon. Renée Gumbs Carty. Daybreak filed a motion requesting an order limiting the damage claims asserted by Plaintiff in the Superior Court action to the claims listed in the Paradigm Damage Report that totaled approximately $210,000 and included only replacement of the roofs on the Gate House and Garage. On April 26, 2017 Judge Carty issued an Order granting Daybreak's motion

and limiting Plaintiffs' Counterclaim to the claims asserted in the Paradigm Damage Report in the amount of $210,000.    (PSUF 41, 42.)

The Superior Court's April 26, 2017 Order established that Plaintiffs' claims asserted in their Counterclaim were limited to the approximately $210,000 in damages identified in the Paradigm Damage Report consisting of (a) replacing the Gate House and Garage roofs, (b) repairing the stucco on the Gate House and Garage following replacement of those roofs, (c) removing and replacing bad caulking on the Main House roof, (d) moving 15 vent pipes and removing and replacing associated caulking, and (e) the General Conditions for that specific work identified in the Paradigm Damage Report.    The parties prepared for trial based on the Court's April 26, 2017 Order that the claims Plaintiffs asserted in the Counterclaim were limited to only the claims identified in the Paradigm Damage Report and excluded any claims in Sanders' expert report other than those identified in the Paradigm Damage Report totaling approximately $210,000 in damages. (PSUF 43, 44.)

**B.      An Entire Hip Ridge Seam is Opened by Hurricane Irma Exposing Daybreak's Failure to Install any Cleats to Secure that Pan Intersection to the Substrate**

The Superior Court Action was still pending when Hurricane Irma struck the U.S. Virgin Islands on September 7, 2017.    In February 2018 Plaintiffs hired Sanders to inspect and document damage to the copper roofs on the Property and prepare proposals and estimates for repairing the roofs.    The inspection revealed that an entire hip ridge seam, more than 30 feet long, on the Main House had opened.    Sanders reported that all the hip ridge caps were loosened and damaged and the storm damage included "uplift/displacement at ridges." (PUSF 45-47.)

Plaintiffs hired Dahill Co., Inc. ("Dahill") to make temporary repairs to the roofs on the Property to stabilize them and prevent further damage from water intrusion.    Dahill reported that

an approximately 30-foot section of a hip ridge cap on the northeast side of the Main House roof had been deformed and displaced during the hurricane and the seam had opened.   Dahill removed the hip cap to expose the hip ridge seam to inspect it.   Dahill reported that there were no cleats securing the entire seam hip ridge seam to the roof's substrate.   This was the first notice Plaintiffs had that Daybreak had failed to secure at least one entire hip ridge seam on the Main House roof with cleats spaced on an average of 9.5 inches apart as required by the Contract.   Dahill closed the seam by putting a new cap on and riveting it closed.   (PUSF 48, 49, 51.)

Because the Superior Court's April 26, 2017 Order limited the claims Plaintiffs were asserting in their Counterclaim to the replacement of the roofs on the Gate House and Garage, Plaintiffs could not assert in the Superior Court Action their claim for breach of the Contract for installation of the Main House roof.   To assert their claim for breach of contract damages consisting of the cost of replacing the Main House roof, Plaintiffs filed this District Court Action on July 14, 2019. (PUSF 52.)

The District Court Action consists of a single cause of action for Breach of Contract alleging that Daybreak breached the Contract by failing to comply with the Contract requirement and industry standards and specifications incorporated into the Contract for the installation of cleats on the Main House roof spaced at 9.5 inches on average.   Plaintiffs allege that because Daybreak did not install cleats as required to secure the copper pans that make up the octagonal Main House roof, the entire roof is not secured to the substrate and is susceptible to wind damage and must be replaced.   The District Court Action does not include claims for breach of contract damages related to any roofs other than the Main House roof. (PUSF 53.)

