IN THE UNITED STATES DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| THOMAS F. FRIEDBERG & SARAH L. BUNGE, | ACTION NO. 3:19-cv-0053-RAM-EAH |
| Plaintiffs, | ACTION FOR DAMAGES |
| v. | |
| DAYBREAK, INC. dba HUBER & ASSOCIATES, | |
| Defendant. | |

## PLAINTIFFS' RESPONSE TO DEFENDANT'S STATEMENT OF UNCONTESTED MATERIAL FACTS IN SUPPORT OF MOTION FOR FINAL SUMMARY JUDGMENT

Plaintiffs, Thomas F. Friedberg and Sarah L. Bunge ("Plaintiffs"), respectfully submit the following Plaintiffs' Response to Defendant's Statement of Uncontested Facts in Support of their Opposition to the Motion for Summary Judgment filed by Defendant Daybreak, Inc. dba Huber & Associates ("Defendant" or "Daybreak"):

1.     In 2010, Daybreak Roofing Company ("Daybreak") was contracted to install copper  standing seam roofs on eight separate structures, including the "Main Pavilion," at the Friedberg-Bunge residence in St. John, Virgin Islands. Exhibit 1, Contract.

**Plaintiffs' Response:**

Undisputed for the purpose of ruling on the motion for summary judgment only.

2.     The contract specified that cleats should be installed at an average of 9.5 inches on center. *Id.*

1

**Plaintiffs' Response:**

Undisputed for the purpose of ruling on the motion for summary judgment only.

3.    The contract also specified that the roofing would be "installed in accordance with *Revere  Copper & Common Sense & SMACNA*." (Italics in the original.) *Id.*

**Plaintiffs' Response:**

Undisputed for the purpose of ruling on the motion for summary judgment only.

4.    Each ridge seam is located at the point where the sides of one triangle intersect with  the  sides of  another triangle. *See* Exhibit 2 at 8:3-6, Arther Sanders' Deposition taken September 11, 2025.

**Plaintiffs' Response:**

Undisputed for the purpose of ruling on the motion for summary judgment only.

5.    The other seams on the roof are "standing seams" joining 15" wide copper "pans" together  to form one of the eight triangles. *See* Exhibit 1.

**Plaintiffs' Response:**

Undisputed for the purpose of ruling on the motion for summary judgment only.

6.    Daybreak sued Friedberg in the Superior Court of the Virgin Islands alleging that Friedberg   had failed to make the final payment due under the contract. *See* Exhibit 3, Complaint filed  in Case No. ST-2010-CV-00716 in the St. Thomas/St. John Division of the Superior Court  of the Virgin Islands on December 21, 2010 ("Case No. ST-2010-CV-00716").

**Plaintiffs' Response:**

Undisputed for the purpose of ruling on the motion for summary judgment only.

7.    Friedberg counterclaimed, alleging widespread defects in the roofing work across all eight  structures, including the Main Pavillion. *See* Exhibit 4, Answer, Counterclaim and Third-

Party Claim filed in in Case No. ST-2010-CV-00716 on October 5, 2012.

**Plaintiffs' Response:**

**Disputed**.   Plaintiffs' Counterclaim was based on incomplete and defective work done by Plaintiffs on the two upper buildings on the Property which had experienced water intrusion damage—the Gate House and the Garage.   Plaintiffs' Counterclaim included a claim alleging that Daybreak breached the Contract by "failing to complete the work and by walking off the job prior to the final walk through and leaving certain portions of the roofs uncompleted."   The Counterclaim alleged that as a result of Daybreak's breach of contract by failing to complete their job "the roofs leak and have resulted in damage to Counterclaimants home."   The breach of contract claim identified the specific damage as replacing the roof on the Gate House.   *See*, Declaration of Thomas F. Friedberg in Support of Plaintiffs' Opposition to Defendant's Motion for Summary Judgment ("Friedberg Decl."), ¶ 10; Counterclaim at ¶ 9, attached as Exhibit C to Friedberg Decl.

The Counterclaim included a breach of warranty claim against Daybreak also based on incomplete and defective work on the Gate House roof.   The Breach of Warranty claim alleges that "[t]he roof panels, specifically on the gate house, leak and are not of merchantable quality nor fit for their intended purpose."   *See*, Friedberg Decl., ¶ 11; Counterclaim at ¶ 17, attached as Exhibit C to Friedberg Decl.

The Counterclaim included a claim for negligence by Daybreak based on the roof leaks in the Gatehouse and Garage that required the roofs on those upper buildings to be replaced.   The Counterclaim alleged that Daybreak negligently installed flashing over the plaster installed copper panels that resulted in "cracking and damaging the custom colored plaster that was in place prior to the installation by Counterdefendant."   The Counterclaim alleged that as a result of Daybreak's

negligence the roofs on the Gate House and Garage leaked. The Pavillion, also known as the Main House ("Main House"), which is the subject of the District Court Action, was not referred to in the Superior Court Counterclaim and no claims arising out of the work on the Main House were asserted in the Counterclaim.   The Counterclaim alleged damages that included the cost of replacing the leaking roofs on the Gate House and replastering the areas of custom-colored plaster that were damaged by the leaking roofs.   *See*, Friedberg Decl., ¶ 12; Counterclaim at ¶ 20, attached as Exhibit C to Friedberg Decl.

The Counterclaim includes fraud claims against Daybreak and Huber based on misrepresentations they made regarding the amount of copper that would be required based on Daybreak's measurements that fraudulently induced Plaintiffs to enter into the Contract.   *See*, Friedberg Decl., ¶ 13; Counterclaim at ¶¶ 23-29, Third Party Complaint at ¶¶ 5-12, attached as Exhibit C to Friedberg Decl.

At the time Plaintiffs filed their Counterclaim in the Superior Court Action, Plaintiffs had not observed leaking in any roofs installed by Daybreak except for the Gate House and Garage, which were the only buildings completed and occupied at the time.   The Counterclaim does not assert claims for replacement of the roof on any buildings on the Property except for the Gate House.   Friedberg Decl., ¶ 14; Counterclaim, attached as Exhibit C to Friedberg Decl.

The Counterclaim does not allege any breach of the Contract or negligence by Daybreak relating to the Contract requirement that Daybreak install cleats to secure the copper roof at an average of 9.5 inches on center.   When Plaintiffs filed the Counterclaim, they did not know that Daybreak had not complied with the Contract requirement to install cleats to secure the copper roof at any of the hip ridges on the octagonal roof of the Main House.   Plaintiffs did not learn that Daybreak did not install cleats to secure the copper to the substrate at any of the hip ridges on the

Main House until Daybreak admitted it did not do so in depositions taken in April 2025 and October 2025 and then claimed it was not required by the Contract and Revere Copper & Common Sense and SMACNA.   Friedberg Decl., ¶¶ 15, 16, 17, 57-63; Counterclaim, attached as Exhibit C to Friedberg Decl.

8.    To support his counterclaim, Friedberg retained Arthur L. Sanders, AIA, as an expert  witness to evaluate the alleged defects. Exhibit 5, Expert Report of Sanders in Case No. ST-2010-CV-00716.

**Plaintiffs' Response:**

**Disputed**.   To support their damage claims Plaintiffs retained Paradigm Construction Services ("Paradigm") in March 2014 to prepare a Preliminary Cost of Repair of the damage claims asserted in the Superior Court Counterclaim.   Paradigm inspected the roofs at issue in the Counterclaim and prepared the Paradigm Preliminary Cost of Repair ("Paradigm Damage Report") to document the damages asserted in the Counterclaim and estimate the cost of repairs.   In March 2014 Plaintiffs produced the Paradigm Damage Report in discovery to support the damages asserted in the Counterclaim and responded to an interrogatory that the damages asserted against Daybreak in the Counterclaim consisted of $210,676.12 for the cost of replacing the Gate House and Garage roofs, associated stucco repairs on those buildings, a small cost to remove and replace bad caulking on the Main House roof, the relocation of 15 vents on the roofs of all buildings, and the General Requirements to perform that work. The damage claims identified in the Paradigm Report included only the cost to replace the roofs on the Gate House and Garage and did not include replacement of the roofs on the Main House or any other buildings on the Property.

In an April 26, 2017 Order the Superior Court granted Defendants' motion to limit Plaintiffs claims for damages asserted in their Counterclaim in the Superior Court Action to the

$210,000 documented in the Paradigm Damage Report. The Superior Court's April 26, 2017 Order limited the damages asserted in the Counterclaim to those identified in the Paradigm Damage Report, consisting of replacement of the leaking roofs on the Gate House and Garage, stucco repair related to the replacement of those two roofs, minor caulking removal and replacement on the Main House, relocation of 15 vents, and General Conditions to perform the specified work.

In November 2014 Plaintiffs designated Arthur Sanders ("Sanders") as a roofing expert. Sanders prepared a report that included his opinion on the defects identified in the Paradigm Damage Report, with updated cost estimates to perform the replacement of the Gate House roof and Garage roof, associated stucco repairs to those buildings, the other minor repairs identified in the Paradigm Damage Report, and the General Conditions and material costs. Pursuant to the April 26, 2017 Order Sanders' opinion testimony was limited to the specific damages identified in the Paradigm Damage Report totaling approximately $210,000. Had the Superior Court Action not settled, Sanders' expert testimony at trial was limited by the Superior Court's April 26, 2017 Order to the damages asserted in the Paradigm Damage Report. Pursuant to the April 26, 2017 Order Sanders was precluded from asserting defects requiring the replacement of the Main House roof or any roofs on the Property other than the Gate House and Garage roof replacement that was included in the Paradigm Damage Report.

*See*, Friedberg Decl., ¶¶ 19-26, 28, 30, 31, 32, 42-47; Paradigm Damage Report, attached as Exhibit D to Friedberg Decl.; Superior Court April 26, 2017 Order, attached as Exhibit G to Friedberg Decl.

9.    In support of his expert report for the Superior Court litigation, Sanders conducted a comprehensive inspection of all eight roofs, including an invasive examination of the

6

Main   Pavilion roof.  *Id.* at Page 2.

**Plaintiffs' Response:**

**Disputed** and irrelevant.  Sanders inspected all the roofs but did not perform a "comprehensive inspection" or "invasive examination" of the Main House roof.  Sanders was critical of the quality and workmanship of Daybreak's installation of all the copper roofs on the Property.  Sanders' primary criticism of the Main House roof was that Daybreak had installed copper sheets in excess of 34 feet which exceeded the industry standard of 30 feet.  Sanders opined that spans of the length installed by Daybreak should have been designed with either expansion relief or as traditional shorter lengths with transverse seams.

Sanders inspection of Daybreak's installation of cleats to secure the copper panels was limited to opening "one standing seam in the field of the roof on the low sloped west side of the Main Pavilion" and finding "four cleats in this area that were spaced at 8", 10", and 9"."  Sanders' finding confirmed that while Daybreak may not have exactly complied with the 9.5-inch cleat spacing requirement in the Contract, the cleats found in the standing seam were close enough to meet the "on average" requirement.

Sanders' expert report included general criticism of the condition of Daybreak's workmanship on the ridges on the roofs that were covered with riveted ridge caps.  Sanders described removing only one section of the cap that covered one hip ridge seam on the Main House roof.   The total length of the Main House hip ridge was approximately 33 feet and Sanders opened only an approximately 2-foot section of the seam, or approximately 6% of the total length of the hip ridge.   Sanders reported that he did not observe the presence of cleats or expansion clips in the 2-foot section of hip ridge seam he opened on the Main House roof.    The spacing of the cleats in the pan seams that were previously exposed in the seam on the west side of the Main House

roof were not spaced at precisely 9.5 inches but rather varied between 8 and 10 inches.    Given the inconsistent spacing of the cleats on the west side, there was no reason to assume that even if there were no cleats on the approximately 2-foot section which represented about 6% of the total length of the hip ridge, that there was an absence of cleats on the remaining 31 feet, or 94%, of the remaining hip ridge.    Sanders did not open an entire hip ridge seam on the Main House or any of the other buildings on the Property as part of his inspection.    Sanders did not determine that Daybreak had not installed cleats in any of the hip ridge seams on any of the buildings based on his minimal investigation of a short section of one hip ridge seam.    Plaintiffs did not know that Daybreak did not install cleats to secure any of the hip ridge seams on the Property until Daybreak admitted it in depositions in the District Court Action in 2025.

