## IN THE UNITED STATES DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. THOMAS AND ST. JOHN

THOMAS F. FRIEDBERG & SARAH L. BUNGE,

        Plaintiffs,

v.

DAYBREAK, INC. dba HUBER & ASSOCIATES,

        Defendant.

CIVIL ACTION NO. 3:19-cv-0053

## DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Defendant, Daybreak Inc. dba Huber & Associates ("Daybreak"), respectfully submits

its response in opposition to Plaintiffs, Thomas F. Friedberg and Sarah L. Bunge's ("Friedberg")

Motion for Summary Judgment and states as follows:

### I. INTRODUCTION

Friedberg filed the instant case for breach of contract alleging that the roof of the Main

Pavilion on the subject property failed during Hurricane Irma due to Daybreak not installing

ridge or hip cleats.[1] Daybreak disputes that cleats were required to be installed in the hip ridges.

Additionally, Friedberg cannot prove that the alleged breach caused the alleged damages.

---

[1]  In the interests of accuracy, although the parties have used "ridge" and "hip" interchangeably, technically a hip is the sloping "external" angle where two roof slopes meet on an inclined portion of the roof whereas a "ridge" is a horizontal "external" angle where two roof slopes meet at a horizontal peak of the roof. A sloping "internal" angle where two roof slopes meet on an inclined portion of the roof is called a "valley" in the industry. The distinction between "hip" and "ridge" is immaterial for purposes of the parties' motions for summary judgment.

Friedberg was aware of the lack of cleats in the hip ridges as early as 2014 and even though his expert recommended he replace the roof, Friedberg failed to do so. Additionally, Plaintiffs cannot prove that had the cleats been in place in the hip ridges, the roof would have remained intact as there is no proof that the roof was designed to withstand the winds generated by Hurricane Irma. In any event, the roof survived Hurricane Irma quite well and has not been replaced.

      To summarize, there are five reasons summary judgment should be denied:

1. There is a factual dispute as to whether the contract required cleats at the hip ridges.

2. Even if the cleats were required, there is a break in causation because Friedberg knew in 2014 that there were no cleats in the ridge seam opened by his experts and knew that his experts recommended a full roof replacement—yet he took no action in the intervening three years to either replace the roof or secure the ridges.

3. There is no evidence that the roof was designed to withstand the extraordinary forces of Hurricane Irma. Indeed, this roof did better than hundreds, if not thousands, of roofs in the Virgin Islands during Hurricane Irma.

4. During his September 2014 inspection, Sanders altered the specific ridge seam that he claims failed in Irma and there is no evidence that he restored the ridge seam to its previous condition or that the alterations did not weaken the seam such that the root cause of the failure could just as easily have been due to Sanders' alteration as it was due to an alleged pre-alteration defect.

5. For the reasons stated in Daybreak's Motion for Summary Judgment (Doc. No. 93), Plaintiffs' entire claim is barred by the release executed in the Superior Court case even if they could prove everything they assert in their motion for summary judgment.

## II. FACTS

### A.  The contract

The parties agree that in 2010, Daybreak was hired to install copper standing seam roofs on several buildings, including the "Main Pavilion," at the Friedberg-Bunge residence in St. John, United States Virgin Islands. Statement of Additional Material Facts ("SAMF") ¶ 1. The contract does not specifically specify that cleats would be installed in the ridges. SAMF ¶ 2. Revere Copper & Common Sense & SMACNA are trade publications that  do not require that cleats be installed within the hip ridges of a metal roof. SAMF ¶3. Joe Bragg, Daybreak's expert, testified that Revere Copper & Common Sense & SMACNA contradict each other when it comes to whether to install cleats in the hip ridges of a roof. *Id.* He further testified that "[w]hen you say nine-and-a-half inches on center in the industry, that indicates the horizontal portion of the battens where it intersects with the vertical lock of the seam. In no way, shape, or form does that ever have anything to do with the hip and ridge." SAMF ¶4. Bragg reiterated that Friedberg's interpretation of the contract is not an industry standard:

> Q: Well, is there any indication in the contract that the -- the clips or cleats would not be used at any -- would not be used in areas in which the panels needed to be joined?
>
> MR. COSBY:· Object to the form.
>
> THE WITNESS: Again, we have to go by industry standard here. When somebody says that a standing seam needs to be secured at nine-and-a-half inches, it is known within the industry that that is indicating the vertical section of each individual panel. I've never heard of it in 26 years of ever being anything associated with how the hip and ridge is finished. SAMF ¶5.

