# IN THE UNITED STATES DISTRICT COURT OF THE VIRGIN ISLANDS
# DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| THOMAS F. FRIEDBERG & SARAH L. BUNGE,<br><br>    Plaintiffs,<br><br>v.<br><br>DAYBREAK, INC. dba HUBER & ASSOCIATES,<br><br>    Defendant. | CIVIL ACTION NO. 3:19-cv-0053 |

**DEFENDANT'S STATEMENT OF ADDITIONAL MATERIAL FACTS IN SUPPORT OF ITS OPPOSITION TO PLAINTIFFS' MOTION FOR FINAL SUMMARY JUDGMENT**

Defendant Daybreak, Inc. submits the following statement of additional facts that demonstrate that Plaintiffs are not entitled to Final Summary Judgment.

1. In 2010, Daybreak Roofing Company ("Daybreak") was hired to install copper standing seam roofs on eight separate structures, including the "main pavilion," at the Friedberg-Bunge residence in St. John, United States Virgin Islands. Exhibit 1, Contract.

2. The contract does not specifically specify that cleats would be installed in the ridges. Exhibit 1, Contract.

3. Joe Bragg, Defendant's roofing expert, testified that Revere Copper & Common Sense & SMACNA[1], actually contradict themselves when it comes to whether to install cleats in the hip ridges of a roof:

    Q: Okay.· Were there clips -- should there have been clips on all that seam?

---

[1] "SMACNA" stands for "Sheet Metal and Air Conditioning Contractors' National Association."

> A: Well, if you -- if you listen to SMACNA yes. But if you listen to Copper and Common Sense, no.
>
> Exhibit 2, Deposition of Joe Bragg taken on September 23, 2025, 35:7-10.

4. Bragg further testified "(w)hen you say nine-and-a-half inches on center in the industry, that indicates the horizontal portion of the battens where it intersects with the vertical lock of the seam. In no way, shape, or form does that ever have anything to do with the hip and ridge." Exhibit 2 at 7: 17-21.

5. Expert Bragg reiterated the opinion that Plaintiffs' interpretation of the contract is not an industry standard:

> Q: Well, is there any indication in the contract that the -- the clips or cleats would not be used at any -- would not be used in areas in which the panels needed to be joined?
>
> MR. COSBY: Object to the form.
>
> THE WITNESS: Again, we have to go by industry standard here. When somebody says that a standing seam needs to be secured at nine-and-a-half inches, it is known within the industry that that is indicating the vertical section of each individual panel. I've never heard of it in 26 years of ever being anything associated with how the hip and ridge is finished.
>
> Exhibit 2 at 35:22-36:8.

6. Pursuant to this Court's Scheduling Order, Plaintiffs had until October 15, 2025 to provide all expert opinions and no rebuttal reports are allowed without leave of Court. *See* Doc.42, "Scheduling Order."

7. As part of his 2014 inspection for the prior litigation between the parties, Plaintiffs retained architect Arthur Sanders who physically opened a section of the copper roof on the Main Pavilion to examine the construction beneath the visible surface and observed the absence of cleats in the ridges. Exhibit 3, 14:9-15:25, Arthur Sanders' Deposition taken in Case No. ST-2010-CV-00716.

8. As part of this inspection, Sanders had a roofer physically open a section of the copper roof on the main pavilion to examine the construction beneath the visible surface and described what he observed:

> Q: Okay. So this -- the place where you did this was on the main pavilion?
>
> A: Yes.
>
> Q: Okay. And you said you unlocked -- you actually unlocked the ridge --
>
> A: We drilled out the pop rivets on the cap, we -- we unlocked the portion that was overlapped and we found in that case *there were no cleats so in the -- in the intersection of the pans at the ridges, we found no cleats securing those to the -- to the substrate below.*
>
> Q: *And this would have been cleats in the ridges or cleats in the --*
>
> A: *Cleats in the ridges*.
>
> Q: Not in the standing seam, you are talking?
>
> A: Not in the standing seam.
>
> Exhibit 3 at 15:1-17 (emphasis added).

9. Sanders confirmed that the only ridge seam that failed during Hurricane Irma was the ridge seam that he opened up in 2014. Exhibit 3 at 25:18-24.

10. This alleged defect was also reported in Sanders' 2014 expert report where he summarized his findings:

> The investigation found that the pan system in the field of the roofs was installed on the roofs of the nine structures in accordance with industry standards and with

    the project required 9.5" o.c. cleat spacing. However, the end conditions at intersections of pans; *ridges* and hips, were not installed in accordance with Copper and Common Sense's recommended single lock seam *and were not secured in the joint with cleats as is standard practice.*

    Exhibit 4 Arthur Sanders 2014 Report at 45 (emphasis added).

11.     The diagram from SMACNA Manual 6th Addition does not use the word "cleat" as suggested by Plaintiffs and the description of Figure 6-6 does not mention cleats:



Exhibit D to Arthur Sanders' Declaration, Bottom of Page 10.

