**Exhibit 9**



**WJA**

## EXPERT REPORT



**THOMAS F. FRIEDBERG & SARAH L. BUNGE**

**V**

**DAYBREAK, INC., dba HUBER & ASSOCIATES**

**Civil Case No. 3:19-cv-0053**

**Prepared for:**

**Williams, Leininger & Cosby, P.A.**

**301 SE Ocean Blvd., Suite 205**

**Stuart, Florida 34994**

**August 5, 2025**

Date: August 15, 2025

Inspection Requested by: Williams, Leininger & Cosby, P.A.

Inspection Address: 168 Chocolate Hole Road, St. John, US Virgin Islands

## EXECUTIVE SUMMARY:

On Wednesday, September 6th, 2017, Hurricane Irma occurred over St. John. Claims of separated copper pans at the ridge have been made at the residence located at 168 Chocolate Hole Road.

Subsequent investigation by multiple parties concluded that a failure to install cleats had directly led to wind uplift damage to the property. Final conclusions brought forth the claim that the roof system over the main house requires full replacement.

WJA Consultants (WJA) will challenge the claims of wind uplift damage to the home. Furthermore, allegations of improper installation practices utilizing destructive testing data led to the recommendations and conclusions of others that led to full replacement being necessary.

The argument put forth regarding full replacement is unsubstantiated. The pictures provided did not show any uplift displacement, signs of panel failure directly due to wind uplift, or detachment of clips, which are typically defined as wind uplift damage to a standing seam roof system.

Additionally, the clip spacing that has been a point of contention was established in the contract as a requirement of the homeowner who required changes to the original proposal. No engineering data has been supplied that shows the maximum wind uplift of the designed system that the homeowner requested. Therefore, the wind uplift resistance (based upon the clip spacing dictated by the owner) has never been established. There is no ability to prove that the existing system was even designed to resist the significant wind speeds experienced, but the roof did perform as intended.

Upon the conclusion of the second strongest Atlantic storm on record, the home's roof system was intact, without any of the wind uplift damage typically identified or defined in the industry. The main home was not complete in its construction, and the absence of windows and doors significantly increased the internal pressure, yet it amounted to no damage. Any intended or designed wind uplift resistance would be predicated on a closed system, which was not the case here. The fact that the roof did not experience damage due to wind uplift, even with this variable and the extreme conditions, only exemplifies that the roof system was properly installed. With all the outside variables stacked against the roof system sustaining its functionality, to this day, the system is still intact with only minor issues and no direct evidence of continued roof leaks or failure due to wind uplift.

Page B

**INTRODUCTION:**

WJA was retained by Williams, Leininger & Cosby, P.A. (WLC) to evaluate a claim by the homeowners of wind uplift damages directly due to installation deficiencies incurred at the property located at 168 Chocolate Hole Road, St. John, US Virgin Islands.

WJA conducted a full non-destructive inspection of the property in question on May 6, 2025, approximately 8 years after the claimed loss. In preparing this report, WJA reviewed and relied upon the following documents:

- WJA Photographs and Notes
- Satellite/Aerial imagery
- Copper Roof Investigation authored by Hoffmann Architects, Inc., dated November 12, 2014
- Copper and Common Sense, 9th Edition
- SMACNA Metal Panel and SPF Roof Systems
- National Hurricane Center data
- Pictures of the in-progress installation
- Sedwick International UK Final Report, dated 2/22/2019
- Hoffman Architects Summary of Storm Damages, dated August 20, 2018
- Cunningham Lindsey International Final Report, dated December 27, 2018
- Deposition of Arthur L. Sanders
- Deposition of Barry Huber
- Deposition of Micah Cady
- Federal Complaint
- Blueprint
- Job contract
- Progress reports

WJA reserves the right to amend this report and further develop its opinions and findings should additional data become available at a later date. Please note that any missing references contained in the contributed discovery that were omitted were not done intentionally.

Page C

## ANALYSIS:

On May 7, 2010, Huber & Associates (Huber) and Thomas Friedberg entered into a contract to install a 16oz. Red Copper standing seam roof system to the main house, guest house and gazebo, gate house, garage, and beach bar. A 2014 investigation resulted in destructive testing and a report provided by Hoffman Architects, Inc. (Hoffman) regarding claimed construction deficiencies.

On September 6th, 2017, Hurricane Irma visited the island, causing claimed wind uplift along hip lines and field panel attachment to the main house. An insurance claim was filed by the homeowners to recoup alleged losses directly due to the hurricane, which reached wind speeds of at least 185 mph per the National Hurricane Center and became the second longest recorded sustained wind speeds above 156 mph from the Atlantic Ocean, per multiple sources.

Hoffman released a second 2018 report claiming damage occurred due to the storm. WJA will first address the 2018 report's allegations of damage. Secondly, WJA will respond to allegations of installation deficiency that are claimed to be the reason for the claimed hurricane damage to the main house only.

