IN THE UNITED STATES DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| THOMAS F. FRIEDBERG & SARAH L. BUNGE, <br><br> Plaintiffs, <br><br> v. <br><br> DAYBREAK, INC. dba HUBER & ASSOCIATES, <br><br> Defendant. | ACTION NO. 3:19-cv-0053-RAM-EAH <br><br> **ACTION FOR DAMAGES** |

<u>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**</u>

<u>**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**</u>

Plaintiffs Thomas F. Friedberg and Sarah L. Bunge ("Plaintiffs") submit this Reply Memorandum of Points and Authorities in Support of their Motion for Summary Judgment against Defendant Daybreak, Inc. dba Huber & Associates ("Defendant" or "Daybreak"):

**I.    <u>INTRODUCTION</u>**

Defendant just does not get it.    Defendant continues to characterize this case as a tort claim based on theories of negligent construction or product defects and raises causation defenses *that have nothing to do with this case*. This is a *breach of contract* case in which Plaintiffs claim Defendant did not provide the roof for which Plaintiffs paid.    Plaintiffs seek to receive the benefit of their bargain—a copper roof that satisfies the requirements of the contract.    There is no tort claim alleged in this case and Defendant's tort defenses do not apply.

Plaintiffs bargained for a copper roof with an extra level of wind protection in the hurricane-prone Caribbean.    The parties agree that the cleats that secure the copper membrane to the substrate provide the *only* wind protection for the copper roof.    With that knowledge, Plaintiffs

1

negotiated with Defendant to increase the number of cleats and decrease the spacing of the cleats to better secure the copper membrane on the Main House roof. The Contract specified more cleats installed closer than the standard spacing to provide maximum wind protection. At Defendant's request, Plaintiffs paid Defendant more money for the additional cleats and labor to install the cleats. Defendant, however, failed to provide *any* cleats on the hip/ridge seam connections.

In the Contract Defendant agreed to follow two metal roofing standards when installing the cleats to secure the copper roof. Both standards and the specific language of the Contract required Defendant to install cleats in all the seams to secure the copper membrane to the substrate regardless of where on the roof the seams are located. The Contract Defendant drafted contains no exception for securing the seams connecting the copper panels where they meet at the elevated ridges on the octagonal Main House roof. The Contract did not exclude certain seams from the specific contract requirement that *all* seams required cleats spaced an average of 9.5 inches on center. Common sense and the Contract itself require that Plaintiffs receive the same protection of extra cleats securing the elevated ridge lines which are the most susceptible to wind damage.

Defendant now claims that some unspecified "industry standards" excused Defendant's failure to install cleats to secure the copper seams at the roof's ridges despite the unambiguous contract terms requiring Defendant to install cleats without exception. Defendant also argues it was "impossible" to secure the ridge seams with cleats. These absurd arguments ignore the undisputed evidence that the same horizontal wooden battens to which Defendant attached every other vertical copper seam on the roof were available to secure the vertical seams at the ridges. Defendant stopped attaching the vertical panel seams to the horizontal battens when it got to the edge of each triangular pan, leaving the pan seams at the ridges unsecured to the substrate. It was obviously not "impossible" to secure the vertical ridge seams to the same horizontal battens to

2

which every other vertical seam was attached throughout the roof. It defies logic that unspecified "standards" would excuse Defendant from securing the vertical copper seams to the substrate only at the ridges.

Defendant admits it did not comply with the Contract requirements. Defendant acknowledged for the first time in depositions that it did not install *any cleats at all* to secure the copper seams joining the panels where they meet at the ridge lines on the Main House roof. Defendant's admission alone is enough to support summary judgment for breach of the Contract. Defendant did not comply with a critical Contract requirement; Defendant's breach left every elevated ridge on the Main House unsecured to the substrate below it; Defendant's breach deprived Plaintiffs of the benefit of their bargain in the form of a copper roof with the required wind protection; and the only way to give Plaintiffs what they paid for is to replace the Main House roof.

Plaintiffs are not claiming damage to the roof caused by Hurricane Irma. Whether or not the roof was damaged by the hurricane is irrelevant to Plaintiffs' claim for breach of contract. Hurricane Irma is only significant because it revealed for the first time the extent of Defendant's breach when one of the unsecured ridge seams opened completely and the copper ridge caps covering all the other unsecured ridge seams were loosened and disturbed by the hurricane's winds.

