# IN THE UNITED STATES DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. THOMAS AND ST. JOHN

THOMAS F. FRIEDBERG & SARAH L. BUNGE,

              Plaintiffs,

v.

DAYBREAK, INC. dba HUBER & ASSOCIATES,

              Defendant.

**CIVIL ACTION NO. 3:19-cv-0053**

## PLAINTIFFS' RESPONSE TO DEFENDANT'S STATEMENT OF ADDITIONAL MATERIAL FACTS IN SUPPORT OF ITS OPPOSITION TO PLAINTIFFS' MOTION FOR FINAL SUMMARY JUDGMENT

Plaintiffs Thomas F. Friedberg and Sarah L. Bunge ("Plaintiffs") the following Response to Defendant's Statement of Additional Material Facts in Support of its Opposition to Plaintiffs Motion for Final Summary Judgment:

1.      In 2010, Daybreak Roofing Company ("Daybreak") was hired to install copper standing seam roofs on eight separate structures, including the "main pavilion," at the Friedberg-Bunge residence in St. John, United States Virgin Islands. Exhibit 1, Contract.

**Plaintiffs' Response:**

Undisputed for the purpose of ruling on the motion for summary judgment only.

2.      The contract does not specifically specify that cleats would be installed in the ridges. Exhibit 1, Contract.

**Plaintiffs' Response:**

**Disputed**.

1

The Contract required Defendant to install cleats to secure the copper roofing at an agreed spacing averaging 9.5 inches on center and as required by the standards incorporated into the Contract: (a) Revere Copper & Common Sense ("Revere C&CS"), and (b) the Sheet Metal and Air Conditioning Contractors' National Association, Inc. ("SMACNA"). (Plaintiffs' Statement of Undisputed Facts in Support of Motion for Summary Judgment ("PSUF") 9, 10, 11, Doc. 88.)[1]  Both the Revere C&CS and SMACNA standards require the installation of cleats in *all* seams to secure the copper panels/pans *including where they meet at hips or ridges*.  The Revere C&CS industry standards are the same for securing copper seams anywhere on the roof, including the roof's flat surfaces and its hips and ridges.  Revere C&CS states under the heading Hips and Ridges: "Ridges and hips shall be provided with standing seams constructed as specified for standing seams of main roof."  This includes the same requirement that cleats must be "*worked into the seams*" at specified intervals to secure the copper roof panels/pans to the substrate on both the main roof and the hips and ridges. (PSUF 14, 17.) Revere C&CS "Specifications for roofs with standing seams" addresses the pan method of construction *and includes the installation of cleats in the seams of the copper roof pans*, with no exception for copper pans that intersect at the roof's hip or ridge lines. (PSUF 17, 18.)

The SMACNA Manual also requires that with both the pan and roll method of construction, copper panels and pans must be installed with cleats inside the seams to attach the copper to the substrate, including at the roof's hips or ridges.  The SMACNA Manual includes diagrams depicting the placement of cleats inside the seams where the panels or pans form the "hip or ridge" of the roof. (PSUF 19, 20.)

*See* PSUF 11-26, 28.

3.      Joe Bragg, Defendant's roofing expert, testified that Revere Copper & Common Sense

---

[1] The references to PSUF (Doc. 88) in this Response refer to the Undisputed Facts and the supporting evidence cited.

& SMACNA, actually contradict themselves when it comes to whether to install cleats in the hip ridges of a roof:

> Q: Okay.· Were there clips -- should there have been clips on all that seam?
>
> A: Well, if you -- if you listen to SMACNA yes. But if you listen to Copper and Common Sense, no.

Exhibit 2, Deposition of Joe Bragg taken on September 23, 2025, 35:7-10.

**Plaintiffs' Response:**

Undisputed that Joe Bragg ("Bragg") admitted in his deposition testimony that SMACNA requires the installation of cleats inside all seams to secure the copper to the substrate, including seams located at the ridges of the roof.  Undisputed that Bragg erroneously claimed that Revere C&CS does not require securing seams with cleats if they are located at the ridges.  **Disputed** that Bragg is correct that Revere C&CS does not require cleats to secure the seams when they are located on the roof's hips and ridges. Revere C&CS states under the heading Hips and Ridges: "Ridges and hips shall be provided with standing seams constructed as specified for standing seams of main roof."  This includes the same requirement that cleats must be "*worked into the seams*" at specified intervals to secure the copper roof panels/pans to the substrate on both the main roof and the hips and ridges. (PSUF 14, 17.) **Disputed** that Brag is correct that the two standards contradict themselves.  As stated in Plaintiffs' Response to No. 2, above, the standards are the same and both require that all seams in the copper roof must be secured with cleats regardless of where the seams are located.

*See* Plaintiffs' Response to No 2, above, and supporting evidence cited; PSUF 11-26, 28.

4.    Bragg further testified "(w)hen you say nine-and-a-half inches on center in the industry, that indicates the horizontal portion of the battens where it intersects with the vertical lock of the seam. In no way, shape, or form does that ever have anything to do with the hip and ridge." Exhibit 2 at 7: 17-21.

3

**Plaintiffs' Response:**

Undisputed that Joe Bragg ("Bragg") testified as quoted here. **Disputed** that Brag is correct that the two standards contradict themselves. *See* Plaintiffs' Response to No 2, above, and supporting evidence cited; PSUF 11-26, 28.

5.      Expert Bragg reiterated the opinion that Plaintiffs' interpretation of the contract is not an industry standard:

> Q: Well, is there any indication in the contract that the -- the clips or cleats would not be used at any -- would not be used in areas in which the panels needed to be joined?
>
> MR. COSBY: Object to the form.
>
> THE WITNESS: Again, we have to go by industry standard here. When somebody says that a standing seam needs to be secured at nine-and-a-half inches, it is known within the industry that that is indicating the vertical section of each individual panel. I've never heard of it in 26 years of ever being anything associated with how the hip and ridge is finished.
>
> Exhibit 2 at 35:22-36:8.

