IN THE UNITED STATES DISTRICT COURT

OF THE VIRGIN ISLANDS

DIVISION OF ST. THOMAS AND ST. JOHN

THOMAS F. FRIEDBERG & SARAH L. BUNGE, ) ACTION NO.
) 3:19-cv-0053-RAM-EAH
)
       Plaintiffs, )
)
  vs. )
)
DAYBREAK, INC., dba HUBER & ASSOCIATES, )
)
)
       Defendant. )
)

VIDEO-RECORDED

VIDEOCONFERENCE DEPOSITION OF

NON-RETAINED EXPERT BARRY HUBER

October 7, 2025

Reported by Beth A. Ballerini, CSR

Certificate No. 7358

Job No. 131974

### Page 22

```
 1   "or."
 2      Q.   Move to strike as nonresponsive.
 3           The contract that was presented to the
 4   homeowners for approval did not use the word Copper &
 5   Common Sense or SMACNA. Agreed?
 6      A.   Agreed.
 7      Q.   And the purpose, as you just testified, of
 8   listing the standards is to provide information to the
 9   homeowner as to which standard would be complied with.
10   Agreed?
11      A.   Correct.
12      Q.   And in terms of the actual work to be performed
13   --
14           Well, let's bring up page 8 of Exhibit 1.
15           Okay. Do you see the Section II, work?
16      A.   Correct.
17      Q.   All right. And we've talked about installed in
18   accordance with Revere Copper & Common Sense and SMACNA.
19   Agreed?
20      A.   Agreed.
21      Q.   Anything else? Any other opinions or testimony
22   regarding this bullet point?
23      A.   The first bullet point? No.
24      Q.   Yeah, the bullet point that says installed in
25   accordance with Revere Copper & Common Sense and SMACNA.
```

### Page 23

```
 1      A.   No other comments right now.
 2      Q.   All right. And then the third bullet says:
 3   Cleats installed at an average of 9 1/2 inches O.C. --
 4   which is on center -- with 2 ring shank nails per cleat.
 5           Do you see that?
 6      A.   Correct.
 7      Q.   Was there any language limiting where cleats
 8   were to be installed?
 9      A.   The language is indicative of the cleats in
10   the panels. It is not indicative of the hip seams.
11      Q.   Is there any mention of the fact that cleats
12   were not to be installed at the hip/ridge seam in the
13   contract?
14      A.   The geometry would prevent an installer from
15   installing cleats at the 9 1/2 inches on center in the
16   hip seams.
17      Q.   Move to strike as nonresponsive.
18           ATTORNEY FRIEDBERG: Can you please read my
19   question, Beth.
20           (Record read:
21               Q.   Is there any mention of the fact
22               that cleats were not to be installed at
23               the hip/ridge seam in the contract?)
24           THE WITNESS: No.
25   BY ATTORNEY FRIEDBERG:
```

### Page 24

```
 1      Q.   Does SMACNA address cleats at the hip/ridge
 2   intersections?
 3      A.   They have an image in the book of them.
 4      Q.   And the image depicts that, cleats being used
 5   at the hip/ridge intersection?
 6      A.   Correct.
 7      Q.   Any written documentation indicating that for
 8   the work to be performed cleats were not going to be
 9   installed at the hip/ridge intersections?
10      A.   Any documentation to that effect?
11      Q.   Yeah.
12      A.   No. The real world would prevent it, but no
13   documentation.
14      Q.   Move to strike as nonresponsive.
15           The contract that you provided, you intended
16   to list the material terms of the contract?
17           ATTORNEY COSBY: Object to the form.
18           You can answer.
19           THE WITNESS: I'm sorry, again, not to be
20   difficult, could you repeat that question?
21   BY ATTORNEY FRIEDBERG:
22      Q.   Yeah. The document you drafted or had drafted
23   and you approved regarding the proposal for the roofing
24   project in St. John intended to contain all material
25   terms for the work, correct?
```

### Page 25

```
 1           ATTORNEY COSBY: Form.
 2           You can answer.
 3           THE WITNESS: It should. I mean it's
 4   obviously a very brief proposal, but it should identify
 5   most things. But obviously it is -- I mean if you
 6   really wanted to identify every single detail, we
 7   probably could have had a couple more pages of the
 8   details.
 9   BY ATTORNEY FRIEDBERG:
10      Q.   Well, you were the one that drafted the
11   proposal, correct?
12      A.   Either drafted or reviewed.
13      Q.   Okay. And I think you testified the purpose
14   was to provide information to the owner?
15      A.   Correct.
16      Q.   And also define the work to be performed by
17   Huber & Associates.
18      A.   Correct. However, you've asked the question
19   about details. This is very limited in details, this
20   particular proposal.
21      Q.   Right. But what is specified, you would
22   agree, which is listed as a line item is that the
23   installation is to be in accordance with both Revere
24   Copper & Common Sense and SMACNA. Agreed?
25      A.   Agreed. The --
```

**Page 58**

1  supply, I think, pretty much.
2  BY ATTORNEY FRIEDBERG:
3     Q.  All right.  And changing it to 9 1/2 basically
4  resulted in an upcharge.  You charged --
5     A.  Yeah, I recall, I think it went from 12 to
6  9 1/2, to the best I can remember.
7     Q.  And in terms of the length of the contract, that
8  was completely within your control?
9        ATTORNEY COSBY:  Object to the form.
10       You can answer.
11       THE WITNESS:  The length, meaning --
12 BY ATTORNEY FRIEDBERG:
13    Q.  Yeah.  How many pages it had.
14    A.  Oh.  Yeah, it was a pretty well standard, simple
15 proposal form.
16    Q.  Right.  But if you wanted to make it longer, you
17 could have made it longer and put more terms in.
18    A.  Yeah.
19       ATTORNEY FRIEDBERG:  Thank you.  I have nothing
20 further.
21       THE WITNESS:  Okay.
22       ATTORNEY COSBY:  I've got a few questions,
23 Barry.
24       Can you pull up the contract, John.  I don't
25 remember what exhibit -- or I think it's Exhibit 1

