IN THE UNITED STATES DISTRICT COURT OF THE VIRGIN ISLANDS

DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| THOMAS F. FRIEDBERG & SARAH L. BUNGE, <br><br> Plaintiffs, <br><br> v. <br><br> DAYBREAK, INC. dba HUBER & ASSOCIATES, <br><br><br> Defendant. | CIVIL ACTION NO. 3:19-cv-0053 |

**REPLY TO PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant, Daybreak Inc. dba Huber & Associates ("Daybreak"), respectfully submits its reply to Plaintiffs' ("Friedberg") response in opposition to Defendant's motion for summary judgment and states as follows:

**INTRODUCTION**

Plaintiffs filed the instant case for breach of contract regarding the main pavilion roof on a property they own in the U.S. Virgin Islands. This case is not the first case between these parties. Daybreak previously sued Friedberg in the Superior Court of the Virgin Islands regarding sums owed to it for the roof. Friedberg in turn filed counterclaims alleging construction defects. That litigation extended over a decade. Friedberg claims that to the Superior Court excluded the *claim* for the main pavilion roof from the litigation, but that is not accurate. Rather, without dismissing any *claims*, the Superior Court limited Friedberg's *damages* to $210,000 because that was the amount he had disclosed in discovery. Friedberg's *claims* regarding the main pavilion roof were

1

not excluded. The issue comes down to Friedberg's gamesmanship with discovery: He disclosed $210,000 in damages until after Daybreak (which was the plaintiff in the Superior Court) produced its expert report. Friedberg then filed his expert report, which more than tripled his damage claim. As Daybreak has argued since the initiation of this litigation, "this matter was filed solely as a form of forum shopping to get a second bite at the apple concerning identical litigation currently proceeding since December 2010 in the Superior Court of the Virgin Islands." Doc. No. 12 (Motion to Dismiss) at 1.

## STATEMENT OF FACTS

1. In the Superior Court of the Virgin Islands Case No. ST-10-CV-716 ("Superior Court case"), Friedberg's interrogatory responses stated that his damages totaled $210,616.12. *See* Exhibit 1, Counter Claimants' Responses to Interrogatories in Case No. ST-10-CV-716.

2. After Daybreak had produced its expert report, Friedberg filed his expert disclosures on November 21, 2014. *See* Exhibit 2, Defendant's Expert Disclosure in Case No. ST-10-CV-716.

3. Friedberg's expert (Arthur Sanders) opined that Friedberg's damages totaled $759,357 which is more than three-and-a-half times the damages disclosed by Friedberg in his discovery responses. *See* Exhibit 8 to Defendant's Statement of Undisputed Facts ("SUMF") (Doc. No. 5).

4. Nearly one month later, on December 17, 2014 Friedberg filed supplemental responses to interrogatories. These supplemental responses increased the amount of damages Friedberg claimed to match those outlined in Arthur Sanders Expert Report. *See* Exhibit 8 to Defendant's Statement of Undisputed Facts ("SUMF") (Doc. No. 5).

2

5. Daybreak filed a Motion for Re-Entry Upon Land requesting the opportunity for its expert to evaluate these new claims. *See* Exhibit 3, Daybreak's Motion for Reentry Upon Land in Case No. ST-10-CV-716.

6. The Superior Court denied Daybreak's motion to re-enter the land and stated that the ruling did not prevent Daybreak from seeking to limit Friedberg's damages. *See* Exhibit 4, Order dated April 26, 2017 in Case No. ST-10-CV-716.

7. As the case neared its scheduled trial date, Daybreak moved to limit Friedberg's damages to the amount initially disclosed which was granted by the Court. *See* Exhibit 4, Order dated April 26, 2017 in Case No. ST-10-CV-716.

8. Friedberg moved for reconsideration on that order which was denied by the Court. The Court explained that it had given Friedberg an option: allow Daybreak's expert to reinspect the property to evaluate these new claims or have his damages limited. Friedberg refused to allow the reinspection and thus the Court limited his damages. *See* Exhibit 5, Memorandum Opinion (denying reconsideration) dated August 21, 2018 in Case No. ST-10-CV-716.

9. Friedberg filed an Interlocutory Appeal arguing that the *sanction* limiting his damages was in error. *See* Exhibit 6, Friedberg's Interlocutory Appeal and Exhibit 7, Order Denying the Interlocutory Appeal in the Superior Court Case.

