**Exhibit 3**

IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

DAYBREAK, INC.,
d/b/a HUBER AND ASSOCIATES,

      Plaintiff,

vs.                                                                    CIVIL CASE NO.: ST-10-cv-716

THOMAS F. FRIEDBERG, SARAH
BUNGE, LAW OFFICES OF FRIEDBERG
& BUNGE, AND MERRILL LYNCH
CREDIT CORPORATION,

      Defendants.
_____/

THOMAS F. FRIEDBERG and
SARAH L. BUNGE,

      Counterclaimants,

vs.

DAYBREAK, INC.,
d/b/a HUBER AND ASSOCIATES,

      Counterdefendants.
_____/

THOMAS F. FRIEDBERG and
SARAH L. BUNGE,

      Third Party Plaintiffs,

vs.

BARRY R. HUBER,

      Third Party Defendant.
_____/

## DAYBREAK, INC. D/B/A HUBER AND ASSOCIATES AND BARRY HUBER'S MOTION FOR RE-ENTRY UPON LAND

COME NOW the Plaintiff and Counterdefendant Daybreak, Inc. d/b/a Huber and

Associates ("Plaintiff/Counterdefendant/Daybreak") and Third Party Defendant Barry

Huber ("Third Party Defendant/Huber") by and through undersigned counsel, and hereby move pursuant to Rule 34 for re-entry upon land that is the subject of the Counterclaims being asserted in this matter and states as follows:

1.     On December 21, 2010, Daybreak filed its Complaint against THOMAS F. FRIEDBERG, SARAH BUNGE, LAW OFFICES OF FRIEDBERG & BUNGE, AND MERRILL LYNCH CREDIT CORPORATION for breach of contract, anticipatory breach of contract, action for debt, and the enforcement of a construction lien.

2.     THOMAS F. FRIEDBERG and SARAH L. BUNGE ("Counterclaimants") subsequently filed their Counterclaim against Daybreak for breach of contract, breach of warranty, and negligence.

3.     Technically, Daybreak is the Plaintiff in the instant matter; however, the claims that have framed the expert issues and discovery that are being litigated were brought by Counterclaimants.   Nevertheless, Daybreak provided its Rule 26 Expert Disclosures first and is producing its expert for deposition prior to the deposition of Counterclaimant's expert.

4.     The   instant   motion   concerns   the   claims   being   brought   by Counterclaimants for breach of contract, breach of warranty, and negligence. Counterclaimants allege that Daybreak was "negligent and careless" in its installation of the roof which resulted in damage to the plaster and leaks in the roof.   *See* Counterclaimants' Answer, Counterclaim and Third Party Claim, attached hereto as Composite Exhibit "A". Accordingly, it is the Counterclaimants' burden of proof on these claims.

5.     On July 31, 2014 Daybreak and Huber were permitted entry upon the land that is the subject of this lawsuit, owned by Counterclaimants/Third Party Plaintiffs,

THOMAS F. FRIEDBERG and SARAH L. BUNGE, located at 168 Chocolate Hole, St. John, USVI.[1]

6.      The time allowed by Attorney Friedberg for this inspection was extremely limited.  Counterclaimants scheduled the deposition of the principal of Daybreak, Barry Huber, for the same date as the site inspection and only provided one single day of availability for the site inspection.   Accordingly, the site inspection commenced at 11:00AM and per Attorney Friedberg, needed to conclude by 1:00PM so that he could prepare for Mr. Huber's deposition, which was scheduled to commence at 2:00PM.

7.      In short, Daybreak was given only two hours for their site inspection. Additionally, it should be noted that at the site inspection, certain areas of the premises, which form part of Counterclaimant's claims were not available for inspection.  Attorney Friedberg would not allow access to certain buildings on the property as he indicated that there were no issues with certain structures.

8.      However, on November 13, 2014, Counterclaimant's filed their Rule 26 Expert Disclosure and corresponding report.  In stark contrast to Daybreak's limited time on the property, Counterclaimant's experts spent two full days on the premises with unfettered and unbridled access to the entirety of the property.   This included **destructive testing without advising Daybreak or obtaining permission** to alter the condition of the roofs.  See Expert Report at pp. 2, attached hereto as Exhibit "B".

9.      In pertinent part, and further highlighting the extensive amount of time that Counterclaimants experts spent at the subject property and the destructive testing that occurred, the Counterclaimant's report, summarizing their two day inspection, states in pertinent part, as follows:

---

[1] Present at the inspection were:  Attorney Goldberg; Attorney Shoup; Attorney Friedberg; Stephen Hendren (Daybreak's Expert); and Barry Huber.

The investigation took place over a two day period with the morning of the first day spent in a general overview of condition below the roofs and on each individual roof. Locations of infiltration below roofs were noted and photographed. On the roofs general photos were taken and observations made of the typical pan construction, pan intersections at ridges and hips, cap construction at peaks, valley construction, eave detailing, and base flashings at intersecting walls. This occupied most of the morning of that first day.

The afternoon was dedicated to water testing at the Gate House where there are stains from water infiltration in the kitchen, living room and bathroom. We applied water with a garden hose with a light spray at three locations; above the kitchen cabinets on flat floor/terrace roof areas, at the sloped roof and its flashings, and along the roof/wall line above the living room/kitchen arched demising wall. In all these cases the spray was first directed onto roof areas working from low points up and then onto base flashings and eventually onto counter flashings. The detailed procedures are outlined in the observations.

