**DISTRICT COURT OF THE VIRGIN ISLANDS**

**DIVISION OF ST. THOMAS AND ST. JOHN**

**THOMAS F. FRIEDBERG,**
**and SARAH L. BUNGE,**

**Plaintiffs,**

**v.** **3:19-cv-00053-ER-EAH**

**DAYBREAK, INC. d/b/a HUBER & ASSOCIATES,**

**Defendant.**

**COUNSEL:** **Thomas F. Friedberg, Esq.**
**Brian A. Glasser, Esq.**
**David L. Selby, Esq.**
*On behalf of Plaintiffs*
**Jeffrey C. Cosby, Esq.**
**Andrew C. Simpson, Esq.**
*On behalf of Defendant*

**REPORT AND RECOMMENDATION**

**THIS MATTER** comes before the Court on an Order by the District Judge for a Report & Recommendation ("R&R"), Dkt. No. 143, on the motion for summary judgment filed by Defendant Daybreak, Inc., doing business as Huber & Associates ("Daybreak"). Dkt. No. 93. For the reasons that follow, the Court recommends that the motion for summary judgment be granted.

**BACKGROUND**

**I. Procedural Background**

Plaintiffs Thomas F. Friedberg and Sarah L. Bunge commenced this action on July 14, 2019, asserting a single claim for breach of contract against Defendant Daybreak, arising

from Daybreak's manufacture and installation of a copper standing seam roof at Plaintiffs' residence in St. John, United States Virgin Islands. Dkt. No. 1 ¶¶ 1, 7.

Early in the litigation, Daybreak filed a Motion to Dismiss for Failure to State a Claim or, alternatively, to Stay the action, which it later amended. Dkt. Nos. 12, 16. Following the parties' September 25, 2024 joint status report, Dkt. No. 30, and the dismissal of the related Superior Court action, the Court rendered Daybreak's Motion to Stay moot. Dkt. Nos. 30, 31. On October 14, 2024, Daybreak filed its answer to the Complaint, in which it denied liability and asserted affirmative defenses. Dkt. No. 33. On November 14, 2024, the Court held an Initial Conference and issued a Scheduling Order setting deadlines for discovery, amended pleadings, dispositive motions, and status conferences. Dkt. No. 42. Thereafter, the parties conducted extensive discovery, including written discovery, fact and expert depositions, and the submission of expert reports regarding the roof system, its installation, the incorporated standards, and the alleged damages.

On December 14, 2025, both parties filed motions for summary judgment. Dkt. Nos. 86, 93. Daybreak's Motion, Dkt. No. 93, included a supporting memorandum, a Statement of Undisputed Material Facts, and exhibits. Dkt. Nos. 94, 95. Plaintiffs opposed Daybreak's Motion and filed a response to Daybreak's Statement of Undisputed Material Facts, a Statement of Additional Facts, a declaration with exhibits, and an evidentiary objection. Dkt. Nos. 98, 99, 100, 101, 102. Daybreak filed its reply and related responses on January 20, 2026. Dkt. Nos. 112, 113, 114.

Daybreak initially submitted an uncertified draft of Arthur Sanders's March 6, 2015 deposition transcript as an exhibit to its Statement of Undisputed Material Facts. Dkt. No. 95-

6. Plaintiffs objected to the draft transcript on authentication grounds. Dkt. No. 102. Daybreak thereafter filed a certified copy of the transcript. Dkt. Nos. 116, 116-1. Plaintiffs objected to the supplemental filing as untimely, Dkt. No. 119, and Daybreak filed a response, Dkt. No. 120.

## II. Factual Background

In May 2010, Plaintiffs and Daybreak entered into a written contract for the manufacture and installation of copper standing seam roofs on multiple structures at Plaintiffs' St. John property. Dkt. No. 1 ¶¶ 6–9; Dkt. No. 1-1 at 2. The project included the Main Pavilion, also referred to as the Main House. Dkt. No. 113 ¶ 1(a). The Main House has an octagonal roof formed by copper panels that meet at standing seams and hip-ridge intersections. *See* Dkt. No. 99 ¶¶ 4–5.

