**IN THE UNITED STATES DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. THOMAS AND ST. JOHN**

| | | |
|---|---|---|
| THOMAS F. FRIEDBERG & SARAH L. BUNGE, | ) | |
| Plaintiffs, | ) | Case No. 3:19-cv-0053-ER-EAH |
| v. | ) | |
| DAYBREAK, INC. d/b/a HUBER & ASSOCIATES, | ) | |
| Defendant. | ) | |

**PLAINTIFFS' OBJECTION TO MAGISTRATE REPORT AND RECOMMENDATION TO GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## INTRODUCTION

This case is a single cause of action for breach of contract between Plaintiffs and Defendant to manufacture and install a standing seam copper roof on Plaintiffs' home located at 168 Chocolate Hole, St. John, United States Virgin Islands. The home consists of 6 separate buildings. The only building at issue in this breach of contract claim is the Main House Pavilion ("Main House"). The gravamen of the complaint is that Defendant failed to comply with the contractual requirement that it install cleats to secure the copper membrane to the roof substrate. Because Defendant did not install cleats to secure the seams of the copper pans where they intersect along the hip ridge lines of the octagonal Main House roof, the hip ridges are susceptible to wind damage. Because the existence (or absence) of such cleats is concealed by the roof itself, Plaintiffs discovered Defendant's failure to install these cleats only when the roof's hip ridge seams were damaged by storm winds during Hurricane Irma, when the full length of one seam opened to reveal the absence of cleats. Thus, Plaintiffs' claim, arising from Defendant's failure to install cleats on the Main House hip ridges, was a latent defect undiscovered—and undiscoverable—prior to

Hurricane Irma. Accordingly, it cannot be precluded by Plaintiffs' earlier claims against Defendant arising from unrelated defects in Defendant's work on the Gate House and Garage roofs. To hold otherwise is inconsistent with Virgin Islands law and would prevent Plaintiffs from any opportunity to pursue their breach of contract claim on its merits. For this reason, Plaintiffs object to the Magistrate's Report and Recommendation to grant Defendant's Motion for Summary Judgment on *res judicata* or claim preclusion grounds.

**FACTUAL BACKGROUND**

On May 7, 2010, Plaintiffs entered a written contract with Defendant to manufacture and install standing seam copper roofs at their residence located at 168 Chocolate Hole, St. John, Virgin Islands. (ECF No. 90-1, Contract). Defendant's installation of the bargained for roofs was a disaster. The roofs on the Gate House and Garage leaked almost immediately.

Nevertheless, on December 21, 2010, it was Defendant who initiated an action in the Superior Court of the Virgin Islands alleging that Plaintiffs owed Defendant $31,316 and stopped work on the contract, despite Plaintiffs having already paid Defendant $43,015 above and beyond the contract price. (ECF No. 95-3, Superior Court Complaint; ECF No. 95-4, Superior Court Counterclaim). As a result of Defendant's failure to complete the bargained for work, and defects that had already begun to manifest as evidenced by the leaks in the Gate House and the Garage roofs, Plaintiffs filed counterclaims against Defendant in the Superior Court action on September 30, 2012, alleging breach of contract, breach of warranty, negligence and fraud. (ECF No. 95-4).

The defects alleged in the Superior Court counterclaims were identified in the initial cost repair estimate prepared by Paradigm Construction and dealt almost exclusively with the Gate House and the Garage roofs.[1] (*See* ECF No. 101-4). The Paradigm Report did not identify any

[1] The Paradigm Report cost of repair estimate was derived almost exclusively from damages to the Gate House and Garage roofs. The only Main House repairs identified in the Paradigm Report totaled $930 and related only to the

defects or claims regarding the Main House roof cleats. (*Id*.)

But not all of Defendant's breaches of contract were evident when Plaintiffs filed their counterclaims (or when Paradigm conducted its inspection and prepared its cost-of-repair estimate). In their contract with Defendant, Plaintiffs bargained for cleats to be installed at an average of 9.5 inches on center with 2 ring shanks per cleat in order to secure the copper panels and to hold the copper panels that form the copper pans in place. (ECF No. 90-1). Plaintiffs specifically bargained for the 9.5" spacing to ensure that the copper panels and copper pans would be secured and would be able to withstand hurricane force winds. (*Id.*). Defendant agreed to the 9.5" spacing and Defendant modified their contract to reflect this. (*Id.* at p. 3 ("Add for smaller panels and cleat spacing +$10,735")). And, in light of the 9.5" spacing requirement, Defendant charged Plaintiffs a higher amount for the roof installation. (*Id.*). Furthermore, by virtue of the industry standards ***that Defendant incorporated into the contract***, Defendant was required to install cleats securing each of the hip ridge seams on the Main Roof. (*Id.* at p. 2 (requiring roof system to be "[i]nstalled in accordance with *Revere Copper & Common Sense & SMACNA*").

