**IN THE UNITED STATES DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. THOMAS AND ST. JOHN**

| | | |
|---|---|---|
| THOMAS F. FRIEDBERG &<br>SARAH L. BUNGE, | ) | |
| Plaintiffs, | ) | Case No. 3:19-cv-0053-ER-EAH |
| v. | ) | |
| DAYBREAK, INC. d/b/a HUBER &<br>ASSOCIATES, | ) | |
| Defendant. | ) | |

**PLAINTIFFS' OBJECTION TO MAGISTRATE REPORT AND RECOMMENDATION TO DENY PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

## INTRODUCTION

This Court should grant summary judgment in favor of Plaintiffs because there is no genuine dispute as to any material fact in this action as to Defendant's breach of contract and the damages as a result thereof. The Magistrate's Report and Recommendation found that there was an ambiguity in the plain language of the industry standards which Defendant inserted into their contract regarding the necessity of installing cleats at the hip/ridge intersections. But the plain language of those standards is clear, and there is no ambiguity that cleats were required to be installed at the hip/ridge intersections of the Main House roof.

Following Hurricane Irma in September 2017, the hip/ridge intersections of the Main House roof failed. Inspection of the roof in early 2018 revealed that the area of the failure was due to the lack of ***any*** cleats to secure the hip/ridge intersections to the roof substrate. Defendant has subsequently admitted that it did not install cleats to secure any of the Main Roof's hip/ridge intersections despite its contractual obligation to do so, leaving no genuine dispute as to any question of material fact in this action.

While the Magistrate's Report and Recommendation credits Defendant's testimony regarding its ***belief*** that the industry standards it incorporated into the contract did not apply to the installation of cleats at hip/ridge intersections, this testimony is irrelevant to the actual plain language of the standards incorporated into the contract between the Parties, which are clear and unambiguous. As a result, summary judgment should be granted in favor of Plaintiffs.

**FACTUAL BACKGROUND**

This case is a single cause of action for breach of contract between Plaintiffs and Defendant to manufacture and install a standing seam copper roof on Plaintiffs' home located at 168 Chocolate Hole, St. John, United States Virgin Islands. The home consists of 6 separate buildings. The only building at issue in this breach of contract claim is the Main House Pavilion ("Main House"). (*See* ECF No. 95-15, p. 1). The gravamen of the complaint is that Defendant failed to comply with the contractual requirement that it install cleats to secure the copper membrane to the roof substrate. (ECF No. 1, ¶¶ 7-10). Because Defendant did not install cleats to secure the seams of the copper pans where they intersect along the hip ridge lines of the octagonal Main House roof, the hip ridges were left susceptible to wind damage.

Plaintiffs discovered Defendant's failure to install these cleats when the roof's hip ridge seams were damaged by storm winds during Hurricane Irma, in September 2017, when the full length of one hip ridge seam opened to reveal the absence of the cleats that Plaintiffs believed they had bargained for. Since that discovery, Defendant has admitted that it did not install cleats on any of the hip ridges on the Main House roof. (ECF No. 101-17, Dep. Tr. M. Cady, 39:14-40:3; 44:6-8; ECF No. 101-18, Dep. Tr. M. Cady, 31:11-13; ECF No. 101-19, Dep. Tr. B. Huber, 30:3-8). Because the plain text of the contract between the parties required Defendant to install the Main House roof with cleats securing the roof to the substate at an average spacing of 9.5" (ECF No.

90-1) and Defendant admits it did not secure the hip ridges on the Main House roof with ***any*** cleats, (ECF No. 101-17, Dep. Tr. Micah Cady, 39:14-40:3; 44:6-8) there is no dispute as to any material fact in this action and summary judgment for Plaintiffs is proper.

The executed contract between the parties dated May 7, 2010 required Defendant to install a "16 oz. Red Copper standing seam roof system . . . [with] [c]leats installed at an average of 9.5" O.C. with 2 ring shank nails per cleat." (ECF No. 90-1, p. 2).

