**IN THE UNITED STATES DISTRICT COURT OF THE VIRGIN ISLANDS**

**DIVISION OF ST. THOMAS AND ST. JOHN**

| | |
|---|---|
| THOMAS F. FRIEDBERG & SARAH L. BUNGE,<br><br>Plaintiffs,<br><br>v.<br><br>DAYBREAK, INC. dba HUBER & ASSOCIATES,<br><br>Defendant. | **CIVIL ACTION NO. 3:19-cv-0053** |

**DEFENDANT'S RESPONSE TO PLAINTIFFS' OBJECTION TO MAGISTRATE REPORT AND RECOMMENDATION TO GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant Daybreak, Inc., dba Huber & Associates ("Daybreak"), responds under Fed. R. Civ. P. 72(b)(2) to Plaintiffs' Objection (ECF No. 155) (the "Objection") to Magistrate Judge Henderson's Report and Recommendation (ECF No. 149) (the "R&R"), and states:

## INTRODUCTION

Plaintiffs ("Friedberg") sued for breach of contract regarding the main pavilion roof on their Virgin Islands property. ECF No. 1. This is not the first case between these parties. Daybreak previously sued Friedberg in the Superior Court for sums owed for the roof. ECF No. 95-3. Friedberg counterclaimed, alleging construction defects. ECF No. 95-4. That litigation lasted over a decade. ECF No. 95-16. Friedberg claims that the Superior Court excluded the *claim* for the main pavilion roof, but it did not. Without dismissing any *claims*, the Superior Court limited Friedberg's *damages* to $210,000 because that was the amount he had disclosed in discovery. ECF No. 101-7. As Daybreak has argued from the outset, "this matter was filed solely as a form of forum shopping

to get a second bite at the apple concerning identical litigation currently proceeding since December 2010 in the Superior Court of the Virgin Islands." ECF No. 12 at 1.

Magistrate Judge Henderson agreed, recommending summary judgment for Daybreak on claim preclusion. The Superior Court's dismissal with prejudice is a valid, final judgment on the merits; the parties are the same; and this action arises from the same transaction as Friedberg's Counterclaim. ECF No. 149 at 13–19. The record supporting that conclusion is Friedberg's own. In the Superior Court, he answered Daybreak's interrogatories about his claimed defects and damages by adopting the November 2014 report of his expert, Arthur Sanders. *Id.* at 15. That report stated that the intersections of the roof pans at the ridges and hips "were not secured in the joint with cleats as is standard practice," identified "[l]ock seams not installed at ridges and hips" on the Main House, and recommended replacing the Main House roof at a probable cost of $358,771. *Id.* at 15–16 (quoting ECF No. 95-5 at 45, 47). Friedberg asks this Court for the same thing: replacement of the Main House roof because Daybreak did not install cleats at the hip ridges in 2010.

The Objection does not show error. Its central premise—that Friedberg could not have known before Hurricane Irma that the Main House hip ridges lacked cleats—is contradicted by the Sanders report, by Sanders's 2015 testimony, and by Friedberg's own summary judgment brief. Its legal premise—that a hurricane that exposed a 2010 installation defect is a new "event" giving rise to a new claim—confuses learning more about a breach with a new breach. And much of the Objection violates LRCi 72.3: it incorporates Friedberg's summary judgment opposition wholesale, argues grounds the R&R did not decide, and raises theories Friedberg never presented to Judge Henderson. The Court should overrule the Objection and adopt the R&R.

## BACKGROUND

The R&R sets out the background, ECF No. 149 at 1–7, and Daybreak relies on it. A few points bear directly on the Objection:

*The Counterclaim.* Daybreak sued Friedberg in the Superior Court in December 2010. ECF No. 149 at 3–4. Friedberg counterclaimed for breach of contract, breach of warranty, negligence, and fraud, alleging that Daybreak failed to complete portions of the roofing work, used "improper roof installation techniques," and failed to install the roofs in accordance with Revere, SMACNA, and applicable industry standards. *Id.* at 4, 14–15 (citing ECF No. 95-4 ¶¶ 12, 16–18).

*The Sanders report and testimony.* In 2014, Friedberg retained Sanders to inspect the roofs for the Superior Court case, and portions of the Main House roof were opened. *Id.* at 4. Sanders's November 2014 report stated that the intersections of the roof pans at the ridges and hips were not secured with cleats, identified "[l]ock seams not installed at ridges and hips" on the Main House, and recommended replacing the Main House roof. *Id.* at 4–5, 15–16 (citing ECF No. 95-5 at 20–21, 45–47). At his March 6, 2015 deposition, Sanders testified that the location opened was on the Main Pavilion, that no cleats secured the intersecting pans to the substrate at that ridge location, and that cleats should have been installed at the ridges, as both Revere and SMACNA showed [according to Sanders]. *Id.* at 5 (citing ECF No. 116-1 at 15:1–17, 16:7–16). The parties dispute how much of the hip-ridge seam Sanders opened and what his inspection established about the rest of the roof, *id.* at 4, but not what he reported. Friedberg's own brief acknowledged that "Sanders reported that he did not observe cleats or expansion clips in the 2-foot section of hip ridge seam he opened." ECF No. 98 at 9; *see id.* at 20.