The Superior Court Action was delayed as the Territory recovered from Hurricane Irma and then delayed further by the COVID-19 pandemic.   In late-2023 the parties began negotiating a

settlement of the Superior Court Action.    Different insurers were providing a defense to Daybreak in the Superior Court Action and the District Court Action; and different attorneys were hired by the insurers to defend the Superior Court Counterclaim and the District Court Action.    Plaintiffs' counsel negotiated with only the attorney and insurer defending the Counterclaim.    The parties' starting point for negotiations was the $210,000 in damages limited by the Superior Court's April 26, 2017 Order which consisted primarily of the cost to replace the Gate House and Garage roofs. (PUSF 62, 63.)

Plaintiffs agreed to accept a reduced amount for the damages asserted in the Paradigm Damage Report.    Plaintiffs insisted that as a condition of settlement of the Superior Court Action, the written settlement agreement must provide that the releases are limited to the damage claims asserted in the Paradigm Damage Report, as ordered by the Superior Court in its April 26, 2017 Order, and would **not** include the pending District Court Action for breach of contract requiring replacement of the Main House roof.    Counsel for Daybreak agreed to include a provision in the Superior Court settlement agreement excluding the District Court Action from any release.    (PUSF 64-65.)

The parties filed a Notice of Settlement informing the Superior Court that the parties had reached settlement.    The Superior Court issued an Order directing the Parties to file a Joint Dismissal with Prejudice within thirty days; and counsel worked on drafting a confidential settlement agreement.    The Parties were not able to finalize the Settlement Agreement within the thirty days ordered by the Court but were continuing to negotiate terms.    On February 23, 2024, the Superior Court issued the following Order:

> On November 16, 2023, Plaintiff filed a Notice of Settlement informing the Court that the Parties have settled their differences.    This Court issued an Order on November 17, 2023, directing the Parties to file a Joint Stipulation of Dismissal

13

within thirty (30) days.   To date, the Parties have not filed a Joint Stipulation of Dismissal in this matter or filed any motion seeking further relief.   The premises considered, it is hereby

**ORDERED** that this case is Dismissed with Prejudice; and it is further

**ORDERED** that copies of this Order shall be distributed to counsel of record.

(PSUF 66, 67.)

The Superior Court's dismissal order was expressly based on the settlement.   Counsel continued to negotiate the agreement to settle only the Superior Court Action, but not the District Court Action.   On June 12, 2024 the Parties finalized and executed their settlement agreement resolving the Superior Court Action.   Consistent with the agreement to exclude the District Court Action from the settlement, the Superior Court Settlement Agreement contains the following provision:

> The settlement of the above-entitled Superior Court Lawsuit does not extinguish the claims in the District Court case number 3:19-cv-0053 to the extent that District Court case does not encompass claims that were asserted in the above-entitled Superior Court case.

(PSUF 68, 69.)

Plaintiffs signed the Superior Court Settlement Agreement knowing that the Superior Court's April 26, 2017 Order limited the claims asserted in Plaintiffs' Superior Court Counterclaim to damages consisting primarily of the cost to replace the Gate House and Garage roofs and did not include any claim for replacement of the Main House roof.   The District Court Action that was excluded from the releases includes only a single claim for breach of contract damages for the cost of replacing the Main House roof, which Plaintiffs were precluded by the Superior Court's April 26, 2017 Order from asserting in the Superior Court Action.   Plaintiffs knew the District Court claim for replacement of the Main House roof was specifically excluded from the Superior Court Settlement Agreement.   (PSUF 70.)

14

Following the execution of the Superior Court Settlement Agreement, the insurer defending Daybreak in the Superior Court Action paid Plaintiffs the monetary amount they had agreed to accept to resolve only the Superior Court Action.    Litigation of the District Court Action continued, with a different insurer and attorney providing Daybreak's defense. (PSUF 71.)