Sanders' inspection of the Main House roof is irrelevant to Plaintiffs' Counterclaim in the Superior Court Action as a matter of law based on the Superior Court's April 26, 2017 Order. The Superior Court Order limited the claims asserted in the Counterclaim to replacement of only the Gate House and Garage roofs and the other minor repairs identified in the Paradigm Damage Report at a total cost of approximately $210,000.

*See*, Friedberg Decl., ¶¶ 31-40, 42-47; Hoffmann Expert Report, attached as Exhibit F to Friedberg Decl.; Superior Court April 26, 2017 Order, attached as Exhibit G to Friedberg Decl.

10.    As part of this inspection,  Sanders physically opened a section of the copper roof on the  Main Pavilion to examine the construction beneath the visible surface and observed the absence of cleats in the ridges. Exhibit 6, 14:9-15:25, Arthur Sanders' Deposition taken in  Case No. ST-2010-CV-00716.

**Plaintiffs' Response:**

8

**Disputed,** irrelevant and not supported by admissible evidence. This purported uncontested fact is supported only by an uncertified, unsigned and undated deposition transcript marked as a "draft" from a different case. Plaintiffs **object** to the uncertified draft deposition transcript as inadmissible hearsay. An uncertified, draft deposition transcript cannot be used or cited in any court proceedings. See *Impact Mktg. Int'l LLC v. Big O Tires, LLC*, 2012 U.S. LEXIS 12458* at *5 (D. Nev., February 2, 2012). A district court may only consider admissible evidence in ruling on a motion for summary judgment. *Williams v. Gomez*, 2016 U.S. Dist. LEXIS 68771* (N.D. Cal., May 25, 2016), citing Fed. R. Civ. P. 56(e); *Orr v. Bank of Am., NT & SA*, 285 F. 3d 764, 773 (9th Cir. 2002). To be admissible, evidence must be properly authenticated. "Therefore, 'unauthenticated documents cannot be considered in a motion for summary judgment.'" *Impact Mktg. Int'l LLC v. Big O Tires, LLC*, supra, 2012 U.S. LEXIS 12458* at *4, quoting *Orr v. Bank of America, supra* 285 F. 3d at 773-774. Defendant has not authenticated the undated, uncertified draft deposition transcript which is the only evidence it cites to support this purported fact. The deposition transcript cannot be considered and there is no evidence supporting the alleged uncontested fact.

Plaintiffs dispute that Sanders "opened a section of the copper roof on the Main Pavilion" and observed "the absence of cleats in the ridges." Sanders reported in the Hoffmann Copper Roof Investigation report dated November 12, 2014 ("Hoffmann Expert Report") finding cleats spaced on an average of 9.5 inches in the section of the seam on the west side of the Main House roof that was opened to inspect for cleats. Sanders opened only a small, 2-foot section of one Main House hip ridge which comprised just 6% of the entire 33-foot length of the hip ridge seam. Sanders focused his criticism on Daybreak's manner of constructing the ridge seam by folding over irregularly cut copper and covering it with a hip cap. Sanders mentioned in his report that

he did not see either cleats or expansion clips in the 2-foot hip seam he opened.    However, that does not establish as an undisputed fact that there were no cleats in the remaining 94% of the hip seam that Sanders did not open.    Furthermore, nothing Sanders reported inspecting revealed that Daybreak did not install cleats to secure any of the hip ridge seams on the Main House roof, or on any of the other roofs on the Property.

Sanders did not determine that Daybreak had not installed cleats in complete 33-foot seam on the Main House roof until a different seam was completely opened by Hurricane Irma in 2017. Sanders did not determine that Daybreak had not installed cleats to secure any of the hip ridge seams on any of the buildings based on his minimal investigation of a short section of one hip ridge seam.    Plaintiffs did not know that Daybreak did not install cleats to secure any of the hip ridge seams on the Property until Daybreak admitted it in depositions in the District Court Action in 2025.

Sanders' inspection of the Main House roof is irrelevant to Plaintiffs' Counterclaim in the Superior Court Action as a matter of law based on the Superior Court's April 26, 2017 Order. The Superior Court Order limited the claims asserted in the Counterclaim to replacement of only the Gate House and Garage roofs and the other minor repairs identified in the Paradigm Damage Report at a total cost of approximately $210,000.

*See*, Uncertified deposition marked as "draft" attached as Exhibit 2 to Defendant's Statement of Uncontested Facts in Support of Motion for Final Summary Judgment ("Defendant's Statement"); Friedberg Decl., ¶¶ 30-40, 42-47, 55, 57-63; Paradigm Damage Report, attached as Exhibit D to Friedberg Decl.; Hoffmann Expert Report, attached as Exhibit F to Friedberg Decl.; Superior Court April 26, 2017 Order, attached as Exhibit G to Friedberg Decl.

11.    When asked why he brought a roofing mechanic with him to the inspection of the

roof, he explained that it was for the specific purpose of determining if the roof was cleated in accordance with the contractual requirements:

> I know how copper is installed and the question is, you know, do a due diligence to whether this was installed properly or does it – *is it cleated in accordance with all the spec requirements that the contractor said he was going to do.* You -- you can't just look at it – you can't put a ladder up the side of a roof and look at the copper and say it looks fine.

*Id.* at 12:17-24 (emphasis added).

**Plaintiffs' Response:**

**Disputed**, irrelevant and not supported by admissible evidence.  This purported uncontested fact is supported only by an uncertified, unsigned and undated deposition transcript marked as a "draft" from a different case.  Plaintiffs **object** to the uncertified draft deposition transcript as inadmissible hearsay.  An uncertified, draft deposition transcript cannot be used or cited in any court proceedings.  See *Impact Mktg. Int'l LLC v. Big O Tires, LLC*, 2012 U.S. LEXIS 12458* at *5 (D. Nev., February 2, 2012).   A district court may only consider admissible evidence in ruling on a motion for summary judgment.  *Williams v. Gomez*, 2016 U.S. Dist. LEXIS 68771* (N.D. Cal., May 25, 2016), citing Fed. R. Civ. P. 56(e); *Orr v. Bank of Am., NT & SA*, 285 F. 3d 764, 773 (9th Cir. 2002).   To be admissible, evidence must be properly authenticated. "Therefore, 'unauthenticated documents cannot be considered in a motion for summary judgment.'" *Impact Mktg. Int'l LLC v. Big O Tires, LLC*, supra, 2012 U.S. LEXIS 12458* at *4, quoting *Orr v. Bank of America, supra* 285 F. 3d at 773-774.   Defendant has not authenticated the undated, uncertified draft deposition transcript which is the only evidence it cites to support this purported fact.   The deposition transcript cannot be considered and there is no evidence supporting the alleged uncontested fact.

Sanders' inspection of the Main House roof is irrelevant to Plaintiffs' Counterclaim in the Superior Court Action as a matter of law based on the Superior Court's April 26, 2017 Order. The Superior Court Order limited the claims asserted in the Counterclaim to replacement of only the Gate House and Garage roofs and the other minor repairs identified in the Paradigm Damage Report at a total cost of approximately $210,000.

*See*, Uncertified deposition marked as "draft" attached as Exhibit 2 to Defendant's Statement; Friedberg Decl., ¶¶ 30-40, 42-47, 55, 57-63; Paradigm Damage Report, attached as Exhibit D to Friedberg Decl.; Hoffmann Expert Report, attached as Exhibit F to Friedberg Decl.; Superior Court April 26, 2017 Order, attached as Exhibit G to Friedberg Decl.

12.    As part of this inspection, Sanders had a roofer physically open a section of the copper roof  on the main pavilion to examine the construction beneath the visible surface and described  what he observed:

> Q: Okay. So this -- the place where you did this was on the main pavilion?
>
> A: Yes.
>
> Q: Okay. And you said you unlocked -- you actually unlocked the ridge --
>
> A: We drilled out the pop rivets on the cap, we -- we unlocked the portion that  was overlapped and we found in that case *there were no cleats so in the -- in the  intersection of the pans at the ridges, we found no cleats securing those to the --  to the substrate below.*
>
> Q: *And this would have been cleats in the ridges or cleats in the*
>
> -- A: *Cleats in the ridges.*
>
> Q: Not in the standing seam, you are talking?
>
> A: Not in the standing seam.

*Id.* at 15:1-17 (emphasis added).

**Plaintiffs' Response:**

**Disputed**, irrelevant and not supported by admissible evidence. This purported uncontested fact is supported only by an uncertified, unsigned and undated deposition transcript marked as a "draft" from a different case. Plaintiffs **object** to the uncertified draft deposition transcript as inadmissible hearsay. An uncertified, draft deposition transcript cannot be used or cited in any court proceedings. See *Impact Mktg. Int'l LLC v. Big O Tires, LLC*, 2012 U.S. LEXIS 12458* at *5 (D. Nev., February 2, 2012). A district court may only consider admissible evidence in ruling on a motion for summary judgment. *Williams v. Gomez*, 2016 U.S. Dist. LEXIS 68771* (N.D. Cal., May 25, 2016), citing Fed. R. Civ. P. 56(e); *Orr v. Bank of Am., NT & SA*, 285 F. 3d 764, 773 (9th Cir. 2002). To be admissible, evidence must be properly authenticated. "Therefore, 'unauthenticated documents cannot be considered in a motion for summary judgment.'" *Impact Mktg. Int'l LLC v. Big O Tires, LLC*, supra, 2012 U.S. LEXIS 12458* at *4, quoting *Orr v. Bank of America, supra* 285 F. 3d at 773-774. Defendant has not authenticated the undated, uncertified draft deposition transcript which is the only evidence it cites to support this purported fact. The deposition transcript cannot be considered and there is no evidence supporting the alleged uncontested fact.

Sanders' inspection of the Main House roof is irrelevant to Plaintiffs' Counterclaim in the Superior Court Action as a matter of law based on the Superior Court's April 26, 2017 Order. The Superior Court Order limited the claims asserted in the Counterclaim to replacement of only the Gate House and Garage roofs and the other minor repairs identified in the Paradigm Damage Report at a total cost of approximately $210,000.

Disputed that Sanders determined there were no cleats "in the ridges." Sanders reported that his inspection in 2014 involved opening up only a small, approximately 2-foot section of one hip ridge on the Main House roof. The small section Sanders inspected in 2014 was only 6% of

the entire 33-foot hip ridge seam.   Sanders' inspection of that small section does not establish

that the remaining 94% of the ridge seam lacked any cleats at all.   It also did not establish that

Daybreak did not install cleats in any of the hip ridge seams on the Main House or the roofs on

any other building on the Property.

*See*, Uncertified deposition marked as "draft" attached as Exhibit 2 to Defendant's

Statement; Friedberg Decl., ¶¶ 30-40, 42-47, 55, 57-63; Paradigm Damage Report, attached as

Exhibit D to Friedberg Decl.; Hoffmann Expert Report, attached as Exhibit F to Friedberg Decl.;

Superior Court April 26, 2017 Order, attached as Exhibit G to Friedberg Decl.


13.    Sanders also testified regarding how much of the roof he took off:


> Q: And how far -- how much of the ridge did you -- I don't know what
> the term is -- unwind?
> A: Yeah. We did that at the intersection of the pans and we took off about a
> ten  foot section of cap. We opened up two pan-widths, approximately. So you
> know,  there should have been a minimum of two cleats, one in each pan.

*Id.* at 18:12-19.