### B.  Sanders' declaration contradicts his deposition testimony and is an untimely disclosure of new opinions.

3

To support his Motion for Summary Judgment, Friedberg relies primarily upon Sanders' Declaration which is problematic in that Sanders' Declaration contradicts his prior testimony taken during depositions and is replete with opinions that were not disclosed prior to this Court's order regarding expert disclosures. SAMF ¶6 .

First, Sanders claims that he learned that there were no cleats in the ridges after Hurricane Irma in 2017. Sanders' Declaration ¶4. However, as part of his 2014 inspection prior to Hurricane Irma and due to a separate litigation between the parties, Sanders physically opened a section of the copper roof on the main pavilion to examine the construction beneath the visible surface and observed the absence of cleats in the ridges. SAMF ¶ 7. As part of this inspection, Sanders had a roofer physically open a section of the copper roof on the main pavilion to examine the construction beneath the visible surface and described what he observed:

> Q:   Okay. So this -- the place where you did this was on the main pavilion?
>
> A:   Yes.
>
> Q:   Okay. And you said you unlocked -- you actually unlocked the ridge --
>
> A:   We drilled out the pop rivets on the cap, we -- we unlocked the portion that was overlapped and we found in that case *there were no cleats so in the -- in the intersection of the pans at the ridges, we found no cleats securing those to the -- to the substrate below.*
>
> Q:   *And this would have been cleats in the ridges or cleats in the --*
>
> A:   *Cleats in the ridges.*
>
> Q:   Not in the standing seam, you are talking?
>
> A:   Not in the standing seam.

SAMF ¶ 8 (emphasis added).

4

Sanders confirmed that the only ridge seam that failed during Hurricane Irma was the ridge seam that he opened up in 2014. SAMF ¶9. This alleged defect was also reported in Sanders' 2014 expert report where he summarized his findings:

> The investigation found that the pan system in the field of the roofs was installed on the roofs of the nine structures in accordance with industry standards and with the project required 9.5" o.c. cleat spacing. However, the end conditions at intersections of pans; *ridges* and hips, were not installed in accordance with Copper and Common Sense's recommended single lock seam *and were not secured in the joint with cleats as is standard practice.* SAMF ¶10 (emphasis added).

Second, the citation in the diagram from Sanders' Declaration ¶21 does not contain any language regarding "cleats" nor is there any mention in the description of the diagram that what he is pointing to are cleats. SAMF ¶11.

Third, the diagrams provided in Sanders' Exhibits E1-E5 are new, untimely diagrams that were not provided to Defendant as part of Plaintiffs' Expert Disclosures or at any time prior to Plaintiffs' Motion for Summary Judgment. SAMF ¶12. Additionally, the photograph and diagram in ¶¶51 and 52 were not previously disclosed and conflict with Sanders' testimony during his depositions. *Id.*

Fourth, in paragraph 46 of his declaration, Sanders states that the failure to properly secure the hip caps with rivets was part of the cause of the failure of the roof and in paragraph 49 of that declaration he claims that "the failure to secure the copper pans at the hip ridges allowed Irma's storm winds to *penetrate the hip ridge seams*, cause a hip seam on the northeast side to open, and cause *additional wind uplift damage*." However, during his deposition he testified that the uplift damage was solely caused by the wind traveling along the roof tearing it apart and that wind did *not penetrate* the building envelope:

Q Okay. And so, help me out. Where is the wind entering to cause the uplift?