12.     Sanders disclosed his opinions in this case in his June 29, 2025 report which does not contain any of the diagrams listed as Exhibits E1-E5 nor the photograph and diagram in ¶¶ 51 and 52 of Sanders' Declaration. Exhibit 5, Sanders' June 29, 2025 Expert Report.

13.     In ¶ 46 of his Declaration, Sanders states that the failure to properly secure the hip caps with rivets was part of the cause of the failure of the roof. However, during his deposition he testified that the uplift damage was solely caused by the wind:

    Q Okay. And so, help me out. Where is the wind entering to cause the uplift?

    A It's not entering. It's traveling along the roof in upward fashion to tear.

    Exhibit 6, Deposition of Arthur Sanders taken on August 28, 2025, 115: 10-13.

14. In ¶ 50 of Sanders' Declaration, he claims the first he only learned of the cleats not being in the hip ridges was after Hurricane Irma. However, in his 2014 Report, he stated:

> The investigation found that the pan system in the field of the roofs was installed on the roofs of the nine structures in accordance with industry standards and with the project required 9.5" o.c. cleat spacing. However, the end conditions at intersections of pans; ridges and hips, were not installed in accordance with Copper and Common Sense's recommended single lock seam and were not secured in the joint with cleats as is standard practice.

> Exhibit 5 at Page 45 and Exhibit 3 at 25:18-24.

15. In ¶ 51 of Sanders' Declaration, he claims that the area he opened up in 2014 was not the same area that was opened up during Hurricane Irma. However, during his deposition, Sanders testified that the Irma damage was in the same area:

> Q: After the storm, investigation revealed that Defendant did not install cleats at the intersection of the copper panels that form the ridge between copper pans at 9.5 inches on center as required by the terms and conditions of the contract."
>
> A: I did say that.
>
> Q: Now, the only ridge where that was confirmed was the one that was opened, correct?
>
> A: Yes.
>
> Q: So where it says, "did not install cleats at the intersection of the copper panels," that's only in the one area where the ridge was opened that's in photo 40 that we went over a moment ago, correct?
>
> A: That is the only area that we had opened.
>
> Q: And the areas that you didn't open you can't confirm whether there are cleats or not there, correct?
>
> A: That's correct.

> Exhibit 7, Arthur Sanders Deposition September 11, 2025, 22:17 to 23:11 (objections omitted).

16. In ¶49, Sanders, in his Declaration, is also claiming that there is damage throughout the entire roof, but in his previous testimony he testified that:

    > Q: Was there any area other than the 5:00 o'clock to 5:30, what we've referenced in photos 39 and 40 that we discussed already, were there any areas other than that that showed any kind of post storm damage related to uplift in your opinion?
    >
    > A: Not to my recollection.

    Exhibit 6 at 112:1-6.

17. Sanders testified that the reason for the 9.5" spacing requirement for cleats (less than the industry standard of 12") was because "this is a high wind area." Exhibit 6 at 20:23.

18. At the time of his deposition, Sanders could not recall having seen the engineering report. Exhibit 6 at 21:2-7.

19. Sanders admitted that he did not have the expertise to opine as to the windspeeds that cleats could withstand if they encountered winds in excess of 200 miles per hour and explained "you need someone who diagnoses these things from the industry to respond to that. Perhaps somebody from Copper and Common Sense or perhaps someone from Miami Dade." Exhibit 6 at 104:13-20.

20. When asked to acknowledge that "wind damage, wind speeds, what damage would be caused by what speed" was not in his expertise, Sanders agreed, stating, "I'm not in that business, no." Exhibit 6 at 105:6.

21. Sanders produced another report which he used in his Declaration that was created for Friedberg's case against his insurance company which was obtained by Defendant only by way of subpoena as Plaintiff did not properly disclose same and for which they objected to. Exhibit 8, Sanders' August 20, 2018 Expert Report and Document # 65 on the Court docket.

22. Sanders' opinions are based on assumptions and purely speculation. Exhibit 6 at 100:20-101:4 and 112:1-114:2.

23. Plaintiffs' Complaint for Breach of Contract make no mention of the copper not being attached to the membrane or about the rivets not going through the battens. *See* Plaintiffs' Complaint Document #1 in the Court docket.

24. Joe Bragg in his expert report gives the reasons he believes there was damage:

    > Upon the conclusion of the second strongest Atlantic storm on record, the home's roof system was intact, without any of the wind uplift damage typically identified or defined in the industry. The main home was not complete in its construction, and the absence of windows and doors significantly increased the internal pressure, yet it amounted to no damage. Any intended or designed wind uplift resistance would be predicated on a closed system, which was not the case here. The fact that the roof did not experience damage due to wind uplift, even with this variable and the extreme conditions, only exemplifies that the roof system was properly installed. With all the outside variables stacked against the roof system sustaining its functionality, to this day, the system is still intact with only minor issues and no direct evidence of continued roof leaks or failure due to wind uplift.