Please note that at the time of WJA's May 6th, 2025, inspection, no remediation to the main house has been completed post-Hurricane Irma, leaving the roof system in situ in relation to the DOL.

Before proceeding with the evaluation of each report, it is important to highlight the negative effects of wind uplift on a metal standing seam roof system.



*Certified Commercial Property Inspectors Association diagram*

Wind uplift can cause roof components to lift, buckle, cause structural failure, deflection, clip disengagement, and/or seam separation. It is also important to understand that wind uplift is a force created when wind hits a roof, creating negative lower pressure on the topside while positive internal pressure is created on the inside.

The lack of windows and doors and a proper sealing of the building envelope during the storm significantly affected the internal uplift pressures from inside. The building's condition at the time would have reduced the roof's ability to resist uplift. If plywood was covering the openings as suggested, it

Page D

would have created a temporary reprieve from wind-driven rain and flying debris. Still, it is not a substitute for a closed system and ultimately would not have reduced the pressure.

When considering this pertinent fact, it's also important to note that there was no lifting, buckling, structural failure, or deflection highlighted in any documentation or observed during WJA's onsite inspection. Some deficiencies noted were pre-existing conditions prior to the storm that were included in Hoffman's 2014 report. The following responses will highlight the absence of reliable proof of wind uplift damage and how a few pictures provided only substantiate WJA's position that no physical evidence of clip failure has directly led to the claimed damages associated with the roof system.

## Hoffman Architects Report dated 8/20/2018



Hoffman's detailed and professional report highlights nine cracks, three dents, and one puncture on the main house roof system.

> The Main Pavilion Roof is an octagon in plan with a peak at the center of the roof. The roof line is formed with two different slopes. The initial slope at the edge is approximately 3 in 12 with the rise to the peak of 7 in 12.
>
> Because this roof was installed with continuous formed pans, the upturned legs that form the standing seams were cut at the transition point to achieve the change in slope. The upturned legs were overlapped and crimped with the cap bent similarly. We observed cracks in the copper pan and the standing seam in eight locations around the roof circumference.

*Hoffman 2014 Copper Roof Investigation Report 11/12/14 Pg 15*

The original 2014 report found eight cracks around the roof circumference. The cracks that pre-existed Irma, based upon their initial report, were never differentiated from their 2018 evaluation, making it highly probable these were not the result of wind uplift but the same cracks identified in the 2014 report.

Pictures were also provided of dents and punctures that most certainly could have been caused by flying debris, although documentation of some previous dents and punctures was contained in the 2014 report. WJA acknowledges that other structures on the property, as well as throughout the island, did sustain obvious impact damage that has caused functional damage, making it probable that some of the dents were caused by Hurricane Irma.




The pictures above are another example given by Hoffman of claimed wind uplift damage. The failure in the pictures is never completely defined. The blackness at the "ridge" in the photos is a shadow effect and not open holes. Close-up pictures of the exact hip are shown below.





The pictures above were taken by WJA and show the exact same location with zero sign of failure along the hip. These pictures depict the metal in the same position as the 2018 picture. Although the pieces are not evenly cut, and when zoomed in via a camera lens, it is not aesthetically pleasing, it is not an indication of poor workmanship, nor does it affect the functionality. There are zero open holes, no signs of failure at the hip, and no wind uplift damage per industry standard.



The photo taken from Hoffman's 2014 report is the same hip in question that was destructively tested and shown in the 2018 report as having "failure". Technically, due to this area being disturbed by the test, it is no longer the original installation, although WJA does not believe it to be damaged.

To be clear, the one hip Hoffman definitively states with pictorial evidence of failure due to wind uplift is the exact hip that was disassembled by their hired mechanics brought to the island in 2014. This means that if there was damage, it was due to the reassembly having failed and not the original construction. Again, WJA does not believe there is damage but believes it's important to note that the one hip Hoffman believed to be damaged was the exact one their mechanic previously disassembled.

Page H

 

The last two photos provided are listed as showing "pans have lifted at other ridges". The pictures are very ambiguous in what they are trying to depict. WJA attempted to find this condition listed during its inspection and failed to identify this claim. WJA did find movement at some of the ridges directly due to the panels being installed over battens, allowing the spacing between the boards to contain a very minimal bounce. No displacement of actual panels or ridge cover was observed.

Please refer to attachment #1, where WJA compares its own photos to the panels and ridge caps existing conditions as of 2025, to Hoffman's diagram, where particular panels are identified as having signs of wind uplift damage. WJA was not able to identify any damage pertaining to wind uplift, which the pictures show.

**Conclusion:**

In summary, Hurricane Irma hit the island of St. John on September 6th, 2017. A 2018 report by Hoffman, based upon observations made post-Irma, was released with claims of damage to approximately 80 panels on the main pavilion. Claims of damage to the main roof octagon were denied by the homeowners' insurer.