Defendant spends most of its Opposition making causation arguments that have no application here. Whether the roof was designed to withstand Hurricane Irma's winds is irrelevant to the issue of Defendant's breach of the Contract requirements to install cleats. Plaintiffs are entitled to the roof they paid for regardless of the impact of Hurricane Irma or any future storm. Defendant's "break in causation" argument also misses the point because Plaintiffs are not seeking damages caused by a defect Defendant claims Plaintiffs should have fixed before the hurricane revealed the breach. Plaintiffs want the roof for which they contracted.

3

Likewise, Defendant's causation argument based on its false claim that Plaintiffs' expert somehow altered the ridge seam that opened during the hurricane is both wrong and irrelevant to this breach of contract action. Plaintiffs do not seek damage to one seam caused by Hurricane Irma. Plaintiffs seek replacement of the roof because Defendant admits it breached the Contract by failing to secure *every ridge seam on the roof*. That admission is enough for summary judgment on Plaintiffs' sole claim for breach of contract.

As explained in Plaintiffs' Opposition to Defendant's motion for summary judgment (Doc. 98-102), this action for replacement of the Main House roof is not barred by the release in the Superior Court case. The Superior Court granted Defendant's motion to exclude from the Superior Court action any claim for replacement of the Main House roof under any theory of liability. Consistent with that Order, the release in the Superior Court expressly excludes Plaintiffs' District Court breach of contract claim for replacement of the Main House roof. Defendant is estopped from asserting the Superior Court settlement agreement as a defense to Plaintiffs' motion for summary judgment.

II.     **ARGUMENT**

A.     **Defendant's Expert Acknowledges that Cleats are Required to Secure the Vertical Ridge Seams to the Horizontal Battens**

Defendant includes quotes from its expert, Joe Bragg ("Bragg"), that confirm Defendant was required by "industry standards" to install cleats to secure the vertical copper seams at the ridges where they intersected with the horizontal battens on the Main House roof. Bragg testified that the requirement to install cleats at "nine-and-a half inches on-center in the industry" means placing cleats to secure the copper to "the horizontal portion of the battens where it intersects the vertical lock of the seam." (Defendant's Statement of Additional Undisputed Facts ("SAMF") ¶

4

4.) Bragg testified "it is known within the industry" that the cleating requirement applies to "the vertical section of each individual panel." (SAMF ¶ 5.)

The seams joining the panels that make up the triangular pans at the elevated ridges of the octagonal Main House roof are *vertical seams* that intersect with the *horizontal battens*. On an octagonal roof such as the Main House roof—where the seams are vertical and intersect with the horizontal battens at the vertical ridge line—the industry standard Bragg cites requires that the "vertical lock of the seam" must be attached with cleats where it intersects with the horizontal battens. Bragg's testimony supports Plaintiffs' position that every vertical seam on the Main House Roof had be secured to the horizontal battens with cleats regardless of where the seam was located. Defendant admits it did not comply with the standard on which its own expert relies.

The diagrams prepared by Plaintiffs' expert, Arthur Sanders, show that the entire length of each vertical seam connecting the triangular pans intersects with the horizontal wood battens that form part of the substrate. (Declaration of Arthur L. Sanders, AIA *Emeritus*, in Support of Plaintiffs' Motion for Summary Judgment ("Sanders Decl."), ¶¶ 37-41, Exhibits E1-E5.) Sanders' diagrams show that the horizontal battens traverse each triangular pan and connect to the horizontal battens that traverse the next triangular pan. The seams where the triangular pans meet run vertically from the top of the roof to the bottom and intersect with the battens spaced horizontally from the top of the roof to the bottom. The ridge seams on the Main House roof are precisely the type of vertical seams intersecting horizontal battens that Bragg agrees must be secured with cleats spaced at 9.5 inches as required by the Contract.

Sanders' Exhibit E-3 illustrates the proper installation of cleats at the intersection of the vertical pan seams where they meet the horizontal battens. As shown, and consistent with Bragg's testimony, cleats should have been installed to secure the vertical copper seams to each of the

horizontal battens that meet at the intersection of the triangular pans. Had Defendant secured the vertical seams to the battens at the ridges in the same way it secured all the other vertical seams in the pans to the battens, Defendant would have complied with the Contract, the standards incorporated into the Contract, and Bragg's own description of the industry standard for securing seams with cleats.