**Plaintiffs' Response:**

**Disputed** that industry standards do not require that all copper seams, including those located at the hips and ridges, must be secured to the substrate with cleats.  As stated in Plaintiffs' Response to No. 3, above, the standards are the same and both require that all seams in the copper roof must be secured with cleats regardless of where the seams are located.    *See* Plaintiffs' Response to No. 2, above, and supporting evidence cited; PSUF 11-26, 28.

6.      Pursuant to this Court's Scheduling Order, Plaintiffs had until October 15, 2025 to provide all expert opinions and no rebuttal reports are allowed without leave of Court. *See* Doc.42,

"Scheduling Order."

**Plaintiffs' Response:**

**Disputed.**

The Court's Scheduling Order provides that all expert depositions shall be completed no later than October 15, 2025. The Scheduling Order does not provide as Defendant has stated here.

*See,* Scheduling Order, Doc. 42.

7.    As part of his 2014 inspection for the prior litigation between the parties, Plaintiffs retained architect Arthur Sanders who physically opened a section of the copper roof on the Main Pavilion to examine the construction beneath the visible surface and observed the absence of cleats in the ridges. Exhibit 3, 14:9-15:25, Arthur Sanders' Deposition taken in Case No. ST-2010-CV-00716.

**Plaintiffs' Response:**

**Disputed,** irrelevant and not supported by admissible evidence.

This purported uncontested fact is supported only by an uncertified, unsigned and undated deposition transcript marked as a "draft" from a different case. Plaintiffs **object** to the uncertified draft deposition transcript as inadmissible hearsay. An uncertified, draft deposition transcript cannot be used or cited in any court proceedings. See *Impact Mktg. Int'l LLC v. Big O Tires, LLC*, 2012 U.S. LEXIS 12458* at *5 (D. Nev., February 2, 2012). A district court may only consider admissible evidence in ruling on a motion for summary judgment. *Williams v. Gomez*, 2016 U.S. Dist. LEXIS 68771* (N.D. Cal., May 25, 2016), citing Fed. R. Civ. P. 56(e); *Orr v. Bank of Am., NT & SA*, 285 F. 3d 764, 773 (9th Cir. 2002). To be admissible, evidence must be properly authenticated. "Therefore, 'unauthenticated documents cannot be considered in a motion for summary judgment.'" *Impact Mktg. Int'l LLC v. Big O Tires, LLC*, supra, 2012 U.S. LEXIS 12458* at *4, quoting *Orr v. Bank of America, supra* 285 F. 3d at 773-774. Defendant has not authenticated the undated, uncertified draft deposition

transcript which is the only evidence it cites to support this purported fact. The deposition transcript cannot be considered and there is no evidence supporting the alleged uncontested fact.

**Disputed** that Sanders "opened a section of the copper roof on the Main Pavilion" and observed "the absence of cleats in the ridges." Sanders reported in the Hoffmann Copper Roof Investigation report dated November 12, 2014 ("Hoffmann Expert Report") finding cleats spaced on an average of 9.5 inches in the section of the seam on the west side of the Main House roof that was opened to inspect for cleats. Sanders opened only a small, 2-foot section of one Main House hip ridge which comprised just 6% of the entire 33-foot length of the hip ridge seam. Sanders focused his criticism on Daybreak's manner of constructing the ridge seam by folding over irregularly cut copper and covering it with a hip cap. Sanders mentioned in his report that he did not see either cleats or expansion clips in the 2-foot hip seam he opened. However, that does not establish as an undisputed fact that there were no cleats in the remaining 94% of the hip seam that Sanders did not open. Furthermore, nothing Sanders reported inspecting revealed that Daybreak did not install cleats to secure any of the hip ridge seams on the Main House roof, or on any of the other roofs on the Property.

Sanders did not determine that Daybreak had not installed cleats in complete 33-foot seam on the Main House roof until a different seam was completely opened by Hurricane Irma in 2017. Sanders did not determine that Daybreak had not installed cleats to secure any of the hip ridge seams on any of the buildings based on his minimal investigation of a short section of one hip ridge seam. Plaintiffs did not know that Daybreak did not install cleats to secure any of the hip ridge seams on the Property until Daybreak admitted it in depositions in the District Court Action in 2025.

*See*, Uncertified deposition marked as "draft" filed as Exhibit 3 to Defendant's Opposition to Plaintiffs' Motion for Summary Judgment; Declaration of Arthur L. Sanders, AIA *Emeritus*, in Support of Plaintiffs' Reply to Defendant's Opposition to Plaintiffs' Motion for Summary Judgment ("Sanders Reply Decl."), ¶¶ 3, 4, Doc 89; Plaintiffs' Response to Defendant's Statement of

6

Uncontested Material Facts in Support of Motion for Final Summary Judgment ("PRSUF") 10, Doc. 99.[2]

8.     As part of this inspection, Sanders had a roofer physically open a section of the copper roof on the main pavilion to examine the construction beneath the visible surface and described what he observed:

> Q:     Okay. So this -- the place where you did this was on the main pavilion?
>
> A: Yes.
>
> Q: Okay. And you said you unlocked -- you actually unlocked the ridge --
>
> A:     We drilled out the pop rivets on the cap, we -- we unlocked the portion that was overlapped and we found in that case *there were no cleats so in the -- in the intersection of the pans at the ridges, we found no cleats securing those to the -- to the substrate below.*
>
> Q:     *And this would have been cleats in the ridges or cleats in the --*
>
> A:     *Cleats in the ridges.*
>
> Q:     Not in the standing seam, you are talking?
>
> A:     Not in the standing seam.
>
> Exhibit 3 at 15:1-17 (emphasis added).

**Plaintiffs' Response:**

**Disputed**, irrelevant and not supported by admissible evidence.

This purported uncontested fact is supported only by an uncertified, unsigned and undated deposition transcript marked as a "draft" from a different case.  Plaintiffs **object** to the uncertified draft deposition transcript as inadmissible hearsay.  An uncertified, draft deposition transcript cannot be used or cited in any court proceedings.  See *Impact Mktg. Int'l LLC v. Big O Tires, LLC*, 2012

---

[2] References to the PRSUF (Doc. 99) in this Response are to the Plaintiffs' Responses to the alleged Uncontested Facts in Defendant's Motion for Final Summary Judgment and the supporting evidence cited.