**Page 59**

1  composite.
2        That's fine.  Thank you.
3
4              E X A M I N A T I O N
5  BY ATTORNEY COSBY:
6     Q.  Barry, I've got some questions for you.  So I
7  know we just went back and forth for a long time.  But
8  the language regarding cleating, would you agree within
9  this contract there's no specific language that says
10 cleats should be in the hip seams or should not be in
11 the hip seams, correct?
12       ATTORNEY FRIEDBERG:  Objection.  Form.
13       THE WITNESS:  Correct.
14 BY ATTORNEY COSBY:
15    Q.  Okay.  As I understand it, as you, a person in
16 the copper roofing industry, can interpret this
17 provision as meaning with regard to the panels where
18 that bullet point says cleats installed on an average of
19 9.5 inches on center with 2 ring shank nails per cleat;
20 is that correct?
21       ATTORNEY FRIEDBERG:  Objection.  Form.
22       THE WITNESS:  That was -- yes, referred to the
23 panels.
24 BY ATTORNEY COSBY:
25    Q.  A moment ago you were asked about the contract

**Page 60**

1  and whether it was solely your document without any
2  input from the owner.
3        Isn't it true that, as you've indicated,
4  initially the contract said 12 inches, or some -- maybe
5  it was 12 1/2 or 12 inches, whatever it was, on average
6  and they requested it be changed to 9.5 inches on
7  center?  They being the owner or an owner
8  representative.
9        ATTORNEY FRIEDBERG:  Objection.  Form.
10       THE WITNESS:  Yes.
11 BY ATTORNEY COSBY:
12    Q.  Your answer may have cut off.  Did you say
13 correct?
14    A.  Yes, correct.
15       ATTORNEY COSBY:  All right.  John, you can
16 take that down, please.  Thank you.
17 BY ATTORNEY COSBY:
18    Q.  Is there anything in SMACNA in words that says
19 cleats are required to be used in the hip seams?
20       ATTORNEY FRIEDBERG:  Objection.  Form.
21       THE WITNESS:  No.
22 BY ATTORNEY COSBY:
23    Q.  Is there anything in Copper & Common Sense
24 that says that?
25    A.  No.

**Page 61**

1        ATTORNEY FRIEDBERG:  Objection.  Form.
2  BY ATTORNEY COSBY:
3     Q.  Is it your understanding that one of the seams
4  was opened up at some period of time before Hurricane
5  Irma?
6        ATTORNEY FRIEDBERG:  Objection.  Form.
7        THE WITNESS:  My understanding, it was because
8  of the Sanders investigation.  I remember seeing on his
9  report, which is still in the file, that they had opened
10 up a hip seam.  Exactly where, I couldn't tell you.
11 BY ATTORNEY COSBY:
12    Q.  My question is, was it before or after Irma
13 that that was done?
14       ATTORNEY FRIEDBERG:  Objection.  Form.
15       THE WITNESS:  Before Irma.
16 BY ATTORNEY COSBY:
17    Q.  Do you know how one would sufficiently close
18 back -- close a seam back up after opening it up?  I
19 mean is that possible in the industry?
20       ATTORNEY FRIEDBERG:  Objection.  Form.
21       THE WITNESS:  Yes.  Copper is very malleable.
22 You could actually, you know, put it back together.
23 Yeah.
24 BY ATTORNEY COSBY:
25    Q.  Do you know if the pre-Irma investigation of

Barry Huber                                                          October 7, 2025

```
 1   Mr. Cosby?
 2           ATTORNEY COSBY:  Yes.
 3           THE COURT REPORTER:  Thank you so much.
 4           THE VIDEOGRAPHER:  This concludes today's
 5   deposition.  We are going off the record at
 6   approximately 11:31 a.m.
 7           (Proceedings concluded at
 8   11:31 a.m. PST/2:31 p.m. EST.)
 9                   --oOo--
```

Page 66

```
                 DECLARATION UNDER PENALTY OF PERJURY

         I, BARRY HUBER, hereby declare under penalty of
 perjury that I have read the foregoing deposition and
 that the testimony contained therein is a true and
 correct transcription of my testimony given at said time
 and place.
         Dated this _____ day of _____,
 20____, at _____, _____.
               (CITY)              (STATE)


                        _____
                                BARRY HUBER
```

Page 67

```
                ERRATA SHEET / CORRECTION CERTIFICATE
 Page  Line  Correction/Reason
 ____  ____  _____
 ____  ____  _____
 ...
 Date                   BARRY HUBER
```

Page 68

```
                      REPORTER'S CERTIFICATE

         I, Beth A. Ballerini, Certified Shorthand
 Reporter in and for the State of California, do hereby
 certify:
         That the witness was by me duly sworn, and
 the foregoing testimony was reported by me and was
 thereafter transcribed with computer-aided
 transcription; and the preceding pages contain a full,
 complete, and true record of said proceeding.
         I further certify that I am a disinterested
 person and am in no way interested in the outcome of
 said action or connected with or related to any of the
 parties in said action or to their respective counsel.
         The dismantling, unsealing, or unbinding of the
 original transcript will render the Reporter's
 Certificate null and void.
         IN WITNESS WHEREOF, I have hereunto set my hand
 this 21st day of October 2025.
         __X__ Reading and Signing was requested.
         _____ Reading and Signing was waived.
         _____ Reading and Signing was not requested.


                         _____
                            Beth A. Ballerini, CSR
                            Certificate No. 7358
```

Page 69