10. The Superior Court *never* struck any of Friedberg's claims or otherwise precluded him from recovering for damages to the Main Pavilion roof as described in Sanders' report; rather, it simply limited the quantum of damages, however proved.

## ARGUMENT

**A. Res Judicata Bars A. Friedberg's Claims.**

Although Friedberg's Opposition Memorandum argues that the Superior Court excluded claims related to the Main Pavilion, this is simply untrue and Friedberg offers no evidence that actually supports his argument. This case is actually Friedberg's attempt to fix his failure to properly disclose his *damages* in the Superior Court case. Had he disclosed the additional damages prior to the fact discovery deadline and/or had allowed Daybreak to reinspect the property, Friedberg would have been entitled to seek damages beyond the $210,000.00. Pursuant to Fed. R. Civ. P. 37(b)(2)(A), if a party fails to obey or permit discovery, the Court may order prohibit "…the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence…" The Court in enforcing the discovery rules precluded Friedberg from pursuing damages in excess of what he disclosed prior to the fact discovery deadline.

Critically, the Court did not limit the claims that Friedberg could assert or the putative damages that Sanders described in his report. (An undecided motion to exclude Sanders' opinion on Daubert grounds was pending at the time the case was settled. At the time the case was settled, Friedberg was still attempting to recover for damages to the Main Pavilion roof. Had the case been tried in its posture at the time of the settlement, Friedberg could have potentially recovered $210,616.20 solely by proving the putative defects that Sanders tied to the Main Pavilion roof. His *claims* were "live"; it was only the damages that were limited (due to his discovery violations).

"[T]o bar the relitigation of a claim under the doctrine of res judicata, an asserting party must demonstrate: (1) the prior judgment was valid, final, and on the merits; (2) the parties in the

subsequent action are identical to or in privity with the parties in the prior action; and (3) the claims in the subsequent action arise out of the same transaction or occurrence as those in the prior action." *See Bank of Nova Scotia v. Flavius,* 2018 WL 745958 (U.S. VI Superior Court Case 2018) quoting *Stewart v. V.I. Bd. of Land Use Appeals,* 66 V.I. 522, 549-550 (2017). In the instant case, the parties entered into a valid settlement agreement, the parties are identical to the parties in the previous action, and the claims in this instant case arise out of the same transaction as the prior case.

Friedberg argues that the statement in the settlement agreement that states that "(t)he settlement of the above-referenced Superior Court Lawsuit does not extinguish the claims in the District Court case does no encompass claims that were asserted in the above-entitled Superior Court case…" means that he can assert his claims regarding the main pavilion roof. However, he already asserted his claims for the main pavilion roof when he submitted Arthur Sanders' 2014 Report and then adopted his findings in his subsequent Supplemental Answers to Interrogatories. That he failed to comply with discovery deadlines and/or refused to cooperate with discovery in the Superior Court case does not mean that the claims regarding the main pavilion roof remain open to future litigation. If this Court grants the relief Friedberg is seeking, it will violate the principles behind the Federal Rules of Civil Procedure and *res judicata* in that this Court would be giving Friedberg a second chance to go after the same damages.

**B. Sanders' 2014 Report is Relevant as It Provides Proof that Friedberg Knew About the Issue with the Cleats.**

Friedberg's argument about Sanders' 2014 report being irrelevant is disingenuous. While Friedberg claims that he did not know about the cleats missing from the hip ridges until after Hurricane Irma, Sanders' 2014 expert report expressly states that the ridges and hips were not secured in the joint with cleats. SUMF Doc. 5 (Page 45, 3rd ¶). Friedberg provided this report to

Daybreak on November 21, 2014 as part of his expert disclosure for which he signed as the attorney of record. As of that date, he knew that the cleats were not in the hip or ridge lines. He then specifically adopted the Sanders' report as detailing in full his claims and signed the supplemental interrogatories under oath.[1] Friedberg's argument regarding his knowledge of the cleats in the hips and ridges is not based in law or fact.

In fact, Friedberg tried to pursue the issues with the Main Pavilion Roof as part of the Superior Court case as was previously discussed. However, due to his failure to abide by the discovery deadlines and/or cooperate with further discovery, he was not permitted to seek damages in excess of the $210,000.00 he disclosed by the fact discovery deadline. Within his pleadings in the Superior Court Case, it is clear that he knew about the alleged issues with the main pavilion roof and took the opportunity that Hurricane Irma provided to try to pursue those claims again.