The remainder of the first day was spent investigating the pan and ridge construction of the Main Pavilion. Traversing the entire roof, defects in the pans were noted and photographically documented. **A section of the intersecting pans between the pie shapes of the octagon was opened up by first drilling out the pop-rivets, removing one section of cap, revealing the joined pans, and unfolding the overlapped pan edges to check for clips. This condition was then reinstalled with new rivets replacing those removed.** This occupied the remainder of the first day.

At the Main Pavilion, in the morning of the second day, a **section of double lock seam was carefully opened up to verify the double lock seaming and to expose and verify the clip spacing.** This joint was repaired to its original condition. As more verification was not deemed necessary no other invasive pan investigations were performed.

In the late morning and early afternoon we investigated the cap construction at the numerous cap conditions by removing the short seam caps at the peak and then lifting off the circular cap that was held by sealant to the cut pans below. The remainder of the last day was spent gathering photos of specific conditions on the nine roof areas viewed.

See Counterclaimant's Expert Report at pp. 2.

10.    Counterclaimants' expert report recommends full replacement of the

entirety of the roofs on all nine structures on the property[2], at an estimated cost of $759,357.00. See Expert Report at pp.1.

11.    Rule 34 (a) of the Federal Rules of Civil Procedure, State in Pertinent part, the following: **In General.** A party may serve on any other party a request within the scope of Rule 26(b):

> **(1)** to produce and permit the requesting party or its representative to inspect, copy, test, or sample the following items in the responding party's possession, custody, or control
> …
>
> **(B)** any designated tangible things; or
>
> **(2)** to permit entry onto designated land or other property possessed or controlled by the responding party, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

12.    The touchstone for analysis of a Rule 34 inspection is reasonableness. The inspection demand must describe the place to be examined with reasonable particularity, and must specify a reasonable time, place and manner for the examination." *McConnell v. Canadian Pacific Realty,* 280 F.R.D. 188, 191 (M.D.Pa.2011).

13.    The discovery that may be compelled under Rule 34 is further defined by Rule 26(b)(1) of the Federal Rules of Civil Procedure, which provides: "Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense ... Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *United States v. Territory of the Virgin Islands*, 280 F.R.D. 232, 235 (D.V.I. 2012).

---

[2] These include 1) The Main Pavilion; 2) The Library; 3) The Master Suite; 4) The Guest House; 5) The Gate House; 6) the Garage; 7) The Beach Bar; 8) The Shower; and 9) The Dining Gazebo.

14.    "Each defendant who has pleaded a setoff or a counterclaim to the plaintiff's claim or cause of action, or who has filed a cross complaint, carries the burden of proof as to such setoff, counterclaim, or cross complaint."   9A Am. Jur. Pl. & Pr. Forms Evidence § 128.   See also *Evergreen Cmty. Power LLC v. Riggs Distler & Co.*, 513 F. App'x 236, 240 (3d Cir. 2013) (where the Court held that a defendant who filed a counterclaim against a plaintiff for breach of contract bore the burden of proof to establish it fulfilled all of its obligations under the contract and was therefore entitled to payment of the full contract price.)

15.    In light of Counterclaimant's burden of proof on the expert issues that frame this Motion, Daybreak should have the opportunity to rebut Counterclaimant's expert report and opinions by having equal time to conduct additional testing on the subject premises without intervention or interruption by Counterclaimants and their counsel.   Daybreak's experts were limited to two hours to inspect the several building structures[3] located on the subject premises, while Counterclaimant's experts were given at least two full days to conduct their testing and inspections.

16.    The re-entry upon land is necessary for the proper defense of this case or Daybreak will be severely prejudiced.

WHEREFORE, Plaintiff and Counterdefendant. Daybreak, Inc. d/b/a Huber and Associates ("Plaintiff/Counterdefendant/Daybreak") and Third Party Defendant, Barry Huber ("Third Party Defendant/Huber"), Request this Court to enter an Order granting Daybreak's experts to enter upon the Counterclaimants' property for the purpose of conducting further inspection.

---

[3] At the time of the inspection, only certain of the structures were identified as problematic.   However, since Counterclaimants' Expert Disclosure, all nine structures on the property have been identified as posing a problem.

**Cole, Scott, & Kissane P.A.**
Attorneys for Plaintiff/Counterdefendant

Date: _January 5, 2015_    By: _____

Joseph J. Goldberg (VI 2175)
9150 S. Dadeland Boulevard,
Suite 1400
P.O. Box 569015
Miami, Florida 33256
Telephone: (305) 350-5361


**ANDREW C. SIMPSON, P.C.**
Attorneys for Plaintiff and
Third Party Plaintiff

Dated: _January 5, 2015_    By: _____

Andrew C. Simpson (VI Bar 451)
Emily Shoup (VI Bar 1111)
2191 Church Street, Suite 5
Christiansted, VI 00820
Telephone: (340) 719-3900


## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by U.S. Mail to **Thomas F. Friedberg, Esq.**, Law Offices of Friedberg & Bunge, 610 West Ash Street, Suite 1400, P.O. Box 6814, San Diego, CA 92166-0814, Counsel for Counterclaimants; and **Stacy L. White, Esq.**, 1142 King Street Christiansted, St. Croix, U.S. Virgin Islands 00820, Co-Counsel for Counter-Defendant, on this 5th day of January, 2015.

/s/ Joseph J. Goldberg, Esquire
Joseph J. Goldberg, Esq.