The contract specified, among other things, that cleats installed at an average spacing of 9.5 inches on center and required the roof system to comply with standards contained in Revere Copper & Common Sense ("Revere") and publications of the Sheet Metal and Air Conditioning Contractors' National Association ("SMACNA"). Dkt. No. 1 ¶ 7; Dkt. No. 1-1 at 2. The parties dispute whether those provisions required Daybreak to install cleats at the Main House hip-ridge intersections. Daybreak maintains that the cleat-spacing requirement applies to the standing seams forming the field panels rather than the hip-ridge intersections, although it assumes for purposes of its Motion that cleats were required at the ridges. *See* Dkt. No. 95 at 5 n.3.

In December 2010, Daybreak commenced an action against Plaintiffs in the Superior Court of the Virgin Islands concerning the same roofing project and asserting claims for debt,

breach of contract, and enforcement of a construction lien. Dkt. No. 113 ¶ 4; *see also* Dkt. No. 95-3. On October 5, 2012, Plaintiffs filed an Answer and Counterclaim against Daybreak alleging, among other things, breach of contract, breach of warranty, negligence, and fraud. Dkt. No. 113 ¶ 5; *see also* Dkt. No. 95-4. The breach of contract counterclaim alleged that Daybreak failed to complete portions of the roofing work, that "the roofs leak," and that Plaintiffs incurred damages from "improper roof installation techniques," including the need to reroof the Gate House. Dkt. No. 95-4 at 12–13. Plaintiffs also asserted breach of contract damages, incidental and consequential damages, and other relief. *Id.* at 18.

In 2014, Plaintiffs retained Arthur Sanders of Hoffmann Architects, Inc., to inspect the roofing system and prepare an expert report in the Superior Court action. Dkt. No. 113 ¶ 16. During the inspection, portions of the Main House roof were opened to examine the concealed attachment conditions. Dkt. No. 99 ¶¶ 9, 13. The parties dispute the precise extent and significance of that inspection. Daybreak maintains that Sanders opened a portion of a Main House hip-ridge seam and observed no cleats securing the intersecting pans to the substrate. *See* Dkt. No. 95 ¶¶ 10–14. Plaintiffs maintain that Sanders examined only a short portion of one hip-ridge seam in 2014 and that the inspection did not establish whether cleats were absent elsewhere along that seam or at the remaining hip-ridge seams. *See* Dkt. No. 98 at 20–21; Dkt. No. 99 ¶¶ 9–13, 27–28, 36.

Sanders issued his report in November 2014. *See* Dkt. No. 95-5. The report addressed the Main House roof and stated that the intersections of the roof pans at the ridges and hips had been poorly executed and were not secured to the substrate in the manner Sanders believed industry practice required. *Id.* at 20–21, 45. The report concluded that the installed

roofs could not adequately be corrected through limited repairs and recommended removal and replacement of the roofs on the property, including the Main House roof. *Id.* at 45–47.

In December 2014, Plaintiffs served Daybreak with their supplemental interrogatory responses in the Superior Court action. *See* Dkt. No. 95-8. In Interrogatory No. 4, Daybreak had asked Plaintiffs to describe the specific allegations supporting their contention that Daybreak's work was defective. Plaintiffs responded: "Yes. See Rule 26 report of Arthur Sanders that was previously provided." *Id.* at 4. In response to Interrogatory No. 11, which asked how each alleged defect contributed to the deficient construction, Plaintiffs again directed Daybreak to Sanders's report. *Id.* Interrogatory No. 18 asked Plaintiffs to identify all damages sought through their counterclaim and the basis for those damages. Plaintiffs identified the "[c]ost of repair as set forth in Rule 26 Expert Report of Arthur Sanders." *Id.* at 5.

During his March 6, 2015 deposition in the Superior Court action, Sanders testified that the location opened during his inspection was on the Main Pavilion and that no cleats secured the intersecting pans at that ridge location to the substrate. Dkt. No. 116-1 at 15:1–17. Sanders further testified that, in his opinion, cleats should have been installed at the ridges and that both Revere and SMACNA showed cleats at those locations. *Id.* at 16:7–16.