These cleats are installed underneath the copper panels. (ECF No. 1, ¶ 7). As a result, they are not visible (and their existence cannot be verified) without opening the roof. (*Id.*) Thus, Plaintiffs did not become aware that Defendant had breached its contractual obligation as it related to the Main House cleat requirements until after Hurricane Irma struck the Virgin Islands in September 2017, opening the full length of one hip ridge on the Main House roof and prompting Plaintiffs to conduct further inspections of that roof.[2] (*Id.* at ¶ 10).

---

removal and replacement of bad caulking around the library which—an issue entirely unrelated to Defendant's failure to install the bargained for cleats along the Main House hip ridges. (*See* ECF No. 101-4).

[2] Indeed, Defendant did not concede that it had failed to install cleats along the full length of each hip ridge on the Main House roof until April 2025, when Defendant's employee stated that no cleats had been installed along any hip ridge on the Main House roof. (ECF No. 101-17, Dep. Tr. Micah Cady, 39:14-40:3; 44:6-8).

The Superior Court litigation was ongoing when Hurricane Irma struck the Virgin Islands. However, Plaintiffs did not amend their complaint to add new claims related to the failure to install the bargained for cleats to secure the Main House roof[3] because the Virgin Island court system was significantly disrupted by the impact of the storm and, in any event, the Superior Court had already limited the scope of the then-pending action to damages to the Gate House and Garage roofs only. (*Compare* ECF No 101-7 (April 2017 Superior Court Order capping damages at $210,000, matching the cost of replacement asserted by Plaintiffs' expert for replacement of the Gate House and Garage roofs only) *with* ECF No. 101-4 (Paradigm Cost Estimate)). Instead, Plaintiffs filed this breach-of-contract action on July 14, 2019, to seek redress for Defendant's failure to install the bargained for cleats along the hip ridge seams of the Main Roof. (ECF No. 1).

Ultimately, the Parties settled the Superior Court action and included in their settlement agreement an express carveout for the action pending before this Court, stating: "[t]he settlement of the above-entitled Superior Court Lawsuit does not extinguish the claims in the District Court case number 3:19-cv-0053[.]" (ECF No 95-14). Because Plaintiffs' claim in this action is outside the scope of the Superior Court litigation and arose from Plaintiffs' post-Hurricane Irma discovery of a latent defect—not only after Plaintiffs had filed their counterclaim in the Superior Court action but after the Superior Court had limited the scope of that action to damages to the Gate House and Garage roofs—application of the doctrine of *res judicata* to preclude Plaintiffs' claim pending before this court is improper as a matter of law. *Stewart v. V.I. Bd. of Land Use Appeals*, 66 V.I. 522, 545 (V.I. 2017) ("res judicata does not apply to claims arising from events occurring after the

[3] The allegations of this lawsuit deal exclusively with the Main House on the lower portion of Plaintiffs' property and not the Gate House or Garage roofs that were at issue in the Superior Court lawsuit. (ECF No. 95-15).

filing of the prior complaint.”).

## PROCEDURAL BACKGROUND

On March 20, 2026, this Court referred Plaintiffs’ Motion for Summary Judgment (ECF No. 86) and Defendant’s Motion for Summary Judgment (ECF No. 93) to Magistrate Judge Emile A. Henderson III for the issuance of proposed findings of fact and recommendations for disposition. (ECF No. 143). On September 11, 2026, the Magistrate recommended that this court grant Defendant’s Motion for Summary Judgment (ECF No. 149) on the grounds that Plaintiffs’ claim is barred by the doctrine of res judicata or claim preclusion.[4, 5] The Court granted Plaintiffs’ Motion to Extend the Time to File Objections to the Magistrate’s recommendations to October 23, 2026. (ECF No. 154). Plaintiffs now object pursuant to Fed. R. Civ. P. 72(b)(2) and respectfully request that this Court reject the recommended disposition and deny Defendant’s Motion for Summary Judgment.

## LEGAL STANDARD

Federal Rule of Civil Procedure 72(b)(3) provides that a district judge “must determine *de novo* any part of the magistrate judge’s disposition that has been properly objected to.” The district judge “may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.” *Id.*

Summary judgment is appropriate only if “the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R.

---

[4] The Magistrate’s Report and Recommendation did not address Defendant’s additional arguments that Plaintiffs’ failure to secure the roof constitutes an intervening cause, that Plaintiffs cannot establish causation, or that Plaintiffs’ damages should be limited based on their alleged failure to mitigate.

[5] Having recommended that this Court grant Defendant’s Motion for Summary Judgment, the Magistrate also recommended that this Court deny Plaintiffs’ Motion for Summary Judgment as moot or, in the alternative, deny Plaintiffs’ Motion for Summary Judgment “because a genuine dispute of material fact remain concerning the scope of Daybreak’s contractual duty.” (EFC No. 150). Plaintiffs separately object to the Magistrate’s Report and Recommendation to deny Plaintiffs’ Motion for Summary Judgment.

Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A factual dispute is genuine where the evidence would permit a reasonable factfinder to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the moving party meets its burden, the non-movant must "do more than simply show that there is some metaphysical doubt as to material facts." *See In re Tutu Water Wells Contamination Litigation*, 42 V.I. 299, 306 (D.V.I. 1999) (citing *Mitsubishi Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Summary judgment is appropriate where the opposing party's evidence is "merely colorable or is not significantly probative." *See In re Tutu*, 42 V.I. at 306-07.

## ARGUMENT[6]

### A. Plaintiffs' Claim Is Not Barred By the Doctrine of Res Judicata or Claim Preclusion.

Under Virgin Islands law,[7] "res judicata ***does not apply*** to claims arising from events occurring after the filing of the prior complaint." *Stewart v. V.I. Bd. of Land Use Appeals*, 66 V.I. 522, 545 (V.I. 2017) (emphasis added); *see also Valerino v. Holder,* 2013 WL 6283713, at 4-5 (D.V.I. Dec. 4, 2013) (denying claim preclusion where the allegations of events underlying a second action "arose after the complaint in [the first action] was filed"); *Harthman Leasing III, LLLP v. FirstBank Puerto Rico*, 2023 WL 3020209, *6 (D.V.I. Apr. 20, 2023) (applying *Stewart* and declining to apply *res judicata* where plaintiff's claim arose after entry of the prior judgment). As explained in *Stewart*, a plaintiff in the Virgin Islands has "no continuing obligation to file amendments to the complaint to stay abreast of subsequent events" and a contrary rule "would invite uncertainty and unpredictability as litigants disputed whether claims based on later-

---

[6] Plaintiffs incorporate by reference herein all arguments presented in their Opposition to Defendant's Motion for Summary Judgment (ECF No. 98).

[7] The Third Circuit has held that the law of the court issuing the prior decision "determines the preclusive effects of a prior judgment." *Peloro v. United States*, 488 F.3d 163, 175 n.11 (3d Cir. 2007). Here, the prior judgment was issued by the Superior Court of the Virgin Islands. (EFC No. 104-20).

occurring incidents could be brought in amended pleadings. *Stewart*, 66 V.I. at 545 (quoting *Curtis v. Citibank, N.A.*, 226 F.3d 133, 139 (2d Cir. 2000)).

Where res judicata or claim preclusion ***is*** applicable, the doctrine bars a party from relitigating claims that the party raised or could have raised in a prior action when: "(1) the prior judgment was valid, final, and on the merits; (2) the parties in the subsequent action are identical to or in privity with the parties in the prior action; and (3) the claims in the subsequent action arise out of the same transaction or occurrence as those in the prior action." *Stewart*, 66 V.I. at 532–33; *Titan Medical Group, LLC v. V.I. Government Hospitals & Health Facilities Corp.*, 77 V.I. 679, 686–87 (D.V.I. 2021). In making this determination, the Virgin Islands applies the "transactional test." *Stewart*, 66 V.I. at 542. Under this test, "the measure of a cause of action is the aggregate of connected operative facts that can be handled together conveniently for purposes of trial." *Id.* (quoting *Conn. Nat'l Bank v. Kendall*, 617 A.2d 544, 547 (Me. 1992)). And, in applying this test, "the court must pragmatically consider 'whether the [connected operative] facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Id*. (quoting *River Park v. City of Highland Park*, 703 N.E.2d 883, 893 (Ill. 1998).

Finally, "given that claim and issue preclusion both pose a risk of erroneously denying parties a chance for their claims to be heard on the merits, reasonable doubts about the application of these preclusion doctrines should be resolved against their use." *Smith v. Ostrander*, Civ. No. 3:21-cv-0010, 2023 WL 2665760 at *3 (D.V.I. Mar. 28, 2023) (citing *DVI Receivables XIV, LLC v. Nat'l Med. Imaging, LLC*, 529 B.R. 607, 617 (E.D. Pa. 2015)).

**1. This Action Arises from Events Occurring After the Filing of Plaintiffs' Complaint in the Superior Court.**

Plaintiffs commenced this action on July 14, 2019, asserting a single claim for breach of

contract against Defendant arising out of Defendant's failure to secure cooper panels and the cooper pans with cleats installed at an average of 9.5 inches on center on the Main House roof, a material and specific contractual requirement in the agreement between the parties. (ECF No. 1 ¶ 7). Critically, the breach-of-contract claim in this action arose from events that occurred seven years ***after*** Defendant commenced its earlier action against Plaintiffs in the Superior Court of the Virgin Islands on December 21, 2010 (ECF No. 95-3) and five years after Plaintiffs filed their counterclaims in that action on September 30, 2012. (ECF No. 95-4).

Specifically, this action arose from the discovery that, with regard to the Main House hip ridges, "Defendant did not install cleats at the intersection of the cooper panels that form the cooper pan at 9.5 inches on center as required by the terms and conditions of the contract." (ECF No. 1, ¶ 10). Plaintiffs allege that this discovery was made after Hurricane Irma struck the Virgin Islands in September 2017, when Plaintiffs conducted an inspection of damage to the property from the hurricane. (*Id.*) Plaintiffs further allege that this discovery was impossible prior to the September 2017 inspection because "the cleats were to have been placed underneath the cooper *[sic]* panels and cooper *[sic]* pans and their existence or non-existence would not have been visible to the naked eye or upon reasonable inspection since the cleats are concealed." (*Id.* at ¶ 11). As the Magistrate's Report and Recommendation recognizes, "[t]he Counterclaim did not specifically allege that Daybreak failed to install cleats at the Main House ridge-and-hip intersections." (ECF No. 149, p. 50).