This contract was preceded by an earlier proposal from Defendant dated February 8, 2010 that Plaintiffs did not accept. That proposal would have required that the roof system be secured by cleats installed at 12-inch intervals rather than 9.5-inch intervals. (EFC No. 90-3, p.2). However, Plaintiffs bargained for the additional cleats specifically to protect against the risk of wind damage in a hurricane, and Defendant increased the project cost by $10,735 to account for the "smaller panels and cleat spacing" requested by Plaintiffs. (ECF No. 90-1, p.3).

In both the February 8, 2010 proposal and the May 7, 2010 contract executed by the parties, Defendant incorporated language requiring that the copper seam roof system be "installed in accordance with *Revere Copper & Common Sense* & *SMACNA*." (*Id.*). *Revere Copper & Common Sense* ("*Revere*") and *SMACNA* provide industry standards for the installation of copper standing seam roof systems like the one described in the contract. (*See* ECF No. 89-4, *Revere*; ECF No. 89-5, *SMACNA*). Both *Revere* and *SMACNA* require the installation of cleats at all standing seams, including hip ridges.

*Revere* addresses the issue in a section entitled "Hips and Ridges" which states that "[r]idges and hips shall be provided with standing seams ***constructed as specified for standing seams of main roof***." (ECF No. 89-4). *Revere* further states that "[r]egardless of the form of copper used, the method of forming panels and/or finishing seams, certain basic principles apply

to all standing seam installations." Those standard principles include the method for securing the seams of the copper panels and pans making up the copper membrane to the roof surface with cleats worked into the seams. *Revere* states:

> Standing seam roofing and wall cladding ***is secured to the structure by cleats worked into the seams.*** It is necessary that the cleats be attached to a material that has sufficient "holding power" to prevent fastener "pull-out" during high wind events.

(*Id.*). Thus, by *Revere's* terms, the standing seam at a hip or ridge must be "secured to the structure by cleats" just as any other standing seam would be secured.

The *SMACNA* standards also require that with both the pan and roll methods of construction, copper panels and pans must be installed with cleats inside the seams to attach the copper to the substrate, including at the roof's hips or ridges. Notably, the *SMACNA* even includes diagrams depicting the placement of cleats inside the seams where the panels or pans form the "hip or ridge" of the roof. (ECF No. 89-5).

Despite *Revere* and *SMACNA* both requiring the installation of cleats at the hip ridges, Defendant concedes that it failed to install cleats on the Main House hip-ridge seams. (ECF No. 101-17, Dep. Tr. Micah Cady, 39:14-40:3; 44:6-8). Defendant further concedes that a failure to install cleats as specified in the contract "would be in contravention of the May 2010 agreement" between the Parties. (ECF No. 91-1, Dep. Tr. Barry Huber, 20:16-21:3; 23:19-23). Accordingly, there is no genuine dispute as to any material fact, and Plaintiffs are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

## PROCEDURAL BACKGROUND

On March 20, 2026, this Court referred Plaintiffs' Motion for Summary Judgment (ECF No. 86) and Defendant's Motion for Summary Judgment (ECF No. 93) to Magistrate Judge Emile A. Henderson III for the issuance of proposed findings of fact and recommendations for

disposition. (ECF No. 143). On September 11, 2026, the Magistrate recommended that this Court deny Plaintiffs' Motion for Summary Judgment (ECF No. 150) as moot based on the Magistrate's recommendation that this Court grant Defendant's Motion for Summary Judgment. (*Id.*; *see also* ECF No. 149). In the alternative, the Magistrate recommended that this Court deny Plaintiff's Motion for Summary Judgment based on the existence of a genuine issue of material fact. (*Id.*). The Court granted Plaintiffs' Motion to Extend the Time to File Objections to the Magistrate's recommendations to October 23, 2026. (ECF No. 154).

Plaintiffs object to both recommendations pursuant to Fed. R. Civ. P. 72(b)(2) and respectfully requests that this Court reject the recommended dispositions, deny Defendant's Motion for Summary Judgment and grant Plaintiffs' Motion for Summary Judgment.