*The interrogatory answers.* In December 2014, Friedberg supplemented his interrogatory answers. Asked to describe the specific allegations supporting his contention that Daybreak's work was defective, he answered: "Yes. See Rule 26 report of Arthur Sanders that was previously

provided." ECF No. 149 at 5, 15 (quoting ECF No. 95-8 at 4). Asked to identify his damages, he identified the "[c]ost of repair as set forth in Rule 26 Expert Report of Arthur Sanders." *Id.* (quoting ECF No. 95-8 at 5).

*The 2017 Order.* In an order entered May 2, 2017 (the "2017 Order"), the Superior Court granted Daybreak's alternative request to limit Friedberg's damages to $210,000 and reserved Daybreak's motion in limine directed to Sanders's testimony. *Id.* at 5, 17–18 (citing ECF No. 101-7 at 3; ECF No. 112-4 at 3–4). The Order did *not* state that any Main House claim was dismissed or removed from the Counterclaim. *Id.* at 5–6, 18. The Superior Court later described its ruling as limiting Friedberg's damages after he declined alternatives that would have permitted Daybreak to reinspect. *Id.* at 6 (citing ECF No. 112-5 at 5–8). Friedberg moved to certify the ruling for interlocutory appeal. ECF No. 112-6 at 2–3. Even the $210,000 estimate by Friedberg's damages consultant, Paradigm, (to which damages were limited) included work on the Main House roof. ECF No. 149 at 17–18; ECF No. 155 at 2–3 n.1.

*This action.* Friedberg filed this action in July 2019, while the Superior Court case was pending. ECF No. 1. The Complaint alleges that Daybreak breached the 2010 contract by failing to install cleats where the Main House roof panels intersect and that Hurricane Irma later exposed the omission. ECF No. 149 at 6–7, 16 (citing ECF No. 1 ¶¶ 9–13).

*The dismissal and Settlement Agreement.* The Superior Court dismissed its case with prejudice on February 23, 2024, after the parties gave notice of settlement. *Id.* at 7, 13. The June 12, 2024 Settlement Agreement releases known and unknown claims arising from or related to the claims asserted in the Superior Court case. *Id.* at 7 (citing ECF No. 101-21 at 2–5). It states repeatedly:

> The settlement of the above-entitled Superior Court Lawsuit does not extinguish the claims in the District Court case number 3:19-cv-

> 0053 to the extent that District Court case does not encompass claims that were asserted in the above-entitled Superior Court case.

*Id.* (quoting ECF No. 101-21 at 2, 4–6).

The R&R issued on September 11, 2026; the Objection was filed on October 23, 2026.

## STANDARD OF REVIEW

### A. Review of the R&R

A district judge "must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *see* 28 U.S.C. § 636(b)(1)(C). A proper objection must "specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis of such objection." LRCi 72.3; *see* ECF No. 149 at 20.

Only timely and specific objections obtain *de novo* review. *Goney v. Clark*, 749 F.2d 5, 6 (3d Cir. 1984) (explaining that "[t]o obtain *de novo* determination of a magistrate's findings by a district court, 28 U.S.C. § 636(b)(1) requires both timely and specific objections to the report"). An objection is general "when it does not identify specific findings in the report and recommendation that it opposes," and "[a] general objection to the entirety of the magistrate's report has the same effects as would a failure to object." *Carty v. Testamark*, No. CV 2023-0015, 2024 WL 3835583, at *4 (D.V.I. Aug. 15, 2024) (cleaned up); *see also Palmer v. Apfel*, 995 F. Supp. 549, 552 n.4 (E.D. Pa. 1998) (stating that "[g]eneral or blanket objections do not comply with Rule 72(b) and need not be addressed by the district court"). A finding to which no objection is made stands unopposed. *See id.* at 554 n.7 (concluding that the unobjected finding "remains unopposed").

This Court reviews "any portion of a report and recommendation not objected to under the 'plain error' standard of review." *Carty*, 2024 WL 3835583, at *3; *accord Sussman v. PCGNY*

*Corp.*, No. CV 2013-0125, 2020 WL 7706515, at *5 n.7 (D.V.I. Dec. 28, 2020). The Third Circuit applies the same standard when a party fails to object to a report and recommendation on summary judgment, *Brightwell v. Lehman*, 637 F.3d 187, 193 (3d Cir. 2011); *EEOC v. City of Long Branch*, 866 F.3d 93, 100 (3d Cir. 2017), and when a party's objections are too general to trigger *de novo* review, *Han Tak Lee v. Houtzdale SCI*, 798 F.3d 159, 165–66 (3d Cir. 2015).[1]

Plain error, not clear error, is the right standard. Clear error governs findings of fact. *See City of Long Branch*, 866 F.3d at 99 (explaining that review of a magistrate judge's nondispositive order "requires the District Court to review findings of fact for clear error and to review matters of law *de novo*"). Plain error governs errors a party failed to preserve: failing to timely object "results in forfeiture, which permits plain error review." *Nara v. Frank*, 488 F.3d 187, 196 (3d Cir. 2007). "[W]here there was forfeiture, we apply a plain error analysis; where there was waiver, we do not." *Gov't of V.I. v. Rosa*, 399 F.3d 283, 290–91 (3d Cir. 2005) (cleaned up). A party that does not object to a portion of a report and recommendation, or objects only generally, has not preserved its challenge, and plain-error review follows.