### C.    Daybreak Admits for the First Time in the District Court Action that It Did Not Install Cleats to Secure the Copper Roof at Any of the Hip Ridges on the Main House

The Contract's requirement for the installation of extra cleats was not raised in the Superior Court Counterclaim and was not litigated in that case.    Daybreak never acknowledged in the Superior Court Action that it did not install cleats to secure any of the hip ridges; and Daybreak never claimed it was not required to do so by the Contract.    Daybreak took that position for the first time in this District Court Action.    In depositions taken in 2025 Daybreak admitted it did not install cleats to secure any of the hip ridge seams on the Main House roof or any other building. Daybreak claimed for the first time that cleats are not required at the hip ridges by the Contract, the industry standards incorporated into the Contract, or accepted copper roofing industry practice. Until Daybreak made these admissions in depositions in 2025, Plaintiffs did not know that *none* of the hip ridge seams on the Main House were secured by cleats. (PSUF 12-14, 54-60.)

### III.    ARGUMENT

### A.    Summary Judgment Standard

The party moving for summary judgment has both an initial burden of production and the ultimate burden of persuading the court that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."    Fed. R. Civ. P. Rule 56(a).    Because summary judgment is a "drastic device," cutting off a party's right to present its case to a jury, the moving party bears a "heavy burden" of demonstrating the absence of any triable issue of material

fact. *Ambat v. City & County of San Francisco*, 757 F.3d 1017, 1031 (9th Cir. 2014); *Nationwide Life Ins. Co. v. Bankers Leasing Ass'n, Inc.*, 182 F.3d 157, 160 (2nd Cir. 1999).

A party may move for summary judgment on the ground that there is no genuine dispute of material fact as to its own claims or defenses. In such cases, the moving party bears the initial burden of proof (production) as to each material fact upon which it has the burden of persuasion at trial: "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party."  *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986); *Southern Calif. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003).   Defendant has not met its burden and summary judgment must be denied.

**B.      Plaintiffs' Claim for Replacement of the Main House Roof is Not Barred by the Superior Court Settlement Agreement or *Res Judicata***

Defendant misleads the Court by failing to disclose a critical fact that reveals its release/*res judicata* argument is without merit.  The Superior Court ruled that any claim by Plaintiffs for replacement of the Main Hause roof was excluded from their Counterclaim in the Superior Court Action.   There was no claim for replacement of the Main house roof in the Counterclaim filed in 2012; and in discovery Plaintiffs asserted damages limited to replacement of the Gate House and Garage roofs as provided in the Paradigm Damage Report.   After more than two years of litigation and after discovery had closed, Plaintiffs' expert recommended adding the replacement of the Main House roof to the claims asserted in the Counterclaim.

Daybreak vehemently objected to adding the new claim and moved for an order limiting the Counterclaim to the claims asserted in the Paradigm Damage Report.  Daybreak was successful,

its motion was granted, and the Superior Court's Order precluded Plaintiffs from asserting a claim for replacement of the Main House roof in the Superior Court Action.

Having successfully obtained a court order *excluding* any claim for replacement of the Main House roof from the Superior Court Action Daybreak is collaterally estopped from now claiming the opposite as it does in this motion—that Plaintiffs' claim in the District Court Action for replacement of the Main House roof was "asserted" and "resolved" in the Superior Court case. The Third Circuit has identified four standard requirements for the application of collateral estoppel: (1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action. *Henglein v. Colt Indus. Operating Corp.*, 260 F. 3d 201, 209 (3d Cir. 2001). The requirements for collateral estoppel are satisfied here.

The issue on which Daybreak relies for this motion is identical to the issue raised by Daybreak and ruled on in the Superior Court's April 26, 2017 Order—whether the claims asserted in Plaintiffs' Counterclaim included a claim for replacement of the Main House roof. The *identical issue* was *actually litigated* when the Superior Court considered the evidence and arguments and granted Daybreak's motion to *exclude* any claim for replacement of the Main House roof (and any other claims beyond those identified in the Paradigm Damage Report). Whether Plaintiffs could add a claim for replacement of the Main House roof was *necessary* to the Superior Court's Order limiting Plaintiffs' damages to the costs to replace only the Gate House and Garage roofs itemized in the Paradigm Damage Report. Daybreak was *fully represented* in the Superior Court Action and successfully brought the motion that resulted in the preclusion Order Daybreak now wants to ignore.