**Plaintiffs' Response:**

**Disputed**, irrelevant and not supported by admissible evidence.   This purported

uncontested fact is supported only by an uncertified, unsigned and undated deposition transcript

marked as a "draft" from a different case.   Plaintiffs **object** to the uncertified draft deposition

transcript as inadmissible hearsay.   An uncertified, draft deposition transcript cannot be used or

cited in any court proceedings.   See *Impact Mktg. Int'l LLC v. Big O Tires, LLC*, 2012 U.S. LEXIS

12458* at *5 (D. Nev., February 2, 2012).    A district court may only consider admissible

evidence in ruling on a motion for summary judgment.   *Williams v. Gomez*, 2016 U.S. Dist.

LEXIS 68771* (N.D. Cal., May 25, 2016), citing Fed. R. Civ. P. 56(e); *Orr v. Bank of Am., NT &*

*SA*, 285 F. 3d 764, 773 (9th Cir. 2002). To be admissible, evidence must be properly authenticated. "Therefore, 'unauthenticated documents cannot be considered in a motion for summary judgment.'" *Impact Mktg. Int'l LLC v. Big O Tires, LLC*, supra, 2012 U.S. LEXIS 12458* at *4, quoting *Orr v. Bank of America, supra* 285 F. 3d at 773-774. Defendant has not authenticated the undated, uncertified draft deposition transcript which is the only evidence it cites to support this purported fact. The deposition transcript cannot be considered and there is no evidence supporting the alleged uncontested fact.

Sanders' inspection of the Main House roof is irrelevant to Plaintiffs' Counterclaim in the Superior Court Action as a matter of law based on the Superior Court's April 26, 2017 Order. The Superior Court Order limited the claims asserted in the Counterclaim to replacement of only the Gate House and Garage roofs and the other minor repairs identified in the Paradigm Damage Report at a total cost of approximately $210,000.

Undisputed for the purpose of ruling on the motion for summary judgment only that Sanders removed a section of the cap that was installed over the hip ridge and opened only a small, approximately 2-foot section of the seam.

Disputed that Sanders' inspection of a 2-foot section comprising only 6% of the 33-foot long hip ridge seam established that Daybreak did not install cleats anywhere in that seam, or in any other hip ridge seam on the Property, as Daybreak admitted for the first time in depositions the District Court Action.

*See*, Uncertified deposition marked as "draft" attached as Exhibit 2 to Defendant's Statement; Friedberg Decl., ¶¶ 30-40, 42-47, 55, 57-63; Paradigm Damage Report, attached as Exhibit D to Friedberg Decl.; Hoffmann Expert Report, attached as Exhibit F to Friedberg Decl.; Superior Court April 26, 2017 Order, attached as Exhibit G to Friedberg Decl.

14.    The specific purpose of opening up the ridge was to check for cleats.

> The remainder of the first day was spent investigating the pan and *ridge* construction of the Main Pavilion. Traversing the entire roof, defects in the pans were noted and photographically documented. A section of the *intersecting pans between the pie shapes* of the octagon was opened up by first drilling out the pop- rivets, removing one section of cap, revealing the joined pans, *and unfolding the overlapped pan edges to check for clips.[2]* This condition was then reinstalled with new rivets replacing those removed.

Exhibit 5 at Page 2.

**Plaintiffs' Response:**

**Disputed** and irrelevant. Sanders' inspection of the Main House roof is irrelevant to Plaintiffs' Counterclaim in the Superior Court Action as a matter of law based on the Superior Court's April 26, 2017 Order. The Superior Court Order limited the claims asserted in the Counterclaim to replacement of only the Gate House and Garage roofs and the other minor repairs identified in the Paradigm Damage Report at a total cost of approximately $210,000.

Disputed that Sanders' inspection of a 2-foot section comprising only 6% of the 33-foot long hip ridge seam established that Daybreak did not install cleats anywhere in that seam, or in any other hip ridge seam on the Property, as Daybreak admitted for the first time in depositions the District Court Action.

*See*, Friedberg Decl., ¶¶ 30-40, 42-47, 55, 57-63; Paradigm Damage Report, attached as Exhibit D to Friedberg Decl.; Hoffmann Expert Report, attached as Exhibit F to Friedberg Decl.; Superior Court April 26, 2017 Order, attached as Exhibit G to Friedberg Decl.

15.    The ridge seam that Sanders had opened up is shown in Photo 40 in his 2014 Expert Report:



Photo 40. Ridge seam opened showing a simple lap not a lock.

*Id.* at Page 21.

**Plaintiffs' Response:**

Undisputed for the purpose of ruling on the motion for summary judgment only.

16.    In his September 11, 2025 deposition in the present case, Sanders was asked about Photo 40 from his 2014 report. Exhibit 2 at 16:3-11.

**Plaintiffs' Response:**

**Disputed**, irrelevant and not supported by admissible evidence.    This purported uncontested fact is supported only by an uncertified, unsigned and undated deposition transcript marked as a "draft" from a different case.    Plaintiffs **object** to the uncertified draft deposition transcript as inadmissible hearsay.    An uncertified, draft deposition transcript cannot be used or cited in any court proceedings.    See *Impact Mktg. Int'l LLC v. Big O Tires, LLC*, 2012 U.S. LEXIS 12458* at *5 (D. Nev., February 2, 2012).    A district court may only consider admissible evidence in ruling on a motion for summary judgment.    *Williams v. Gomez*, 2016 U.S. Dist.

LEXIS 68771* (N.D. Cal., May 25, 2016), citing Fed. R. Civ. P. 56(e); *Orr v. Bank of Am., NT & SA*, 285 F. 3d 764, 773 (9th Cir. 2002).   To be admissible, evidence must be properly authenticated. "Therefore, 'unauthenticated documents cannot be considered in a motion for summary judgment.'" *Impact Mktg. Int'l LLC v. Big O Tires, LLC*, supra, 2012 U.S. LEXIS 12458* at *4, quoting *Orr v. Bank of America, supra* 285 F. 3d at 773-774.   Defendant has not authenticated the undated, uncertified draft deposition transcript which is the only evidence it cites to support this purported fact.   The deposition transcript cannot be considered and there is no evidence supporting the alleged uncontested fact.

Sanders' inspection of the Main House roof is irrelevant to Plaintiffs' Counterclaim in the Superior Court Action as a matter of law based on the Superior Court's April 26, 2017 Order. The Superior Court Order limited the claims asserted in the Counterclaim to replacement of only the Gate House and Garage roofs and the other minor repairs identified in the Paradigm Damage Report at a total cost of approximately $210,000.

*See*, Uncertified deposition marked as "draft" attached as Exhibit 2 to Defendant's Statement; Friedberg Decl., ¶¶ 30-40, 42-47, 55, 57-63; Paradigm Damage Report, attached as Exhibit D to Friedberg Decl.; Hoffmann Expert Report, attached as Exhibit F to Friedberg Decl.; Superior Court April 26, 2017 Order, attached as Exhibit G to Friedberg Decl.

17.    He confirmed that the only ridge seam that failed during Hurricane Irma was the ridge seam  that he opened up in 2014 as shown in Photo 40. *Id.* at 25:18-24.

**Plaintiffs' Response:**

**Disputed**, irrelevant and not supported by admissible evidence.   This purported uncontested fact is supported only by an uncertified, unsigned and undated deposition transcript marked as a "draft" from a different case.   Plaintiffs **object** to the uncertified draft deposition

18

transcript as inadmissible hearsay.   An uncertified, draft deposition transcript cannot be used or cited in any court proceedings.   See *Impact Mktg. Int'l LLC v. Big O Tires, LLC*, 2012 U.S. LEXIS 12458* at *5 (D. Nev., February 2, 2012).   A district court may only consider admissible evidence in ruling on a motion for summary judgment.   *Williams v. Gomez*, 2016 U.S. Dist. LEXIS 68771* (N.D. Cal., May 25, 2016), citing Fed. R. Civ. P. 56(e); *Orr v. Bank of Am., NT & SA*, 285 F. 3d 764, 773 (9th Cir. 2002).   To be admissible, evidence must be properly authenticated. "Therefore, 'unauthenticated documents cannot be considered in a motion for summary judgment.'" *Impact Mktg. Int'l LLC v. Big O Tires, LLC*, supra, 2012 U.S. LEXIS 12458* at *4, quoting *Orr v. Bank of America, supra* 285 F. 3d at 773-774.   Defendant has not authenticated the undated, uncertified draft deposition transcript which is the only evidence it cites to support this purported fact.   The deposition transcript cannot be considered and there is no evidence supporting the alleged uncontested fact.

Sanders' inspection of the Main House roof is irrelevant to Plaintiffs' Counterclaim in the Superior Court Action as a matter of law based on the Superior Court's April 26, 2017 Order. The Superior Court Order limited the claims asserted in the Counterclaim to replacement of only the Gate House and Garage roofs and the other minor repairs identified in the Paradigm Damage Report at a total cost of approximately $210,000.

Disputed because the small, 2-foot section of one ridge seam Sanders inspected in 2014 was **not** the same ridge seam that was completely opened by Hurricane Irma in 2017.   The seam Sanders inspected in 2014 was on the opposite side of the pan where the ridge seam opened in 2017 which revealed the absence of any cleats at all in the entire ridge seam that failed.

*See*, Friedberg Decl., ¶¶ 52 53, Exhibit M.

18.    This alleged defect was also reported in Sanders' 2014 expert report where he

19

summarized  his findings:

> The investigation found that the pan system in the field of the roofs was installed  on the roofs of the nine structures in accordance with industry standards and with  the project required 9.5" o.c. cleat spacing. However, the end conditions at  intersections of pans; *ridges* and hips, were not installed in accordance with  Copper and Common Sense's recommended single lock seam *and were not  secured in the joint with cleats as is standard practice.*

Exhibit 5 at 45 (emphasis added).

**Plaintiffs' Response:**

**Disputed** and irrelevant.  Sanders' inspection of the Main House roof is irrelevant to Plaintiffs' Counterclaim in the Superior Court Action as a matter of law based on the Superior Court's April 26, 2017 Order.   The Superior Court Order limited the claims asserted in the Counterclaim to replacement of only the Gate House and Garage roofs and the other minor repairs identified in the Paradigm Damage Report at a total cost of approximately $210,000.

Sanders' expert report included general criticism of the condition of Daybreak's workmanship on the ridges on the roofs that were covered with riveted ridge caps.   Sanders described removing only one section of the cap that covered one hip ridge seam on the Main House roof.   The total length of the Main House hip ridge was approximately 33 feet and Sanders opened only an approximately 2-foot section of the seam, or approximately 6% of the total length of the hip ridge.   Sanders reported that he did not observe the presence of cleats or expansion clips in the 2-foot section of hip ridge seam he opened on the Main House roof.   The spacing of the cleats in the pan seams that were previously exposed in the seam on the west side of the Main House roof were not spaced at precisely 9.5 inches but rather varied between 8 and 10 inches.   Given the inconsistent spacing of the cleats on the west side, there was no reason to assume that even if there were no cleats on the approximately 2-foot section which represented about 6% of the total

20

length of the hip ridge, that there was an absence of cleats on the remaining 31 feet, or 94%, of the remaining hip ridge.   Sanders did not open an entire hip ridge on the Main House or any of the other buildings on the Property as part of his inspection.   Sanders did not determine that Daybreak had not installed cleats in any of the hip ridge seams on any of the buildings based on is minimal investigation of a short section of one hip ridge seam.   Plaintiffs did not know that Daybreak did not install cleats to secure any of the hip ridge seams on the Property until Daybreak admitted it in depositions in the District Court Action in 2025.

*See*, Friedberg Decl., ¶¶ 30-40, 42-47, 55, 57-63; Paradigm Damage Report, attached as Exhibit D to Friedberg Decl.; Hoffmann Expert Report, attached as Exhibit F to Friedberg Decl.; Superior Court April 26, 2017 Order, attached as Exhibit G to Friedberg Decl.