A *It's not entering*. It's traveling along the roof in upward fashion to tear.

SAMF ¶13 (emphasis added).

Fifth, in paragraph 50 of Sanders' Declaration, he claims the first he knew of the cleats not being in the hip ridges was after Hurricane Irma. However, in his 2014 Report, he stated:

> The investigation found that the pan system in the field of the roofs was installed on the roofs of the nine structures in accordance with industry standards and with the project required 9.5" o.c. cleat spacing. However, the end conditions at intersections of pans; *ridges* and hips, were not installed in accordance with Copper and Common Sense's recommended single lock seam *and were not secured in the joint with cleats as is standard practice.* SAMF ¶ 14.

Sixth, in paragraph 51 of Sanders' Declaration, he claims that the area he opened up in 2014 was not the same area that was opened up due to Hurricane Irma. However, during his deposition, Sanders testified that the Irma damage was in the same area:

Q:   After the storm, investigation revealed that Defendant did not install cleats at the intersection of the copper panels *that form the ridge between copper pans* at 9.5 inches on center as required by the terms and conditions of the contract."

A:   I did say that.

Q:   *Now, the only ridge where that was confirmed was the one that was opened, correct?*

A:   Yes.

Q:   So where it says, "did not install cleats at the intersection of the copper panels," *that's only in the one area where the ridge was opened that's in photo 40* that we went over a moment ago, correct?

A:   *That is the only area that we had opened.*

Q:   And the areas that you didn't open you can't confirm whether there are cleats or not there, correct?

A:   That's correct.

SAMF ¶15 (emphasis added, objections omitted).

6

Despite this testimony, in paragraph 49 of Sanders' Declaration, he is also claiming that there is damage throughout the entire roof, but in his previous testimony he testified that:

> Q: Was there any area other than the 5:00 o'clock to 5:30, what we've referenced in photos 39 and 40 that we discussed already, were there any areas other than that that showed any kind of post storm damage related to uplift in your opinion?
>
> A:  Not to my recollection.
>
> SAMF ¶ 16

Finally, Daybreak had to subpoena Plaintiffs' insurance agent to obtain Exhibit B to Sanders' Declaration, which was Sanders' report to Plaintiffs' homeowners' insurance company,  and that was never independently produced by Plaintiffs prior to filing this Motion. SAMF ¶ 21. Plaintiffs even objected to the subpoena at the time stating that this subpoena would not garner additional relevant documents. *Id.* While Sanders relies upon one line from Exhibit B in his declaration, the fact is that Exhibit B directly contradicts Sander's own report in this case.

### C.  No definitive cause for the roof uplift on the main pavilion roof

Plaintiffs' expert produced two reports regarding the damage claimed during Hurricane Irma. SAMF ¶¶ 12 and 21.  The report produced for the insurance company (Exhibit B to the Sanders' declaration) does not mention a lack of cleats as a cause of the damage to the Main Pavilion roof. SAMF ¶ 21. Instead, Sanders claims the roof was damaged by high winds and projectiles. *Id.* His expert report produced in the instant case claims the damage to the roof was caused by the lack of cleats. SAMF ¶ 12.

Sanders testified that the reason for the 9.5 inch spacing requirement for the cleats which is more than the industry standard of 12 inches is because the subject property was in a high wind area. SAMF ¶17. He never saw an engineering report that recommended such spacing, and it is

unclear whether one exists. SAMF ¶18. Sanders admitted that he did not have the expertise to opine as to the windspeeds that cleats could withstand if they encountered winds in excess of 200 miles per hour and explained "you need someone who diagnoses these things from the industry to respond to that. Perhaps somebody from Copper and Common Sense or perhaps someone from Miami-Dade." SAMF ¶19. When asked to acknowledge that "wind damage, wind speeds, what damage would be caused by what speed" was not in his expertise, Sanders agreed, stating, "I'm not in that business, no." SAMF ¶20. Additionally, the same area that allegedly uplifted is the same area that Sanders opened up in 2014 and there is no evidence that Sanders' mechanic properly re-secured the ridge. SAMF ¶9.