    Exhibit 9, Joe Bragg's Expert Report, Page

25. Sanders' expert report does not contain any graphic documentation of defects. Exhibit 5.

26. Barry Huber, the principle for Daybreak, testified that cleats were not needed in the ridges. Exhibit 10 at 38:22-39:25, Deposition of Barry Huber taken on October 7, 2025.

27. Defendant's Roofing Expert testified that the roof could be repaired to place cleats in the ridges. Exhibit 3 at 80:18-82:6.

28. Ridge caps or "batten seams" are used for appearance and for extra water shedding and not for wind protection. Exhibit 11 at 27:4-10, Deposition of Barry Huber taken April 28, 2025.

29. The contract does not provide for what to do when Revere Copper & Common Sense ("Revere C&CS"), and the Sheet Metal and Air Conditioning Contractors' National Association, Inc. ("SMACNA") contradict each other. *See* Exhibit 1.

30. SMNCA manual contains guidelines for the industry and are not mandatory. *See* SMACNA Manual Summary of Guidelines, h.4. at pp. 6.1-6.2, attached to Sanders Decl. as Exhibit D.

31. Sanders never inspected the entire roof to determine whether or not the cleats throughout the entire roof were 9.5 inches on the center. *See* Exhibit 4, Page 2.

32. Micha Cady testified as to the cleating:

    Q: Are you aware of any circumstances on the Chocolate Hole main house roof where the cleating was not installed properly or utilized properly?

    MR. FRIEDBERG: Objection. Form; foundation.

    THE WITNESS:· No, I am not aware of any areas that were not installed correctly.

    *See* Exhibit 12 at 58:15-20, Deposition of Micha Cady taken on April 28, 2025.

33. Huber testified that it is not just the cleats providing wind resistance. Within the excerpt used by Plaintiffs, Huber clearly states, "The cleats and the panels, yes." *See*, Sanders Decl., ¶ 35; 4/28/25 Huber Depo. at 34:6-22, attached as Exhibit A to Friedberg Decl.

34. There is no proof that the hip ridge seams failed in Hurricane Irma. All of the panels and all of the caps were still connected to the roof after the hurricane. Exhibit 6 at 116:11 to 117:1.

35. Barry Huber continued his testimony regarding the excerpt Plaintiffs used in Statement of Fact ¶40:

> (Reread by the Court Reporter) Q: But what is specified, you would agree, which is listed as a line item is that the installation is to be in accordance with both Revere Copper & Common Sense and SMACNA. Agreed?
> And the next question:
>
> Q: Is there anything in the contract that says that there are conditions with conforming to Revere Copper & Common Sense and SMACNA?
>
> THE WITNESS: So the first of those two, I was going to qualify, again, because -- I mean, I understand -- you know, I don't know how much platform I get to talk here. But I understand completely what's going on here, Tom, is -- and in the real world, for standing seam copper or other roof systems, oh, I could give you a proposal with many pages and many details and many drawings. So when you ask about Revere and SMACNA, there is more to it than just saying these two specifications. And when I say the real world, you could not mathematically conform to 9 1/2 inches on center for hip cleat spacing.· It's mathematically impossible.
>
> BY ATTORNEY FRIEDBERG:
> Q: Are you done?
>
> A: So in regards to Revere and SMACNA, SMACNA does not specify clips in the hip or ridge seam. There is a picture of that as well as a picture of other parts of standing seam roofing, not a specification.
>
> Exhibit 10 at 28:19 to 29:25.

36. Barabas testified that the only sheet metal repair was made to the gatehouse and that the only repair made to the Main Pavilion roof was to one hip seam. Exhibit 13 at 13:16-24, Deposition of Richard Barabas.

37. Photographs do not show that the hip seam was only separated and not deformed. *See* Dahill/Barabas photographs P000355-P000362 attached as Exhibit F to Friedberg Decl.

38. Barabas further testified that he only inspected the hip ridge previously mentioned and that he cannot determine the presence of cleats on any area of the roof. Exhibit 13 at 23:9-15.

39. Sanders' Declaration., ¶ 47, Exhibit B does not show how the ridge looked prior to Hurricane Irma but after Sanders performed his invasive inspection. *See* Exhibit 7 at 22:17 to 23:11.

Date: January 5, 2026

                    <u>s/ Jeffrey C. Cosby, Esq.</u>
                    Jeffrey C. Cosby, Esq.
                    Florida Bar No. 967981
                    Service to: eservice@wlclaw.com
                    Attorney for Defendant Daybreak Inc
                    Williams, Leininger & Cosby, P.A.
                    301 SE Ocean Blvd., Suite 205
                    Stuart, FL  34994
                    Telephone: 772-463-8402
                    Facsimile: 772-463-4820

                    <u>s/ Andrew C. Simpson, Esq.</u>
                    Andrew C. Simpson, Esq.
                    VI Bar 451
                    Attorney for Defendant Daybreak Inc
                    2191 Church Street, Ste. 5
                    Christiansted, St. Croix
                    U.S. Virgin Islands 00820
                    Telephone No. (340)719-3900