Thirteen pictures were included within the 2018 Hoffman report used to substantiate the claim that approximately half of the Main roof was damaged by wind. Of the thirteen pictures, there is one of the cap with no damage, four of the ridge claimed to be lifted, two of cracks at the transition, and six of scratches/dents from flying debris.

The four regarding "pans have lifted at other ridges" fail to definitively identify any lifting other than ambiguous photos. The six pictures of scratches/dents look to be due to flying debris, although Hoffman's original 2014 report did identify the presence of some minor scratches/dents already present. The two pictures of cracks at the transition do not differentiate what was identified as being cracked in the 2014 report versus the 2018 report, and whether or not these are the pre-existing cracks versus a new development.

Page

In 2014, Hoffman exposed one field seam and three cleats spaced 8", 10", and 9", which comes to an average of a little over 9". Technically, they did verify in the one area of approximately 27 inches that the cleats did meet the contract spacing within the field.

The plaintiff has put forth the argument that the roof sustained damage due to the improper cleat spacing along the ridges. WJA was able to confirm onsite that the 1x4 battens were spaced in a manner that allows for 9.5" spacing to occur if cleats are present at each batten for vertical securement. The 9.5" spacing refers to the vertical panel spacing only, per industry standard.

Attempting to combine the hip/ridge attachment spacing with the vertical attachment spacing is not standard. The field panels are attached with defined spacing, and the hip/ridge attachment is another configuration altogether. In hundreds of experienced standing seam roof system installs, WJA has never seen or experienced the vertical panel spacing combined with the hip/ridge attachment.

Only 28 inches out of thousands of lineal inches of the total field panel length was exposed, which confirmed the correct cleat spacing and presence. Another thirty inches of ridge was exposed, which failed to find any additional attachment other than the hemmed seam. The absence of clips was identified by the homeowners' expert in 2014. Although it is a recommended practice, if the expert or homeowners found that to be of such grave concern, they have had ample time to correct it, yet have not.

Hoffman argues that the failure to secure the diagonal along the hip at the same spacing as field panels has directly led to damage. No wind uplift damage to the panels, per industry definitions, was observed by WJA. Not one disengaged cleat was presented in pictorial evidence nor found while onsite, not one example of bucking/lifting/deflection was given or observed, and not one instance of seam separation was shown or found.

The one ridge (aka hip) highlighted in their photos as having been damaged by wind uplift was the exact same hip they performed destructive testing on in 2014, making it not an original part of the installation, although no damage was present. When considering that there are hundreds of linear feet of hip present with zero signs of displacement or damage, it makes the lack of clips a moot point.

WJA could not identify any wind uplift damage to the system, but signs of flying debris impact from Hurricane Irma were present. The homeowner provided the system attachment with no documentation showing its wind rating regarding uplift resistance.

Zero proof was provided that the cleats in the field were improperly installed. No evidence of damage to the panels was definitively provided that technically meets the definition of wind uplift damage. The existing roof survived some of the most extreme conditions ever experienced in the area, with cosmetic issues but no definitive proof of other deficiencies directly due to wind uplift.

Eight years later, the roof is still functioning without any obvious signs of failure. If Hurricane Irma had compromised the functionality of the system, the damage should be obvious eight years later, but it seems not to exist.

Based on my experience of over 2,500 wind/hail inspection claims, utilizing basic observation techniques, 26 years of roofing experience, and the effects of wind/hail observed/inspected, or the HAAG inspection protocol and parameters, it is my professional opinion that the roof did not sustain wind uplift damage and that the construction of the roof was not a contributing factor to the claimed damage.

400 N New York Avenue . Suite 110 . Winter Park, FL . 32789

In closing, the second-largest recorded Hurricane in St. John's history occurred at the location. No obvious wind uplift damage was identified by WJA. Without proof of wind uplift damage, attempts to repeatedly cite installation deficiencies bear no consequence to the argument when no obvious wind uplift damage is present.

Joseph V Bragg
WJA Consultants
CCC1333311
CGC1534425
HAAG #992103012

Page K



**ATTACHMENT #1**
**PICTURES SHOWING EXISTING CONDITIONS**
**MAY 6, 2025**



DIAGRAM DEPICTS ROOF DAMAGES
PER HOFFMAN



EACH SIDE GIVEN A NUMBER TO ALLOW THE
'FOLLOWING PICTURES TO HIGHLIGHT
EXISTING CONDITIONS VERSUS
CLAIMS OF DAMAGE PER HOFFMAN

2



1



1



1



1



1



2



2



2



2



2



2



2



3



3

9



3



3



3



3



3



3



3



4



4



4



4



4



4



4



4



4



4



5



5



5



5



5



5



5



5



5



5



5



6



6



6



6



6



6



6



6



6



6



6



7



7



7



7



7



7



7



8



8



8



8