Below is Sanders' diagram E-3 (Doc. 89-8) depicting how Defendant was required to attach the vertical hip/ridge seam to the horizontal battens with cleats spaced as specified in the Contract. The circled area illustrates where cleats should have been placed securing the vertical seam to the horizontal battens at the hip/ridge. Had Defendant done so, all the vertical seams would have been secured to the battens. Instead of complying with the Contract, Defendant omitted cleats from the vertical seams at the ridges and left the membrane unsecured.



Sanders' diagram E-2 (Exhibit E -2 (Doc. 89-7), below, shows how Defendant breached the Contract by failing to install cleats to secure the vertical seam to the battens at the ridges. The circled area depicts the actual condition of the unsecured ridge seam due to Defendant's failure to attach cleats to secure the vertical seam to the horizontal battens. As shown in the diagrams, it was

6

certainly not impossible for Defendant to have complied with the contract requirements and standards by securing the hip/ridge seam to the battens with cleats.



As shown in Exhibit E-2, above, Defendant secured every vertical seam making up the triangular pans to the horizontal battens but failed to secure the vertical seams at the pan intersections. That failure is inconsistent with Bragg's opinion that the "industry standard" requires cleats to secure the horizontal portion of the battens where they intersect with the vertical lock of the seam. The vertical seams at the edges of the triangular pans consist of multiple copper panels cut at an angle to form the triangular shape of the octagonal roof. It was especially critical for Defendant to install cleats to secure the ridge seams which consist of shorter sections of copper and are located at a higher elevation than the seams within the pan. Defendant's failure to secure the vertical ridge seams to the battens breached the Contract and left every ridge joint susceptible to wind damage.

B.  There is No Inconsistency between the Requirements for Installing Cleats in the Standards Incorporated into the Contract

As discussed in Plaintiffs' Motion for Summary Judgment, both Revere Copper & Common Sense and the SMACNA manual incorporated into the Contract require cleats to secure all copper seams, including those that happen to fall at a hip or ridge. There is no exception in either standard for seams that connect the copper panels at a hip or ridge on the roof. To the contrary, both standards required Defendant to construct the copper seams at the hip ridges in the same manner as the seams that connected the panels that made up the triangular pans. The Contract does not exempt the copper seams connecting the triangular panels at the ridges from the requirement that cleats be installed at 9.5 inches on average. (Plaintiffs' Statement of Undisputed Facts ("PSUMF") 14-20, 26 (Doc. 88).)

Defendant's contention that only one of the standards in the Contract required cleats at the ridge seams is wrong. Furthermore, Defendant cannot excuse its breach by inventing an ambiguity that does not exist because Defendant drafted the Contract, especially when Defendant charged an additional fee in the Contract to compensate Defendant for the extra cleats when reducing the spacing from 12 inches to 9.5 inches. Any ambiguity must be resolved against Defendant because it drafted the Contract. Restatement (Second) of Contracts 206. Defendant incorporated both industry standards into the Contract and agreed to comply with both. Defendant knew the security of cleats was important to Plaintiffs who negotiated and paid for more cleats spaced closer together for better wind protection. If Defendant believed the two standards had different requirements for installing cleats at the critical, elevated ridge lines, Defendant was obligated to bring that to Plaintiffs' attention. Defendant did not raise the alleged ambiguity before agreeing to comply with both standards. Defendant did not disclose the ambiguity or any alleged impossibility to comply with either standard during construction; and Defendant raised it for the first time in this lawsuit. Defendant cannot now rely on a non-existent ambiguity to excuse its breach.

## C. Defendant's Causation, Intervening Cause and Alteration Arguments Are Meritless and Are Not Defenses to this Breach of Contract Action

Plaintiffs allege only a breach of contract claim for which they seek to recover the benefit of their bargain: a copper roof on their Main House secured to the substrate with cleats spaced as required by the Contract and the industry standards incorporated into it. Plaintiffs do not make claims of negligence, product liability or any other tort. Plaintiffs do not seek to recover damages to their property caused by Daybreak's faulty work or a failure of the roof during the high winds that hit St. John during Hurricane Irma. Plaintiffs just want the benefit of their bargain which under the circumstances requires replacement of the Main House roof. The causation requirement for breach of contract is that the damages must be a foreseeable result of the breach when the contract was made. Restatement (Second) of Contracts § 351. It was foreseeable when Daybreak agreed to install cleats as specified by the Contract that Daybreak's failure to do so would require replacement of the Main House roof to properly secure it with cleats.