U.S. LEXIS 12458* at *5 (D. Nev., February 2, 2012).   A district court may only consider admissible evidence in ruling on a motion for summary judgment.  *Williams v. Gomez*, 2016 U.S. Dist. LEXIS 68771* (N.D. Cal., May 25, 2016), citing Fed. R. Civ. P. 56(e); *Orr v. Bank of Am., NT & SA*, 285 F. 3d 764, 773 (9th Cir. 2002).  To be admissible, evidence must be properly authenticated.  "Therefore, 'unauthenticated documents cannot be considered in a motion for summary judgment.'" *Impact Mktg. Int'l LLC v. Big O Tires, LLC*, supra, 2012 U.S. LEXIS 12458* at *4, quoting *Orr v. Bank of America, supra* 285 F. 3d at 773-774.  Defendant has not authenticated the undated, uncertified draft deposition transcript which is the only evidence it cites to support this purported fact.  The deposition transcript cannot be considered and there is no evidence supporting the alleged uncontested fact.

**Disputed** that Sanders determined there were no cleats "in the ridges."  Sanders reported that his inspection in 2014 involved opening up only a small, approximately 2-foot section of one hip ridge on the Main House roof.  The small section Sanders inspected in 2014 was only 6% of the entire 33-foot hip ridge seam.  Sanders' inspection of that small section does not establish that the remaining 94% of the ridge seam lacked any cleats at all.  It also did not establish that Daybreak did not install cleats in any of the hip ridge seams on the Main House or the roofs on any other building on the Property.  Defendant admitted for the first time in depositions in this case in 2025 that it did not install cleats to secure the ridges on any roof on Plaintiffs' Property.

*See*, Uncertified deposition marked as "draft" filed as Exhibit 3 to Defendant's Opposition to Plaintiffs' Motion for Summary Judgment; Sanders Reply Decl., ¶¶ 3, 4; PRSUF 10, 12.

9.    Sanders confirmed that the only ridge seam that failed during Hurricane Irma was the ridge seam that he opened up in 2014. Exhibit 3 at 25:18-24.

**Plaintiffs' Response:**

**Disputed**.

The ridge seam that failed during Hurricane Irma was not the same ridge seam Sanders

inspected in 2014.

> *See*, Sanders Reply Decl., ¶ 5; PSUF 54, 55, 56 (Doc. 88).

10.    This alleged defect was also reported in Sanders' 2014 expert report where he summarized his findings:

> The investigation found that the pan system in the field of the roofs was installed on the roofs of the nine structures in accordance with industry standards and with the project required 9.5" o.c. cleat spacing. However, the end conditions at intersections of pans; *ridges* and hips, were not installed in accordance with Copper and Common Sense's recommended single lock seam *and were not secured in the joint with cleats as is standard practice.*
>
> Exhibit 4 Arthur Sanders 2014 Report at 45 (emphasis added).

**Plaintiffs' Response:**

**Disputed**.

Sanders' 2014 expert report included general criticism of the condition of Daybreak's workmanship on the ridges on the roofs that were covered with riveted ridge caps. Sanders described removing only one section of the cap that covered one hip ridge seam on the Main House roof. The total length of the Main House hip ridge was approximately 33 feet and Sanders opened only an approximately 2-foot section of the seam, or approximately 6% of the total length of the hip ridge. Sanders reported that he did not observe the presence of cleats or expansion clips in the 2-foot section of hip ridge seam he opened on the Main House roof. The spacing of the cleats in the pan seams that were previously exposed in the seam on the west side of the Main House roof were not spaced at precisely 9.5 inches but rather varied between 8 and 10 inches. Given the inconsistent spacing of the cleats on the west side, there was no reason to assume that even if there were no cleats on the approximately 2-foot section which represented about 6% of the total length of the hip ridge, that there was an absence of cleats on the remaining 31 feet, or 94%, of the remaining hip ridge. Sanders did not open an entire hip ridge on the Main House or any of the other buildings on the Property as part of his inspection. Sanders did not determine that Daybreak had not installed cleats in any of the hip

ridge seams on any of the buildings based on is minimal investigation of a short section of one hip ridge seam.  Plaintiffs did not know that Daybreak did not install cleats to secure any of the hip ridge seams on the Property until Daybreak admitted it in depositions in the District Court Action in 2025.

*See*, PRSUF 18 (Doc. 99).

11.    The diagram from SMACNA Manual 6th Addition does not use the word "cleat" as suggested by Plaintiffs and the description of Figure 6-6 does not mention cleats:



Exhibit D to Arthur Sanders' Declaration, Bottom of Page 10.

**Plaintiffs' Response:**

**Disputed**.

Defendant's designated expert, Bragg, acknowledged in his deposition testimony that the SMACNA Manual diagram for Hip or Ridge Detail, shown above, shows cleats securing the seams of a copper roof at the ridges:

> Q.    Maybe I'm mistaken.  Let's talk – lets move off expansion cleats and come back to the actual cleats themselves that get ridge attachment.  Does SMACNA say you need cleats there or not?
> A.    SMACNA does indicate it within their diagram that, yeah.
> Q.    That yes, what?
> A.    That cleats are required along the hip ridge whereas Copper & Common Sense doesn't.

*See,* Deposition of Joe Bragg at 113:2-10, attached to the Declaration of Thomas F. Friedberg in Support of Plaintiffs' Reply to Defendant's Opposition to Plaintiffs' Motion for Summary Judgment ("Friedberg Reply Decl.") as Exhibit A.

Defendant's principal, Barry Huber, also confirmed in his deposition testimony that the diagram of the Hip or Ridge Detail in the SMACNA Manual shows cleats securing the seam:

Q.     Does SMACNA address cleats at the hip/ridge intersections?
A.     They have an image in the book of them.
Q.     And the image depicts that, cleats being used at the hip/ridge intersection?
A.     Correct.