C. **Friedberg Has Not Provided Evidence to Calculate the Damages Pursuant to "Benefit of the Bargain."**

Friedberg claims he is asking for the "benefit of [the] bargain" he paid for. But the bargain he bought was a settlement of all claims encompassed in the Superior Court action. He is receiving that bargain and nothing less. Moreover, Friedberg has not provided any substantial evidence to prove what the difference in price is for what he received versus what he perceives he should have received. Black's Law Dictionary defines "benefit of the bargain" as "(t)he damages that a breach party to a contract must pay to the aggrieved party, equal to the amounts the aggrieve party would

---

[1] As noted in Daybreak's Motion for Summary Judgment, Sanders has admitted in this case that the damage he found after Irma that he alleges was due to a lack of hip ridge cleats was the same area he had opened in 2014 where he documented a lack of cleats on the hip ridge. Sanders confirmed that the only ridge seam that failed during Hurricane Irma was the ridge seam that he opened up in 2014. *See* Daybreak Statement of Additional Material Facts (Doc. No. (3) at ¶ 9 (citing Exhibit 3 at 25:18-24).

have received, including profits, if the contract had been fully performed." The U.S. Virgin Islands Supreme Court has stated that "benefit of the bargain" damages are measured by the difference in value between what was promised and what was received." *See V.I. Port Authority v. Callwood,* 2014 WL 905816 (2014).

Although Friedberg seems to attempt to distinguish the Superior Court case as sounding in "claims of negligency, product liability or any other tort," (Doc. No. 98 at 21) whereas in this case he alleges "only a breach of contract claim," (*id.*) the fact is he also asserted breach of contract in the Superior Court case. *See* SUMF Doc. 4 in ¶ 7 at p.11 ("FIRST CAUSE OF ACTION – BREACH OF CONTRACT." Based upon Arthur Sanders' 2025 report and his Motion for Summary Judgment, it is clear that the Plaintiffs are also seeking restitution for Daybreak's alleged negligence in installing the main pavilion roof which is evidenced by Friedberg explicating citing claims in his Motion for Summary Judgment regarding the alleged improper cuts of the copper, the alleged rivets not going through the battens, and the alleged unsecured caps to name some of the issues brought up within the Motion. Courts determine the scope of a complaint based upon the facts that are pled and not the labels and conclusions attached to them in the complaint. *Gregorio v. Hoover*, 238 F. Supp. 3d 37, 48 (D.D.C. 2017) With that in mind, Daybreak's arguments regarding causation and the proximate cause of the damage to the roof are relevant especially in light of Friedberg's arguments in his Motion for Summary Judgment.

## V. CONCLUSION

Friedberg's response to Daybreak's Motion for Summary Judgment actually strengthens the arguments that Daybreak is making. A review of the pleadings in the Superior Court case makes it clear that Friedberg knew about the issue with the cleats in 2014, that he tried to pursue those claims and additional sums of money for the main pavilion roof replacement, and that he

7

was told he could not pursue more than the $210,000.00 in damages that were disclosed initially because he refused to cooperate with allowing additional discovery based upon the more-than-tripling of the damage claim. Friedberg argues that he only wants to seek the "benefit of the bargain" but has not provided the needed evidence to support "benefit of the bargain damages" and is really just seeking damages a result of what he believes are construction defects. Thus, Daybreak's Motion for Summary Judgment should be granted.

Date: January 20, 2026

                                              s/ Jeffrey C. Cosby, Esq.
Jeffrey C. Cosby, Esq.
Florida Bar No. 967981
Service to: eservice@wlclaw.com
Attorney for Defendant Daybreak Inc
Williams, Leininger & Cosby, P.A.
301 SE Ocean Blvd., Suite 205
Stuart, FL  34994
Telephone: 772-463-8402
Facsimile: 772-463-4820

s/ Andrew C. Simpson, Esq.
Andrew C. Simpson, Esq.
VI Bar 451
Attorney for Defendant Daybreak Inc
2191 Church Street, Ste. 5
Christiansted, St. Croix
U.S. Virgin Islands 00820
Telephone No. (340)719-3900