On April 26, 2017, the Superior Court granted Daybreak's alternative request to limit damages to Two Hundred Ten Thousand Dollars ($210,000). Dkt. No. 101-7 at 3. In the same Order, the Superior Court reserved Daybreak's motion in limine seeking to limit Sanders's testimony regarding the alleged breach of contract until after the *Daubert* hearing. *Id.* at 3–4. The Order did not state that a claim concerning the Main House was dismissed or removed

from the counterclaim. In its subsequent memorandum opinion, the Superior Court described its ruling as limiting Plaintiffs' counterclaim damages after Plaintiffs declined alternatives that would have permitted Daybreak to reinspect the property. Dkt. No. 112-5 at 5–8. Plaintiffs interpret the ruling as limiting the counterclaim to the approximately $210,000 in repairs identified in the Paradigm report and excluding replacement of the Main House roof. Dkt. No. 98 at 10–12, 18–19; Dkt. No. 101 ¶¶ 44–47, 73, 77–78.

While the Superior Court action remained pending, Hurricane Irma struck the United States Virgin Islands in September 2017. Plaintiffs allege that portions of the Main House roof separated during the storm, including areas at or near the ridge. Dkt. No. 1 ¶ 10. In 2019, Plaintiffs retained F.J. Dahill Co., Inc., to inspect the opened seam and perform temporary repairs. *Id.* ¶ 12(b). Plaintiffs maintain that the 2019 inspection revealed that a substantially longer portion of the seam lacked cleats and that testimony obtained in 2025 revealed that Daybreak had not installed cleats at any of the Main House hip-ridge intersections. *See* Dkt. No. 98 at 11–13, 19–21; Dkt. No. 99 ¶¶ 31–39. Plaintiffs further contend that the defect was latent because the cleats were concealed beneath the copper panels and could not be observed without invasive inspection. Dkt. No. 1 ¶¶ 8, 11. Daybreak disputes Plaintiffs' characterization that the post-Irma investigation revealed a new category of defect and maintains that Sanders had already identified the absence of cleats during the 2014 inspection. Dkt. No. 94 at 1–6; Dkt. No. 95 ¶¶ 10–15, 31, 34–36.

Plaintiffs filed the present action on July 14, 2019. Dkt. No. 1. The Complaint alleges that Daybreak breached the 2010 roofing contract by failing to install cleats at the required spacing where the Main House roof panels intersected and that the omission constituted a

latent defect. *Id.* ¶¶ 9–13. Plaintiffs seek the cost of replacing the Main House roof as the benefit of their contractual bargain. Dkt. No. 98 at 11–13.

On November 16, 2023, Daybreak filed a Notice of Settlement informing the Superior Court that the parties had settled their differences. Dkt. No. 101-20 at 2. On February 23, 2024, the Superior Court entered an Order dismissing the action with prejudice. *Id.* at 2–3. On June 12, 2024, the parties executed a written Settlement Agreement and Release of Claimant Claims ("Settlement Agreement"). Dkt. No. 101 ¶¶ 69–72; *see also* Dkt. No. 101-21. The Settlement Agreement defines the released "Claims" by reference to the claims asserted in the Superior Court action and extends the release to other claims arising out of or relating to those Claims. Dkt. No. 101-21 at 2–5. It releases known and unknown claims, including unforeseen, unanticipated, and unsuspected claims and damages arising from or related to the released Claims. *Id.* at 3–5. The Settlement Agreement states repeatedly:

> The settlement of the above-entitled Superior Court Lawsuit does not extinguish the claims in the District Court case number 3:19-cv-0053 to the extent that District Court case does not encompass claims that were asserted in the above-entitled Superior Court case.

*Id.* at 2, 4–6.

## APPLICABLE LAW

### I. Summary Judgment Standard

Because summary judgment is a drastic remedy, *see Ness v. Marshall,* 660 F.2d 517, 519 (3d Cir. 1981), it is proper only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). A dispute is "genuine" if there is a sufficient evidentiary basis on which a reasonable factfinder could find for the non-moving party. *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006). A factual dispute is "material" if it might affect the outcome under governing law, *Doe v. Luzerne Cnty.*, 660 F.3d 169, 175 (3d Cir. 2011), and is determined by the substantive law defining the claims. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). When determining whether a genuine issue of material fact remains for trial, the Court must draw all inferences "in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa*., 24 F.3d 508, 512 (3d Cir. 1994).