Accordingly, the event giving rise to this action—discovery of Defendant's failure to install cleats on the Main Roof hip ridges[8] as required by contract—occurred ***after*** the filing of Plaintiffs'

[8] Plaintiffs' claim in this action is limited to the Main Roof and does not encompass roofs installed by Defendant on other buildings pursuant to the contract between the parties.

complaint in the Superior Court and may not be barred by the doctrine of res judicata as a matter of law. *Stewart*, 66 V.I. at 545 (V.I. 2017) ("res judicata does not apply to claims arising from events occurring after the filing of the prior complaint.").

The logic of *Stewart* makes clear that subsequent "events" cannot be limited to acts or omissions by Defendant. Rather, "events" must be defined sufficiently broadly to encompass any event that reveals a necessary element of a cause of action. Under this formulation, Hurricane Irma, must constitute such an event because it revealed Defendant's failure to install cleats that otherwise would have remained concealed and undiscoverable indefinitely, leaving Plaintiffs unaware of the existence of a claim.[9] Put simply, claim preclusion bars only those claims "that were raised or could have been raised in a prior action", *Stewart*, 66 V.I. at 531 (quoting *Stewart v. U.S. Bancorp*, 297 F.3d 953, 956 (9th Cir. 2002), and here, Plaintiffs could not have brought this claim in their Superior Court counterclaim, did not subsequently raise the claim in the Superior Court action, and were under no obligation to do so. *See Stewart*, 66 V.I. at 545; *see also Lucky Brand Dungarees, Inc. v. Marcel Fashions Group, Inc.* 590 U.S. 405, 414 (2020) ("Claim preclusion generally 'does not bar claims that are predicated on events that postdate the filing of the initial complaint.' . . . This is for good reason: Events that occur after the plaintiff files suit often give rise to new 'material operative facts' that 'in themselves, or taken in conjunction with the antecedent facts,' create a new claim to relief.") (internal citations omitted).

The Magistrate's Report & Recommendation states that "Plaintiffs do not identify a new post-filing act or omission by Daybreak, giving rise to the present breach of contract claim" but offers no support for the proposition that the "event" at issue must be a subsequent act or omission

[9] While Hurricane Irma revealed Defendant's failure to secure one entire hip ridge seam with cleats, as required by the contract between the parties, it was not until April 2025 that Defendant conceded that the scope of this latent defect extended to each and every hip ridge on the Main House roof. (*See* ECF No. 101-17, Dep. Tr. Micah Cady, 39:14-40:3; 44:6-8).

by Defendant. Any such requirement would be out of step with principles of fundamental fairness because it would have been ***impossible*** for Plaintiffs to assert this breach of contract claim at the time of their Superior Court counterclaim and injustice would result if Plaintiffs are now barred from ever pursuing a remedy against Defendant. As a result, circuit courts across the country, including the Third Circuit, have consistently recognized that claim preclusion does not bar claims derived from newly discovered evidence that "***could not have been discovered with due diligence.***" *See Haefner v. North Cornwall Tp.*, 40 Fed. Appx. 656, 658 (3d Cir. 2002) (holding that claim preclusion does not bar new claims where newly discovered evidence "could not have been discovered with due diligence") (emphasis added); *L-Tec Electronics Corp. v. Cougar Electronic Organization, Inc.*, 198 F.3d 85, 88 (2d Cir. 1998) (same); *Guerrero v. Katzen*, 774 F.2d 506, 508 (D.C. Cir. 1985) (same); *Constantini v. Trans World Airlines*, 681 F.2d 1199, 1202-03 (9th Cir.) (same).

Because Defendant's failure to install cleats along the hip ridges of the Main Roof was concealed by the roof itself, the latent defect was not discoverable, even with all appropriate diligence by Plaintiffs. Indeed, neither of the inspections conducted by Plaintiffs in the Superior Court action revealed missing cleats in the Main Roof hip ridges. Only after Hurricane Irma revealed that Defendant had failed to install cleats along the full length of at least one hip ridge could Plaintiffs pursue such a claim. Furthermore, the full scope of Defendant's breach of contract—Defendant's failure to install cleats on any hip ridge on the Main House—was discovered only when Defendant admitted in their employee's April 2025 deposition that they did not install these cleats. (ECF No. 101-17, Dep. Tr. M. Cady, 39:14-40:3; 44:6-8; ECF No. 101-18, Dep. Tr. M. Cady, 31:11-13; ECF No. 101-19, Dep. Tr. B. Huber, 30:3-8). Precluding Plaintiffs from now litigating a claim for breach of contract to install cleats along the hip ridges of the Main

House roof would constitute a grave injustice, leaving Plaintiffs with no remedy available at law. Plaintiffs' chances for their claim to be heard on the merits should not be denied on the basis of their counterclaims in the Superior Court simply because they involve the same contract. *See Smith*, 2023 WL 2665760, at *3 (advising that any reasonable doubts about the application of preclusion doctrines should be resolved against their use).