## LEGAL STANDARD

### A. Standard of Review.

Federal Rule of Civil Procedure 72(b)(3) provides that a district judge "must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." The district judge "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.*

### B. Summary Judgment.

Summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A factual dispute is genuine where the evidence would permit a reasonable factfinder to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the moving party meets its burden, the non-movant must "do more than simply show that there is some metaphysical doubt

as to material facts." *See In re Tutu Water Wells Contamination Litigation*, 42 V.I. 299, 306 (D.V.I. 1999), citing *Mitsubishi Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Summary judgment is appropriate where the opposing party's evidence is "merely colorable or is not significantly probative." *See In re Tutu*, 42 V.I. at 306-07.

## ARGUMENT[1]

### A. Summary Judgment for Plaintiffs is Proper Because There is No Genuine Dispute As To Material Fact Remaining In This Action.

There are no disputed factual issues for a jury to resolve. Defendant admits it did not install cleats to secure the copper membrane at the hip ridge seams as required by the parties' contract and the industry standards incorporated into it. (ECF No. 101-17, Dep. Tr. Micah Cady, 39:14-40:3; 44:6-8) Defendant even concedes that its failure to do so constitutes a breach of contract. (ECF No. 91-1, Dep. Tr. Barry Huber, 20:16-21:3; 23:19-23). Defendant has no valid defense for its breach, and Defendant failed to produce any evidence in response to Plaintiffs' damage claims and cost of repair estimate, instead arguing that tort principles of causation should bar Plaintiffs from recovering the benefit of the bargain in this breach-of-contract action. The Court should grant summary judgment in favor of Plaintiffs accordingly.

The May 7, 2010 contract between the parties required Defendant to install a "16 oz. Red Copper standing seam roof system . . . [with] [c]leats installed at an average of 9.5" O.C. with 3 ring shank nails per cleat." (ECF No. 90-1). This contract further required that the copper seam roof system be "installed in accordance with *Revere Copper & Common Sense* & *SMACNA*." (*Id.*).

[1] Plaintiffs incorporate by reference herein all arguments presented in their Motion for Summary Judgment (ECF No. 90) and Reply in Support of Plaintiffs' Motion for Summary Judgment (ECF No. 107).

As stated in *Revere*: "Regardless of the form of copper used, the method of forming panels and/or finishing seams, certain basic principles apply to all standing seam installations." Those standard principles include the method for securing the seams of the copper panels and pans making up the copper membrane to the roof surface with cleats worked into the seams. *Revere* states:

> Standing seam roofing and wall cladding ***is secured to the structure by cleats worked into the seams.*** It is necessary that the cleats be attached to a material that has sufficient "holding power" to prevent fastener "pull-out" during high wind events.

(ECF No. 89-4 (emphasis added)). Further, *Revere* includes a section entitled "Hips and Ridges" which states that "[r]idges and hips shall be provided with standing seams constructed ***as specified for standing seams of main roof***." (*Id.*). Accordingly, by *Revere's* terms, hip and ridge seams must be "secured to the structure by cleats worked into the seams" just as any other portion of a standing seam roof would be secured by cleats worked into the seams.

The SMACNA standards also require that with both the pan and the roll method of construction, copper panels and pans must be installed with cleats inside the seams to attach the copper to the substrate, including at the roof's hips or ridges. The SMACNA Manual includes diagrams depicting the placement of cleats inside the seams where the panels or pans form the "hip or ridge" of the roof. (ECF No. 89-5).