Under plain-error review, the objecting party must show "an error or defect"; that the error is "clear or obvious, rather than subject to reasonable dispute"; and that it affected substantial rights, which "in the ordinary case means he must demonstrate that it 'affected the outcome of the district court proceedings.'" *Puckett v. United States*, 556 U.S. 129, 135 (2009) (discussing *United States v. Olano*, 507 U.S. 725 (1993)). Even then, the court "has the discretion to remedy the error—discretion which ought to be exercised only if the error seriously affects the fairness,

---

[1] Some district courts in this Circuit describe this review as review for "clear error on the face of the record," drawing on the 1983 Advisory Committee Note to Rule 72(b), *e.g.*, *Belnick, Inc. v. TBB Glob. Logistics, Inc.*, 106 F. Supp. 3d 551, 553 n.1 (M.D. Pa. 2015); others pair the Note with a "plain error or manifest injustice" formulation, *e.g.*, *Stankowski v. Farley*, 487 F. Supp. 2d 543, 549 (M.D. Pa. 2007). The result is the same under any formulation.

integrity or public reputation of judicial proceedings." *Id.* (cleaned up). "Meeting all four prongs is difficult, as it should be." *Id.* (cleaned up). In civil cases, plain-error review "should be exercised sparingly" and "should only be invoked with extreme caution in the civil context." *Franklin Prescriptions, Inc. v. N.Y. Times Co.*, 424 F.3d 336, 341 (3d Cir. 2005) (cleaned up).

Nor may a party use its objections to present arguments that it did not make to the magistrate judge. The Third Circuit has stated the rule: "[a]rguments not presented to a magistrate judge and raised for the first time in objections to the magistrate's recommendations are deemed waived." *In re Nat'l Collegiate Student Loan Trusts 2003-1*, 971 F.3d 433, 444 (3d Cir. 2020) (stating the rule but concluding that the argument there had been presented to the magistrate judge and was not waived); *accord Sussman*, 2020 WL 7706515, at *10; *United States v. Payne*, Crim. No. 2022-0013, 2023 WL 4421154, at *7 (D.V.I. July 10, 2023) (finding that the government "has forfeited the harmless error argument, and these arguments are therefore deemed waived"). Courts within the circuit follow the majority rule.[2] *See, e.g.*, *Masimo Corp. v. Philips Elec. N. Am. Corp.*, 62 F. Supp. 3d 368, 377 (D. Del. 2014) (explaining that, "with limited (if any) exception, parties objecting to a Magistrate Judge's report or order are required to adhere to the arguments, evidence, and issues they presented first to the Magistrate Judge").

### B. Summary Judgment on Claim Preclusion

Summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

[2] *See*, *e.g.*, *Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996) ("[i]ssues raised for the first time in objections to the magistrate judge's recommendation are deemed waived"). Of the circuits that have reached the issue, only the Fourth Circuit disagrees. *See Samples v. Ballard*, 860 F.3d 266, 273 n.7 (4th Cir. 2017) (acknowledging that "[o]ur approach in *George* is a minority position, and one that has been criticized and rejected by our sister circuits") (discussing *United States v. George*, 971 F.2d 1113, 1118 (4th Cir. 1992)).

Civ. P. 56(a). Daybreak bears the burden on its claim-preclusion defense and must show that no reasonable factfinder could find for Friedberg on any element. ECF No. 149 at 8 (citing *In re Bressman*, 327 F.3d 229, 238 (3d Cir. 2003)). But "[w]hether claim preclusion applies is a question of law." *Id.* at 12; *see Stewart v. V.I. Bd. of Land Use Appeals*, 66 V.I. 522, 530 (V.I. 2017) (explaining that "[w]e review de novo the Superior Court's dismissal of a case" and citing *Hara v. Reichert*, 843 N.W.2d 812, 815 (Neb. 2014) ("The applicability of claim and issue preclusion is a question of law.")). The facts on which Judge Henderson relied—the Counterclaim, the Sanders report, the interrogatory answers, the Superior Court's orders, the dismissal, and the Settlement Agreement—are documents whose contents are undisputed. The parties dispute their legal effect, which is a question for the Court.