The Superior Court Order granting Daybreak's motion precluded any claim for replacement of the Main House roof and limited the claims asserted in the Counterclaim to those in the Paradigm Damage Report.   Plaintiffs were adversely impacted because the damages recommended by their expert were reduced by more than two thirds when the Main House roof replacement was precluded by the Superior Court Order—from $759,357 to $210,000.   The Superior Court Action proceeded toward trial with the claims asserted by Plaintiff limited to those identified in the Paradigm Damage Report—replacement of the Gate House and Garage roofs with no claim for replacement of the Main House roof.

The parties eventually negotiated a settlement of the claims that the Superior Court had ruled were asserted in the Counterclaim.   A final and valid judgment was entered in the Superior Court Action based on a settlement of the Counterclaim as limited by the Superior Court Order. "When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim."   Restatement (Second) of Judgments § 27 (1982).   The Third Circuit has consistently applied this general rule.   *Nat'l R.R. Passenger Corp. v. Pennsylvania Pub. Util. Comm'n,* 288 F. 3d 519, 525 (3d. Cir. 2002).

The Superior Court Settlement Agreement expressly provides that it "does not extinguish" the sole claim in the District Court Action "to the extent that District Court case does not encompass claims that were asserted in the Superior Court case."   Because Plaintiffs were precluded by the Superior Court's April 26, 2017 Order from asserting a claim for replacement of the Main House roof in their Counterclaim, it *could not be asserted in the Superior Court case* and was not extinguished by the settlement agreement.   Daybreak sought and obtained the Superior Court Order excluding the Main House roof replacement from the Counterclaim.   Daybreak is

collaterally estopped from taking the opposite position in this motion. The only claim in the District Court Action *could not be asserted in the Superior Court Action* and was therefore excluded from the Superior Court Settlement Agreement.

The Superior Court's order dismissing that case expressly states the dismissal was based on the parties' settlement. The parties finalized the settlement terms after the dismissal, including the carve out of the District Court Action, and Daybreak's insurer paid Plaintiffs the settlement funds. The order dismissing the Superior Court Action confirms it is based on a settlement that excludes the District Court Action from any release. Daybreak's motion for summary judgment based on release or *res judicata* has no merit and must be denied.

**C.    Sanders' Inspection of the Main House Roof in 2014 and the Recommendations in His Expert Report Are Irrelevant and Did Not Identify Defendant's Breach of Contract at Issue in this Case**

Sanders' inspection of the Main House roof in 2014 is irrelevant to Plaintiffs' Counterclaim in the Superior Court Action as a matter of law based on the Superior Court's April 26, 2017 Order. As discussed above, the Superior Court granted Daybreak's motion and excluded any claim for replacement of the Main House roof from the Counterclaim; and Daybreak is collaterally estopped from claiming otherwise in this motion. Any criticism of the Main House roof construction in Sanders' expert report is irrelevant because the Superior Court ruled Plaintiffs could not assert those claims and could not include replacement of the Main House roof as damages in the Superior Court Action.

Most of Defendant's purported "uncontested facts" relating to Sanders' inspection of the roofs in 2014 are supported only by the inadmissible uncertified and unsigned "draft" transcript of a deposition. That evidence may not be considered by the Court. An uncertified, draft deposition

19

transcript cannot be used or cited in any court proceedings.  See *Impact Mktg. Int'l LLC v. Big O Tires, LLC*, 2012 U.S. LEXIS 12458* at *5 (D. Nev., February 2, 2012).  (*See*, Plaintiffs' Objection to Evidence Offered by Defendant in Support of Motion for Summary Judgment, filed concurrently with this Memorandum.) A district court may only consider admissible evidence in ruling on a motion for summary judgment.  *Williams v. Gomez*, 2016 U.S. Dist. LEXIS 68771* (N.D. Cal., May 25, 2016), citing Fed. R. Civ. P. 56(e); *Orr v. Bank of Am., NT & SA*, 285 F. 3d 764, 773 (9th Cir. 2002).  To be admissible, evidence must be properly authenticated.  "Therefore, 'unauthenticated documents cannot be considered in a motion for summary judgment.'" *Impact Mktg. Int'l LLC v. Big O Tires, LLC*, supra, 2012 U.S. LEXIS 12458* at *4, quoting *Orr v. Bank of America, supra* 285 F. 3d at 773-774.