19.    Sanders emphasized the lack of cleats at the ridge: "[Y]ou can see along this entire section   there are no cleats in the ridge seam." Exhibit 6 at 55:1-2.

**Plaintiffs' Response:**

**Disputed**, irrelevant and not supported by admissible evidence.   This purported uncontested fact is supported only by an uncertified, unsigned and undated deposition transcript marked as a "draft" from a different case.   Plaintiffs **object** to the uncertified draft deposition transcript as inadmissible hearsay.   An uncertified, draft deposition transcript cannot be used or cited in any court proceedings.   See *Impact Mktg. Int'l LLC v. Big O Tires, LLC*, 2012 U.S. LEXIS 12458* at *5 (D. Nev., February 2, 2012).    A district court may only consider admissible evidence in ruling on a motion for summary judgment.   *Williams v. Gomez*, 2016 U.S. Dist. LEXIS 68771* (N.D. Cal., May 25, 2016), citing Fed. R. Civ. P. 56(e); *Orr v. Bank of Am., NT & SA*, 285 F. 3d 764, 773 (9th Cir. 2002).   To be admissible, evidence must be properly authenticated. "Therefore, 'unauthenticated documents cannot be considered in a motion for summary

judgment.'" *Impact Mktg. Int'l LLC v. Big O Tires, LLC*, supra, 2012 U.S. LEXIS 12458* at *4, quoting *Orr v. Bank of America, supra* 285 F. 3d at 773-774.   Defendant has not authenticated the undated, uncertified draft deposition transcript which is the only evidence it cites to support this purported fact.   The deposition transcript cannot be considered and there is no evidence supporting the alleged uncontested fact.

Sanders' inspection of the Main House roof is irrelevant to Plaintiffs' Counterclaim in the Superior Court Action as a matter of law based on the Superior Court's April 26, 2017 Order. The Superior Court Order limited the claims asserted in the Counterclaim to replacement of only the Gate House and Garage roofs and the other minor repairs identified in the Paradigm Damage Report at a total cost of approximately $210,000.

Disputed that Sanders' inspection of a 2-foot section comprising only 6% of the 33-foot long hip ridge seam established that Daybreak did not install cleats anywhere in that seam, or in any other hip ridge seam on the Property, as Daybreak admitted for the first time in depositions the District Court Action.

*See*, Uncertified deposition marked as "draft" attached as Exhibit 2 to Defendant's Statement; Friedberg Decl., ¶¶ 30-40, 42-47, 55, 57-63; Paradigm Damage Report, attached as Exhibit D to Friedberg Decl.; Hoffmann Expert Report, attached as Exhibit F to Friedberg Decl.; Superior Court April 26, 2017 Order, attached as Exhibit G to Friedberg Decl.

20.    When questioned about his concerns regarding the absence of cleats at the ridge, Sanders  provided clear testimony about the structural implications:

> Q:   What was your concern about the lack of a cleat at the—along the ridge?
>
> A:   It should be tied down. It—you know, it should be secured to the substrate.

Exhibit 6, 19:24-20:2.

**Plaintiffs' Response:**

**Disputed**, irrelevant and not supported by admissible evidence.   This purported uncontested fact is supported only by an uncertified, unsigned and undated deposition transcript marked as a "draft" from a different case.   Plaintiffs **object** to the uncertified draft deposition transcript as inadmissible hearsay.   An uncertified, draft deposition transcript cannot be used or cited in any court proceedings.   See *Impact Mktg. Int'l LLC v. Big O Tires, LLC*, 2012 U.S. LEXIS 12458* at *5 (D. Nev., February 2, 2012).   A district court may only consider admissible evidence in ruling on a motion for summary judgment.   *Williams v. Gomez*, 2016 U.S. Dist. LEXIS 68771* (N.D. Cal., May 25, 2016), citing Fed. R. Civ. P. 56(e); *Orr v. Bank of Am., NT & SA*, 285 F. 3d 764, 773 (9th Cir. 2002).   To be admissible, evidence must be properly authenticated.   "Therefore, 'unauthenticated documents cannot be considered in a motion for summary judgment.'" *Impact Mktg. Int'l LLC v. Big O Tires, LLC*, supra, 2012 U.S. LEXIS 12458* at *4, quoting *Orr v. Bank of America, supra* 285 F. 3d at 773-774.   Defendant has not authenticated the undated, uncertified draft deposition transcript which is the only evidence it cites to support this purported fact.   The deposition transcript cannot be considered and there is no evidence supporting the alleged uncontested fact.

Sanders' inspection of the Main House roof is irrelevant to Plaintiffs' Counterclaim in the Superior Court Action as a matter of law based on the Superior Court's April 26, 2017 Order. The Superior Court Order limited the claims asserted in the Counterclaim to replacement of only the Gate House and Garage roofs and the other minor repairs identified in the Paradigm Damage Report at a total cost of approximately $210,000.

Disputed that Sanders' inspection of a 2-foot section comprising only 6% of the 33-foot

long hip ridge seam established that Daybreak did not install cleats anywhere in that seam, or in any other hip ridge seam on the Property, as Daybreak admitted for the first time in depositions the District Court Action.

*See*, Uncertified deposition marked as "draft" attached as Exhibit 2 to Defendant's Statement; Friedberg Decl., ¶¶ 30-40, 42-47, 55, 57-63; Paradigm Damage Report, attached as Exhibit D to Friedberg Decl.; Hoffmann Expert Report, attached as Exhibit F to Friedberg Decl.; Superior Court April 26, 2017 Order, attached as Exhibit G to Friedberg Decl.

21.    Sanders further testified that the reason for the 9.5" spacing requirement for cleats (less than  the industry standard of 12") was because "this is a high wind area." *Id.* at 20:23.

**Plaintiffs' Response:**

**Disputed**, irrelevant and not supported by admissible evidence.  This purported uncontested fact is supported only by an uncertified, unsigned and undated deposition transcript marked as a "draft" from a different case.  Plaintiffs **object** to the uncertified draft deposition transcript as inadmissible hearsay.   An uncertified, draft deposition transcript cannot be used or cited in any court proceedings.   See *Impact Mktg. Int'l LLC v. Big O Tires, LLC*, 2012 U.S. LEXIS 12458* at *5 (D. Nev., February 2, 2012).    A district court may only consider admissible evidence in ruling on a motion for summary judgment.  *Williams v. Gomez*, 2016 U.S. Dist. LEXIS 68771* (N.D. Cal., May 25, 2016), citing Fed. R. Civ. P. 56(e); *Orr v. Bank of Am., NT & SA*, 285 F. 3d 764, 773 (9th Cir. 2002).   To be admissible, evidence must be properly authenticated. "Therefore, 'unauthenticated documents cannot be considered in a motion for summary judgment.'" *Impact Mktg. Int'l LLC v. Big O Tires, LLC*, supra, 2012 U.S. LEXIS 12458* at *4, quoting *Orr v. Bank of America, supra* 285 F. 3d at 773-774.   Defendant has not authenticated the undated, uncertified draft deposition transcript which is the only evidence it cites to support this

purported fact. The deposition transcript cannot be considered and there is no evidence supporting the alleged uncontested fact.

Sanders' inspection of the Main House roof is irrelevant to Plaintiffs' Counterclaim in the Superior Court Action as a matter of law based on the Superior Court's April 26, 2017 Order. The Superior Court Order limited the claims asserted in the Counterclaim to replacement of only the Gate House and Garage roofs and the other minor repairs identified in the Paradigm Damage Report at a total cost of approximately $210,000.

Disputed that Sanders' inspection of a 2-foot section comprising only 6% of the 33-foot long hip ridge seam established that Daybreak did not install cleats anywhere in that seam, or in any other hip ridge seam on the Property, as Daybreak admitted for the first time in depositions the District Court Action.

*See*, Uncertified deposition marked as "draft" attached as Exhibit 2 to Defendant's Statement; Friedberg Decl., ¶¶ 30-40, 42-47, 55, 57-63; Paradigm Damage Report, attached as Exhibit D to Friedberg Decl.; Hoffmann Expert Report, attached as Exhibit F to Friedberg Decl.; Superior Court April 26, 2017 Order, attached as Exhibit G to Friedberg Decl.

Disputed that Sanders' inspection of a 2-foot section comprising only 6% of the 33-foot long hip ridge seam established that Daybreak did not install cleats anywhere in that seam, or in any other hip ridge seam on the Property, as Daybreak admitted for the first time in depositions the District Court Action.

Undisputed that Plaintiffs negotiated to increase the number and decrease the spacing of cleats securing all the copper membrane on all their roofs and paid an increased price for the extra wind protection. Undisputed that Plaintiffs negotiated and paid for the additional protection from wind damage because their property is located in the U.S. Virgin Islands where hurricanes and

25

tropical storms are more likely to occur.   Undisputed that Defendant has admitted it did not comply with that requirement of the Contract.

*See*, Uncertified deposition marked as "draft" attached as Exhibit 2 to Defendant's Statement; Friedberg Decl., ¶¶ 1, 2, 5, 30-40, 42-47, 55, 57-63; Paradigm Damage Report, attached as Exhibit D to Friedberg Decl.; Hoffmann Expert Report, attached as Exhibit F to Friedberg Decl.; Superior Court April 26, 2017 Order, attached as Exhibit G to Friedberg Decl.

22.    At the time of his deposition, Sanders could not recall having seen the engineering report.   Exhibit 6 at 21:2-7.

**Plaintiffs' Response:**

**Disputed**, irrelevant and not supported by admissible evidence.   This purported uncontested fact is supported only by an uncertified, unsigned and undated deposition transcript marked as a "draft" from a different case.   Plaintiffs **object** to the uncertified draft deposition transcript as inadmissible hearsay.   An uncertified, draft deposition transcript cannot be used or cited in any court proceedings.   See *Impact Mktg. Int'l LLC v. Big O Tires, LLC*, 2012 U.S. LEXIS 12458* at *5 (D. Nev., February 2, 2012).    A district court may only consider admissible evidence in ruling on a motion for summary judgment.   *Williams v. Gomez*, 2016 U.S. Dist. LEXIS 68771* (N.D. Cal., May 25, 2016), citing Fed. R. Civ. P. 56(e); *Orr v. Bank of Am., NT & SA*, 285 F. 3d 764, 773 (9th Cir. 2002).   To be admissible, evidence must be properly authenticated. "Therefore, 'unauthenticated documents cannot be considered in a motion for summary judgment.'" *Impact Mktg. Int'l LLC v. Big O Tires, LLC*, supra, 2012 U.S. LEXIS 12458* at *4, quoting *Orr v. Bank of America, supra* 285 F. 3d at 773-774.   Defendant has not authenticated the undated, uncertified draft deposition transcript which is the only evidence it cites to support this

26

purported fact. The deposition transcript cannot be considered and there is no evidence supporting the alleged uncontested fact.

Sanders' inspection of the Main House roof is irrelevant to Plaintiffs' Counterclaim in the Superior Court Action as a matter of law based on the Superior Court's April 26, 2017 Order. The Superior Court Order limited the claims asserted in the Counterclaim to replacement of only the Gate House and Garage roofs and the other minor repairs identified in the Paradigm Damage Report at a total cost of approximately $210,000.

Disputed that Sanders' inspection of a 2-foot section comprising only 6% of the 33-foot long hip ridge seam established that Daybreak did not install cleats anywhere in that seam, or in any other hip ridge seam on the Property, as Daybreak admitted for the first time in depositions the District Court Action.

*See*, Uncertified deposition marked as "draft" attached as Exhibit 2 to Defendant's Statement; Friedberg Decl., ¶¶ 30-40, 42-47, 55, 57-63; Paradigm Damage Report, attached as Exhibit D to Friedberg Decl.; Hoffmann Expert Report, attached as Exhibit F to Friedberg Decl.; Superior Court April 26, 2017 Order, attached as Exhibit G to Friedberg Decl.

23.    It was "absolutely" Sanders' opinion in 2015 during his deposition that "cleats should have been in the ridges." *Id.* at 16:9-11.