### III. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Fed. R. Civ. Pro. 56(a)*. A material fact is one that must be decided to resolve the substantive claim or defense addressed in the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is considered genuine if a reasonable jury could return a verdict for the non-moving party *Id*.

When a moving party meets the obligations pursuant to Rule 56(c), "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts ...." *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–587 (1986). "Where the record … taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id*. Summary judgment is appropriate when the non-moving party cannot establish an essential element it has the burden to prove. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). It is also appropriate when the facts do not support the non-moving

8

party's version of events. *Scott v. Harris,* 550 US 372, 380 (2007). To defeat summary judgment,

a party must show that there is sufficient material evidence supporting the claimed factual dispute

to require a fact finder to resolve the parties' differing versions of the truth at trial. *Anderson*, 477

U.S. at 248-49.

## IV.  ARGUMENT

### A.  Sanders' declaration is a "sham affidavit" and is an untimely supplemental expert report.

As detailed above, Sanders' Declaration is materially different than his deposition

testimony and the report(s) produced as part of Plaintiffs' Expert Disclosures. Friedberg has not

provided any explanation as to why Sanders' testimony and opinions differ from when he was

previously deposed. A declaration may be disregarded by a Court if it conflicts with his or her own

sworn testimony and when there is no explanation for the conflict. *See Baer v. Chase*, 392 F.3d

609, 625 (3d Cir.2004) (citation omitted); *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 269–

70 (3d Cir.2010); *Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 253 (3d Cir.2007). Courts

define a "sham affidavit" as an affidavit which contradicts prior testimony for the purposes

of supporting a party's position. *Jimenez* at 253. In *Martin v. Merrel Dow Pharm, Inc.,* the

Court stated that: "(i)f a party who has been examined at length on deposition could raise

an issue of fact simply by submitting an affidavit contradicting his own prior testimony,

this would greatly diminish the utility of summary judgment." (internal quotation marks

omitted). 851 F.2d 703, 706 (3d Cir.1988). Thus, Sander's contradictory "affidavit" should

be disregarded by this Court.

Additionally, Sanders' Declaration is an untimely supplemental disclosure of expert

opinion(s). Pursuant to this Court's Scheduling Order, Plaintiff was required to provide its

expert disclosures by October 15, 2025. SAMF ¶6. No rebuttal reports are allowed without leave of court. *Id*. Therefore, Sanders' new opinions in his Declaration are not admissible in evidence and thus cannot support summary judgment. *See* Fed. R. Civ. P. 56(c)(4). Indeed, the Declaration should be stricken as an untimely expert disclosure.

### B. Plaintiffs Cannot Prove that Defendant's Alleged Breach Was the Cause of the Damage from Hurricane Irma.

#### 1. Plaintiff cannot prove that the roof was designed to withstand the forces of Hurricane Irma

There is no evidence in this case that establishes that the roof, as specified in the contract, was designed to withstand the hurricane force winds generated by Category 5 Hurricane Irma. Sanders testified in his 2015 deposition that Friedberg informed him that the 9.5-inch average cleat spacing was done because St. John was a "high wind area." SAMF ¶17. At the time of that deposition, he could not recall seeing the engineering report. SAMF ¶18. Sanders admitted that he did not have the expertise to opine as to the windspeeds that cleats could withstand if they encountered winds in excess of 200 miles per hour and explained "you need someone who diagnoses these things from the industry to respond to that. Perhaps somebody from Copper and Common Sense or perhaps someone from Miami Dade." SAMF ¶20. When asked to acknowledge that "wind damage, wind speeds, what damage would be caused by what speed" was not in his expertise, Sanders agreed, stating, "I'm not in that business, no." SAMF ¶21.

Friedberg has never produced an engineering report either explaining the basis for specifying cleats spaced on average of 9.5 inches or identifying the expected winds the roof could withstand. In the absence of any evidence that the roof was designed to withstand the forces generated by Hurricane Irma, Friedberg is unable to prove that the alleged failure to install cleats on the ridges was a causative factor in the failure.