Plaintiffs do not need to prove that the Main House roof was designed to withstand the winds generated by Hurricane Irma or any other storm. Plaintiffs do not need to produce an engineering report showing the roof as designed will withstand any particular windspeed. Whether the roof Daybreak agreed to provide was designed to withstand any particular windspeed is irrelevant to the breach of contract claim. Plaintiffs' roofing expert is not giving an opinion on the strength or suitability of the roof design, or the ability of cleats to survive high winds. Sanders' expertise in windspeeds is irrelevant. Plaintiffs are not suing Defendant for damage caused by the hurricane.

Plaintiffs are suing Defendant for breaching the Contract requirement to install cleats securing the copper seams at the ridges. Hurricane Irma was only the event that revealed

9

Defendant's breach of that Contract requirement when one entire ridge seam was opened, and all the others were disturbed. Plaintiffs do not need to prove that Defendant's failure to install cleats spaced at 9.5 inches to secure the ridge lines caused the ridge seam to open. Plaintiffs only need to prove that the breach of contract occurred. Plaintiffs obtained evidence of the breach when the hurricane opened one ridge seam to reveal the absence of cleats. However, that evidence is no longer necessary to prove breach because Defendant has now admitted it breached the Contract by failing to install *any cleats at all* in the ridge seams. Plaintiffs are suing to receive the benefit of their bargain which is a roof with all copper seams attached to the substrate as required by the Contract. The only way to cure Defendant's breach is to replace the Main House roof with one properly secured with cleats.

Defendant's suggestion that Sanders altered the Main House roof in 2014 is wrong and would not be a defense to Plaintiffs' claim for breach of the Contract even if true. The ridge seam Sanders inspected in 2014 was not the same ridge seam that opened during Hurricane Irma in 2017 (Declaration of Arthur L. Sanders in Support of Plaintiffs' Reply to Defendant's Opposition to Plaintiffs' Motion for Summary Judgment ("Sanders Reply Decl."), ¶ 5.) Sanders' inspection of a 2-foot section, or approximately 6% of a different seam has no relation to this breach of contract case. Again, this is not a tort case and "causation" of the damage resulting from Daybreak's breach of contract is not an issue. Plaintiffs satisfy the causation requirement for breach of contract by showing they did not receive the benefit of their bargain. Plaintiffs are entitled to a roof on their Main House with the wind protection for which they bargained and paid.

**E.    Sanders' Declaration is Not Inconsistent with His Expert Report or Prior Testimony and is Proper Evidence in Support of Plaintiffs' Motion for Summary Judgment**

Sanders' declaration is properly offered to support the specific issues in Plaintiffs' Motion for Summary Judgment. Sanders' declaration in support of this motion does not contradict the expert report Plaintiffs produced in discovery. In both Sanders is consistent in his criticism of Defendant's failure to comply with the requirement of the Contract and the standards incorporated into it. In both his declaration and his expert report Sanders explains how Defendant breached the Contract by failing to secure the ridge seams of the roof with cleats as required by the Contract and the industry standards. In his supporting declaration Sanders does not offer new opinions or contradict the opinions in his expert report. Sanders provides details regarding Defendant's non-compliance with the Contract. Sanders addresses defenses raised by Defendant in depositions taken after the date of his expert report, including the allegation that the two standards differ regarding securing the ridges with cleats and Defendant's claim it was "impossible" to secure the ridge seams to the battens. It is certainly appropriate for Sanders to provide a declaration supporting a motion for summary judgment that addresses testimony and defenses raised by Defendant.

Defendant tries to raise an issue based on an inadmissible uncertified and unsigned draft deposition of Sanders taken in the unrelated Superior Court case. Defendant cannot rely on the inadmissible draft deposition for any purpose, and it cannot be considered. (*See*, Plaintiffs' Objection to Evidence filed concurrently with this Reply.) Moreover, what Sanders did to inspect the roofs and prepare an expert report as part of the Superior Court case has no relevance to this District Court action for breach of contract.