*See,* October 7, 2025 Deposition of Barry Huber ("10/7/25 Huber Depo.") at 24:1-6, attached to the Friedberg Reply Decl. as Exhibit B.)

12.     Sanders disclosed his opinions in this case in his June 29, 2025 report which does not contain any of the diagrams listed as Exhibits E1-E5 nor the photograph and diagram in ¶¶ 51 and 52 of Sanders' Declaration. Exhibit 5, Sanders' June 29, 2025 Expert Report.

**Plaintiffs' Response:**

Undisputed for the purpose of ruling on the motion for summary judgment only. The diagrams attached as Exhibits E1-E5 to the Sanders Declaration and the photographs incorporated into it are for the purpose of providing evidence supporting Plaintiffs' Motion for Summary Judgment.

13.     In ¶ 46 of his Declaration, Sanders states that the failure to properly secure the hip caps with rivets was part of the cause of the failure of the roof. However, during his deposition he testified that the uplift damage was solely caused by the wind:

Q Okay. And so, help me out. Where is the wind entering to cause the uplift?

A It's not entering. It's traveling along the roof in upward fashion to tear.

Exhibit 6, Deposition of Arthur Sanders taken on August 28, 2025, 115: 10-13.

**Plaintiffs' Response:**

**Disputed** and misstates the testimony.

11

In paragraph 46 of his declaration in support of Plaintiffs' Motion for Summary Judgment Sanders states that hip ridge seams were not properly secured by cleats and then Defendant improperly riveted the caps that provided the only means of holding the hip ridge seams together. Sanders stated that the unsecured condition—consisting of both copper seams not cleated to the substrate and improperly riveted caps over the copper seams—explained why he observed that all the Main House ridge seam caps were loosened and displaced by Hurricane Irma.  In his deposition Sanders testified that the wind from the storm was blowing against the "rib structure, the inner section of the pan on these octagonal sections."  He testified that the wind caused uplift by blowing against the poorly installed ridge caps over the seams that were not secured by cleats.  He testified that the surface wind hitting the sloped roof and tearing at the material caused the uplift damage he observed.

*See,* PSUF 46; Sanders Decl. , ¶ 46, Doc. 89; August 28, 2025 Deposition of Arther Sanders ("Sanders Depo.") at 115:20-116:23, attached to the Friedberg Reply Decl. as Exhibit C.

14.    In ¶ 50 of Sanders' Declaration, he claims the first he only learned of the cleats not being in the hip ridges was after Hurricane Irma. However, in his 2014 Report, he stated:

> The investigation found that the pan system in the field of the roofs was installed on the roofs of the nine structures in accordance with industry standards and with the project required 9.5" o.c. cleat spacing. However, the end conditions at intersections of pans; ridges and hips, were not installed in accordance with Copper and Common Sense's recommended single lock seam and were not secured in the joint with cleats as is standard practice.

Exhibit 5 at Page 45 and Exhibit 3 at 25:18-24.

**Plaintiffs' Response:**

**Disputed**.

Sanders' expert report included general criticism of the condition of Daybreak's workmanship on the ridges on the roofs that were covered with riveted ridge caps.  Sanders described removing only one section of the cap that covered one hip ridge seam on the Main House roof.  The total length of the Main House hip ridge was approximately 33 feet and Sanders opened only an approximately

2-foot section of the seam, or approximately 6% of the total length of the hip ridge. Sanders reported that he did not observe the presence of cleats or expansion clips in the 2-foot section of hip ridge seam he opened on the Main House roof. The spacing of the cleats in the pan seams that were previously exposed in the seam on the west side of the Main House roof were not spaced at precisely 9.5 inches but rather varied between 8 and 10 inches. Given the inconsistent spacing of the cleats on the west side, there was no reason to assume that even if there were no cleats on the approximately 2-foot section which represented about 6% of the total length of the hip ridge, that there was an absence of cleats on the remaining 31 feet, or 94%, of the remaining hip ridge. Sanders did not open an entire hip ridge on the Main House or any of the other buildings on the Property as part of his inspection. Sanders did not determine that Daybreak had not installed cleats in any of the hip ridge seams on any of the buildings based on is minimal investigation of a short section of one hip ridge seam. Plaintiffs did not know that Daybreak did not install cleats to secure any of the hip ridge seams on the Property until Daybreak admitted it in depositions in the District Court Action in 2025.

*See*, PRSUF 9, 18 (Doc. 99).

15.     In ¶ 51 of Sanders' Declaration, he claims that the area he opened up in 2014 was not the same area that was opened up during Hurricane Irma. However, during his deposition, Sanders testified that the Irma damage was in the same area:

> Q:      After the storm, investigation revealed that Defendant did not install cleats at the intersection of the copper panels that form the ridge between copper pans at 9.5 inches on center as required by the terms and conditions of the contract."
>
> A:      I did say that.
>
> Q:      Now, the only ridge where that was confirmed was the one that was opened, correct?
>
> A:      Yes.
>
> Q:      So where it says, "did not install cleats at the intersection of the copper panels," that's only in the one area where the ridge was opened that's in

13

photo 40 that we went over a moment ago, correct?

A:      That is the only area that we had opened.

Q:      And the areas that you didn't open you can't confirm whether there are cleats or not there, correct?

A:      That's correct.

Exhibit 7, Arthur Sanders Deposition September 11, 2025, 22:17 to 23:11 (objections omitted).

**Plaintiffs' Response:**

**Disputed**.

Sanders was not present in 2019 when Richard Barabas ("Barabas") of Dahill repaired the hip ridge seam on the Main House that had been opened by Hurricane Irma.  Sanders had not seen Barabas' photographs of the fully-opened ridge seam before he was deposed on September 11, 2025. In his deposition he mistakenly said that the hip ridge seam that was opened by the hurricane was the same ridge seam Dahill opened and recrimped a 2-foot section of in 2014.  After his deposition he reviewed Barabas' photographs of the 2019 repair of the ridge seam that opened completely during Hurricane Irma.  That review refreshed his recollection and reoriented him to the locations of the 2014 and 2019 ridge seam repairs.  Sanders realized after his deposition was taken that the small section of ridge seam that was repaired in 2014 was not part of the same ridge seam that was fully opened by Hurricane Irma in 2017.  The ridge seam that Dahill repaired in 2014 was on the opposite side of the pan from the ridge seam that was completely opened in 2017.  The two different ridge seams involved in the 2014 and 2019 repairs are identified in the photograph incorporated into paragraph 51 of Sanders' Declaration in support of Plaintiffs' Motion for Summary Judgment.