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Singletary v. Pa. Dep't of Corr.*, 266 F.3d 186, 192 n.2 (3d Cir. 2001). Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. A "party opposing summary judgment may not rest upon the mere allegations or denials of the pleadings." *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001) (citation modified). For "the non-moving party to prevail, that party must make a showing sufficient to establish the existence of every element essential to that party's case, and on which that party will bear the burden of proof at trial." *Cooper v. Sniezek*, 418 F. App'x 56, 58 (3d Cir. 2011) (citation modified). When the moving party also has the burden of proof at trial, that party "must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." *In re Bressman*, 327 F.3d 229, 238 (3d Cir. 2003)

(citation modified); *Seldon v. Wetzel*, No. 1:19-cv-90, 2020 WL 1517061, at *1 (W.D. Pa. Mar. 11, 2020), *R&R adopted*, 2020 WL 1493547 (W.D. Pa. Mar. 27, 2020). Importantly, a court's task on summary judgment is not to resolve disputes, but to determine whether factual disputes exist that must be tried. In that regard, "a district court may not make credibility determinations or engage in any weighing of the evidence." *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004).

## DISCUSSION

### I. Preliminary Matters

Before reaching the merits of Daybreak's Motion, the Court addresses two related objections concerning Arthur Sanders's March 6, 2015 deposition transcript. Daybreak initially submitted an uncertified draft of the transcript as an exhibit to its Statement of Undisputed Material Facts. Dkt. No. 95-6. Plaintiffs objected that the draft lacked authentication and therefore could not be considered at summary judgment. Dkt. No. 102. Daybreak subsequently filed a certified copy of the same transcript. Dkt. No. 116; Dkt. No. 116-1. Plaintiffs objected to the supplemental filing as untimely and argued that allowing Daybreak to correct the deficiency after briefing closed would prejudice them. Dkt. No. 119. Daybreak responded that the certified transcript contains the same testimony as the draft and differs only by the addition of the court reporter's certification. Dkt. No. 120 ¶¶ 3–5.

Federal Rule of Civil Procedure 56 permits a party to lodge an objection to material cited at summary judgment that "cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Rule 56(c)(1)(A) expressly permits a party to support a factual assertion by citing deposition testimony. Fed. R. Civ. P. 56(c)(1)(A). The relevant

inquiry is not whether the evidence was initially submitted in admissible form, but whether its substance can be presented in admissible form at trial. *See Fraternal Ord. of Police, Lodge 1 v. City of Camden*, 842 F.3d 231, 238 (3d Cir. 2016); *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Rule 56(e)(1) also permits the Court to provide a party with an opportunity to properly support a factual assertion when the party's initial submission is deficient. Fed. R. Civ. P. 56(e)(1). Consistent with these provisions, courts within the Third Circuit have permitted parties to cure authentication defects through later submissions when the deficiency concerns the form, rather than the substance, of the evidence. *See, e.g.*, *Pittsburgh Metro Area Postal Workers Union, AFL-CIO v. U.S. Postal Serv.*, 938 F. Supp. 2d 555, 570 (W.D. Pa. 2013) (considering letters challenged as hearsay because there was no reason they could not be converted into admissible form at trial); *In re Flonase Antitrust Litig.*, 815 F. Supp. 2d 867, 875–76 (E.D. Pa. 2011) (recognizing that unauthenticated documents may be considered if reducible to admissible evidence); *see also Lexington Ins. Co. v. W. Pa. Hosp.*, 423 F.3d 318, 329 n.6 (3d Cir. 2005).

Here, Daybreak initially filed Sanders's March 6, 2015 deposition transcript without the court reporter's certification. Dkt. No. 95-6. Daybreak later filed the certified transcript at Dkt. No. 116-1. Plaintiffs' authentication objection challenges the form in which Daybreak initially submitted the testimony, and nothing in the objection suggests that Daybreak could not present Sanders's testimony in admissible form. *See* Dkt. No. 102. By filing the certified transcript, Daybreak supplied the missing certification. *See* Fed. R. Civ. P. 56(e)(1); *see also Fraternal Ord. of Police*, 842 F.3d at 238 (explaining that summary judgment evidence need

not itself be submitted in admissible form where the evidence can be presented in admissible form at trial); *Pittsburgh Metro*, 938 F. Supp. 2d at 570.