To reach the opposite conclusion, the Magistrate Report & Recommendation asserts that Defendant's failure to install cleats on the Main House roof was "already litigated in the Superior Court case." (ECF No. 149, p. 5). But this is incorrect. The Magistrate Report & Recommendation reasons that Plaintiffs placed Defendant's failure to install cleats on the Main House roof at issue when, in response to interrogatories regarding the specific defects Plaintiffs were alleging, Plaintiffs referenced the findings of a second inspection report prepared by Hoffman Architects, in November 2014, in addition to the earlier Paradigm Report, which focused on the cost of repair of the Gate House and Garage roofs.

But the Hoffman Report makes only one reference to an absence of cleats. In its description of "the roofs of the nine structures" on the property, it noted only that "***the end conditions at intersections of pans; ridges and hips*** . . . were not secured in the joint with cleats as is standard practice." (ECF No. 95-5, p. 15-16 (emphasis added)). This observation was not specific to the Main House roof and did not assert that cleats were missing from the full length of hip ridges, whether on the Main House or other structures on the property.

Furthermore, this observation was not the basis for the Hoffman Report's recommendation that the Main Roof be replaced. That recommendation was based on its findings that (1) "[a]n inappropriate selection of long span pans on the multi slope roof of the Main Pavilion is causing failures at the base of the pan/standing seam where the slopes transition", and (2) "the nature of

the architectural design with two slopes inhibits expansion along the span of the sheets. This is a flaw in the design proposed by the contractor." (*Id.*). Resolving all doubt as to the basis of its recommendation that the Main House roof be replaced, the Hoffman Report goes on to state that "***the lack of allowance for expansion*** cannot be corrected without replacement." (*Id.* (emphasis added)). Thus, Plaintiffs never placed Defendant's failure to install the bargained-for cleats on the Main House roof at issue in the Superior Court litigation.

Nor did the Hoffman Report provide notice to Plaintiffs as to the scope of Defendant's failure to install cleats on the Main House roof, which Plaintiffs did not learn of until after Hurricane Irma struck the Virgin Islands in September 2017. While the Hoffman Report referenced missing cleats "at intersections of pans; ridges and hips" in its inspection of the roofs on the property, its assessment of the Main House roof made no reference to any missing cleats. Instead, it stated only that the inspector was unaware of whether Defendant utilized "a combination of expansion and fixed cleats" as recommended by *Revere* for copper sheets exceeding 30 feet in length. (*Id.* at pp. 38-39). But the inability to determine the *types* of cleats used by Defendant is entirely different from a finding that cleats were *missing* entirely. And to that question, the Hoffman Report makes clear that when it opened a two-foot section of standing seam on the Main Roof, the inspector "found four cleats in this area that were spaced at 8", 10", and 9"." (*Id.* at p. 6). Thus, from the Hoffman Report, Plaintiffs were left none the wiser as to Defendant's complete failure to secure the Main House roof's hip ridges with cleats, in breach of the written contract between the parties.[10]

As Arthur Sanders, the inspector who prepared the Report made clear in his deposition,

[10] As the Magistrate's Report and Recommendation acknowledges, "Plaintiffs argue that the 2014 inspection revealed only a limited portion of one seam, and that Hurricane Irma, subsequent inspections, and later deposition testimony revealed a broader absence of cleats along the Main House ridge-and-hip seams." (ECF No. 149, p. 16).

after he verified the existence of cleats in the standing seam, he did not engage in further destruction of the roof to look for more cleats because there was "nothing that really led me to believe that they weren't secured well." (ECF No. 95-6, Arthur Smith Dep. Tr., 15:19-16:6). Mr. Sanders later testified in his deposition in this action that he did not assess whether there were or were not cleats in the Main House roof hip ridges in is 2014 inspection underlying the Hoffman Report because "it never became a question that came up or that . . . I thought about." (ECF No. 95.7, Arthur Smith Dep. Tr. 84:25-86:9).

Thus, in sum, the question of whether the hip ridges on the Main House roof were secured by cleats was not an issue Mr. Sanders considered in preparing the Hoffman Report and was not an issue addressed in the Hoffman Report itself. Rather, that Report emphasized the *existence*—not the *absence*—of cleats in the Main Roof standing seams, and neither Mr. Sanders, nor the Hoffman Report, placed Plaintiffs on notice of any missing cleats on the Main Roof, much less missing cleats along the full length of each hip ridge.