Defendant nevertheless contends that the hip-ridge intersections did not require cleats under the contract. As explained in the Magistrate's Report & Recommendation:

> Daybreak offers evidence supporting a different interpretation. Its project manager, Micah Cady, testified that Daybreak installed the 9.5-inch-spaced cleats along the body of the panels but did not install cleats at the hip-ridge junctures because, in his view, Revere did not require them and SMACNA presented such cleating as an optional construction method. Dkt. No. 91-4 at 25:20-29:1, 39:24-40:3, 44:6-8. Daybreak's roofing expert, Joseph Bragg, likewise distinguishes the field-panel attachment from hip-ridge construction. Although Bragg testified that SMACNA

> indicates cleats along the hip ridge, he testified that Revere does not require them there and opined that the contract's 9.5-inch spacing requirement applies to the vertical field-panel attachment rather than the hip-ridge configuration. Dkt. No. 91-8 at 113:2-10; Dkt. No. 105-9 at 11. Bragg further opines that the contract's 9.5-inch spacing requirement applies to the vertical field-panel attachment and that industry practice treats hip-ridge attachment as a separate configuration. Dkt. No. 105-9 at 11.

(ECF No. 150, p. 12). The extent of Defendant's evidence is therefore the opinion testimony of its employee and expert rejecting the plain text of the industry standards incorporated into the contract. This testimony does not survive even the slightest scrutiny.

First, Defendant's own expert, Joseph Bragg, conceded that the SMACNA requires cleats along the hip ridge while its non-expert employee, Micah Cady, opined that the SMACNA requirement was optional. But nowhere in the SMACNA text is it suggested that the cleat requirement diagrammed for the hip or ridge is optional.

Second, the plain language of *Revere* is not susceptible to Defendant's proposed interpretation. *Revere* includes a section entitled "Hips and Ridges" which states that "[r]idges and hips shall be . . . constructed as specified for standing seams of main roof." (ECF No. 89-4). In turn, *Revere* identifies "basic principles" that apply to "all standing seam installations," including the requirement that "standing seam roofing . . . is secured to the structure by cleats worked into the seams." (*Id.*). This cleat requirement therefore necessarily applies to hips and ridges, contrary to Defendant's proffered testimony that *Revere* treats vertical field-panel attachments differently than hip-ridge attachments. Furthermore, Defendant's expert's opinion that "industry practice" treats hip-ridge attachment as a separate configuration is irrelevant to the question of contract interpretation before the Court, which does not incorporate "industry practice" generally, but rather incorporates the specific standards set out in the plain text of *Revere* and *SMACNA*.

Finally, Defendant's expert, Joseph Bragg testified that the SMACNA required cleats along the hip ridge while contending that *Revere* did not. (EFC No. 89-8, 77:25-78:2, 113:2-10). While Bragg's view is contrary to *Revere's* plain text, when asked about the standard of care regarding the purportedly conflicting sources, Mr. Bragg conceded that SMACNA is "well-known exponentially versus [*Revere*]." (*Id.* at 113:20-25). Thus, by Defendant's expert's admission, the controlling authority, *SMACNA*, requires cleats at the hip/ridge intersections.

Here, the contract can be reasonably read only one way—to require hip ridges to be secured to the substrate by cleats.[2] Defendant's testimony that these unambiguous standards somehow do not mean what they say does not introduce ambiguity into the standards. Because the plain language of the standards is clear, and cleats were required at the hip/ridge intersections to secure