## ARGUMENT

### I. Only the Objection to the Transactional Analysis Is Entitled to *De Novo* Review.

The Objection properly objects to the R&R's analysis of the third element: whether this action arises from the same transaction or occurrence as Friedberg's Counterclaim. ECF No. 149 at 14–19. It quotes Judge Henderson's conclusion that Friedberg identified no new post-filing act or omission by Daybreak, ECF No. 155 at 9; challenges his reliance on the Sanders report and his statement that the cleat issue "was already litigated in the Superior Court case," *id.* at 11–13; disputes his reading of the 2017 Order, *id.* at 13–14; and argues that the Settlement Agreement reflects the parties' expectation that this action would survive, *id.* at 14–16. Daybreak addresses those objections in Section II. The rest of the Objection does not satisfy LRCi 72.3.

*First*, the Objection incorporates Friedberg's summary judgment opposition wholesale. ECF No. 155 at 6 n.6 ("Plaintiffs incorporate by reference herein all arguments presented in their Opposition to Defendant's Motion for Summary Judgment (ECF No. 98)"). A blanket

incorporation identifies no portion of the R&R and states no basis for objecting to it. It is a general objection and does not obtain *de novo* review. *See Carty*, 2024 WL 3835583, at *4; *Goney*, 749 F.2d at 6; *Masimo*, 62 F. Supp. 3d at 376 (explaining that "[u]nderlying briefs cannot be 'incorporated by reference' as a way of avoiding the page limits on objections to a Magistrate Judge's orders and reports"). The Court should disregard it.

*Second*, the Objection does not challenge several rulings on which the recommendation rests. It does not challenge the findings that the Superior Court's dismissal is a valid, final judgment on the merits and that the parties are the same. ECF No. 149 at 13–14. Friedberg could hardly do so; he told Judge Henderson that "[a] final and valid judgment was entered in the Superior Court Action based on a settlement of the Counterclaim as limited by the Superior Court Order." ECF No. 98 at 18. It does not challenge the ruling that Judge Henderson would "only consider the certified March 6, 2015 deposition transcript filed at Dkt. No. 116-1 and will not rely on the uncertified draft filed at Dkt. No. 95-6." ECF No. 149 at 11. And it does not dispute the finding that, "through their supplemental interrogatory responses in the Superior Court action, Plaintiffs expressly relied on Sanders's report to identify the defective work and repair damages they advanced through their Counterclaim." *Id.* at 15. The Objection disputes what the report says, but not that Friedberg adopted it. These unobjected rulings are reviewed only for plain error, *see Carty*, 2024 WL 3835583, at *3, and Friedberg does not attempt to show any.[3]

---

[3] The Objection nonetheless quotes Sanders's 2015 testimony from the uncertified draft, ECF No. 155 at 13 (citing ECF No. 95-6), which Friedberg objected to as inadmissible, ECF No. 102, and on which Judge Henderson declined to rely, ECF No. 149 at 11. It also misreads that testimony. The passage it quotes concerns the field seam on the west side of the roof: "So we did not do further destruction to understand whether or not the cleats were properly secured to the wood below and there's nothing that really led me to believe that they weren't secured well." ECF No. 116-1 at 16:2–6; *see id.* at 15:19–25. Just before, Sanders testified that "in the intersection of the pans at the ridges, we found no cleats securing those to the -- to the substrate below." *Id.* at 15:8–11.

*Third*, Part A.3 of the Objection, which argues that Daybreak's causation, intervening-cause, alteration, and mitigation arguments lack merit, ECF No. 155 at 17–20, objects to nothing in the R&R. Judge Henderson did not reach those arguments, or Daybreak's settlement-release argument. ECF No. 149 at 19. Friedberg acknowledges as much. ECF No. 155 at 5 n.4, 17. Part A.3 is therefore not an objection under LRCi 72.3. Daybreak addresses it in Section III only to preserve its position.

*Fourth*, the Objection advances theories Friedberg never presented to Judge Henderson. Friedberg argued below that the 2017 Order removed the Main House roof from the Superior Court case, that Daybreak was collaterally estopped to argue otherwise, and that the Settlement Agreement's carve-out therefore preserved this action. ECF No. 98 at 4–5, 16–19. He did not argue that claim preclusion yields to newly discovered evidence, ECF No. 155 at 10, or that Daybreak agreed to or acquiesced in splitting his claim under RESTATEMENT (SECOND) OF JUDGMENTS § 26(1)(a), *id.* at 15–16. Those theories are waived. *See Payne*, 2023 WL 4421154, at *7; *In re Nat'l Collegiate*, 971 F.3d at 444. Friedberg's argument that Hurricane Irma is a post-filing "event" under *Stewart*, ECF No. 155 at 6–10, is also new—his opposition did not cite *Stewart*—but the R&R addressed *Stewart*'s rule on post-filing events, ECF No. 149 at 16, and Daybreak does not argue waiver as to it, but answers it in Section II.A. Friedberg no longer presses his collateral-estoppel argument.

*De novo* review is therefore limited to the R&R's transactional analysis, ECF No. 149 at 14–19. The rest is reviewed only for plain error, and Friedberg does not attempt to show any.