Even if Sanders' 2014 inspection was relevant to the release at issue in this motion, which it is not, Sanders did not determine that Daybreak breached the Contract by failing to install cleats to secure all the hip ridge seams on the Main House roof.  Sanders was generally critical of the quality and workmanship of Daybreak's installation of all the copper roofs on the Property. Sanders' primary criticism of the Main House roof was that Daybreak installed copper sheets longer than the industry standard without installing expansion cleats. (PSUF 31.)

Sanders opened only a small, 2-foot section of one Main House hip ridge which comprised just 6% of the entire 33-foot length of the hip ridge seam.  Sanders focused his criticism on Daybreak's manner of constructing the ridge seam by folding over irregularly cut copper and covering it with a hip cap.  Sanders mentioned in his report that he did not see either cleats or expansion clips in the 2-foot hip seam he opened.  However, that does not establish as an undisputed fact that there were no cleats in the remaining 94% of the hip seam that Sanders did not open.  Furthermore, nothing Sanders reported inspecting revealed that Daybreak did not install

cleats to secure any of the hip ridge seams on the Main House roof, or on any of the other roofs on the Property. (PSUF 32.)

Sanders did not open an entire hip ridge seam on the Main House or any of the other buildings on the Property as part of his inspection.   Sanders did not determine that Daybreak had not installed cleats in any of the hip ridge seams on any of the buildings based on his minimal investigation of a short section of one hip ridge seam.   Daybreak's failure to secure an entire ridge seam with cleats was not known to Plaintiffs until a different ridge seam from the one Sanders inspected in 2014 was opened up completely by Hurricane Irma in 2017.   Plaintiffs did not know that Daybreak did not install cleats to secure *all* the hip ridge seams on the Property until Daybreak admitted it in depositions in the District Court Action in 2025.   (PSUF 46-51, 54-60, 72.)

Defendant's extensive focus on Sanders' 2014 investigation and his expert report is meaningless.   Nothing Sanders did nor said in 2014 relating to the Main House roof is relevant to Defendant's release/*res judicata* argument because the Superior Court's Order precluded Plaintiff from asserting claims for replacement of the Main House roof.   As a result, Plaintiffs' claim in this District Court Action was excluded from the Superior Court Settlement Agreement and was not decided by the Superior Court.   Defendant's motion for summary judgment based on the settlement agreement and Sanders' inspection of the Main House roof in 2014 must be denied.

**D.     Defendant's Causation, Intervening Cause, Alteration and Mitigation Arguments Are Meritless and Are Not Defenses to this Breach of Contract Action**

Plaintiffs allege only a breach of contract claim for which they seek to recover the benefit of their bargain: a copper roof on their Main House secured to the substrate with cleats spaced as required by the Contract and the industry standards incorporated into it.   Plaintiffs do not make claims of negligence, product liability or any other tort.   Plaintiffs do not seek to recover damages

to their property caused by Daybreak's faulty work or a failure of the roof during the high winds that hit St. John during Hurricane Irma.   Plaintiffs just want the benefit of their bargain which under the circumstances requires replacement of the Main House roof.    The causation requirement for breach of contract is that the damages must be a foreseeable result of the breach when the contract was made.   Restatement (Second) of Contracts § 351.   It was foreseeable when Daybreak agreed to install cleats as specified by the Contract that Daybreak's failure to do so would require replacement of the entire Main House roof to properly secure it with cleats.