**Plaintiffs' Response:**

**Disputed**, irrelevant and not supported by admissible evidence. This purported uncontested fact is supported only by an uncertified, unsigned and undated deposition transcript marked as a "draft" from a different case. Plaintiffs **object** to the uncertified draft deposition transcript as inadmissible hearsay. An uncertified, draft deposition transcript cannot be used or cited in any court proceedings. See *Impact Mktg. Int'l LLC v. Big O Tires, LLC*, 2012 U.S. LEXIS

12458* at *5 (D. Nev., February 2, 2012).    A district court may only consider admissible evidence in ruling on a motion for summary judgment.  *Williams v. Gomez*, 2016 U.S. Dist. LEXIS 68771* (N.D. Cal., May 25, 2016), citing Fed. R. Civ. P. 56(e); *Orr v. Bank of Am., NT & SA*, 285 F. 3d 764, 773 (9th Cir. 2002).   To be admissible, evidence must be properly authenticated. "Therefore, 'unauthenticated documents cannot be considered in a motion for summary judgment.'" *Impact Mktg. Int'l LLC v. Big O Tires, LLC*, supra, 2012 U.S. LEXIS 12458* at *4, quoting *Orr v. Bank of America, supra* 285 F. 3d at 773-774.   Defendant has not authenticated the undated, uncertified draft deposition transcript which is the only evidence it cites to support this purported fact.   The deposition transcript cannot be considered and there is no evidence supporting the alleged uncontested fact.

Sanders' inspection of the Main House roof is irrelevant to Plaintiffs' Counterclaim in the Superior Court Action as a matter of law based on the Superior Court's April 26, 2017 Order. The Superior Court Order limited the claims asserted in the Counterclaim to replacement of only the Gate House and Garage roofs and the other minor repairs identified in the Paradigm Damage Report at a total cost of approximately $210,000.

Disputed that Sanders' inspection of a 2-foot section comprising only 6% of the 33-foot long hip ridge seam established that Daybreak did not install cleats anywhere in that seam, or in any other hip ridge seam on the Property, as Daybreak admitted for the first time in depositions the District Court Action.

Undisputed that all of the Main House roof ridges should have been secured by cleats spaced on an average of 9.5-inches as required by the Contract and that Plaintiffs did not know that Daybreak breached that Contract requirement until Daybreak admitted it in depositions in 2025.

*See*, Uncertified deposition marked as "draft" attached as Exhibit 2 to Defendant's Statement; Friedberg Decl., ¶¶ 30-40, 42-47, 55, 57-63, Exhibits H, I, J, K, L; Paradigm Damage Report, attached as Exhibit D to Friedberg Decl.; Hoffmann Expert Report, attached as Exhibit F to Friedberg Decl.; Superior Court April 26, 2017 Order, attached as Exhibit G to Friedberg Decl.

24.    When deposed in this case, Sanders opined that the alleged damage from Hurricane Irma  would not have occurred if there had been cleats on the ridges:

> 1Q:        But your suggestion is on the ridge line there wouldn't have been  damage had there been cleats, is that a fair statement?
>
> A:  Yes, that's a correct statement.

Exhibit 7 at 100:6-9, Arthur Sanders's Deposition taken August 25, 2025.

**Plaintiffs' Response:**

Undisputed for the purpose of ruling on the motion for summary judgment only.

25.     In supplemental interrogatory responses in the Superior Court case, Friedberg specifically    adopted Sanders' November 12, 2014 expert report as outlining all of his claims regarding  defective workmanship. *See* Exhibit 8, Counterclaimant's Supplemental Responses to  Interrogatories in Case No. ST-2010-CV-00716.

**Plaintiffs' Response:**

**Disputed** and irrelevant.   In December 2014 Plaintiffs responded to an interrogatory asking about their claims for defective construction in the Superior Court Counterclaim by stating: "See Rule 26 report of Arthur Sanders that was previously reported."   The Superior Court's April 26, 2017 Order limited claims Plaintiffs were asserting in their Counterclaim to those identified in the Paradigm Damage Report that was produced in discovery in March 2014.   The claims Plaintiffs asserted in their counterclaim were limited to replacement of the leaking roofs on the Gate House and Garage, stucco repair related to the replacement of those two roofs, minor caulking

removal and replacement on the Main House, relocation of 15 vents, and General Conditions to perform the specified work.

Pursuant to the April 26, 2017 Order Sanders' opinions in his expert report were limited to the specific damages identified in the Paradigm Damage Report totaling approximately $210,000. Pursuant to the April 26, 2017 Order Sanders was precluded from asserting defects requiring the replacement of the Main House roof or any roofs on the Property other than the Gate House and Garage roof replacement that was included in the Paradigm Damage Report.

*See*, Friedberg Decl., ¶¶ 19-26, 28, 30, 31, 32, 42-47; Paradigm Damage Report, attached as Exhibit D to Friedberg Decl.; Superior Court April 26, 2017 Order, attached as Exhibit G to Friedberg Decl.

26.    Sanders specifically called for replacement of the entire Main Pavilion roof in the Superior  Court case. Exhibit 6 at 152:7-10.

**Plaintiffs' Response:**

**Disputed**, irrelevant and not supported by admissible evidence.   This purported uncontested fact is supported only by an uncertified, unsigned and undated deposition transcript marked as a "draft" from a different case.   Plaintiffs **object** to the uncertified draft deposition transcript as inadmissible hearsay.   An uncertified, draft deposition transcript cannot be used or cited in any court proceedings.   See *Impact Mktg. Int'l LLC v. Big O Tires, LLC*, 2012 U.S. LEXIS 12458* at *5 (D. Nev., February 2, 2012).    A district court may only consider admissible evidence in ruling on a motion for summary judgment.   *Williams v. Gomez*, 2016 U.S. Dist. LEXIS 68771* (N.D. Cal., May 25, 2016), citing Fed. R. Civ. P. 56(e); *Orr v. Bank of Am., NT & SA*, 285 F. 3d 764, 773 (9th Cir. 2002).   To be admissible, evidence must be properly authenticated. "Therefore, 'unauthenticated documents cannot be considered in a motion for summary

judgment.'" *Impact Mktg. Int'l LLC v. Big O Tires, LLC*, supra, 2012 U.S. LEXIS 12458* at *4, quoting *Orr v. Bank of America, supra* 285 F. 3d at 773-774.   Defendant has not authenticated the undated, uncertified draft deposition transcript which is the only evidence it cites to support this purported fact.   The deposition transcript cannot be considered and there is no evidence supporting the alleged uncontested fact.

Sanders' opinion regarding replacement of the Main House roof is irrelevant to Plaintiffs' Counterclaim in the Superior Court Action as a matter of law based on the Superior Court's April 26, 2017 Order.   The Superior Court Order limited the claims asserted in the Counterclaim to replacement of only the Gate House and Garage roofs and the other minor repairs identified in the Paradigm Damage Report at a total cost of approximately $210,000.

*See*, Uncertified deposition marked as "draft" attached as Exhibit 2 to Defendant's Statement of Uncontested Facts in Support of Motion for Final Summary Judgment ("Defendant's Statement"); Friedberg Decl., ¶¶ 30-40, 42-47, 55, 57-63; Paradigm Damage Report, attached as Exhibit D to Friedberg Decl.; Superior Court April 26, 2017 Order, attached as Exhibit G to Friedberg Decl.

27.    By adopting Sanders' report, Friedberg therefore asserted claims based on all defects   identified in that report, including:

    a.   The alleged lack of cleats securing the ridge seam to the substrate below it;
    b.   The need for complete replacement of the Main Pavilion roof.

 *See* Exhibit 5 at Page 47 and Exhibit 8.

**Plaintiffs' Response:**

**Disputed** and irrelevant.   Sanders' inspection and report regarding defective construction of the Main House roof was not "adopted" by Plaintiffs and is irrelevant to Plaintiffs' Counterclaim in the Superior Court Action as a matter of law based on the Superior Court's April 26, 2017 Order.

The Superior Court Order limited the claims asserted in the Counterclaim to replacement of only the Gate House and Garage roofs and the other minor repairs identified in the Paradigm Damage Report at a total cost of approximately $210,000.    The Sanders expert report was only "adopted" by Plaintiffs in the Superior Court Action to the extent it addressed the cost of replacing the Gate House and Garage roofs and the other defects identified in the Paradigm Damage Report.

*See*, Friedberg Decl., ¶¶ 19-26, 28, 30, 31, 32, 42-47; Paradigm Damage Report, attached as Exhibit D to Friedberg Decl.; Superior Court April 26, 2017 Order, attached as Exhibit G to Friedberg Decl.

28.    Despite Sanders' 2014 recommendation for complete replacement, despite his testimony   about wind vulnerability, and his explicit concern about inadequate attachment "in a high   wind area," Friedberg chose not to repair or replace the roof. Instead, the allegedly defective roof—that Sanders testified was vulnerable to damage from severe winds in St. John's hurricane-prone environment—remained in place through multiple hurricane  seasons. Exhibit 9 at 142:1-12, Deposition of Thomas Friedberg taken on March 15, 2025.

**Plaintiffs' Response:**

**Disputed**.  Plaintiffs mitigated their damage by hiring contractors in 2014 to repair the flashing and other defects that were causing leaks to the Gate House and Garage and remove and replace the bad caulking on the Main House to prevent leaks.    Likewise, in 2019 Plaintiffs hired Dahill to repair the entire hip ridge seam that had been opened on the Main House roof by Hurricane Irma in 2017 and make any other repairs needed to make the Main House roof secure and weathertight.    Plaintiffs have taken all reasonable steps required to prevent wind and water intrusion into the Main House and all other buildings on the Property.

Sanders' 2014 inspection of the Main House roof revealed that Daybreak had installed cleats as required by the Contract to secure at least one copper pan of the Main House roof. Sanders' inspection of only a small, 2-foot section of one ridge seam did not establish that none of the Main House ridges were secured by cleats.   Plaintiffs did not learn that a different ridge seam did not have any cleats securing it until it opened during Hurricane Irma.   Plaintiffs did not learn that Daybreak installed no cleats to secure any of the ridge seams on the Main House roof, or any of the other roofs on the Property, until Daybreak was deposed in this case in 2025.   In their depositions in this action, Daybreak's Project Manager and principal admitted for the first time that Daybreak did not install cleats in any ridge seam on any of the roofs.

*See*, Friedberg Decl., ¶¶ 14, 16, 17, 20, 26, 35, 37, 38, 49, 50-54, 57-63, 76, Exhibits D, I, J, K, L, M, N, O P, Q.

29.    On September 6-7, 2017, approximately three years after Sanders' inspection and while the  Superior Court litigation was still pending, Hurricane Irma struck St. John as a category 5  hurricane. The storm brought sustained winds of approximately 185 mph, with higher  gusts, making it one of the most powerful hurricanes to impact the Virgin Islands in  recorded history. Exhibit 10 at Page  3, National Hurricane Center Tropical Cyclone  Report for Hurricane Irma.

**Plaintiffs' Response:**

Undisputed for the purpose of ruling on the motion for summary judgment only.

30.    According to Sanders, St. John sustained winds in excess of "200 MPH for several hours."  Exhibit 11 at Page 1, Sanders' Report for insurance claim purposes.

**Plaintiffs' Response:**

Undisputed for the purpose of ruling on the motion for summary judgment only.

31.    Despite the strength of Irma, the Main Pavilion roof fared quite well. Specifically, there   were impact damages (from flying debris) and the only structural damage occurred at the exact location where Sanders , in 2014, unfolded the ridge seam and discovered that there   were no cleats in that section of the ridge. Exhibit 7 at 111: 3-8.