10

**2. There is no evidence of causation or damages attributable to Daybreak.**

Sanders created two separate reports pointing to two different causes of the damage to the roof of the main pavilion. One report was to support Friedberg's insurance claim and the second report to support his claim in the present case. In his report supporting the insurance claim, Sanders claimed that more than 80 panels (pans) were damaged, justifying replacing the entire roof. He makes no mention of missing cleats contributing in any way to the loss. SAMF ¶21. But, in his report to support Friedberg's claim in this case, Sanders claims the damage was caused by the cleats allegedly not being installed pursuant to the contract. SAMF ¶12. He also acknowledges that many of the roof panels, if not the majority, were damaged by flying debris. Flying debris damage is completely unrelated to whether or not cleats were installed.

Further, Sanders lacks the appropriate expertise and factual predicate to support his opinions in addition to his lack of credibility. Without expert testimony, Friedberg cannot prove (1) that the cleat spacing was the cause in fact of the alleged roof damage and (2) that the monetary damage is reasonably certain and attributable to Daybreak. Additionally, his opinions are based on assumptions. SAMF ¶22. Sanders is only able to testify with 51% certainty that the cleats, if installed as he claims was required by the contract, would have allowed the roof to remain unscathed. SAMF ¶23. But of course, as documented in Sanders' report for the insurance claim, all of the roofs sustained considerable damage in Hurricane Irma, and he documented damage to more than 50% of the Main Pavilion panels unrelated to the claim the cleats should have been installed along the ridges. SAMF ¶21. Speculative, conclusory allegations cannot survive summary judgment. *Anderson* at 248.

Finally, Sanders admittedly opened up the ridge seam that he claims failed in Hurricane Irma three years before Irma. SAMF ¶ 15. That alteration in the precise area where Sanders

11

identified the alleged Hurricane Irma failure creates an issue of causation. Absent evidence that the September 2014 alteration done by unfolding and then refolding a metal seam as well as changing the means by which the ridge cap that covered that seam was secured to the roof, it is equally plausible that the cause of the failure was Sanders' alteration rather than a defect in the room as built by Daybreak. *See Fedorczyk v. Caribbean Cruise Lines, Ltd.*, 82 F.3d 69 (3d Cir. 1996) ("'A mere possibility of causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant.'" (quoting RESTATEMENT (SECOND) OF TORTS § 433B (1965))).

## V. CONCLUSION

Friedberg's Motion for Final Summary Judgment cannot be granted because it is primarily supported by Sanders' Declaration which contradicts his prior testimony and provided new undisclosed opinions that are untimely. Additionally, Friedberg cannot prove that Daybreak's alleged breach of contract was the cause of the alleged damage to the roof. There are too many intervening factors including the design of the roof, the invasive pre-storm inspection of the roof, and Friedberg's failure to replace it when it was recommended by his own expert in 2014. Finally, Plaintiffs' claims are barred by their release of claims executed in the Superior Court case as argued in Daybreak's Motion for Summary Judgment (Doc. No. 93). Therefore, Friedberg's Motion for Final Summary Judgment should be ~~deni~~ed.

Date: January 5, 2025

s/ Jeffrey C. Cosby, Esq.
Jeffrey C. Cosby, Esq.
Florida Bar No. 967981
Service to: eservice@wlclaw.com
Attorney for Defendant Daybreak Inc
Williams, Leininger & Cosby, P.A.
301 SE Ocean Blvd., Suite 205

12

Stuart, FL  34994
Telephone: 772-463-8402
Facsimile: 772-463-4820

s/ Andrew C. Simpson, Esq.
Andrew C. Simpson, Esq.
VI Bar 451
Attorney for Defendant Daybreak Inc
2191 Church Street, Ste. 5
Christiansted, St. Croix
U.S. Virgin Islands 00820
Telephone No. (340)719-3900