As addressed thoroughly in Plaintiffs' Opposition to Defendant's motion for summary judgment, any claim for damages or replacement of the Main House roof was expressly excluded by an Order of the Superior Court granting a motion to exclude brought by Defendant. (*See*, Doc

11

98-102.) For that reason, the settlement agreement in the Superior Court action expressly excluded from the releases the claim for replacement of the Main House roof asserted in this District Court Action. Defendant is estopped from arguing this breach of contract claim was released, and Sanders' inspection of the Main House roof as part of the Superior Court case has no relevance to this case.

  **F. Defendant Does Not Address the Monetary Impact of Its Breach of the Contract**

  Defendant's Opposition does not address the monetary amount to which Plaintiffs are entitled in order to receive the benefit of their bargain. Defendant makes an unsupported claim that its expert believes the cleats could be installed inside the ridge seams without replacing the roof, but provides no evidence showing how that could be done, what it would cost, and how it would give Plaintiffs the roof for which they paid. Plaintiffs have provided the only evidence and expert testimony explaining why replacing the Main House roof is the only reasonable, and most economic way, to cure Defendant's breach of the Contract. Defendant makes no attempt to produce evidence contradicting the testimony of Plaintiffs' experts that it will cost $719,792 in 2026 dollars to provide Plaintiffs with a roof that complies with the Contract. There are no disputed facts and Plaintiffs are entitled to a judgment in that amount.

  **III. <u>CONCLUSION</u>**

  In its Opposition to Plaintiffs' motion and its own motion for summary judgment Defendant makes irrelevant arguments and tries to divert from the real issue. Defendant admits that it breached the Contract by failing to install cleats as required to secure the Main House copper roof at the ridges. There is no dispute about the requirements of the Contract and both standards incorporated into it. The plain language in both Revere Copper & Common Sense and the

SMACNA Manual impose the same requirement—all seams that are formed to join the copper panels and pans must be secured to the substrate with cleats.  Defendant's expert agrees that unspecified "industry standards" require all vertical seams to be secured with cleats where the seams intersect with the horizontal battens—which is exactly the case with the ridge seams on the octagonal Main House.  Defendant has presented no defense to excuse its breach of the parties' Contract.

Defendant's Opposition and its own motion for summary judgment are nothing more than attempts to confuse the issues and distract from the fact that Defendant has no defense.  Defendant admits it breached the Contract, Plaintiffs' claims in this case have not been released in connection with any other lawsuit, and Defendant does not dispute the measure of Plaintiffs' damages.

As Plaintiffs said in the introduction to this motion for summary judgment, this is a very simple case with no disputed facts.  Plaintiffs have established that Defendant breach the Contract; Defendant has no excuse for its breach or valid defense to Plaintiffs' claim; and there is no dispute about what it will cost to give Plaintiffs the benefit of their bargain.  This is a case where there are no disputed facts and Plaintiffs are entitled to summary judgment.  Plaintiffs respectfully request an Order granting their Motion for Summary Judgment in the amount of $719,792.

Dated :   January 16, 2026            **LAW OFFICES OF FRIEDBERG & BUNGE**

By: */s/ THOMAS F. FRIEDBERG, ESQ.*
   THOMAS F. FRIEDBERG, ESQ.(VI#1006)
    Attorneys for Plaintiffs THOMAS F. FRIEDBERG & SARAH L. BUNGE
   **THE LAW OFFICES OF FRIEDBERG & BUNGE**
   1005 ROSECRANS STREET, SUITE 202
   PO BOX 6814
   SAN DIEGO, CALIFORNIA 92166
   TEL : (619)557-0101
   FAX : (619)557-0560
   E-mail : "tom@lawofficefb.com"

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 16th day of January 2026, a true and correct copy of **REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** was filed with the CM/ECF system which will provide notice to the following:

Jeffrey C. Cosby, Esq.
Florida Bar No. 967981
Service to: eservice@wlclaw.com
Attorney for Defendant Daybreak Inc
Williams, Leininger & Cosby, P.A.
301 SE Ocean Blvd., Suite 205
Stuart, FL   34994
Telephone: 772-463-8402
Facsimile: 772-463-4820

Andrew C. Simpson
**ANDREW C. SIMPSON, PC**
2191 Church St., Ste. 5
Christiansted, VI 00820
TEL : 340.719.3900
E-MAIL :asimpson@coralbrief.com

　　　/s/ THOMAS F. FRIEDBERG　　　
**THOMAS F. FRIEDBERG**