*See*, Sanders Reply Decl., ¶ 5; PSUF 55, 56; PRSUF; 17.

16.     In ¶49, Sanders, in his Declaration, is also claiming that there is damage throughout the entire roof, but in his previous testimony he testified that:

Q: Was there any area other than the 5:00 o'clock to 5:30, what we've referenced in photos 39 and 40 that we discussed already, were there any areas other than that that showed any kind of post storm damage related to uplift in your opinion?

A: Not to my recollection.

Exhibit 6 at 112:1-6.

**Plaintiffs' Response:**

**Disputed**.

In paragraph 49 of his Declaration Sanders discussed the fact that when he inspected the Main House roof in February 2018 he noted in the Hoffmann Damage Report that the hurricane's winds had damaged and loosened all the copper caps and also caused one hip seam on the northeast side to open.

*See*, Sanders. Decl., ¶¶ 7, 8, 49.

17.     Sanders testified that the reason for the 9.5" spacing requirement for cleats (less than the industry standard of 12") was because "this is a high wind area." Exhibit 6 at 20:23.

**Plaintiffs' Response:**

Undisputed for the purpose of ruling on the motion for summary judgment only.

18.     At the time of his deposition, Sanders could not recall having seen the engineering report.

Exhibit 6 at 21:2-7.

**Plaintiffs' Response:**

Undisputed for the purpose of ruling on the motion for summary judgment only.

19.     Sanders admitted that he did not have the expertise to opine as to the windspeeds that cleats could withstand if they encountered winds in excess of 200 miles per hour and explained "you need someone who diagnoses these things from the industry to respond to that. Perhaps somebody from Copper and Common Sense or perhaps someone from Miami Dade." Exhibit 6 at 104:13-20.

**Plaintiffs' Response:**

Undisputed for the purpose of ruling on the motion for summary judgment only. It is irrelevant whether Sanders has the expertise to testify about windspeed resistance of cleats. Plaintiffs are not claiming that Defendant was negligent or that it installed cleats that could not withstand any particular wind speed. Plaintiffs claim Defendant breach the Contract by not installing cleats in the Main House ridges and seek the benefit of their bargain in the form of a new roof properly secured with cleats as required by the Contract. The issue of windspeed resistance of the cleats Defendant failed to install in the Main House roof ridges is irrelevant to this case.

20.    When asked to acknowledge that "wind damage, wind speeds, what damage would be caused by what speed" was not in his expertise, Sanders agreed, stating, "I'm not in that business, no." Exhibit 6 at 105:6.

**Plaintiffs' Response:**

Undisputed for the purpose of ruling on the motion for summary judgment only. It is irrelevant whether Sanders has the expertise to testify about windspeed resistance of cleats. Plaintiffs are not claiming that Defendant was negligent or that it installed cleats that could not withstand any particular wind speed. Plaintiffs claim Defendant breach the Contract by not installing cleats in the Main House ridges and seek the benefit of their bargain in the form of a new roof properly secured with cleats as required by the Contract. The issue of windspeed resistance of the cleats Defendant failed to install in the Main House roof ridges is irrelevant to this case.

21.    Sanders produced another report which he used in his Declaration that was created for Friedberg's case against his insurance company which was obtained by Defendant only by way of subpoena as Plaintiff did not properly disclose same and for which they objected to. Exhibit 8, Sanders' August 20, 2018 Expert Report and Document # 65 on the Court docket.

**Plaintiffs' Response:**

16

**Disputed** and objection as irrelevant and not material to the issues in this action for breach of contract based on Defendant's to install cleats.  The insurance report was for the purpose of identifying all damages to Plaintiffs' Property caused by Hurricane Irma and an estimated cost of repair. It was not intended to assess blame.  The insurance damage report did not address any issues related to Defendant's breach of contract by failing to install cleats as required by the Contract and the standards incorporated into it.  Furthermore, Defendant failed to issue to a subpoena to obtain the insurance report before the close of fact discovery in this case.  As a result, Defendant was required to bring a motion to reopen discovery due to Defendant's failure to timely obtain the third-party evidence.

*See*, PRSUF 51; (Doc. 63).

22.    Sanders' opinions are based on assumptions and purely speculation. Exhibit 6 at 100:20-101:4 and 112:1-114:2.

**Plaintiffs' Response:**

**Disputed,** misstates the testimony and irrelevant to Plaintiffs' sole claim for Breach of Contract.

In the deposition testimony cited Sanders testified that it is his opinion with more than 50 percent certainty that if defendant had secured the ridge seams with cleats the ridge seam that opened during the hurricane would not have been damaged.  In the cited testimony Sanders acknowledged that the one ridge seam that opened during the hurricane is the only one for which he had confirmation that there were no cleats at the time of his inspection in 2018 and after Dahill documented the absence of cleats in the one open seam in 2019.  It was Defendant's admission in discovery in this case that it did not comply with the Contract requirement to secure the copper roof with cleats spaced at 9.5 inches on average that confirmed Defendant's breach of the Contract.

This is not a negligence case and the evidence of wind damage to the Main House roof and

the ridge seam that opened during the hurricane is irrelevant to Plaintiffs' claim for breach of contract. The hurricane damage led to Plaintiffs' contractor, Dahill, observing the absence of cleats securing the entire open ridge when performing repairs in 2019. Plaintiffs' Breach of Contract claim in this case is based on Defendant's failure to give Plaintiffs' the benefit of their bargain—a roof with cleats installed as required by the Contract and the standards incorporated into it. The wind resistance provided by the roof Defendant installed, with or without the cleats at the ridges as required by the Contract, is not an issue. Sanders is not offered as an expert in wind resistance. He is an expert on the requirements in SMACNA and Revere C&CS that all copper seams, including at the hips and ridges, must be secured to the substrate with cleats. His expert opinion supports Plaintiffs' Breach of Contract claim. Sander's opinion that Defendant breached the Contract by failing to secure the Main House ridge seams with cleats at 9.5 inches on average is supported by the Contract, the standards incorporated into it, the evidence, including Defendant's admission, and not based on speculation.