Daybreak represents that the certified transcript is identical to the draft except for the certification, Dkt. No. 120 ¶¶ 3–4, and Plaintiffs identify no substantive difference between the versions and do not challenge the accuracy of the testimony reflected in the certified transcript, *see* Dkt. No. 119. Because the certification is the only identified difference between the two versions, Daybreak's supplemental filing authenticated testimony already before the Court rather than adding new substantive evidence. *See Pittsburgh Metro*, 938 F. Supp. 2d at 570; *In re Flonase*, 815 F. Supp. 2d at 875–76.

In opposing Daybreak's Motion, Plaintiffs responded to the substance of the draft transcript. *See* Dkt. No. 99. The record also reflects that Plaintiffs previously possessed and filed excerpts from Sanders's deposition during the Superior Court litigation. *See* Dkt. No. 114 ¶ 3; Dkt. No. 114-1 at 3 ¶ 8. Because the certification did not change Sanders's testimony, Daybreak's supplemental filing did not unfairly surprise Plaintiffs or impair their ability to respond. *See Pittsburgh Metro*, 938 F. Supp. 2d at 570; *In re Flonase*, 815 F. Supp. 2d at 875–76.

Accordingly, the Court will only consider the certified March 6, 2015 deposition transcript filed at Dkt. No. 116-1 and will not rely on the uncertified draft filed at Dkt. No. 95-6. The Court therefore overrules Plaintiffs' objection to Daybreak's supplemental filing, Dkt. No. 119, and denies as moot Plaintiffs' authentication objection to the superseded draft, Dkt. No. 102.

## II. Claim Preclusion

Before considering Daybreak's remaining grounds for summary judgment, the Court must determine whether Plaintiffs' claim for breach of contract is precluded as a matter of law. Daybreak argues that claim preclusion bars Plaintiffs' breach of contract claim because the claim arises from the same roofing contract and alleged construction deficiencies at issue in Plaintiffs' Superior Court Counterclaim. Dkt. No. 94 at 11–14. Under Virgin Islands law, claim preclusion, also referred to as res judicata, bars a party from relitigating claims that the party raised or could have raised in a prior action when: "(1) the prior judgment was valid, final, and on the merits; (2) the parties in the subsequent action are identical to or in privity with the parties in the prior action; and (3) the claims in the subsequent action arise out of the same transaction or occurrence as those in the prior action." *Stewart v. V.I. Bd. of Land Use Appeals*, 66 V.I. 522, 532–33 (V.I. 2017); *see also Smith v. Ostrander*, Civ. No. 3:21-cv-0010, 2023 WL 2665760, at *4 (D.V.I. Mar. 28, 2023); *Titan Medical Group, LLC v. V.I. Government Hospitals & Health Facilities Corp.*, 77 V.I. 679, 686–87 (D.V.I. 2021). Whether claim preclusion applies is a question of law. *Stewart*, 66 V.I. at 531.

To determine whether two claims arise from the same transaction or occurrence, the Supreme Court of the Virgin Islands applies the transactional test. *Id.* at 540–43; *see also Harthman Leasing III, LLLP v. FirstBank Puerto Rico*, Civ. No. 3:22-cv-0025, 2023 WL 3020209, at *6 (D.V.I. Apr. 20, 2023). Under that test, the Court considers the "aggregate of connected operative facts" and pragmatically examines whether those facts are related in time, space, origin, or motivation; whether they form a convenient trial unit; and whether treating them as a unit conforms to the parties' expectations. *Stewart*, 66 V.I. at 543. A prior

judgment may bar a later action arising from the same aggregate of operative facts even when the later action relies on a different legal theory, seeks different relief, or involves different evidence. *Id.* at 541–43.