Finally, the Magistrate Report & Recommendation's assertion that Defendant's failure to install cleats on the Main House roof was "already litigated in the Superior Court case" is inconsistent with the procedural history of the Superior Court litigation. Rather than considering claims related to the Main House, the Superior Court expressly narrowed the available damages to only those related to the replacement of the Gate House and Garage roofs, excluding from the action consideration of damages arising from defects in the Main House roof. The Superior Court entered its Order capped available damages at $210,000, matching the cost of replacement of the Gate House and Garage roofs only. (*See* ECF No. 101-7; ECF No. 101-4). This limitation was imposed in April 2017, five months before Hurricane Irma revealed Defendant's failure to install cleats securing the hip ridges of the Main House roof.

Plaintiffs' claim arising from Defendant's failure to install cleats on the Main House roof therefore was never at issue before the Superior Court, which had limited the scope of the action to damages arising from the Gate House and Garage roofs (excluding all claims related to the Main House roof from the action) before Plaintiffs could have discovered Defendant's failure to install cleats on the hip ridges of the Main House roof. Plaintiffs were under no obligation to attempt to amend their counterclaim, *see Stewart*, 66 V.I. at 545, and it is unclear and speculative to conclude whether Plaintiffs' could have amended their counterclaim at that time, well after the close of discovery in the Superior Court action, even if they wanted to.

Accordingly, *res judicata* does not apply to bar Plaintiffs' claim in this action.

**2. Application of the "Transaction Test" does not Bar Plaintiffs' Claim.**

Analysis beyond the timeline set out in Section A.1, *supra*, is unnecessary. However, an application of the transaction test endorsed in *Stewart* does not support application of *res judicata* here. As recognized in this Circuit, "'a somewhat modified form of res judicata' applies if a settlement agreement triggers a dismissal and a defendant's consequent discharge." *Toscano v. Conn. Gen. Life Ins. Co.*, 288 Fed. Appx. 36, 38 (3d Cir. 2008). Where parties have settled a prior action, it is "[t]he express terms of a settlement agreement, not merely the terms of the judgment, [that] determine the bounds of preclusion after a settlement." *Id.* This approach is entirely consistent with the transaction test because the transaction test requires the court to "pragmatically consider 'whether the [connected operative] facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit ***conforms to the parties' expectations*** or business understanding or usage." *Stewart*, 66 V.I. at 542 (emphasis added). It is "[t]he express terms of a settlement agreement" that reveal the "parties' expectations."

Here, it is abundantly clear from the settlement agreement that the Parties did not intend to

extinguish this action, already pending before this Court. The plain text of the settlement agreement states repeatedly that: "[t]he settlement of the above-entitled Superior Court Lawsuit ***does not extinguish the claims in the District Court case number 3:19-cv-0053*** to the extent that District Court case does not encompass claims that were asserted in the above-entitled Superior Court case." (ECF No 95-14 (emphasis added)). Had the Parties intended to settle or otherwise extinguish the claims in this action—*i.e.*, the District Court case—in addition to the claims in the Superior Court action, the settlement agreement simply would have said so. Instead, the Parties did the opposite and carved out this action from the settlement.

While the carveout for this action was limited by the clause "to the extent that the District Court case does not encompass claims that were asserted in the above entitled Superior Court case", the Parties were well aware that the breach-of-contract claim in this case was never asserted in the Superior Court case. As explained, *supra*, Plaintiffs did not learn (and could not have learned) that Defendant had failed to install cleats along the hip ridges of the Main House until ***after*** Hurricane Irma because the missing cleats were concealed by the roof itself. By the time Hurricane Irma revealed Defendant's breach, discovery had been closed for months, and the Superior Court had already limited the available damages on Plaintiffs' counterclaim to those arising from the cost to replace the Gate House and Garage roofs only. (*See* ECF No. 101-7; ECF No. 101-4). Accordingly, it was not possible that Plaintiffs' claim in this action—related only to the Main House roof that was excluded from the Superior Court action—could have been "encompass[ed]" in the Superior Court action.

Consideration of the Parties' expectations, as revealed by the settlement agreement, makes clear that the Parties did not intend to extinguish this action. Such consideration of the terms of the settlement agreement is not only consistent with the transactional test, but also with the exception

to *res judicata* set out in Restatement (Second) Judgments § 26(1)(a), which provides that *res judicata* does not apply to extinguish a claim where "[t]he parties have agreed in terms or in effect that the plaintiff may split his claim, or the defendant has acquiesced therein[.]"*See also R&J Holding Co. v. Redevelopment Authority of County of Montgomery*, 670 F.3d 420, 427 (3d. Cir. 2011) (affirming *res judicata* does not apply pursuant to § 26(1)(a) where a party has acquiesced to claim splitting). Because both the Restatement (Second) Judgments and the Virgin Islands have adopted the transactional test, it stands to reason that the Restatement's exceptions to application of *res judicata* would carry significant persuasive value under Virgin Islands law.[11] *See* Restatement (Second) Judgments § 24 (adopting the transactional test).