[2] Moreover, although the text of *Revere* and *SMACNA* are clear on their face and required Defendant to secure the Main House hip ridges with cleats, any ambiguity (for instance Defendant's contention that any ambiguity in the meaning of the *Revere* and *SMACNA* text incorporated into the contract) must be construed against Defendant, who incorporated those industry standards into the contract. The Magistrate Report and Recommendation acknowledged that the doctrine of *contra proferentem*, under which ambiguous contractual language is construed against the party that supplied it, is "the soundest rule for the Virgin Islands. *RLF Nazareth, LLC v. York RSG (International), Ltd*, 2023 WL 6377637, at *5 n.10 (D.V.I. Sept. 30, 2023). However, the Magistrate Report and Recommendation places undue weight on the fact that "Plaintiffs negotiated for additional cleats spaced at 9.5 inches." (ECF No. 150, p. 15). While this is true, it was Defendant that incorporated the *Revere* and *SMACNA* standards into the contract, which required the hip ridges on the Main House to be secured with cleats. Defendant concedes that it did not secure the hip ridges with any cleats whatsoever, making the spacing requirement Plaintiffs negotiated irrelevant. Thus, it is the *Revere* and *SMACNA* standards that control the issue, not the spacing requirement, and Defendant asserts only that there is ambiguity as to whether the language in *Revere* and *SMACNA* requiring hip ridge cleats was optional versus mandatory. While Plaintiffs maintain that the text of *Revere* and *SMACNA* are clear and provide no indication whatsoever that their guidance regarding hip ridge cleating is optional, to the extent Defendant has identified an ambiguity, it should be resolved against Defendant as a matter of law. *See Barco Urban Renewal Corp. v. Housing Authority of City of Atlantic City*, 674 F.2d 1001, 1010 (3rd Cir. 1982) ("In construing the provision we are guided by the precept that among reasonable meanings, the one which operates against the draftsman is to be preferred."). Just as the Magistrate Report and Recommendation recognizes was the case in *Barco*, here, the doctrine of *contra proferentem* provides "additional support for construing the provision against [Defendant]." (ECF No. 150, p. 15).

the roof to the substrate, this court may interpret the agreement between the Parties as a matter of law and grant summary judgment in Plaintiffs favor. *See Sunshine Shopping Ctr., Inc. v. Kmart Corp.*, 85 F. Supp. 2d 537, 540 (D.V.I. 2000); *see also In re Tutu*, 42 V.I. at 306-07 (summary judgement is appropriate where the opposing party's evidence is "merely colorable or is not significantly probative.").

**B. Plaintiffs' Damages are the Cost of Replacing the Main House Roof.**

The measure of damages for a breach of contract in the Virgin Islands was stated by the Court in *Hewitt v. Morton*, 1999 WL 35792711, (Terr. Ct. V.I. Apr. 14, 1999):

> Contract damages are ordinarily based on the injured party's expectation interest and are intended to give him the benefit of his bargain by awarding him a sum of money that will, to the extent possible, put him in as good a position as he would have been in had the contract been performed. Restatement (Second) of Contracts § 347, cmt.a; *See also Christmas v. Virgin Islands Water & Power Auth.*, 18 V.I. 624 (D.V.I 1981). For breach due to defective performance or due to abandonment of the contract, ***an injured party can get a judgment for damages measured by the reasonable cost of reconstruction and completion in accordance with the contract***, so long as this is possible and does not involve unreasonable economic waste. *See* 13 Am Jur 2d Building & Construction Contracts § 80 and 5 Corbin on Contracts § 1089 (1964)(emphasis supplied); *See also Sheldon v. Northeast Developers. Inc.*, 238 A.2d 775 (Vt. 1968) and *Cooper Concrete Co. v. Hendricks*, 386 S.W.2d 221 (Tex. Civ. App. 1965). The amount actually paid by the owner to another contractor for correction and completion in accordance with the contract is a measure of damages for the Defendant's breach. 5 Corbin on Contracts § 1089; *See also Dierickx v. Vulcan Industries*, 158 N.W.2d 778 (Mich. Ct. App. 1968).

(emphasis added).

Here, Plaintiff's expectation was that Defendant would comply with the contract requirements, including the *Revere* and *SMACNA* standards requiring cleats along the hip ridges of the Main Roof. Instead, Defendant delivered a roof with no cleats securing any portion of the hip ridges on the Main Roof. Defendant's breach, which Defendant concedes occurred, left the Main House roof vulnerable to exactly the type of wind damage the bargained-for cleats were intended to protect against. As established by *Hewitt*, the appropriate damages for Defendant's

defective performance of the contract is "a judgment for damages measured by the reasonable cost of reconstruction and completion in accordance with the contract[.]" That is, the measure of damages for Defendant's breach is the cost Plaintiffs must incur to replace the Main House roof in accordance with the bargained-for specifications. Plaintiff's experts have identified the cost to replace the Main House roof as $666,964 in 2025 dollars, and $719,792 at the time of trial in 2026. (ECF No. 92, Decl. of Plaintiffs' Expert Laura Fuchs, ¶ 7; ECF No. 92-2, Laura Fuchs Rule 26 Expert Report.)