## II. Judge Henderson Correctly Concluded That Friedberg's Claim Arises from the Same Transaction as His Superior Court Counterclaim.

The Supreme Court of the Virgin Islands applies the transactional test, which considers the "aggregate of connected operative facts" and asks whether those facts are related in time, space,

origin, or motivation, whether they form a convenient trial unit, and whether treating them as a unit conforms to the parties' expectations. ECF No. 149 at 12 (citing *Stewart*, 66 V.I. at 540–43). "A prior judgment may bar a later action arising from the same aggregate of operative facts even when the later action relies on a different legal theory, seeks different relief, or involves different evidence." *Id.* at 12–13. And "the fact that a later action includes previously unalleged facts or additional evidence concerning preexisting conduct does not, by itself, avoid preclusion when the later claim arises from the same aggregate of connected operative facts." *Id.* at 13 (citing *Stewart*, 66 V.I. at 542–43; *Elkadrawy v. Vanguard Grp., Inc.*, 584 F.3d 169, 173–74 (3d Cir. 2009)). Friedberg does not dispute these principles; he quotes the same test. ECF No. 155 at 7. His objections fail under it.

**A. Hurricane Irma did not give rise to a new claim.**

Friedberg's lead argument is that Hurricane Irma, which postdates his Counterclaim, "revealed Defendant's failure to install cleats that otherwise would have remained concealed and undiscoverable indefinitely, leaving Plaintiffs unaware of the existence of a claim." ECF No. 155 at 9. He relies on *Stewart*'s statement, as he quotes it, that "res judicata does not apply to claims arising from events occurring after the filing of the prior complaint." *Id.* at 6, 9 (quoting *Stewart*, 66 V.I. at 545). That rule concerns claims *arising from* later events, and *Stewart* applied it to later conduct. The appellants there argued that their surviving allegation could not be barred "because the facts on which it is based arose after their complaint in Thomas was filed." *Stewart*, 66 V.I. at 544. The allegation was that the permit holder had failed to begin construction on time, and "[a]ppellants filed their complaint in Thomas on April 24, 2009, nearly two weeks before St. Mark's Church was obligated under its permit to begin construction." *Id.* at 546.

Friedberg's claim does not arise from Irma. The Complaint alleges that Daybreak breached the contract when it installed the roof in 2010 and that Irma later exposed the deficiency. ECF No. 149 at 16. Friedberg disclaims any damages caused during Irma: "Plaintiffs do not seek to recover damages caused by Defendant's faulty work or a failure of the roof during the high winds that hit St. John during Hurricane Irma." ECF No. 155 at 18. Every operative fact of the claim—the contract, the installation, and the absence of cleats at the hip ridges—existed in 2010. As Judge Henderson put it: "Although the post-Irma inspections and later testimony allegedly revealed that the deficiency was more extensive than Plaintiffs previously understood, the conduct alleged to constitute Daybreak's breach remains its 2010 installation work." ECF No. 149 at 16–17.

Friedberg responds that "'events' must be defined sufficiently broadly to encompass any event that reveals a necessary element of a cause of action." ECF No. 155 at 9. He cites no authority for that formulation. It converts the rule against relitigating a claim into a discovery rule, under which every new piece of evidence about an old breach starts a new claim. That is the opposite of the rule that additional evidence concerning preexisting conduct "does not, by itself, avoid preclusion when the later claim arises from the same aggregate of connected operative facts." ECF No. 149 at 13. Nor does *Lucky Brand* help him. The later events there were the defendant's own later conduct: "the complained-of conduct in the 2011 Action occurred after the conclusion of the 2005 Action." *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 590 U.S. 405, 414 (2020). Such events matter because "[e]vents that occur after the plaintiff files suit often give rise to new material operative facts that in themselves, or taken in conjunction with the antecedent facts, create a new claim to relief." *Id.* at 415 (cleaned up).

A hurricane that exposed a 2010 omission changed no operative fact of a claim that Daybreak breached the contract in 2010. Friedberg's theory also has no stopping point. He says

the "full scope" of the breach was not discovered until Daybreak's witnesses testified in April 2025. ECF No. 155 at 10. On his reasoning, that testimony would be a further "event," arising after he filed this action.

The argument also rests on a factual premise the record does not support. Friedberg asserts that "neither of the inspections conducted by Plaintiffs in the Superior Court action revealed missing cleats in the Main Roof hip ridges." ECF No. 155 at 10. But Sanders reported in 2014 that the intersections of the roof pans at the ridges and hips were not secured with cleats, and testified in 2015 that no cleats secured the intersecting pans at the Main Pavilion ridge location he opened. ECF No. 149 at 5, 15. Friedberg told Judge Henderson the same thing. ECF No. 98 at 9. What Irma revealed, on Friedberg's own account, was that the absence of cleats extended beyond the section Sanders opened. The Objection quotes the R&R's summary of his argument that Irma, later inspections, and later testimony "revealed a broader absence of cleats along the Main House ridge-and-hip seams." ECF No. 155 at 12 n.10 (quoting ECF No. 149 at 16). A "broader absence" of the same cleats, in the same 2010 work, is additional evidence concerning preexisting conduct, not a new claim.