Plaintiffs were not obligated to pay twice for the roof they bargained for once they learned that at least one roof seam was not secured as required by the Contract after Hurricane Irma.   The injured party in a breach of contract action is required to make reasonable efforts to minimize their losses, and they cannot recover for damages they could have avoided.   Restatement (Second) of Contracts § 350.   Plaintiffs complied with the mitigation requirement.   After one complete hip ridge seam was opened by the hurricane Plaintiffs mitigated any water leakage or other damage that might result from Daybreak's breach of the Contract by hiring contractors to secure the roof and repair any leaks or potential leaks.

Plaintiffs are not seeking property damages caused by the failure to secure the Main House roof.   Plaintiffs seek to recover the benefit of their bargain in the form of the roof they paid Daybreak to install.   Defendant's suggestion that Plaintiffs should have replaced the entire Main House roof at their own cost to "mitigate" their damages is absurd. Plaintiffs did not know that Daybreak breached the Contract's requirements by failing to secure all the hip ridges on the Main House until Daybreak admitted it in depositions in 2025.

Defendant's suggestion that Sanders "materially altered" the Main House roof in 2014 is wrong and would not be a defense to Plaintiffs' claim for breach of the Contract even if he had done

22

so.   The ridge seam Sanders inspected in 2014 was not the same ridge seam that opened during Hurricane Irma in 2017 (PSUF 50.)   Sanders' inspection of a 2-foot section, or approximately 6% of a different seam has no relation to this breach of contract case.   Again, this is not a tort case and "causation" of the damage resulting from Daybreak's breach of contract is not an issue.   Plaintiffs are entitled to a roof on their Main House with the wind protection for which they bargained and paid.

Likewise, whether the roof Daybreak agreed to provide was designed to withstand any particular windspeed is irrelevant to the breach of contract claim.   Similarly, Sanders' expertise in windspeed resistance and the wind resistance provided by the cleats is irrelevant.   This is not a negligent design or construction case.   Plaintiffs seek the benefit of their bargain which requires Daybreak to replace the Main House roof.   Plaintiffs are entitled to the cost of a new roof at the time a judgment is entered in their favor.

## IV.    CONCLUSION

Defendant is not entitled to summary judgment based on release or *res judicata* because the breach of contract claim for replacement of the Main House roof was not asserted in the Superior Court Action and is therefore excluded from the Superior Court Settlement Agreement.   The other arguments Defendant makes have no relevance to this breach of contract action.   Even if they could be considered, there are factual disputes and issues requiring expert testimony that preclude summary judgment.   Defendant's motion for summary judgment must be denied.

Dated:   January 4, 2026

**LAW OFFICES OF FRIEDBERG & BUNGE**

By: */s/ THOMAS F. FRIEDBERG, ESQ.*
THOMAS F. FRIEDBERG, ESQ.(VI#1006)
Attorneys for Plaintiffs THOMAS F.
FRIEDBERG & SARAH L. BUNGE
**THE LAW OFFICES OF FRIEDBERG &
BUNGE**
1005 ROSECRANS STREET, SUITE 202

PO BOX 6814
SAN DIEGO, CALIFORNIA 92166
TEL : (619)557-0101
FAX : (619)557-0560
E-mail : "tom@lawofficefb.com"

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of January 2026, a true and correct copy of

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'**

**OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** was filed with

the CM/ECF system which will provide notice to the following:

Jeffrey C. Cosby, Esq.
Florida Bar No. 967981
Service to: eservice@wlclaw.com
Attorney for Defendant Daybreak Inc
Williams, Leininger & Cosby, P.A.
301 SE Ocean Blvd., Suite 205
Stuart, FL   34994
Telephone: 772-463-8402
Facsimile: 772-463-4820

Andrew C. Simpson
**ANDREW C. SIMPSON, PC**
2191 Church St., Ste. 5
Christiansted, VI 00820
TEL : 340.719.3900
E-MAIL :asimpson@coralbrief.com

           */s/ THOMAS F. FRIEDBERG*
                        **THOMAS F. FRIEDBERG**