**Plaintiffs' Response:**

**Disputed.**   An inspection in February 2018 by Sanders and Friedberg revealed that an entire hip ridge seam, more than 30-feet long, on the Main House roof had been opened by the storm.    The damage to the Main House roof Sanders observed and documented included that all the hip ridge caps had been loosened and dislodged and the copper pans were pulled upward along the hip ridge lines and were no longer safely secured.    Sanders estimated that over 50% of the Main House roof panels would have to be replaced and that likely many of the remaining pans would   be  damaged  during  the  work.    Hoffmann  Architects  recommended  removal  and replacement of the entire Main House roof.    Dahill documented that an entire hip ridge seam on the Main House roof had been opened by the hurricane.    Dahill documented that there were no cleats at all installed in the entire ridge seam that had opened on the Main House roof.

The hip ridge seam that opened during Hurricane Irma in September 2017 was **not** the same ridge seam where Sanders opened a small section approximately 2-feet long during his 2014 inspection.    Sanders was mistaken when he testified in 2025, more than 10 years later, that the Main House roof ridge seam that was opened by Hurricane Irma in 2017 was the same seam he had opened a small, 2-foot section of in 2014.

*See*, Friedberg Decl., ¶¶ 49-54, Exhibits H, I, J, K, L.

32.    Sanders conducted an inspection of the Main Pavilion roof in 2018 after Hurricane Irma.   Exhibit 12, Sanders' June 29, 2025 Expert Report at 2.

**Plaintiffs' Response:**

Undisputed for the purpose of ruling on the motion for summary judgment only.

33.    Sanders opined that his inspection revealed that Daybreak "did not install cleats at the  intersection of the copper panels that form the ridge between the copper pans at 9.5 inches on center as required by the terms and conditions of the contract." *Id.* at 5.

**Plaintiffs' Response:**

**Disputed**.   Sanders' opinion as stated in his expert report was based on his own inspection of the displaced and loosened ridge cap and partial exposed seam he observed in February 2014, the repair of the hip ridge cap by Dahill and Barabas in February 2019, and the documentation by Dahill at that time that the entire hip seam was opened and there were no cleats at all to secure it to the substrate.

*See*, Friedberg Decl., ¶¶ 49-54, Exhibits H, I, J, K, L, M.

34.    When deposed about this statement, Sanders admitted that the area where he found the  absence of cleats was the same ridge seam that he had opened up in 2014:

> Q: After the storm, investigation revealed that Defendant did not install cleats at  the intersection of the copper panels *that form the ridge between copper pans* at
> 9.5 inches on center as required by the terms and conditions of the contract."
>
> A:  I did say that.
>
> Q: *Now, the only ridge where that was confirmed was the one that was opened, correct?*
>
> A:  Yes.
>
> Q: So where it says, "did not install cleats at the intersection of the copper panels," *that's only in the one area where the ridge was opened that's in photo 40* that we went over a moment ago, correct?
>
> A:  *That is the only area that we had opened*.

35

Q: And the areas that you didn't open you can't confirm whether there are cleats or not there, correct?

A: That's correct.

Exhibit 2 at 22:17 to 23:11. (emphasis added, objections omitted).

**Plaintiffs' Response:**

**Disputed**. The hip ridge seam that opened during Hurricane Irma in September 2017 was **not** the same ridge seam where Sanders opened a small section approximately 2-feet long during his 2014 inspection. Sanders was mistaken when he testified in 2025, more than 10 years later, that the Main House roof ridge seam that was opened by Hurricane Irma in 2017 was the same seam he had opened a small, 2-foot section of in 2014.

*See*, Friedberg Decl., ¶ 53, Exhibit M.


35.     He reiterated that the damage found after Hurricane Irma was on the exact same ridge seam that he opened up as shown in Photo 40 in his 2014 expert report:

> 1Q:     You say during the April 2018 site visit the ridge lines between the pans on the east side of the main pavilion failed by opening up during Hurricane Irma. The only -- you used the plural, ridge lines. The only one we know of is the one that was opened in Exhibit 40 – not Exhibit 40, but photo 40, correct?
>
> A: Yes.

*Id.* at 25:18-24.

**Plaintiffs' Response:**

**Disputed**. The hip ridge seam that opened during Hurricane Irma in September 2017 was **not** same ridge seam where Sanders opened a small section approximately 2-feet long during his 2014 inspection. Sanders was mistaken when he testified in 2025, more than 10 years later, that the Main House roof ridge seam that was opened by Hurricane Irma in 2017 was the same

seam he had opened a small, 2-foot section of in 2014.

 *See*, Friedberg Decl., ¶ 53, Exhibit M.

 36. Sanders expressly linked the 2017 hurricane damage directly to the alleged defect he  identified in 2014:

  Q: But your suggestion is on the ridge line there wouldn't have been damage

  had  there been cleats, is that a fair statement?

  A:  Yes, that's a correct statement.

 Exhibit 7 at 100:6-9.

**Plaintiffs' Response:**

 **Disputed** and irrelevant.   In 2014 Sanders did not identify as a "defect" that Daybreak did not install any cleats at all in any of the hip ridge seams on the Main House roof to secure the triangular copper pans to the substrate.   During his 2014 inspection Sanders opened up only a small section of a different hip ridge seam about 2 feet long and did not see cleats or expansion clips in that section.   The small section of hip ridge seam Sanders inspected was only 6% of the entire 33-foot long hip ridge.   The spacing of the cleats in the pan seams that were previously exposed in the seam on the west side of the Main House roof were not spaced at precisely 9.5 inches but rather varied between 8 and 10 inches.    Given the inconsistent spacing of the cleats on the west side, there was no reason to assume that even if there were no cleats on the approximately 2-foot section which represented about 6% of the total length of the hip ridge, that there was an absence of cleats on the remaining 31 feet, or 94%, of the remaining hip ridge.    Sanders did not open an entire hip ridge seam on the Main House or any of the other buildings on the Property as part of his inspection.    Sanders did not determine that Daybreak had not installed cleats in any of the hip ridge seams on any of the buildings based on his minimal investigation of a short section

of one hip ridge seam.    Plaintiffs did not know that Daybreak did not install cleats to secure any of the hip ridge seams on the Property until Daybreak admitted it in depositions in the District Court Action in 2025.

Sanders' inspection of the Main House roof is irrelevant to Plaintiffs' Counterclaim in the Superior Court Action as a matter of law based on the Superior Court's April 26, 2017 Order. The Superior Court Order limited the claims asserted in the Counterclaim to replacement of only the Gate House and Garage roofs and the other minor repairs identified in the Paradigm Damage Report at a total cost of approximately $210,000.

*See,* Friedberg Decl., ¶¶ 30-40, 42-47, 55, 57-63; Paradigm Damage Report, attached as Exhibit D to Friedberg Decl.; Hoffmann Expert Report, attached as Exhibit F to Friedberg Decl.; Superior Court April 26, 2017 Order, attached as Exhibit G to Friedberg Decl.

37.    In 2018, while the Superior Court case was still pending, Friedberg filed a separate lawsuit  in this Court. Rather than asserting the hurricane damage as additional damage for the alleged defects Friedberg was already asserting in the Superior Court, Friedberg initiated   the present litigation. *See* Exhibit 13, Doc. No. 1, District Court Complaint.

**Plaintiffs' Response:**

**Disputed**.   In an April 26, 2017 Order the Superior Court granted Defendants' motion to limit Plaintiffs claims for damages asserted in their Counterclaim in the Superior Court Action to the $210,000 documented in the Paradigm Damage Report.   The Superior Court's April 26, 2017 Order limited the damages asserted in the Counterclaim to those identified in the Paradigm Damage Report, consisting of replacement of the leaking roofs on the Gate House and Garage, stucco repair related to the replacement of those two roofs, minor caulking removal and replacement on the Main House, relocation of 15 vents, and General Conditions to perform the

specified work.    Because the Superior Court's April 26, 2017 Order limited the claims Plaintiffs were asserting in their Counterclaim to the replacement of the roofs on the Gate House and Garage, Plaintiffs could not assert in the Superior Court Action their claim for breach of the Contract for installation of the Main House roof.    To assert their claim for breach of contract damages consisting of the cost of replacing the Main House roof, Plaintiffs filed this District Court Action on July 14, 2019.

*See,* Friedberg Decl., ¶¶ 19-26, 28, 42-47, 55, Exhibits D, E, G, N.

38.    In his District Court Complaint, Friedberg advanced a theory that directly contradicted the  facts established by Sanders' 2014 inspection and testimony. Specifically, Friedberg  alleged:

"The failure to install the cleats at 9.5 inches on center was a latent defect *that was not discoverable prior to September 7, 2017,* since the cleats were to have been placed  underneath the copper panels and copper pans and their existence or non-existence would  not have been visible to the naked eye or upon reasonable inspection since the cleats are  concealed. The failure to install the cleats became discoverable after the intersection of the  copper pans separated where there were no cleats. The failure to install the cleats in  accordance with the plans and specifications of the contract is a breach of the construction  contract and constitutes a latent defect under 5 V.I.C. § 32b since *the failure to install the  cleats was not apparent by reasonable inspection prior to September 7, 2017.*" Exhibit 13,

¶11 (emphasis added).

**Plaintiffs' Response:**

**Disputed**.    Sanders' 2014 inspection of the Main House roof revealed that Daybreak had

39

installed cleats as required by the Contract to secure at least one copper pan of the Main House roof.   Sanders' inspection of only a small, 2-foot section of one ridge seam did not establish that none of the Main House ridges were secured by cleats.   Plaintiffs did not learn that a different ridge seam did not have any cleats securing it until it opened during Hurricane Irma.   Plaintiffs did not learn that Daybreak installed no cleats to secure any of the ridge seams on the Main House roof, or any of the other roofs on the Property, until Daybreak was deposed in this case in 2025. In their depositions in this action, Daybreak's Project Manager and principal admitted for the first time that Daybreak did not install cleats in any ridge seam on any of the roofs.

In an April 26, 2017 Order the Superior Court granted Defendants' motion to limit Plaintiffs claims' for damages asserted in their Counterclaim in the Superior Court Action to the $210,000 documented in the Paradigm Damage Report.   The Superior Court's April 26, 2017 Order limited the damages asserted in the Counterclaim to those identified in the Paradigm Damage Report, consisting of replacement of the leaking roofs on the Gate House and Garage, stucco repair related to the replacement of those two roofs, minor caulking removal and replacement on the Main House, relocation of 15 vents, and General Conditions to perform the specified work.

Because the Superior Court's April 26, 2017 Order limited the claims Plaintiffs were asserting in their Counterclaim to the replacement of the roofs on the Gate House and Garage, Plaintiffs could not assert in the Superior Court Action their claim for breach of the Contract for installation of the Main House roof.   To assert their claim for breach of contract damages consisting of the cost of replacing the Main House roof, Plaintiffs filed this District Court Action on July 14, 2019.

*See*, Friedberg Decl., ¶¶ 4, 14, 16, 17, 19-26, 28, 30-47, 49-63, 76, Exhibits D, E, G, I, J,

K, L, M, N, O P, Q.

39.    Sanders' 2014 opinion and his deposition testimony in both cases establishes beyond  dispute that the alleged defective condition of missing cleats securing the ridge seams was known to Sanders (and therefore to Friedberg) by September 11, 2014, the first day of his  roof inspection made as part of the Superior Court case. *See* Exhibit 8.

**Plaintiffs' Response:**

**Disputed** and irrelevant.   Because the Superior Court's April 26, 2017 Order limited the claims Plaintiffs were asserting in their Counterclaim to the replacement of the roofs on the Gate House and Garage, Plaintiffs could not assert in the Superior Court Action their claim for breach of the Contract for installation of the Main House roof.   To assert their claim for breach of contract damages consisting of the cost of replacing the Main House roof, Plaintiffs filed this District Court Action on July 14, 2019.