*See*, Sanders' deposition testimony cited above; PSUF 8-11, 14-26. 29-37, 40-50.

23.     Plaintiffs' Complaint for Breach of Contract make no mention of the copper not being attached to the membrane or about the rivets not going through the battens. *See* Plaintiffs' Complaint Document #1 in the Court docket.

**Plaintiffs' Response:**

Undisputed for the purpose of ruling on the motion for summary judgment only, and also irrelevant. Plaintiffs' sole cause of action for breach of contract is based on Defendant's failure to install cleats to secure the roof to the substrate as required by the Contract and the standards incorporated into it. The improperly installed ridge caps were not intended to provide protection from wind damage. The cleats Defendant agreed to install as required by the Contract were to provide wind protection for the copper roof. Defendant's failure to comply with the requirement for cleats at the Main House ridges deprived Plaintiffs of the benefit of their bargain. Plaintiffs seek to recover the

benefit of their bargain by having a new roof installed on the Main House with cleats as required by the Contract to provide the wind protection for which Plaintiffs' paid Defendant.

*See,* PSUF 8-53, 57-60.

24.     Joe Bragg in his expert report gives the reasons he believes there was damage:

> Upon the conclusion of the second strongest Atlantic storm on record, the home's roof system was intact, without any of the wind uplift damage typically identified or defined in the industry. The main home was not complete in its construction, and the absence of windows and doors significantly increased the internal pressure, yet it amounted to no damage. Any intended or designed wind uplift resistance would be predicated on a closed system, which was not the case here. The fact that the roof did not experience damage due to wind uplift, even with this variable and the extreme conditions, only exemplifies that the roof system was properly installed. With all the outside variables stacked against the roof system sustaining its functionality, to this day, the system is still intact with only minor issues and no direct evidence of continued roof leaks or failure due to wind uplift.

> Exhibit 9, Joe Bragg's Expert Report, Page

**Plaintiffs' Response:**

**Disputed** and objection.

Bragg has no foundation for his claim that there was an "absence of doors and windows" and that the Main House was an "open system" and not a "closed system."  Bragg testified that he had no knowledge of the Kevlar Storm Capture wind screen system that was installed on the windows and the plywood that was installed over all the doors and windows for storm protection.  Bragg testified he did not go inside the Main House and has no foundational knowledge of the plywood that covered the openings on the Main House in addition to the Kevlar Storm Capture screen.  (*See*, Bragg Depo. 54:20-25; 57:24-59; 59:24-61:23, attached to the Friedberg Reply Decl. as Exhibit A; Deposition of Sarah L. Bunge ("Bunge Depo."), 39:19-40:6; 40:12-24; 47:5-8, attached to the Friedberg Decl. as Exhibit D.)  Defendant's principal, Huber, testified that the roof was sound and he had no concerns about its structure.  (See, April 28, 2025 Deposition of Barry Huber ("4/28/25 Huber Depo."), 13:3-

5; 14:22-25, attached to the Friedberg Decl. as Exhibit E.)

The evidence establishes that the Main House roof experienced wind uplift damage during Hurricane Irma, which put Plaintiffs on notice of the absence of cleats in at least one ridge seam. In discovery in this action Defendant admitted that it did not comply with the Contract requirement to install cleats to secure all seams on the roof. Defendant admitted for the first time in 2025 that it did not install cleats to secure any of the hip ridges on the Main House. Regardless of the effects Hurricane Irma did or did not have on the Main House roof, Defendant has admitted it breached the Contract. Plaintiffs are entitled to the benefit of their bargain in the form of a new roof properly secured by cleats as required by the Contract. The only way to provide that benefit is to replace the entire Main House roof and Plaintiffs' experts have provided a replacement cost analysis.

*See*, PSUF 8-53, 57-60.

25.    Sanders' expert report does not contain any graphic documentation of defects. Exhibit 5.

**Plaintiffs' Response:**

**Disputed**.

This is not a construction defect case. Sanders' expert report contains documentation that Defendant breached the Contract by failing to install cleats as required to secure the ridge seams on the Main House. The "graphic documentation" of Defendant's breach of the Contract by failing to install cleats to secure the ridge seams is contained in Sanders' expert report in Photos 1, 2, 3, 5 and 5 showing the failed ridge seam on the Main House with a visible absence of cleats to secure it to the substrate.

*See,* Exhibit 5, Sanders expert report cited by Defendant above at Photos 1-5, pp. 6-10.

26.    Barry Huber, the principle [sic] for Daybreak, testified that cleats were not needed in the ridges. Exhibit 10 at 38:22-39:25, Deposition of Barry Huber taken on October 7, 2025.

**Plaintiffs' Response:**

**Disputed** and irrelevant whether Huber thinks cleats "were not needed" in the ridges.

The Contract specifically required Defendant to install cleats spaced at 9.5 inches on average and required Defendant to install all cleats according to the standards incorporated into the Contract. There were no exceptions in the Contract or the standards incorporated into it that allowed Huber to unilaterally decide, without informing Plaintiffs, that it was not necessary to secure the copper seams at all the ridges with cleats and that Defendant would instead rely on folded seams covered by riveted copper ridge caps to secure the copper roof ridges to the substrate. Defendant has admitted it did not comply with that Contract requirement by failing to install any cleats to secure all the ridge seams on the Main House roof. Whether or not Huber thought the cleats were "needed" to secure the ridges to the substrate, Defendant was required by the Contract to install them at the ridges and its failure to do so breached the Contract. Plaintiffs are entitled to the benefit of their bargain in the form of a new Main House roof with all seams secured by cleats, including the ridge seams.