The Third Circuit similarly examines the "essential similarity of the underlying events giving rise to the various legal claims." *CoreStates Bank, N.A. v. Huls America, Inc.*, 176 F.3d 187, 194 (3d Cir. 1999). Relevant considerations include whether the acts complained of and relief sought, the theories of recovery, the witnesses and documents, and the material facts are substantially the same. *United States v. Athlone Industries, Inc.*, 746 F.2d 977, 984 (3d Cir. 1984); *Elkadrawy v. Vanguard Group, Inc.*, 584 F.3d 169, 173 (3d Cir. 2009). However, claim preclusion does not bar claims predicated on events that occur after the prior complaint is filed. *Stewart*, 66 V.I. at 544–45; *Morgan v. Covington Township*, 648 F.3d 172, 177–78 (3d Cir. 2011). But the fact that a later action includes previously unalleged facts or additional evidence concerning preexisting conduct does not, by itself, avoid preclusion when the later claim arises from the same aggregate of connected operative facts. *See Stewart*, 66 V.I. at 542–43; *Titan Medical Group*, 77 V.I. at 687–88; *Elkadrawy*, 584 F.3d at 173–74.

On November 16, 2023, Daybreak filed a Notice of Settlement informing the Superior Court that the parties had settled their differences. Dkt. No. 101-20 at 2. The following day, the Superior Court directed the parties to file a joint stipulation of dismissal with prejudice within thirty days. *Id.* The parties did not file the directed stipulation or seek additional relief. On February 23, 2024, the Superior Court entered an Order stating that "this case is Dismissed with Prejudice." *Id.* at 2–3. A dismissal with prejudice following a settlement operates as a final judgment on the merits for purposes of claim preclusion. *See Phillips v.*

*Transunion, LLC*, No. 12-1058, 2012 WL 1439088, at *6 (E.D. Pa. Apr. 25, 2012); *see also Pac-West Distributing NV LLC v. AFAB Industrial Services, Inc.*, Civ. No. 19-3584, 2022 WL 717276, at *3 (E.D. Pa. Mar. 10, 2022). Moreover, Plaintiffs themselves characterize the dismissal as a valid and final judgment. *See* Dkt. No. 98 at 18. Accordingly, the February 23, 2024 dismissal satisfies the first element of claim preclusion.

In the Superior Court action, Thomas F. Friedberg and Sarah L. Bunge asserted counterclaims against Daybreak for breach of contract, breach of warranty, negligence, and fraud. Dkt. No. 95-4 at 11–17. In this action, Friedberg and Bunge are Plaintiffs and assert a single breach of contract claim against Daybreak. Dkt. No. 1. Thus, the parties to the claims being compared are the same: Friedberg and Bunge on one side and Daybreak on the other. *Compare* Dkt. No. 95-4, *with* Dkt. No. 1. Accordingly, the second element of claim preclusion is satisfied. *Stewart*, 66 V.I. at 532–33.

The third element of claim preclusion requires the Court to determine whether Plaintiffs' present breach of contract claim arises from the same transaction or occurrence as the claims asserted in their Superior Court Counterclaim. *See Stewart*, 66 V.I. at 532–33. The Court therefore compares the operative facts underlying the two actions under the transactional test described above.

Plaintiffs' Superior Court counterclaim arose from Daybreak's performance of the parties' 2010 contract for the manufacture and installation of standing seam copper roofs at Plaintiffs' property. Dkt. No. 95-4 ¶¶ 6–14. Plaintiffs alleged that Daybreak failed to complete portions of the roofing work, used "improper roof installation techniques," and failed to install the roofs in accordance with Revere, SMACNA, and applicable industry standards. *Id.*

¶¶ 12, 16–18. The Counterclaim did not specifically allege that Daybreak failed to install cleats at the Main House ridge-and-hip intersections. But, as discussed below, that issue was already litigated in the Superior Court case. Additionally, the original Counterclaim challenged Daybreak's allegedly incomplete and improper performance of the same roofing contract at issue in this action.

During discovery in the Superior Court action, Daybreak served interrogatories asking Plaintiffs whether they contended that its construction work was defective and, if so, to "describe the specific allegations" supporting that contention. Dkt. No. 95-8 at 4. In their supplemental interrogatory responses, Plaintiffs answered: "Yes. See Rule 26 report of Arthur Sanders that was previously provided." *Id.* Daybreak also asked Plaintiffs to explain how each alleged defect contributed to the allegedly deficient construction, and Plaintiffs again directed Daybreak to Sanders's report. *Id.* When Daybreak asked Plaintiffs to identify all damages claimed through the Counterclaim and the basis for those damages, Plaintiffs identified the "[c]ost of repair as set forth in Rule 26 Expert Report of Arthur Sanders." *Id.* at 5. Thus, through their supplemental interrogatory responses in the Superior Court action, Plaintiffs expressly relied on Sanders's report to identify the defective work and repair damages they advanced through their Counterclaim. *Cf. Stewart*, 66 V.I. at 544 (treating an allegation as actually raised where the party incorporated it by reference into the earlier petition).