Finally, in adopting the transactional test, *Stewart* relied heavily on the articulation of that standard by the Illinois Supreme Court in *River Park, Inc. v. City of Highland Park*, 703 N.E.2d 883, 891 (Ill. 1998). *See* Stewart, 66 V.I. at 543 (quoting *River Park* for the proposition that "the court must pragmatically consider 'whether the [connected operative] facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.'"). In turn, *River Park* makes clear that "under the transactional analysis, the nature of the evidence needed to prove the claims at issue remains relevant for purposes of demonstrating that the claims arise from the same group of operative facts." *River Park*, 703 N.E.2d at 893.

Here, the necessary evidence for Plaintiffs to pursue their breach of contract claim in this action was concealed beneath the Main House roof and undiscoverable until Hurricane Irma opened a hip ridge on the Main Roof, revealing Defendant's failure to install the bargained-for

---

[11] While the Virgin Islands does not engage in "mechanistic and uncritical reliance on the Restatements" the Restatements remain persuasive authority. *See Banks v. Int'l Rental & Leasing Corp.*, 680 F.3d 296, 299 (3d Cir. 2012); *Government of Virgin Islands v. Connor*, 60 V.I. 597, 602 (2014) ("the Restatements . . . represent persuasive authority, just like law review commentaries and decisions rendered by courts outside of the Virgin Islands.").

cleats. *River Park* makes clear that this evidence must be considered under the transactional test.

The fact that this evidence was undiscoverable until five years after Plaintiffs' counterclaims in the Superior Court, after the close of discovery, and several months after the Superior Court narrowed the scope of the Superior Court action to damages arising from the Gate House and Garage roofs, makes clear that the operative facts underlying the Superior Court counterclaims are separate and distinct from the operative facts underlying the claim in this action. In sum, the relevant operative facts underlying the Superior Court counterclaims and the breach of contract claim pending before this Court were separated by (1) ***time*** (Plaintiffs did not—and could not—have discovered Defendant's failure to install cleats securing the hip ridges on the Main House roof until after damages to the Main House roof were excluded from the Superior Court action); (2) ***space*** (Plaintiffs claim in this action relate to the Main House roof, a distinct structure from the Gate House and Garage roofs at issue in the Superior Court); and (3) ***origin*** (Plaintiffs only learned of the failure to install cleats on the Main House hip seams following Hurricane Irma in September 2017, whereas the operative facts underlying Plaintiffs counterclaim manifested prior to Plaintiffs filing their counterclaim in September 2012 via leaks in the Gate House and Garage roofs). Completing the *Stewart* transactional test analysis, Plaintiffs' claim related to the Main House roof did not "form a convenient trial unit" with the Superior Court counterclaims because the Superior Court had already limited the scope of the Superior Court action to damages arising from the Gate House and Garage roofs and, as discussed in detail, *supra*, the settlement agreement between the Parties reflects the clear expectation of the Parties that this action was excluded from its scope.

Accordingly, application of *res judicata* is improper under this standard.

**3. Defendant's Causation, Intervening Cause, Alteration and Mitigation Arguments Are not Defenses to this Breach of Contract Action.**

The Magistrate Report and Recommendation did not address Defendant's additional arguments in support of its Motion for Summary Judgment because it recommended that this Court enter an order granting summary judgment based on claim preclusion. As discussed, *supra*, claim preclusion is improper, and rather than extinguishing Plaintiffs' claim, the settlement agreement makes clear that the Parties intended to exclude this action from the scope of their resolution of the Superior Court action. Defendant's additional arguments are without merit.

In the action before this Court, Plaintiffs allege a breach of contract claim for which they seek to recover the benefit of their bargain: a copper roof on their Main House secured to the substrate with cleats spaced as required by the Contract and the industry standards incorporated into it. Plaintiffs do not make claims of negligence, product liability or any other tort. Plaintiffs do not seek to recover damages caused by Defendant's faulty work or a failure of the roof during the high winds that hit St. John during Hurricane Irma. Plaintiffs simply want the benefit of their bargain, which under the circumstances requires replacement of the Main House roof.[12]

The causation requirement for breach of contract is that the damages must be a foreseeable

---

[12] The measure of damages for breach of contract in the Virgin Islands was stated by the Court in *Hewitt v. Morton*, 1999 WL 35792711, (Terr. Ct. V.I. Apr. 14, 1999):

> Contract damages are ordinarily based on the injured party's expectation interest and are intended to give him the benefit of his bargain by awarding him a sum of money that will, to the extent possible, put him in as good a position as he would have been in had the contract been performed. Restatement (Second) of Contracts § 347, cmt.a; *See also Christmas v. Virgin Islands Water & Power Auth.*, 18 V.I. 624 (D.V.I 1981). For breach due to defective performance or due to abandonment of the contract, ***an injured party can get a judgment for damages measured by the reasonable cost of reconstruction and completion in accordance with the contract***, so long as this is possible and does not involve unreasonable economic waste. *See* 13 Am Jur 2d Building & Construction Contracts § 80 and 5 Corbin on Contracts § 1089 (1964)(emphasis supplied); *See also Sheldon v. Northeast Developers. Inc.*, 238 A.2d 775 (Vt. 1968) and *Cooper Concrete Co. v. Hendricks*, 386 S.W.2d 221 (Tex. Civ. App. 1965). The amount actually paid by the owner to another contractor for correction and completion in accordance with the contract is a measure of damages for the Defendant's breach. 5 Corbin on Contracts § 1089; *See also Dierickx v. Vulcan Industries*, 158 N.W.2d 778 (Mich. Ct. App. 1968).