Defendant has not produced any evidence to dispute that damages amount. (ECF No. 91-8, Dep. Tr. J. Bragg, 86:4-7). Instead, Defendant appealed to principles of tort law in support of their argument that Plaintiffs should be denied the benefit of the bargain between the Parties. But this is not a tort claim and Plaintiffs need not prove that Defendant's failure to install cleats along the hip/ridge intersections of the Main House roof was the proximate cause of the damage to the roof during Hurricane Irma. Whether the roof was designed to withstand Hurricane Irma's winds is irrelevant to the issue of Defendant's breach of the contractual requirement to install cleats at the hip/ridge intersections of the Main House Roof. Plaintiffs are entitled to the roof they paid for regardless of the impact of Hurricane Irma or any future storm. Defendant's intervening cause and alteration arguments are similarly without merit because they are not defenses to Defendant's breach of contract and causation of the damages to the Main House roof is not at issue. (*See* ECF No. 107, pp. 9-10). For purposes of damages for breach of contract, damages for breach of contract are recoverable so long as the damages were foreseeable at the time the parties entered the contract. Here, it was entirely foreseeable to Defendant that it would be required to replace the Main House roof to properly secure it with cleats, as bargained for by the Parties, when Defendant entered the contract in 2010.

Plaintiffs are not obligated to pay twice for the roof they bargained for with Defendant, and the fact that Hurricane Irma revealed Defendant's breach of contract is immaterial to Defendant's obligation to provide Plaintiffs with the benefit of the bargain between the Parties.

**CONCLUSION**

Plaintiffs respectfully request that this Court, upon consideration of Plaintiffs' objections to the Reports and Recommendation of the Magistrate, deny Defendant's Motion for Summary Judgment and grant Plaintiffs' Motion for Summary Judgment.

Dated : October 23, 2026

**LAW OFFICES OF FRIEDBERG & BUNGE**

By: */s/ THOMAS F. FRIEDBERG, ESQ.*

THOMAS F. FRIEDBERG, ESQ.(VI#1006)
SARAH L. BUNGE

**THE LAW OFFICES OF FRIEDBERG & BUNGE**
1005 ROSECRANS STREET, SUITE 202
PO BOX 6814
SAN DIEGO, CALIFORNIA 92166
TEL : (619)557-0101
FAX : (619)557-0560
E-mail :tom@lawofficefb.com"

*Attorneys for Plaintiffs*

# CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of October 2026, a true and correct copy of **PLAINTIFFS' OBJECTION TO MAGISTRATE REPORT AND RECOMMENDATION TO DENY PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** was filed with the CM/ECF system which will provide notice to the following:

Jeffrey C. Cosby, Esq.
Florida Bar No. 967981
Service to: eservice@wlclaw.com
Attorney for Defendant Daybreak Inc
**Williams, Leininger & Cosby, P.A.**
301 SE Ocean Blvd., Suite 205
Stuart, FL 34994
Telephone: 772-463-8402
Facsimile: 772-463-4820

Andrew C. Simpson
**ANDREW C. SIMPSON, PC**
2191 Church St., Ste. 5
Christiansted, VI 00820
TEL : 340.719.3900
E-MAIL :asimpson@coralbrief.com

**Brian A. Glasser**
1550 Thomas Jefferson Street, NW Suite 540
Washington, DC 20007
202-463-2101
Email: bglasser@baileyglasser.com

**David L. Selby**
3000 Riverchase Galleria, Suite 905
Birmingham, AL 35244
205-835-9906
Email: dselby@baileyglasser.com

*/s/ THOMAS F. FRIEDBERG*

**THOMAS F. FRIEDBERG**