For the same reason, Friedberg's new theory that claim preclusion does not bar claims based on evidence that "could not have been discovered with due diligence," ECF No. 155 at 10, fails even if not waived. *Haefner*, on which he relies, affirmed a judgment of preclusion, stating that "[c]laim preclusion, however, applies even where new claims are based on newly discovered evidence, unless the evidence was either fraudulently concealed or it could not have been discovered with due diligence." *Haefner v. N. Cornwall Twp.*, 40 F. App'x 656, 658 (3d Cir. 2002) (per curiam). The Supreme Court of the Virgin Islands applies the same diligence standard. *Stewart*, 66 V.I. at 544 (holding that an allegation, "although not raised in Thomas, is also barred

because it could have been raised within appellants' earlier petition for writ of review had they exercised due diligence"). Friedberg does not claim fraudulent concealment, and the evidence was discovered. Sanders found no cleats where he opened the hip ridge, reported it, and opined that cleats were required. ECF No. 149 at 5, 15. Friedberg adopted that report as the statement of his claimed defects and damages. *Id.* at 15. And when Daybreak sought to reinspect, Friedberg rejected every alternative the Superior Court offered, including reinspection limited to his own expert. ECF No. 112-5 at 4 (noting that Friedberg "again refused to agree to any form of access for Plaintiff"). Nor are there "reasonable doubts" to resolve against preclusion. ECF No. 155 at 7, 11. *Smith* made that observation on a Rule 12(b)(6) motion and denied preclusion on the party-or-privity element. *Smith v. Ostrander*, No. 3:21-cv-0010, 2023 WL 2665760, at *3 (D.V.I. Mar. 28, 2023) (stating that "reasonable doubts about the application of these preclusion doctrines should be resolved against their use"); *id.* at *4. There is no comparable doubt when the claimant's own interrogatory answers placed the defect and the remedy before the Superior Court.

### B. Friedberg asserted the Main House cleat defect in the Superior Court case.

Friedberg next attacks the R&R's statement that whether Daybreak failed to install cleats at the Main House hip ridges "was already litigated in the Superior Court case." ECF No. 155 at 11, 13. He quotes the preceding sentence—that "[t]he Counterclaim did not specifically allege that Daybreak failed to install cleats at the Main House ridge-and-hip intersections"—as if it were the R&R's conclusion. *Id.* at 8. It was not. The two sentences read together:

> The Counterclaim did not specifically allege that Daybreak failed to install cleats at the Main House ridge-and-hip intersections. But, as discussed below, that issue was already litigated in the Superior Court case.

ECF No. 149 at 15. What follows explains what Judge Henderson meant: through their interrogatory answers, "Plaintiffs expressly relied on Sanders's report to identify the defective

work and repair damages they advanced through their Counterclaim." *Id.* Judge Henderson compared *Stewart*, which, as he described it, treated an allegation as actually raised where the party had incorporated it by reference into the earlier petition. *Id.* (citing *Stewart*, 66 V.I. at 544). The point is that the cleat defect was asserted in the Superior Court case, not that it was adjudicated there. That is all claim preclusion requires; it bars claims that were raised or could have been raised. *Id.* at 12. Judge Henderson concluded that "the present breach of contract claim encompasses claims already asserted in Plaintiffs' Superior Court Counterclaim." *Id.* at 18–19.

Friedberg's attacks on the Sanders report do not undermine that conclusion. He argues that the report's cleat observation was not specific to the Main House roof. ECF No. 155 at 11. The observation covers all nine roofs, including the Main Pavilion, and separates the field from the ridges: "The investigation found that the pan system in the field of the roofs was installed on the roofs of the nine structures in accordance with industry standards and with the project required 9.5" o.c. cleat spacing. However, the end conditions at intersections of pans; ridges and hips, were not installed in accordance with Copper and Common Sense's recommended single lock seam and were not secured in the joint with cleats as is standard practice." ECF No. 95-5 at 45. Sanders testified that the location he opened was on the Main Pavilion and that no cleats secured the intersecting pans there, ECF No. 149 at 5, and the report, for the Main House specifically, identified "[l]ock seams not installed at ridges and hips" and recommended replacement, *id.* at 15–16. He next argues that the missing cleats were not the basis for Sanders's replacement recommendation, which rested instead on the use of long-span pans and the lack of allowance for expansion. ECF No. 155 at 11–12. But the transactional test asks whether the claims arise from the same operative facts, not which defect an expert thought most important. Both actions challenge Daybreak's performance of the same 2010 contract on the same Main House roof, and

both seek the same remedy: replacement of that roof. ECF No. 149 at 15–17. Finally, he points to the report's statement that, in a two-foot section of standing seam, Sanders "found four cleats in this area that were spaced at 8", 10", and 9"." ECF No. 155 at 12. Friedberg's own brief placed that section in a standing seam on the west side of the Main Pavilion, separate from the hip-ridge seam in which Sanders found no cleats. ECF No. 98 at 9. No one disputes that Daybreak installed cleats in the field seams. This case is about the hip ridges.[4]