Sanders' 2014 inspection of the Main House roof revealed that Daybreak had installed cleats as required by the Contract to secure at least one copper pan of the Main House roof. Sanders' inspection of only a small, 2-foot section of one ridge seam did not establish that none of the Main House ridges were secured by cleats.    Plaintiffs did not learn that a different ridge seam did not have any cleats securing it until it opened during Hurricane Irma.    Plaintiffs did not learn that Daybreak installed no cleats to secure any of the ridge seams on the Main House roof, or any of the other roofs on the Property, until Daybreak was deposed in this case in 2025.    In their depositions in this action, Daybreak's Project Manager and principal admitted for the first time that Daybreak did not install cleats in any ridge seam on any of the roofs.

*See*, Friedberg Decl., ¶¶ 4, 14, 16, 17, 19-26, 28, 30-47, 49-63, 76, Exhibits D, E, G, I, J, K, L, M, N, O P, Q.

40.    In 2023, the Superior Court case was resolved through a monetary settlement. The settlement was purely financial; no repairs were performed as part of the resolution. It resulted in a general release with a specific and limited carveout of only claims that were asserted in the District Court case that were not encompassed in the Superior Court case:

> The settlement of the above-entitled Superior Court Lawsuit does not extinguish the claims in the District Court case number 3: 19-cv-0053 to the extent that District Court case does not encompass claims that were asserted in the above-entitled Superior Court case.

Exhibit 14, Settlement Agreement. (The quoted statement above is repeated four separate times in the Settlement Agreement.)

**Plaintiffs' Response:**

**Disputed**.  In late-2023 the parties began negotiating a settlement of the Superior Court Action.  Different insurers were providing a defense to Daybreak in the Superior Court Action and the District Court Action; and different attorneys were hired by the insurers to defend the Superior Court Counterclaim and the District Court Action.  Attorney Joseph Goldberg was retained by the insurer defending the Counterclaim in the Superior Court Action to represent Daybreak in the defense of the Counterclaim.  Huber had his own personal counsel representing him to defend the fraud Counterclaim and to assert Daybreak's breach of contract claim for the payment of the additional money Daybreak alleged it was owed under the Contract.

Friedberg negotiated the settlement of the Superior Court Action with only Mr. Goldberg and the insurer that was providing a defense of the Counterclaim in the Superior Court Action. The other Daybreak insurer and the attorney it retained to defend the District Court Action were not involved in the negotiation of a settlement of the Superior Court Counterclaim.  Huber and his personal counsel did not participate in negotiating the Superior Court settlement beyond

agreeing to drop Daybreak's claim for unpaid contract funds if we were able to agree with Mr. Goldberg and the insurer on a monetary settlement of the Counterclaim.

The starting point for the negotiations to settle the Superior Court Counterclaim was the $210,000 in damages consisting primarily of the cost to replace the Gate House and Garage roofs as limited by the Superior Court's April 26, 2017 Order.    Mr. Goldberg and the insurer defending the Superior Court Counterclaim were not involved in the District Court Action and could not negotiate a settlement of the Main House roof replacement claim asserted in that case.    The attorney and insurer defending the District Court Action did not participate in the negotiation of the settlement of the Superior Court Counterclaim as limited by the Superior Court's April 26, 2017 Order.    The negotiations to settle the Superior Court Action did not include any consideration for the Main House roof replacement costs claimed in the District Court Action.

In order to settle the Superior Court Action Plaintiffs agreed to compromise their $210,000 damage claim and accept a reduced amount for the repair costs asserted in the Paradigm Damage Report.    Plaintiffs insisted as a condition of settling the Superior Court Action that the written settlement agreement must provide that the settlement and releases are limited to the damage claims asserted in the Paradigm Damage Report, as ordered by the Superior Court in its April 26, 2017 Order, and would **not** include the pending claim in the District Court Action for replacement of the Main House roof based on Daybreak's breach of the Contract requirement to install cleats. Counsel for Daybreak, Joseph Goldberg, and Counsel for Plaintiffs, Friedberg, agreed to include a provision in the Superior Court settlement agreement to exclude the District Court Action from any release.

On June 12, 2024 the Parties finalized and executed their settlement agreement resolving the Superior Court Action.    Consistent with the parties' agreement, the Superior Court Settlement

Agreement contains the following provision excluding the District Court Action from the settlement and release:

> The settlement of the above-entitled Superior Court Lawsuit does not extinguish the claims in the District Court case number 3:19-cv-0053 to the extent that District Court case does not encompass claims that were asserted in the above-entitled Superior Court case.

Plaintiffs signed the Superior Court Settlement Agreement knowing that the Superior Court's April 26, 2017 Order limited the claims asserted by Plaintiffs in their Superior Court Counterclaim to the damages asserted in the Paradigm Damage Report totaling $210,000. The claims asserted in Plaintiffs' Superior Court Counterclaim included only damages consisting of the cost to replace the Gate House and Garage roofs, remove and replace bad caulking on the Main House roof, move all vent pipes, repair stucco on the Gate House and Garage, and the General Requirements for that work as set forth in the Paradigm Damage Report.    Those claims are not encompassed in the District Court Action.    The District Court Action includes only a single claim for breach of contract damages for the cost of replacing the Main House roof, which Plaintiffs were precluded by the Superior Court's April 26, 2017 Order from asserting in the Superior Court Action.

Following the execution of the Superior Court Settlement Agreement, the insurer defending Daybreak in the Superior Court Action paid Plaintiffs the monetary amount they had agreed to pay to resolve only the Superior Court Action.    Litigation of the District Court Action continued, with a different insurer and attorney providing Daybreak's defense.

*See*, Friedberg Decl., ¶¶ 65-74; Superior Court Settlement Agreement, attached as Exhibit S to Friedberg Decl.

41.    Friedberg claims that this law "deal[s] exclusively with the main house on the lower portion of Plaintiffs' property." *See* Exhibit 15, Plaintiffs' Opposition to Defendant's

44

Motion to Dismiss.

**Plaintiffs' Response:**

Undisputed for purposes of ruling on the motion for summary judgment only that Plaintiffs made the statement quoted in their Opposition to a Motion to Dismiss (Doc. 18)  filed in the District Court Action, which was not granted.

42.     Friedberg also stated that  "[t]he claims in the Superior Court Action are limited to the two  upper buildings—the gate house and the garage/studio. *Id.* at 3.

**Plaintiffs' Response:**

Undisputed for purposes of ruling on the motion for summary judgment only that Plaintiffs made the statement quoted in their Opposition to a Motion to Dismiss (Doc. 18) filed in the District Court Action, which was not granted.

43.     A final judgment dismissing the Superior Court Case with prejudice was entered with no  carve out of any claims asserted in that case. Exhibit 16, Final Judgment in Case No. ST-2010-CV-00716.

**Plaintiffs' Response:**

**Disputed**.   The parties reached a financial settlement that involved only the insurer and the attorney it retained to defend Daybreak in the Superior Court Action.   The parties agreed that the Superior Court Settlement was limited to the claims asserted in the Paradigm Damage Report for replacement of the Gate House and Garage roofs totaling $210,000 as ordered by the Superior Court's April 26, 2017 Order granting Daybreak's motion to limit the claims in the Counterclaim. Plaintiffs agreed to compromise their claims and accept an amount less than the $210,000 limit by the April 26, 2017 Order.   Counsel for Plaintiffs and Daybreak began working on drafting a

confidential settlement agreement with a provision excluding the District Court Action from the release.    On November 16, 2023, Daybreak filed a Notice of Settlement informing the Superior Court that the parties had reached settlement.    On November 17, 2023, the Superior Court issued an Order directing the Parties to file a Joint Dismissal with Prejudice within thirty days.

The Parties were not able to finalize the Settlement Agreement within the thirty days ordered by the Court but continued negotiating the terms.    On February 23, 2024, the Superior Court issued the following Order based on the parties' settlement of the Superior Court Action:

> On November 16, 2023, Plaintiff filed a Notice of Settlement informing the Court that the Parties have settled their differences.    This Court issued an Order on November 17, 2023, directing the Parties to file a Joint Stipulation of Dismissal within thirty (30) days.    To date, the Parties have not filed a Joint Stipulation of Dismissal in this matter or filed any motion seeking further relief.    The premises considered, it is hereby
> **ORDERED** that this case is Dismissed with Prejudice; and it is further
> **ORDERED** that copies of this Order shall be distributed to counsel of record.

Understanding that the Superior Court's dismissal order was based on the parties' agreement to settle the case, counsel continued to negotiate the terms to settle only the Superior Court Action, but not the District Court Action.    On June 12, 2024 the Parties finalized and executed their settlement agreement resolving the Superior Court Action.    The Superior Court Settlement contained the following provision excluding from the settlement and releases the claim for replacement of the Main House roof asserted in the District Court Action:

> The settlement of the above-entitled Superior Court Lawsuit does not extinguish the claims in the District Court case number 3:19-cv-0053 to the extent that District Court case does not encompass claims that were asserted in the above-entitled Superior Court case.

Following the execution of the Superior Court Settlement Agreement, the insurer defending Daybreak in the Superior Court Action paid Plaintiffs the monetary amount they had

agreed to pay to resolve only the Superior Court Action.    Litigation of the District Court Action continued, with a different insurer and attorney providing Daybreak's defense.

*See*, Friedberg Decl., ¶¶ 65-74; Superior Court Settlement Agreement, attached as Exhibit S to Friedberg Decl.; Superior Court's February 23, 2024 Order, attached as Exhibit R to Friedberg Decl.

44.    Sanders admitted that he did not have the expertise to opine as to the windspeeds that cleats could withstand if they encountered winds in excess of 200 miles per hour and explained "you need someone who diagnoses these things from the industry to respond to  that. Perhaps somebody from Copper and Common Sense or perhaps someone from  Miami Dade." Exhibit 7 at 104:13-20).

**Plaintiffs' Response:**

Undisputed for the purpose of ruling on the motion for summary judgment only and irrelevant.  Plaintiffs' sole claim for Breach of Contract in the District Court Action seeks the benefit of their bargain under the Contract. Specifically, Plaintiffs seek to receive a copper roof on the Main House that is secured with cleats spaced on an average of 9.5 inches as required by the Contract.  Plaintiffs are not suing Daybreak for negligent construction or product liability based on the cleats installed as required by the Contract having the ability to withstand any particular windspeed.  Sanders' testimony about his lack of expertise regarding windspeed resistance is irrelevant to Plaintiffs' claims in the District Court Action.

45.    When asked to acknowledge that "wind damage, wind speeds, what damage would be  caused by what speed" was not in his expertise, Sanders agreed, stating, "I'm not in that business, no." *Id.* at 105:6.

**Plaintiffs' Response:**

Undisputed for the purpose of ruling on the motion for summary judgment only and irrelevant. Plaintiffs' sole claim for Breach of Contract in the District Court Action seeks the benefit of their bargain under the Contract. Specifically, Plaintiffs seek to receive a copper roof on the Main House that is secured with cleats spaced on an average of 9.5 inches as required by the Contract. Plaintiffs are not suing Daybreak for negligent construction or product liability based on the cleats installed as required by the Contract having the ability to withstand any particular windspeed. Sanders' testimony about his lack of expertise regarding windspeed resistance is irrelevant to Plaintiffs' claims in the District Court Action.

46. Sanders expressed his personal belief that a "[i]f there were cleats there, there would be no uplift damage to a reasonable wind speed, including *maybe* the second largest storm in St. John's history" and that a "reasonable wind speed was "*[m]aybe* a 175 miles per hour." *Id.* at 104:3-5.

**Plaintiffs' Response:**

Undisputed for the purpose of ruling on the motion for summary judgment only and irrelevant. Plaintiffs' sole claim for Breach of Contract in the District Court Action seeks the benefit of their bargain under the Contract. Specifically, Plaintiffs seek to receive a copper roof on the Main House that is secured with cleats spaced on an average of 9.5 inches as required by the Contract. Plaintiffs are not suing Daybreak for negligent construction or product liability based on the cleats installed as required by the Contract having the ability to withstand any particular windspeed. Sanders' testimony regarding windspeed resistance is irrelevant to Plaintiffs' claims in the District Court Action.