*See*, PSUF 8-53, 57-60.

27.    Defendant's Roofing Expert testified that the roof could be repaired to place cleats in the ridges. Exhibit 3 at 80:18-82:6.

**Plaintiffs' Response:**

**Disputed**.

Based on Defendant's admission that it did not secure any of the ridge seams to the substrate with cleats, all the triangular pans making up the Main House roof will have to be secured with cleats. The only way to secure the panel intersections is to remove the panels to allow one side to be accessible for cleating. Each copper panel will have to be opened up to allow one side to be accessible for cleating. The repair process will likely damage the copper panels and pans. The copper pans need to be replaced to properly form and secure the pans at the ridge joints. Replacement is the only

viable option to provide Plaintiffs' the benefit of the secured copper roof for which the bargained.

*See*, Sanders expert report at p. 10, Exhibit 5 to Defendant's Opposition.

28.    Ridge caps or "batten seams" are used for appearance and for extra water shedding and not for wind protection. Exhibit 11 at 27:4-10, Deposition of Barry Huber taken April 28, 2025.

**Plaintiffs' Response:**

Undisputed for the purpose of ruling on the motion for summary judgment only.  As Defendant has acknowledged, the cleats installed in the ridge seams secure the copper to the substrate and provide the required wind protection.  Defendant has admitted it did not secure the Main House ridge seams with cleats in breach of the Contract.  It is undisputed that the copper ridge caps Defendant riveted over the ridge seams did not provide wind protection.  That undisputed fact is was established when all the ridge seams on the Main House were loosened and displaced and at least one ridge seam opened by Hurricane Irma.

*See*, PSUF 26, 29-42, 48-50.

29.    The contract does not provide for what to do when Revere Copper & Common Sense ("Revere C&CS"), and the Sheet Metal and Air Conditioning Contractors' National Association, Inc. ("SMACNA") contradict each other. *See* Exhibit 1.

**Plaintiffs' Response:**

**Disputed**.

Revere C&CS and SMACNA do not "contradict each other" and both require that all copper seams must be secured to the substrate with cleats, including seams at hips and ridges.  It is undisputed that the Contract does not provide that either of the standards incorporated into it conflicted with the other standard.  It is undisputed that the Contract does not specify that only one of two allegedly conflicting standards would apply to the requirement to install cleats at the ridges.  Defendant acknowledges that it drafted the Contract and did not exclude or exempt securing the ridge seams

with cleats spaced at 9.5 inches on average as specified in the Contract. Defendant acknowledges that was a breach of the cleating requirement stated in the Contract.

See, PSUF 11-23, 26-42.

30.    SMNCA manual contains guidelines for the industry and are not mandatory. See SMACNA Manual Summary of Guidelines, h.4. at pp. 6.1-6.2, attached to Sanders Decl. as Exhibit D.

**Plaintiffs' Response:**

**Disputed**.

Defendant's compliance with the SMACNA Manual was mandatory because the Contract Defendant prepared required Defendant to install the copper roof "in accordance with" SMACNA. The SMACNA Manual's Summary of Guidelines cited by Defendant above provides that "cleats should be at 12 inches (300 mm.) maximum intervals." That section further provides: "Two fasteners per cleat are used with cleat tabs folded over the fastener heads." The SMACNA Manual does not make the cleat requirements optional for hips and ridges, and in fact includes a diagram illustrating how to install cleats at hips and ridges.

See, SMACNA Manual Summary of Guidelines. H.4, attached to the Sanders Decl. as Exhibit D; PSUF 10, 16, 19, 20.

31.    Sanders never inspected the entire roof to determine whether or not the cleats throughout the entire roof were 9.5 inches on the center. See Exhibit 4, Page 2.

**Plaintiffs' Response:**

Undisputed for the purpose of ruling on the motion for summary judgment only. Defendant has admitted it did not install cleats to secure any of the ridges on the Main House.

See, PSUF 29-37, 40-42.

32.    Micha Cady testified as to the cleating:

Q: Are you aware of any circumstances on the Chocolate Hole main house roof where the cleating was not installed properly or utilized properly?

MR. FRIEDBERG: Objection. Form; foundation.

THE WITNESS:· No, I am not aware of any areas that were not installed correctly.

*See* Exhibit 12 at 58:15-20, Deposition of Micha Cady taken on April 28, 2025.

**Plaintiffs' Response:**

**Disputed.**

Cady testified that Defendant did not install any cleats to secure the ridges of the copper roof. Cady's testimony is an admission that Defendant breached the Contract provision requiring the installation of cleats and did not comply with Revere C&CS and SMACNA as required by the Contract.

*See*, PSUF 29-33.

33.    Huber testified that it is not just the cleats providing wind resistance. Within the excerpt used by Plaintiffs, Huber clearly states, "The cleats and the panels, yes." *See*, Sanders Decl., ¶ 35; 4/28/25 Huber Depo. at 34:6-22, attached as Exhibit A to Friedberg Decl.

**Plaintiffs' Response:**

**Disputed**.

In the cited deposition testimony Huber **did** state that it is only the cleats that provide wind resistance.  His actual testimony was that the panels provide wind resistance "[w]ith the attachment of the cleats which are folded into the seam."  This is an acknowledgment that cleats installed inside the seams of the panels are the only thing holding down the copper roof, including at the hip ridges. Defendant admits it did not install cleats inside the folded seams at the ridges and therefore nothing secures the copper ridges to the substrate as required by the Contract and the standards incorporated

into it.

See, Sanders Decl., ¶ 35; 4/28/25 Huber Depo. at 34:6-22, attached as Exhibit E to Friedberg Decl.

34.     There is no proof that the hip ridge seams failed in Hurricane Irma. All of the panels and all of the caps were still connected to the roof after the hurricane. Exhibit 6 at 116:11 to 117:1.