Sanders's report, in turn, identified deficiencies at the intersections of the roof pans, ridges, and hips and stated that those intersections "were not secured in the joint with cleats as is standard practice." Dkt. No. 95-5 at 45. For the Main House specifically, Sanders

identified "[l]ock seams not installed at ridges and hips," recommended removal and replacement of the roof, and estimated the probable cost of the Main House work at $358,771. *Id.* at 47.

Plaintiffs base the present action on the same 2010 contract and Daybreak's work on the same roof. *See* Dkt. No. 1 ¶¶ 9–13. The Complaint alleges that the contract required Daybreak to install cleats at an average of 9.5 inches on center and that Daybreak breached the contract by failing to install those cleats at the intersections of the copper pans on the Main House roof. *Id.* ¶¶ 6–12. Plaintiffs characterize the relief they seek as the benefit of their contractual bargain, including replacement of the Main House roof. Dkt. No. 98 at 11–13.

However, Plaintiffs contend that the two actions do not arise from the same operative facts. In support of that contention, Plaintiffs argue that the 2014 inspection revealed only a limited portion of one seam, and that Hurricane Irma, subsequent inspections, and later deposition testimony revealed a broader absence of cleats along the Main House ridge-and-hip seams. *See* Dkt. No. 98 at 19–21; Dkt. No. 99 ¶¶ 18–19, 31–39. While *Stewart* recognizes that claim preclusion does not bar a later claim when the event giving rise to that claim occurs after the prior complaint was filed, 66 V.I. at 544–45, the relevant inquiry is whether Plaintiffs' present claim arises from a new event occurring after they filed the Superior Court Counterclaim or from Daybreak's earlier roofing work.

Plaintiffs do not identify a new post-filing act or omission by Daybreak, giving rise to the present breach of contract claim. The Complaint alleges that Daybreak failed to install the required cleats when it performed the roofing work in 2010 and that Hurricane Irma later exposed the alleged deficiency. Dkt. No. 1 ¶¶ 9–11. Although the post-Irma inspections

and later testimony allegedly revealed that the deficiency was more extensive than Plaintiffs previously understood, the conduct alleged to constitute Daybreak's breach remains its 2010 installation work.

Therefore, contrary to Plaintiffs' contention, the operative facts underlying the two actions are related in time, space, origin, and motivation. *See Stewart*, 66 V.I. at 543. Both actions concern Daybreak's performance of the 2010 roofing work at Plaintiffs' St. John property and conditions on the Main House roof, and both actions arise from Daybreak's performance of the same construction contract. Moreover, Plaintiffs seek redress in both actions for allegedly deficient performance of that contract. The contract and roofing specifications, Daybreak's installation work, the Main House ridge-and-hip conditions, Sanders's investigation and opinions, and related construction evidence substantially overlap and could have been examined together as a convenient trial unit. Because the discovery record reflects that the two actions arise from the same aggregate of connected operative facts, and because there was no new conduct by Daybreak after the Superior Court action was filed, there is no basis to treat the two actions separately. *See Stewart*, 66 V.I. at 542–43; *Athlone Industries*, 746 F.2d at 984.

Plaintiffs further contend that the Superior Court's April 26, 2017 Order excluded their claim for replacement of the Main House roof from the Superior Court action. Dkt. No. 98 at 16–19. Before Sanders issued his report, Plaintiffs had produced a March 2014 preliminary cost-of-repair report prepared by Paradigm Construction Services ("Paradigm Report"). The Paradigm Report identified approximately $210,676.12 in repair costs, including replacement of the Gate House and Garage roofs, related stucco repairs, removal

and replacement of bad caulking on the Main House roof, relocation of fifteen vents, and general requirements associated with that work; it did not include replacement of the Main House roof. *See* Dkt. No. 100 ¶¶ 23, 25; Dkt. No. 101 ¶¶ 26, 28.