(emphasis added).

result of the breach when the contract was made. Restatement (Second) of Contracts § 351. It was foreseeable when Daybreak agreed to install cleats as specified by the Contract that Daybreak's failure to do so would require replacement of the entire Main House roof to properly secure it with cleats.

Plaintiffs are not obliged to pay twice for the roof they bargained for once they learned that at least one roof hip ridge was not secured by cleats as required by the contract. As the injured party in a breach of contract action, Plaintiffs were required to make reasonable efforts to minimize their losses and cannot recover for damages they could have avoided. Restatement (Second) of Contracts § 350. Plaintiffs complied with the mitigation requirement. After one complete hip ridge seam was opened by Hurricane Irma, Plaintiffs mitigated water leakage and other damage that may have resulted from Defendant's breach of the contract by hiring contractors to temporarily secure the roof and repair any leaks or potential leaks. Defendant's suggestion that Plaintiffs should have replaced the entire Main House roof at their own cost to "mitigate" their damages is absurd. Plaintiffs did not know that Defendant breached the Contract's requirements by failing to secure all the hip ridges on the Main House until Defendant admitted it in depositions in 2025. (ECF No. 101-17, Dep. Tr. M. Cady, 39:14-40:3; 44:6-8; ECF No. 101-18, Dep. Tr. M. Cady, 31:11-13; ECF No. 101-19, Dep. Tr. B. Huber, 30:3-8).

Defendant's suggestion that the Hoffman Inspection "materially altered" the Main House roof in 2014 is wrong and would not be a defense to Plaintiffs' claim for breach of the contract even if it had done so. The ridge seam inspected in 2014 was not the same ridge seam that opened during Hurricane Irma in 2017 (ECF No. 100, ¶ 50; ECF No. 101, ¶ 53; ECF No. 101-15.) And even if it were the same ridge seam, this is not a tort case and "causation" of the damage resulting from Daybreak's breach of contract is not an issue. Plaintiffs are entitled to a roof on their Main

House with the wind protection for which they bargained and paid—cleats securing the copper roof to the substrate at 9.5 inch intervals, including along each hip ridge.

Likewise, whether the roof Defendant agreed to provide was designed to withstand any particular windspeed is irrelevant to the breach of contract claim. Similarly, Sanders' expertise in windspeed resistance and the wind resistance provided by the cleats is irrelevant. This is not a negligent design or construction case. Plaintiffs seek the benefit of their bargain with Defendant, which required Defendant to install the Main House roof in accordance with the contractual specifications agreed to by the Parties. Because Defendant failed to do so, Plaintiffs are entitled to the cost of a new roof at their contracted-for specifications.

**CONCLUSION**

Plaintiffs respectfully request that this Court, upon consideration of Plaintiffs' objection to the Report and Recommendation of the Magistrate, deny Defendant's Motion for Summary Judgment.

Dated : October 23, 2026

**LAW OFFICES OF FRIEDBERG & BUNGE**

By: *<u>/s/ THOMAS F. FRIEDBERG, ESQ.</u>*

THOMAS F. FRIEDBERG, ESQ.(VI#1006)
SARAH L. BUNGE

**THE LAW OFFICES OF FRIEDBERG & BUNGE**
1005 ROSECRANS STREET, SUITE 202
PO BOX 6814
SAN DIEGO, CALIFORNIA 92166
TEL : (619)557-0101
FAX : (619)557-0560
E-mail :tom@lawofficefb.com"

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of October 2026, a true and correct copy of **PLAINTIFFS' OBJECTION TO MAGISTRATE REPORT AND RECOMMENDATION TO DENY PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** was filed with the CM/ECF system which will provide notice to the following:

Jeffrey C. Cosby, Esq.
Florida Bar No. 967981
Service to: eservice@wlclaw.com
Attorney for Defendant Daybreak Inc
**Williams, Leininger & Cosby, P.A.**
301 SE Ocean Blvd., Suite 205
Stuart, FL 34994
Telephone: 772-463-8402
Facsimile: 772-463-4820

Andrew C. Simpson
**ANDREW C. SIMPSON, PC**
2191 Church St., Ste. 5
Christiansted, VI 00820
TEL : 340.719.3900
E-MAIL :asimpson@coralbrief.com

**Brian A. Glasser**
1550 Thomas Jefferson Street, NW Suite 540
Washington, DC 20007
202-463-2101
Email: bglasser@baileyglasser.com

**David L. Selby**
3000 Riverchase Galleria, Suite 905
Birmingham, AL 35244
205-835-9906
Email: dselby@baileyglasser.com

*/s/ THOMAS F. FRIEDBERG*

**THOMAS F. FRIEDBERG**