### C. The 2017 Order limited damages, not claims.

Friedberg repeats his contention that the Superior Court "expressly narrowed the available damages to only those related to the replacement of the Gate House and Garage roofs, excluding from the action consideration of damages arising from defects in the Main House roof." ECF No. 155 at 13. He identifies no language in the Order that says so and does not address Judge Henderson's reading of it. The Order granted Daybreak's request "to limit damages to Two Hundred Ten Thousand Dollars ($210,000)." ECF No. 149 at 18 (quoting ECF No. 112-4 at 3–4). As Judge Henderson found, "[t]he Order does not state that the Superior Court dismissed the Main House allegations, struck Sanders's report, or made the Paradigm Report the exclusive factual basis of Plaintiffs' Counterclaim." *Id.* "The record therefore supports a limitation on the damages recoverable through the Counterclaim, rather than Plaintiffs' characterization that the Main House allegations were removed from the action." *Id.* The Paradigm estimate itself included work on the

[4] Friedberg also cites Sanders's 2025 testimony that whether there were cleats in the Main House hip ridges "never became a question that came up or that . . . I thought about." ECF No. 155 at 13 (citing ECF No. 95-7 at 84:25–86:9). That testimony is impossible to square with Sanders's 2015 testimony that cleats should have been installed at the ridges. ECF No. 149 at 5. But the question is what Friedberg asserted in the Superior Court case, and he asserted the report. *Id.* at 15–16. (Citations to ECF No. 95-5 here and in the R&R are to the report's internal page numbers. The cleat sentence appears on report page 45 (ECF page 48), not where the Objection places it. *See* ECF No. 155 at 11 (citing ECF No. 95-5 at 15–16).)

Main House roof, *id.* at 17–18, as the Objection concedes, though it says the $930 in Main House repairs concerned caulking rather than cleats. ECF No. 155 at 2–3 n.1. Friedberg himself told the Superior Court that his December 2014 supplemental responses "incorporated" Sanders's report "to amend the amount of damages sought to the cost of repair as set out in the Sanders report . . . ." ECF No. 112-6 at 7. And the cleat requirement was part of the breach dispute there. When Daybreak moved to limit Sanders's breach-of-contract testimony, the Superior Court described his opinions as addressing matters "so crucial to the contract," including "the nine and a half inch cleat copper panels . . . ." *Id.* at 77 (Tr. 36:12–23). The Superior Court reserved ruling on that motion, ECF No. 149 at 5, and never granted it.

Nor would a limit on recovery change the transaction from which the claim arises. The transactional inquiry "turns on the aggregate of connected operative facts, not solely on the amount or form of relief available in the prior action." ECF No. 149 at 18. "The damages limitation therefore did not alter the underlying conduct on which that Counterclaim rested—Daybreak's allegedly deficient performance of the 2010 roofing contract." *Id.* The limitation was also of Friedberg's own making, imposed after he declined alternatives that would have permitted Daybreak to reinspect. *Id.* at 6. If Friedberg believed the limitation was wrong, his remedy was in the Superior Court, where he sought reconsideration and certification for interlocutory appeal, ECF No. 112-5 at 2, 9; ECF No. 112-6 at 2–3—not a second action for the damages the Superior Court declined to let him pursue.

The Objection also offers new reasons why Friedberg did not pursue the Main House claim in the Superior Court after Irma: the storm disrupted the courts, the damages limitation, and uncertainty whether he could have amended after discovery closed. ECF No. 155 at 4, 14. The first has no record citation, and the second is addressed above. The third is beside the point: Friedberg

did not need to amend to assert a claim he had already asserted through his interrogatory answers. ECF No. 149 at 15, 18.

**D. The Settlement Agreement confirms the R&R's conclusion.**

Friedberg argues that the Settlement Agreement shows the parties expected this action to survive. ECF No. 155 at 14–16. It does not. It preserves the claims in this case only "to the extent that District Court case does not encompass claims that were asserted in the above-entitled Superior Court case." ECF No. 149 at 7 (quoting ECF No. 101-21 at 2, 4–6). The Objection's Factual Background quotes the provision as if it ended at the case number, replacing the condition with a bracketed period. ECF No. 155 at 4. The condition is the operative term. Whether this action encompasses claims asserted in the Superior Court case is the question the transactional test answers, and Judge Henderson answered it. ECF No. 149 at 18–19 & n.1. He did what *Toscano* directs—consulted the express terms of the settlement—and found them "consistent with the Court's independent determination above that Plaintiffs' present breach of contract claim encompasses claims asserted in their Superior Court Counterclaim." *Id.* at 19 n.1; *see Toscano v. Conn. Gen. Life Ins. Co.*, 288 F. App'x 36, 38 (3d Cir. 2008) (explaining that "[t]he express terms of a settlement agreement, not merely the terms of the judgment, determine the bounds of preclusion after a settlement"). Those terms also release known and unknown claims arising from or related to the claims asserted in the Superior Court case. ECF No. 149 at 7.