47. Sanders thought the highest wind speed on St. John was 176 mph. *Id.* at 104:6-12.

**Plaintiffs' Response:**

Undisputed for the purpose of ruling on the motion for summary judgment only and irrelevant. Plaintiffs' sole claim for Breach of Contract in the District Court Action seeks the benefit of their bargain under the Contract. Specifically, Plaintiffs seek to receive a copper roof on the Main House that is secured with cleats spaced on an average of 9.5 inches as required by the Contract. Plaintiffs are not suing Daybreak for negligent construction or product liability based on the cleats installed as required by the Contract having the ability to withstand any particular windspeed. Sanders' testimony about windspeed on St. John is irrelevant to Plaintiffs' claims in the District Court Action.

48. In his report supporting the insurance claim, Sanders claimed that more than 80 panels (pans) were damaged, justifying replacing the entire roof and he makes no mention of missing cleats contributing in any way to the loss. Exhibit 11 at Page 1.

**Plaintiffs' Response:**

**Disputed**. Hoffmann Architects' Summary of Storm Damage ("Storm Damage Report") includes a Roof Damage Plan A102 which documents that all the hip ridge caps were loosened and damaged and needed to be replaced. In the Storm Damage Summary section Sanders reported that the storm damage included "uplift/displacement at ridges." In his cover letter Sanders made "special note of the damage to the Main Pavilion where the copper pans were pulled upward along the hip ridge lines and now are not safely secured." Sanders estimated that over 50% of the Main House roof panels would have to be replaced and that likely many of the remaining pans would be damaged during the work. Hoffmann Architects recommended removal and replacement of the entire Main House roof. The Storm Damage Report was a report by Sanders of the damages caused by Hurricane Irma and an estimate of the cost of repairs. It was not intended to assess blame.

*See*, Friedberg Decl., ¶ 50; July 27, 2018 cover letter, Storm Damage Summary at Page – 1 and Page – 2, and Roof Damage Plan A102 in the Storm Damage Summary attached as Exhibit I to Friedberg Decl.

49.    Sanders' opinions are based on assumptions. Exhibit 7 at 112:1 to 114:2).

**Plaintiffs' Response:**

Undisputed for the purpose of ruling on the motion for summary judgment only.

50.    Sanders is only able to testify with 51% certainty that the cleats, if installed as he claims  was required by the contract, would have allowed the roof to remain unscathed. *Id.* at 100:20 to 101:4.

**Plaintiffs' Response:**

Undisputed for the purpose of ruling on the motion for summary judgment only.

51.    In Sanders' Report for his insurance case, he does not allege any fault to the cleats. Exhibit  11 at Page 1.

**Plaintiffs' Response:**

**Disputed**.   Hoffmann Architects' Summary of Storm Damage ("Storm Damage Report") includes a Roof Damage Plan A102 which documents that all the hip ridge caps were loosened and damaged and needed to be replaced.    In the Storm Damage Summary section Sanders reported that the storm damage included "uplift/displacement at ridges."    In his cover letter Sanders made "special note of the damage to the Main Pavilion where the copper pans were pulled upward along the hip ridge lines and now are not safely secured."    Sanders estimated that over 50% of the Main House roof panels would have to be replaced and that likely many of the remaining pans would be damaged during the work.    Hoffmann Architects recommended removal and replacement of the entire Main House roof.    The Storm Damage Report was a report

by Sanders of the damages caused by Hurricane Irma and an estimate of the cost of repairs. It was not intended to assess blame.

*See*, Friedberg Decl., ¶ 50; July 27, 2018 cover letter, Storm Damage Summary at Page – 1 and Page – 2, and Roof Damage Plan A102 in the Storm Damage Summary attached as Exhibit I to Friedberg Decl.

52.    Friedberg knew about the lack of cleats on the ridges as least as of September 11, 2014 when Sanders unfolded the ridge seam. Exhibit 5.

**Plaintiffs' Response:**

**Disputed** and irrelevant. Sanders' 2014 inspection of the Main House roof revealed that Daybreak had installed cleats as required by the Contract to secure at least one copper pan of the Main House roof. Sanders' inspection of only a small, 2-foot section of one ridge seam did not establish that none of the Main House ridges were secured by cleats. Plaintiffs did not learn that a different ridge seam did not have any cleats securing it until it opened during Hurricane Irma. Plaintiffs did not learn that Daybreak installed no cleats to secure any of the ridge seams on the Main House roof, or any of the other roofs on the Property, until Daybreak was deposed in this case in 2025. In their depositions in this action, Daybreak's Project Manager and principal admitted for the first time that Daybreak did not install cleats in any ridge seam on any of the roofs.

In an April 26, 2017 Order the Superior Court granted Defendants' motion to limit Plaintiffs claims' for damages asserted in their Counterclaim in the Superior Court Action to the $210,000 documented in the Paradigm Damage Report. The Superior Court's April 26, 2017 Order limited the damages asserted in the Counterclaim to those identified in the Paradigm Damage Report, consisting of replacement of the leaking roofs on the Gate House and Garage, stucco repair related to the replacement of those two roofs, minor caulking removal and

51

replacement on the Main House, relocation of 15 vents, and General Conditions to perform the specified work.

Because the Superior Court's April 26, 2017 Order limited the claims Plaintiffs were asserting in their Counterclaim to the replacement of the roofs on the Gate House and Garage, Plaintiffs could not assert in the Superior Court Action their claim for breach of the Contract for installation of the Main House roof.  To assert their claim for breach of contract damages consisting of the cost of replacing the Main House roof, Plaintiffs filed this District Court Action on July 14, 2019.

The parties' settlement of the Superior Court Action was limited by the Superior Court's April 26, 2017 Order to the claims asserted in the Counterclaim and the Paradigm Damage Report totaling $210,00, which consisted primarily of replacement of the roofs on only the Gate House and Garage.  The Superior Court Settlement Agreement expressly excludes the claim for replacement of the Main House roof that is the only claim in the District Court Action.  The District Court Action does not "encompass" Plaintiffs claim for breach of contract seeking replacement of the Main House roof because that claim was excluded from the Superior Court Action by the Superior's Court's April 26, 2017 Order.

*See*, Friedberg Decl., ¶¶ 4, 14, 16, 17, 19-26, 28, 30-47, 49-63, 65-74,76, Exhibits D, E, G, I, J, K, L, M, N, O P, Q, S.

53.    Moreover, Friedberg was alleging general defects with the main pavilion roof as early as  2012. Exhibit 5 at Page 2.

**Plaintiffs' Response:**

**Disputed**.  The Counterclaim Plaintiffs filed in the Superior Court Action in 2012 was based on incomplete and defective work done by Plaintiffs on the two upper buildings on the

Property which had experienced water intrusion damage—the Gate House and the Garage.    The Main House, which is the subject of the District Court Action, was not referred to in the Superior Court Counterclaim and no claims arising out of the work on the Main House were asserted in the Counterclaim.    At the time Plaintiffs filed their Counterclaim in the Superior Court Action, Plaintiffs had not observed leaking in any roofs installed by Daybreak except for the Gate House and Garage, which were the only buildings completed and occupied at the time.    The Counterclaim does not assert claims for replacement of the roof on any buildings on the Property except for the Gate House.

The Counterclaim does not allege a breach of the Contract's requirements for the installation of cleats to secure the copper on *any of the buildings on the Property*.    When Plaintiffs filed the Counterclaim, they had no knowledge that there were any problems with the cleats Daybreak had installed to provide required wind protection for any of the roofs Daybreak installed on the Property.    For that reason, the Counterclaim does not assert any claims for breach of contract or negligence arising from the Contract's requirement for securing the copper roofs with appropriately spaced cleats.

Plaintiffs' first claim for damage relating to the Main House roof was in the Paradigm Damage Report that Plaintiffs produced in discovery in 2014.    The Paradigm Damage Report asserted only a small claim in the amount of $930.00 to remove and replace bad caulking on the Main House roof.    As established in the Paradigm Damage Report, the damages Plaintiffs asserted against Daybreak in their Counterclaim did not include any damage claim related to Daybreak's failure to install cleats to secure the copper on the Main House roof to the substrate below it.

The Superior Court's April 26, 2017 Order limited the claims Plaintiffs were asserting in

their Counterclaim to the $210,000 identified in the Paradigm Damage Report, which included only the minor cost of repairing bad caulking on the Man House roof.    The Superior Court's April 26, 2017 Order excluded from the claims asserted in the Counterclaim any claim for replacement of the Main House roof.    As a result, Plaintiff's Counterclaim in the Superior Court Action did not assert the breach of contract claim seeking replacement of the Main House roof that is the only claim in the District Court Action.

The Superior Court Settlement Agreement expressly excludes the only claim in the District Court Action.    The releases in the Superior Court Settlement Agreement do not include a release of Plaintiff's claim for Daybreak's breach of the Contract requirement for the installation of cleats on the Main House roof with the damages for that breach consisting of the cost to replace the Main House roof.

*See*, Friedberg Decl., ¶¶ 10, 14, 18, 19-26, 28, 42-47, 65-74, Exhibits C, D, G, S.

54.    In Sanders' report in 2014, he opined that the replacement cost of the Main Pavilion roof  was $358,771. Exhibit 5 at Page 47.

**Plaintiffs' Response:**

Undisputed for the purpose of ruling on the motion for summary judgment to the extent that this number reflects only the material and labor of the Main House roof and does **not** represent any charges for general conditions.

55.    Friedberg asserts that the same replacement cost is between $682,301 and $712,540.  Exhibit 17 at Page 2, Expert Report of Laura Fuchs Dolan.

**Plaintiffs' Response:**

**Disputed**.  Plaintiffs' economic damage expert Laura Fuchs Dolan prepared an updated damage estimate for Plaintiffs' Motion for Summary Judgment, Ms. Dolan states in her Declaration

in Support of Plaintiffs' Motion for Summary Judgment filed on December 14, 2025 that Plaintiffs' economic loss in present value is $666,964 in 2025 dollars and $719,792 in 2026 dollars. This figure represents the cost for materials, labor and general conditions.

*See*, Declaration of Laura Fuchs Dolan, M.B.A., in Support of Plaintiffs' Motion for Summary Judgment, Doc. #92, filed December 14, 2025.

Dated :   January 4, 2026             **LAW OFFICES OF FRIEDBERG & BUNGE**

By: */s/ THOMAS F. FRIEDBERG, ESQ.*
          THOMAS F. FRIEDBERG, ESQ.(VI#1006)
             Attorneys for Plaintiffs THOMAS F.
          FRIEDBERG & SARAH L. BUNGE
          **THE LAW OFFICES OF FRIEDBERG &
          BUNGE**
          1005 ROSECRANS STREET, SUITE 202
          PO BOX 6814
          SAN DIEGO, CALIFORNIA 92166
          TEL : (619)557-0101
          FAX : (619)557-0560
          E-mail : "tom@lawofficefb.com"

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 4th day of January 2026, a true and correct copy of

<u>**PLAINTIFFS' RESPONSE TO DEFENDANT'S STATEMENT OF UNCONTESTED**</u>

<u>**MATERIAL FACTS IN SUPPORT OF MOTION FOR FINAL SUMMARY JUDGMENT**</u>

was filed with the CM/ECF system which will provide notice to the following:

Jeffrey C. Cosby, Esq.
Florida Bar No. 967981
Service to: eservice@wlclaw.com
Attorney for Defendant Daybreak Inc
Williams, Leininger & Cosby, P.A.
301 SE Ocean Blvd., Suite 205
Stuart, FL   34994
Telephone: 772-463-8402
Facsimile: 772-463-4820

Andrew C. Simpson
**ANDREW C. SIMPSON, PC**
2191 Church St., Ste. 5
Christiansted, VI 00820
TEL : 340.719.3900
E-MAIL :asimpson@coralbrief.com


_____*/s/ THOMAS F. FRIEDBERG*_____
**THOMAS F. FRIEDBERG**