**Plaintiffs' Response:**

**Disputed**.

When Sanders inspected the Main House roof in February 2018 he reported that the hurricane had loosened and displaced all of the Main House roof ridge caps.  He reported that the storm damage included "uplift/displacement at ridges."  Dahill project manager Barabas documented his 2019 inspection of the opened ridge seam with no cleats securing it to the substrate.  He also documented and included photographs of wind uplift of the pans.

See, PSUF 5,6,7,47-52.

35.     Barry Huber continued his testimony regarding the excerpt Plaintiffs used in Statement of Fact ¶40:

> (Reread by the Court Reporter) Q: But what is specified, you would agree, which is listed as a line item is that the installation is to be in accordance with both Revere Copper & Common Sense and SMACNA. Agreed?
> And the next question:
>
> Q:Is there anything in the contract that says that there are conditions with conforming to Revere Copper & Common Sense and SMACNA?
>
> THE WITNESS: So the first of those two, I was going to qualify, again, because -- I mean, I understand -- you know, I don't know how much platform I get to talk here. But I understand completely what's going on here, Tom, is -- and in the real world, for standing seam copper or other roof systems, oh, I could give you a proposal with many pages and many details and many drawings. So when you ask about Revere and SMACNA, there is more to it than just saying these two specifications. And when I say the real world, you could not mathematically conform to 9 1/2 inches on center for hip cleat spacing.· It's mathematically impossible.

BY ATTORNEY FRIEDBERG:
Q: Are you done?

A: So in regards to Revere and SMACNA, SMACNA does not specify clips in the hip or ridge seam. There is a picture of that as well as a picture of other parts of standing seam roofing, not a specification.

Exhibit 10 at 28:19 to 29:25.

**Plaintiffs' Response:**

**Disputed**.

In the cited testimony Huber acknowledged that SMACNA contains a "picture" showing how to install cleats or clips in the hip or ridge seam. Despite Huber's attempt to argue that the SMACNA illustration of a cleat securing a hip or ridge seam is not a "specification," it is presented in the SMACNA Manual as the proper way to secure a ridge seam to the substrate. Furthermore, the Contract expressly required Defendant to install cleats in accordance with the SMACNA Manual, with no exception for securing the ridges with cleats based on any conditions that prevented it. As Huber acknowledged in the testimony quoted above, the Contract contains no exclusion and identifies no conditions that prevented Defendant from installing cleats in the ridge seams as required by SMACNA. The evidence shows that Huber's claim here that it was "mathematically impossible" to "conform to 9 1/2 inches on center for hip cleat spacing" is false. Sanders has demonstrated how that requirement could be met at the ridges on the Main House roof. Furthermore, Huber and Cady testified that the battens were properly installed to accept the cleating as required by the Contract.

*See*, PSUF 23, 43-45.

36.    Barabas testified that the only sheet metal repair was made to the gatehouse and that the only repair made to the Main Pavilion roof was to one hip seam. Exhibit 13 at 13:16-24, Deposition of Richard Barabas.

**Plaintiffs' Response:**

Undisputed for the purpose of ruling on the motion for summary judgment only.

37.    Photographs do not show that the hip seam was only separated and not deformed. *See* Dahill/Barabas photographs P000355-P000362 attached as Exhibit F to Friedberg Decl.

**Plaintiffs' Response:**

**Disputed.**

The photographs taken by Barabas show the condition of the hip seam that was opened by the hurricane.  The photographs show the seam is both open and deformed

*See* PSUF 47.

38.    Barabas further testified that he only inspected the hip ridge previously mentioned and that he cannot determine the presence of cleats on any area of the roof. Exhibit 13 at 23:9-15.

**Plaintiffs' Response:**

Undisputed for the purpose of ruling on the motion for summary judgment only.  Barabas inspected only the one ridge seam that had been opened by the hurricane and confirmed it contained no cleats.  It was only confirmed that Defendant did not install cleats to secure any of the ridge seams when Defendant's witnesses admitted it in depositions in this case.

39.    Sanders' Declaration., ¶ 47, Exhibit B does not show how the ridge looked prior to Hurricane Irma but after Sanders performed his invasive inspection. *See* Exhibit 7 at 22:17 to 23:11.

**Plaintiffs' Response:**

**Disputed**.

The photograph of the ridge that was opened by the hurricane was taken during Sanders inspection in 2018.  Sanders did not inspect that ridge seam in 2014.

*See*, Sanders Reply Decl., ¶ 5; PSUF 55, 56; PRSUF; 17.

Dated :  January 16, 2026              **LAW OFFICES OF FRIEDBERG & BUNGE**

By: _/s/ THOMAS F. FRIEDBERG, ESQ._____
          THOMAS F. FRIEDBERG, ESQ.(VI#1006)
          Attorneys for Plaintiffs THOMAS F.
          FRIEDBERG & SARAH L. BUNGE
          **THE LAW OFFICES OF FRIEDBERG &**
          **BUNGE**
          1005 ROSECRANS STREET, SUITE 202
          PO BOX 6814
          SAN DIEGO, CALIFORNIA 92166
          TEL : (619)557-0101
          FAX : (619)557-0560
          E-mail : "tom@lawofficefb.com"

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 16th day of January 2026, a true and correct copy of **PLAINTIFFS'**

**RESPONSE TO DEFENDANT'S STATEMENT OF ADDITIONAL MATERIAL FACTS IN**

**SUPPORT OF ITS OPPOSITION TO PLAINTIFFS' MOTION FOR FINAL SUMMARY**

**JUDGMENT** was filed with the CM/ECF system which will provide notice to the following:

Jeffrey C. Cosby, Esq.
Florida Bar No. 967981
Service to: eservice@wlclaw.com
Attorney for Defendant Daybreak Inc
Williams, Leininger & Cosby, P.A.
301 SE Ocean Blvd., Suite 205
Stuart, FL  34994
Telephone: 772-463-8402
Facsimile: 772-463-4820

Andrew C. Simpson
**ANDREW C. SIMPSON, PC**
2191 Church St., Ste. 5
Christiansted, VI 00820
TEL : 340.719.3900
E-MAIL :asimpson@coralbrief.com

_/s/ THOMAS F. FRIEDBERG_
**THOMAS F. FRIEDBERG**