The April 26, 2017 Superior Court Order granted Daybreak's request "to limit damages to Two Hundred Ten Thousand Dollars ($210,000)" and separately reserved Daybreak's motion *in limine* concerning Sanders's testimony regarding the alleged breach of contract. Dkt. No. 112-4 at 3–4. The Order does not state that the Superior Court dismissed the Main House allegations, struck Sanders's report, or made the Paradigm Report the exclusive factual basis of Plaintiffs' Counterclaim. *Id.* The record therefore supports a limitation on the damages recoverable through the Counterclaim, rather than Plaintiffs' characterization that the Main House allegations were removed from the action.

That distinction matters under *Stewart* because the transactional inquiry turns on the aggregate of connected operative facts, not solely on the amount or form of relief available in the prior action. 66 V.I. at 541–43. Before the Superior Court entered the April 2017 Order, Plaintiffs had already relied on Sanders's report in their supplemental interrogatory responses to identify the allegedly defective work and repair damages supporting their Counterclaim. Dkt. No. 95-8 at 4–5. The damages limitation therefore did not alter the underlying conduct on which that Counterclaim rested—Daybreak's allegedly deficient performance of the 2010 roofing contract.

Taken together, the foregoing considerations establish that the breach of contract claim Plaintiffs pursue in this District Court action arises from the same transaction or occurrence as their Superior Court Counterclaim. In other words, the present breach of

contract claim encompasses claims already asserted in Plaintiffs' Superior Court Counterclaim. Therefore, the third element of claim preclusion is satisfied. *See Stewart*, 66 V.I. at 532–33, 542–43. In sum, the Superior Court dismissal constitutes a valid, final judgment on the merits; Friedberg, Bunge, and Daybreak are the same parties in both actions; and the present claim arises from the same transaction or occurrence as the Superior Court Counterclaim. *See Stewart*, 66 V.I. at 532–33. Accordingly, all three elements of claim preclusion are satisfied.[1] The Court therefore recommends granting Daybreak's Motion for Summary Judgment on the basis of claim preclusion.

Because claim preclusion bars Plaintiffs' claim in this District Court action, the Court need not separately address Daybreak's argument that the release in the Settlement Agreement bars Plaintiffs' claim. Nor must the Court address Daybreak's remaining arguments that Plaintiffs' failure to secure the roof constitutes an intervening cause, that Plaintiffs cannot establish causation, or that Plaintiffs' damages should be limited based on their alleged failure to mitigate.

---

[1] The parties' subsequent Settlement Agreement further supports the Court's claim-preclusion analysis. When a prior judgment follows a settlement, the express terms of the parties' settlement agreement inform the scope of claim preclusion. *See Toscano v. Connecticut General Life Insurance Co.*, 288 F. App'x 36, 38–39 (3d Cir. 2008). Here, the Settlement Agreement repeatedly states that settlement of the Superior Court action "does not extinguish" the claims in this District Court action "to the extent that [the] District Court case does not encompass claims that were asserted" in the Superior Court action. Dkt. No. 101-21 at 2, 4–6. That language is consistent with the Court's independent determination above that Plaintiffs' present breach of contract claim encompasses claims asserted in their Superior Court Counterclaim.

## CONCLUSION

For the reasons stated in this Report and Recommendation, the undersigned Magistrate Judge hereby **RECOMMENDS** that Defendant Daybreak's Motion for Summary Judgment, Dkt. No. 93, be **GRANTED**.

Any objections to this Report and Recommendation must be filed in writing within fourteen (14) days of receipt of this notice, 28 U.S.C. § 636(b)(1), and must "specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis of such objection." LRCi 72.3. Failure to file objections within the specified time shall bar the aggrieved party from attacking such Report and Recommendation before the assigned District Court Judge. *See, e.g., Thomas v. Arn*, 474 U.S. 140 (1985).

ENTER:

Dated: September 11, 2026

/s/ Emile A. Henderson III
EMILE A. HENDERSON III
U.S. MAGISTRATE JUDGE