Friedberg's reading depends on his assertion that "the Parties were well aware that the breach-of-contract claim in this case was never asserted in the Superior Court case." ECF No. 155 at 15. He cites nothing for it, and the record is to the contrary: Daybreak has maintained from the outset that this case duplicates the Superior Court litigation. ECF No. 12 at 1. For the same reason, the § 26(1)(a) theory fails even if not waived. Friedberg identifies no agreement that he could split

his claim; the carve-out preserves only what was *not* asserted in the Superior Court case. And Daybreak did not acquiesce in two actions on the same claim; it moved to dismiss or stay this one. ECF No. 149 at 2.[5]

**E. The remaining transactional factors point the same way.**

Friedberg's remaining arguments restate the points addressed above. He contends that the actions are separated in time because he learned of the missing cleats after Irma. ECF No. 155 at 17. But the alleged breach in both is Daybreak's 2010 installation. ECF No. 149 at 16–17. He contends that they are separated in space because this action concerns the Main House and the Superior Court case concerned the Gate House and Garage. ECF No. 155 at 17. But the Counterclaim challenged Daybreak's performance of the whole contract, ECF No. 149 at 14–15; the Sanders report Friedberg adopted recommended replacing the Main House roof, *id.* at 15–16; and Friedberg acknowledged that Daybreak sought a second inspection because the Sanders report identified Main House defects, ECF No. 98 at 10. He contends that the origin differs. ECF No. 155 at 17. But both actions originate in the same contract and installation work. ECF No. 149 at 17.

Finally, Friedberg relies on *River Park, Inc. v. City of Highland Park*, 703 N.E.2d 883, 893 (Ill. 1998), for the proposition that the evidence needed to prove the claims remains relevant. ECF No. 155 at 16–17. Judge Henderson considered the evidence, finding that "[t]he contract and roofing specifications, Daybreak's installation work, the Main House ridge-and-hip conditions,

[5] Friedberg cites *R&J Holding Co. v. Redevelopment Authority of County of Montgomery*, 670 F.3d 420 (3d Cir. 2011), for the acquiescence exception. ECF No. 155 at 16. Applying Pennsylvania law, *R&J Holding* found acquiescence where the plaintiffs announced their intent to split their claims and the defendants never objected. 670 F.3d at 427 (concluding that "[b]ecause the Plaintiffs clearly stated their intention to split their state and federal claims during the second state action and the Defendants raised no objections, the Defendants have acquiesced to the Plaintiffs' claim splitting"). Friedberg points to no comparable statement of intent in the Superior Court case, and Daybreak was not silent.

Sanders's investigation and opinions, and related construction evidence substantially overlap and could have been examined together as a convenient trial unit." ECF No. 149 at 17. That later inspections and testimony added to that evidence does not change the transaction. *Id.* at 13.

**III. The Court Need Not Reach Daybreak's Remaining Grounds.**

As explained in Section I, Part A.3 of the Objection identifies no portion of the R&R, and the Court need not reach it. If the Court adopts the recommendation, nothing more is required. If it does not, it should "return the matter to the magistrate judge with instructions," Fed. R. Civ. P. 72(b)(3), so that Judge Henderson may address Daybreak's remaining grounds in the first instance: the Settlement Agreement release, intervening cause, causation, and mitigation. Daybreak does not waive any of them.

Two points bear noting. First, Friedberg's contention that causation and mitigation have no place in a contract action, ECF No. 155 at 18–20, is wrong. A breach-of-contract plaintiff must prove "that a contract existed, that there was a duty created by that contract, that such duty was breached, and that he suffered damages as a result." *Julien v. Matthew*, 78 V.I. 947, 959 (V.I. 2024) (cleaned up). And Friedberg acknowledges the duty to mitigate. ECF No. 155 at 19. Second, his insistence that he seeks no damages caused by the roof's performance during Hurricane Irma, *id.* at 18, confirms that Irma is not an operative fact of his claim.

**CONCLUSION**

For these reasons, Daybreak respectfully requests that the Court overrule the Objection, adopt the R&R, and grant Daybreak's Motion for Summary Judgment.

s/ Jeffrey C. Cosby, Esq.
Jeffrey C. Cosby, Esq.
Florida Bar No. 967981
Service to: eservice@wlclaw.com
Attorney for Defendant Daybreak Inc

Williams, Leininger & Cosby, P.A.
301 SE Ocean Blvd., Suite 205
Stuart, FL 34994
Telephone: 772-463-8402
Facsimile: 772-463-4820

s/ Andrew C. Simpson, Esq.
Andrew C. Simpson, Esq.
VI Bar 451
Attorney for Defendant Daybreak Inc
2191 Church Street, Ste. 5
Christiansted, St. Croix
U.S. Virgin Islands 00820
Telephone No. (340)719-3900